Ex. A: OCTOBER 1 RULE 11 MOTION

A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, *et al.*,

    *Plaintiffs*,

v.

JOHN ELIK, *et al.*,

    *Defendants*.

_____/

**DEFENDANTS JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, AND JOHN LETTMAN'S CONSOLIDATED RULE 11 MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL <u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

1

Ex. A: OCTOBER 1 RULE 11 MOTION

**TABLE OF CONTENTS**

**ARGUMENT** ................................................................................................................. 6

**I.   PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND WARRANT SANCTIONS** ............ 6
    A.    The "Civil RICO" Claims ........................................................................... 6
    B.    The "Lanham Act" Claim .......................................................................... 7
    C.    The Florida Tortious Interference Claim .................................................. 8
    D.    The Florida False Advertising Claim ....................................................... 9

**II.  PLAINTIFFS FILED THIS CASE FOR AN IMPROPER PURPOSE AFTER VOLUNTARILY DISMISSING THE SAME THEORIES.** ............................................... 10

**III. THIS ACTION IS BARRED BY §770, FLA. STAT, AND IS OUTSIDE THE STATUTE OF LIMITATIONS.** ..................................................................................... 12
    A.    Plaintiffs Failed to Provide §770.01 Notice ............................................ 13
    B.    The Single Action Rule Bars These Claims ........................................... 13
    C.    The Claims Are Outside The Statute of Limitations Under §770.07 ...... 14

**IV.  PLAINTIFFS' FACTUAL CONTENTIONS LACK EVIDENTIARY SUPPORT AND IGNORE CONTRARY MATERIALS—INCLUDING THEIR OWN.** ..................... 15
    A.    The "Iran Hosting" Contention ............................................................... 15
    B.    "Hacking" Contentions ........................................................................... 15
    C.    "Doxxing" Contentions .......................................................................... 16

**V.   THE INSTANT COMPLAINT IS A SHOTGUN PLEADING** ............................... 17

**VI.  PLAINTIFFS' VENUE AND PERSONAL-JURISDICTION CONTENTIONS ARE FRIVOLOUS AS TO OUT-OF-STATE DEFENDANTS, AND REMAIN UNSUPPORTED BY FACTS.** .................................................................................... 17

**VII. THE MANIFEST FRIVOLITY OF THIS CASE DEMONSTRATES THAT COUNSEL EITHER FAILED TO UNDERTAKE A REASONABLE PRE-FILING INQUIRY, OR WERE ASLEEP AT THE WHEEL.** ........................................................ 18

**VIII. CONCLUSION AND PRAYER FOR RELIEF** .................................................... 19
    **CERTIFICATE OF RULE 11 SAFE HARBOR SERVICE** ......................................... 19

2

## INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit should never have been filed. To understand this, some background is necessary. Plaintiffs are the wholly owned corporate alter egos of Cody Rutledge Wilson, a wealthy individual from Texas with a personal vendetta against Defendants. At the root of this controversy is *Larosiere v. Wilson*, No. 6:24-cv-01629 (Doc. 29) (M.D. Fla \_\_\_\_) (hereinafter "*Larosiere v. Wilson*").

Beginning in at least 2022, Wilson and his entities began distributing and selling copyrighted works authored by Elik, Larosiere, and others, without authorization. When individuals asked Wilson to cease his infringement, Wilson wrote a manifesto[1] titled "Black Flag White Paper," detailing his contempt for copyright, and admitting to deleting copyright notices from the works of Defendants. In the manifesto, Wilson identifies a website he created, "Fedcad.com," a mock version of the USCO's public records website, which acknowledges the works Wilson reproduced were copyrighted. In celebrating the release of his manifesto, speaking of Defendants and others who asserted copyright against Wilson, he wrote: "The reason you don't sue is because you got the law wrong on copyright. That and because you're a huge pussy. Anyway, I wrote a paper to commemorate the great pirates who lit our way. They pillaged so we could plunder."[2]

In the face of this, with no other options, Larosiere sued Plaintiffs in the Middle District of Florida for simple copyright infringement. *Larosiere v. Wilson* (Doc. 1). In response, Plaintiffs filed a series of shotgun countercomplaints, looping in a host of out-

---

[1] Wilson, Cody R. Black Flag White Paper, 2024.
[2] https://ddlegio.com/memorial-day-weekend/ , archived at:
https://web.archive.org/web/20250930231948/https://ddlegio.com/memorial-day-weekend/

3

Ex. A: OCTOBER 1 RULE 11 MOTION

of-state Counterdefendants with a completely unsupported 109-page RICO counterclaim, alleging everything from wire fraud to obstruction of justice. *Larosiere v. Wilson* (Doc. 29). Defendants in the instant action—all young individuals of limited means—include the same Counterdefendants in Plaintiff's original strike suit counterclaim: John Elik, an engineer, author, and designer; his close friend Matthew Larosiere, a civil rights attorney, author, and designer; and their personal friends and acquaintances across the country.

Plaintiffs stubbornly rode their RICO claims as the Middle District's famously overburdened courts were slow to address the motions to dismiss, engaging in abusive discovery practices while refusing to articulate a factual basis to any of their claims. After riding their baseless RICO claims for a year, in order to moot a motion to compel them to provide discovery responses and to shop for a more favorable judge, Plaintiffs voluntarily dismissed their materially identical counterclaims in the Middle District of Florida on September 5, 2025 (dismissal entered September 11, 2025). Then, on September 25, 2025, they re-filed those same theories in this Court—on the very day Defendants filed a comprehensive 28 U.S.C. § 1927 motion in the Middle District cataloging the counterclaims' legal and factual defects. *Larosiere v. Wilson* (Doc. 138). The instant complaint reprises the same defective RICO and false-statement theories centered on the so-called "FEDCAD" meme, but again fails to identify who said what, when, to whom, or how any statement was false—failing Rule 9(b) or to establish a RICO predicate.

Worse, Plaintiffs try to transmute a reputational dispute into wire-fraud-based RICO, precisely the move multiple courts (including this one) have rejected. *Freites v. Medina* squarely holds that "a scheme to defame… does not qualify as mail or wire fraud" and that defamation is not a RICO predicate; it also applies Florida's Single Action Rule

4

to bar federal end-runs where the gravamen is defamation. No. 25-CV-20465, 2025 WL 1425491 (S.D. Fla. May 16, 2025), appeal dismissed sub nom. *Freites C. v. Medina*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025) (S.D. Fla. May 15, 2025). Likewise, this Honorable Court's Order on Sanctions in *Trump v. Clinton*, condemns shotgun pleadings and the misuse of RICO actions for harassment and narrative-spinning rather than legal redress. 653 F.Supp.3d 1198 (M.D. Fla. 2023). Plaintiffs' Instant complaint ignores all of those warnings.

The record also evidences improper purpose under Rule 11(b)(1). After voluntarily dismissing in the Middle District, Plaintiffs immediately re-filed across districts, failed to properly identify the related action in their Local Rule 3.8 notice, and their principal (Cody Rutledge Wilson) posted a blog entry days later boasting of a "rifle pleading"[3] while threatening a party (Elik)—a contemporaneous admission that this lawsuit is a weapon, not a petition for redress. The new Instant complaint is thus an abusive re-hash, factually ungrounded, and legally foreclosed by precedent and Florida law.

The Court should impose sanctions tailored to deter repetition, including (1) striking or dismissing the Instant complaint, (2) awarding fees and costs incurred because of the violation, jointly and severally against Plaintiffs and their counsel, and (3) any other non-monetary directives the Court deems just.

---

[3] Defendants believe Wilson referred to this complaint as a "rifle pleading" because each of his three previous countercomplaints, culminating in a 49-count counterclaim, were identified as shotgun complaints. Wilson feels, it seems, his removal of *even more* specificity from the Instant complaint somehow makes it less of a shotgun complaint, but rather a "rifle complaint." Defendants feel Wilson misses the mark with this analogy. See: https://web.archive.org/web/20250929185454/https://ddlegio.com/what-happened-to-fosscad/

Ex. A: OCTOBER 1 RULE 11 MOTION

**ARGUMENT**

**I. PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND WARRANT SANCTIONS**

As the Eleventh Circuit has observed, "particularly with regard to civil RICO claims, plaintiffs must stop and think before filing them." *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991). Plaintiffs did not stop, and they did not think. They just filed (and re-filed).

A. The "Civil RICO" Claims

Count I alleges a civil RICO conspiracy under 18 U.S.C. § 1962(d), predicated on alleged violations of § 1962(c). To do so, Plaintiffs must allege that Defendants conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Predicate acts of racketeering must be specifically alleged, and where the predicate is wire fraud, Rule 9(b) requires particularity as to the "who, what, when, where, and how." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

Plaintiffs' pleading does none of this. Instead, it simply declares that "[e]ach use of the internet to spread damaging disinformation violates the federal wire fraud statute" (Compl. ¶34), and that Defendants' meme-posting therefore constitutes a "pattern of racketeering activity" somehow carried out through MAF (Compl. ¶¶37–48). This is not a good-faith attempt to plead racketeering.

First, no predicate act is plausibly alleged. Online memes and allegedly disparaging posts are not "schemes to defraud" under 18 U.S.C. § 1343. Second, the enterprise allegations are facially defective. Merely pointing to "MAF" and alleging that the other Defendants "followed Larosiere's direction" (Compl. ¶45) does not establish an

6

Ex. A: OCTOBER 1 RULE 11 MOTION

"enterprise" under § 1961(4). Conclusory invocations of an "enterprise" cannot substitute for facts showing a distinct legal entity or association-in-fact. *Pelletier*, 921 F.2d 1518–22.

Third, there is no "pattern of racketeering activity." Plaintiffs rely on episodic internet posts in 2023 and 2024 (Compl. ¶¶23–35). That does not satisfy either closed-ended continuity (no substantial duration) or open-ended continuity (no threat of future racketeering). *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–59 (11th Cir. 2018). Allegations that Defendants mocked Plaintiffs online—even if repeated—do not transform criticism into organized crime.

Fourth, the claim is an improper attempt to repackage reputational and business grievances as RICO. In *Freites*, the Court dismissed nearly identical RICO allegations where "Defendants' primary means of carrying out the conspiracy was through 'defamation' which involved 'Defendants repeatedly disseminat[ing] false statements about Plaintiffs via emails, social media postings, and online videos.'" 2025 WL 1425491, at *6. The same defect is present here: Plaintiffs allege reputational injury and customer loss from public statements, not property loss caused by criminal fraud.

Finally, the conspiracy claim under § 1962(d) fails because there is no substantive violation or agreement to commit a substantive violation alleged *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations.")

B. <u>The "Lanham Act" Claim</u>

Count II alleges false advertising under § 43(a)(1)(B) of the Lanham Act. To do so, Plaintiffs must allege that Defendants made false or misleading statements of fact in

7

"commercial advertising or promotion," that such statements actually deceived or had the tendency to deceive consumers in a material way, and that the deception caused injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). The Lanham Act does not federalize defamation or parody; it is aimed at false claims made in commercial advertising. The Complaint falls far short. Plaintiffs allege that, in online posts, Defendants branded DEFCAD as "FEDCAD," accused it of being "hacked and dumped," and claimed it "doxxes" customers and colludes with authorities. (Compl. ¶¶49–55). That is not a Lanham Act case.

First, the challenged speech is not "commercial advertising or promotion." A meme or online parody posted on Reddit or Twitter is not an advertising campaign. Second, the alleged statements are criticism and opinion, not false statements of fact. See *Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (Lanham Act does not cover reputational harm caused by noncommercial commentary). Third, the Complaint alleges no facts showing deception or materiality. Unburdened by evidentiary support, Plaintiffs recite that consumers "shun publicity" and that certain partners ceased working with them (Compl. ¶¶30–31, 53), but they allege no facts establishing that consumers were deceived, or materially influenced. Fourth, this claim is an improper attempt to repackage reputational grievances. As this Court recognized in *Freites*, RICO and Lanham Act claims cannot be bootstrapped from alleged defamation and disparagement.

C. The Florida Tortious Interference Claim

Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's

knowledge of that relationship; (3) the defendant's intentional and unjustified interference with it; and (4) damages.

Plaintiffs' allegations in ¶¶56–62 fail every element. They identify no legally protectable business relationship, only vaguely alluding to "customers and potential customers" and two non-party individuals. (Compl. ¶58). Plaintiffs then assert in conclusory fashion that "the Florida Defendants" interfered by "spreading false statements" (Compl. ¶60). But the Complaint pleads no act of any Floridian tied to any particular customer, contract, or transaction. Instead, it merely recycles generalized, group-pled allegations. That is not tortious interference. Plaintiffs' reliance on group labels and speculation cannot substitute for concrete allegations that any Floridian individually interfered with an identifiable relationship.

### D. The Florida False Advertising Claim

Plaintiffs fare no better under Fla. Stat. § 817.41, which prohibits "untrue, deceptive, or misleading" advertisements in the course of trade or commerce. Courts applying the statute require a clear "advertisement," that is materially false or misleading, made in trade or commerce, and relied upon by consumers.

The Complaint alleges that Defendants advertised DEFCAD as "hacked," "unsafe," "FEDCAD," and hosted in Iran (Compl. ¶64), but the only identified "advertisements" are memes and social media posts. (Compl. ¶¶23–35, 63–68). Such speech is not a commercial advertisement within the meaning of the statute. Nor do Plaintiffs allege any actual consumer reliance. They claim only conclusiorily that consumers were "in fact deceived or likely to be deceived" and that Collier and Goldhaber stopped working with them (Compl. ¶67).

9

Ex. A: OCTOBER 1 RULE 11 MOTION

Pursuing this claim is sanctionable. No reasonable attorney could believe that meme-posting about "FEDCAD" on social media is actionable false advertising under § 43(a) or the Florida counterpart. By advancing such a claim, Plaintiffs' counsel has violated Rule 11(b)(2).

### II. PLAINTIFFS FILED THIS CASE FOR AN IMPROPER PURPOSE AFTER VOLUNTARILY DISMISSING THE SAME THEORIES.

The improper purpose animating this action is plain. Plaintiffs have repackaged parody, memes, and critical speech as federal racketeering, false advertising, and state-law torts. That is not a good-faith effort to vindicate a legal right; it is an effort to silence critics and give force to personal vendettas by inflicting litigation costs.

This Court has seen this tactic before. In *Trump v. Clinton*, the Court sanctioned counsel who filed a sprawling RICO and conspiracy complaint to flaunt a political grievance, not to vindicate a legal right. 653 F.Supp.3d 1198. The same is true here: A wealthy Plaintiffs' counsel seeks to convert reputational disputes into federal racketeering and advertising claims to harass what he perceives to be his detractors. *See Pelletier*, 921 F.2d at 1518–22 (upholding sanctions where counsel frivolously transformed an ordinary dispute into RICO).

The very public boasting by Plaintiffs' principal—calling this new pleading a "rifle pleading" and threatening Illinois-based Defendant John Elik—is direct evidence of an ulterior objective. Rule 11(b)(1) forbids using the courts to intimidate, punish, or exact reputational revenge. *Cf. Trump v. Clinton* 653 F.Supp.3d at 1207 (sanctions where the lawsuit's "inadequacy as a legal claim was evident from the start" and it was filed to "harass and punish").

10

A-10

Ex. A: OCTOBER 1 RULE 11 MOTION

On September 29, 2025, Wilson linked directly to the instant complaint filed on his personal blog. In this blog post, Wilson speaks of Defendant Elik, who goes by "Ivan" online and lives in Alton, Illinois. Elik often creates hours-long video essays about Italian hunting shotguns, which Wilson references to threaten Elik. Wilson wrote the following to intimidate Elik, threatening death twice in addition to a "rough ride":



11

A-11

Ex. A: OCTOBER 1 RULE 11 MOTION

A-12

This is not the first time Wilson has threatened Elik's death. As discovery revealed in the Middle District case "[Elik] received a mailed death threat originating from … Wilson. Shortly thereafter, Mr. Wilson facilitated the public dissemination of [Elik's] name and home address in … a coordinated smear and intimidation campaign." (*Larosiere v. Wilson*, Doc. 136-3 at 43). Plaintiff's principal admits on his blog that *he* is the guiding hand behind the Instant complaint[4], which makes it redundantly clear that Plaintiff's goal here is to further harass Defendant Elik. The purpose of this Complaint is not redress; it is reprisal. Rule 11 exists to deter precisely this conduct.

### III. THIS ACTION IS BARRED BY §770, FLA. STAT, AND IS OUTSIDE THE STATUTE OF LIMITATIONS.

Very analogous to *Freites*, all four of Plaintiffs' claims are premised on the idea that the "Fedcad meme" was false. As articulated above, Plaintiffs admit Defendants are authors and thus eligible for §770 protection.

Florida's Legislature has long recognized the need to cabin defamation-style litigation. § 770 imposes clear statutory prerequisites and limitations on such suits: (1) § 770.01 requires pre-suit notice to the defendant at least five days before filing; (2) § 770.05 bars multiple suits arising from the same publication and limits to a single venue; and (3) § 770.07 provides that the cause of action accrues upon first publication.

---

[4] Wilson wrote: "I have been scapegoated because I mentioned FOSSCAD in a federal lawsuit" in reference to this case. (emphasis added) See: https://web.archive.org/web/20250929185454/https://ddlegio.com/what-happened-to-fosscad/

Ex. A: OCTOBER 1 RULE 11 MOTION

A-13

A. <u>Plaintiffs Failed to Provide §770.01 Notice</u>

Plaintiffs have not alleged, and cannot show, compliance with § 770.01's notice requirement. It was never provided when these claims were advanced in the Middle District, and is now fatal.

B. <u>The Single Action Rule Bars These Claims</u>

All of Plaintiffs' claims are predicated on allegedly false statements published online. (Compl. ¶¶56–68). These are defamation-style allegations, regardless of how Plaintiffs label them. As the *Frietes* court explained in a similar situation:

> In Florida, a single publication gives rise to a single cause of action. This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication [or publications] upon which plaintiff's defamation claim is based. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. Moreover, the underpinnings of the single-action rule make clear that <u>it does not matter whether the defamation claim fails, succeeds, or is not brought at all</u>. **If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims**.

*Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 16, 2025), appeal dismissed sub nom. *Freites C. v. Medina*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025) (cleaned up, emphasis added).

in November of 2024, Plaintiff Defense Distributed filed a claim under the Lanham Act, Digital Millennium Copyright Act, for Florida Tortious Interference, for Florida Trade Libel, and the Florida Deceptive and Unfair Trade Practices Act, all relating to the same publications. *Larosiere v. Wilson*, (Doc. 29).

§ 770.05, Fla. Stat. has been understood to limit defamation-style cases "to only **one** suit in **one** chosen venue to avoid multiple suits upon the one cause of action."

13

Ex. A: OCTOBER 1 RULE 11 MOTION

*Perdue v. Miami Herald Pub. Co*. 291 So.2d 604, 606 (Fla.1974) (emphasis added). In other words, to prevent Plaintiff's exact conduct.

What's more, the single action rule forbids Plaintiff's slipshod attempts to contort their defamation claim into four separate counts, each "explicitly speak[ing] about…'false accusations,' and damaging reputations.'" *Frietes* at *5. *Frietes* concerned postings to Twitter and Youtube, like the instant case. All four causes of action refer to the same publications. Thus, they cannot be brought consistent with the Single Action rule.

C. <u>The Claims Are Outside The Statute of Limitations Under §770.07</u>

§ 770.07's accrual rule means that any claim sounding in libel, slander, or defamation, has the statute of limitations run from the date of first publication. Plaintiff's theory of liability is based on statements first published as early as 2023. (Compl. ¶¶23–35). May 15, 2023, was 2 years, 4 months, and 10 days before the date of filing. This is beyond the two years afforded by § 95.11, Fla. Stat. Under §770.07, all causes of action stemming from the publication accrued at first publication; it cannot be revived by repetition.

Additionally, Plaintiffs, Texas companies, necessarily allege damages in Texas by bringing RICO claims. Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. *Middleton v. Hollywood Reporter, LLC*, 686 F. Supp. 3d 1272, 1275 (S.D. Fla. 2023). Texas' statute of limitations for libel is one year.

No reasonable attorney could plead these state-law claims and their federal derivatives without addressing 770's clear mandates. The failure to do so confirms no

14

count was "warranted by existing law" under Rule 11(b)(2) and reflect, instead, an improper purpose of harassment through duplicative, procedurally defective litigation.

### IV. PLAINTIFFS' FACTUAL CONTENTIONS LACK EVIDENTIARY SUPPORT AND IGNORE CONTRARY MATERIALS—INCLUDING THEIR OWN.

Rule 11(b)(3) requires a reasonable pre-filing inquiry. Plaintiffs' Instant complaint is predicated on narratives that are unsupported or contradictory:

A. <u>The "Iran Hosting" Contention</u>

No party ever asserted that Defcad itself "hosts in Iran." The record reflects a website configured to present as DEFCAD on an Iranian server. Plaintiffs' own security vendor (Mandiant) and Lettman's affidavit confirm the site's existence. Plaintiffs' failure to correct or remove the site does not transform truthful statements of concern into defamatory falsehoods—and certainly not into wire fraud.

B. <u>"Hacking" Contentions</u>

Plaintiffs' own records corroborate that they were hacked. In 2021, Plaintiffs compensated an individual whom they knew as "JG" after "JG" discovered a vulnerability that did in fact enable access to sensitive user data. (*Larosiere v. Wilson*, Doc. 138-2, B101-102). "JG" found an exploit on Django (the apparent software framework of DEFCAD) and NGINX (a software for serving web pages) that allowed them to obtain the private source code of DEFCAD. Given DEFCAD likely uses Django, many settings and configuration options are in a standard location: typically, a private source code file. When the NGINX web server is configured incorrectly, as DEFCAD's was, certain resource paths provide the private source code files to the user. The address, username, and password of their database were exposed via the Django configuration file. "JG" told others that the database was accessed and shared. Plaintiffs and Defendants also

15

produced in discovery web security reports indicating the site was likely compromised. *Larosiere v. Wilson* (Doc. 138-1 at A374-446). Against that backdrop, statements that DEFCAD had been hacked and data was dumped were supported by a reasonable basis (indeed by Plaintiffs' own disclosures), and Plaintiffs are acutely aware of their veracity. At minimum, the Instant complaint cannot honestly allege falsity.

C. "Doxxing" Contentions

Plaintiff claims that Defendants together conspired to make statements that included that "DEFCAD's customer names are public ("doxxing")". However, they never offer evidence of either of these claims. Instead, they provide only the "FEDCAD" meme. This meme makes only one reference to "doxxing[5]". As DEFCAD is well aware, DEFCAD in fact turned over non-public information about gun designers to an anti-gun organization in a lawsuit where DEFCAD was sued for willfully infringing the anti-gun organization's trademarks, and refused to cease the infringement.

Additionally, Plaintiff's own behavior (and that of their common principal, Cody Wilson) has included rampant doxxing. In *Larosiere v. Wilson*, Wilson disclosed that he had paid for multiple private investigators to gather personal information about Defendants. Wilson also provided communications where he discussed plans to doxx Peter Celantano. Wilson also publicly posted John Elik's private banking information on Wilson's blog.[6] Wilson's willful copyright infringement, which is the subject of *Larosiere v. Wilson*, has resulted in several more unrelated individual's private information being

---

[5] "Doxxing" refers generally to the sharing or posting of personal information that was otherwise kept private.
[6] https://ddlegio.com/gatalogy/ , see also
https://web.archive.org/web/20251001041221/https://ddlegio.com/gatalogy/

posted publicly. A great wake of doxxing and de-anonymizing follows Wilson, and through him, the Plaintiffs in this case.

### V.  THE INSTANT COMPLAINT IS A SHOTGUN PLEADING

The Instant complaint incorporates one set of aversions into all subsequent counts, asserts multiple claims against multiple defendants without specifying who did what, and is replete with conclusory, immaterial, and vague allegations untethered to the elements of any claim or defense. These are the *Weiland* archetypes of shotgun pleading. See *Weiland*, 792 F.3d at 1321–23; *Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021).

Compounding that, the pleading relies on group labels and collective conduct across platforms and time, while the counts themselves rarely identify which defendant engaged in which act supporting which claim. *Compare* Count II (Lanham Act, ¶¶49–55) and Count IV (Fla. §817.41, ¶¶63–68)—both lodged against all defendants on the same undifferentiated facts—with Count III (TI), which is nominally "against solely the Florida Defendants" but still depends on the same group-pled narrative.

### VI. PLAINTIFFS' VENUE AND PERSONAL-JURISDICTION CONTENTIONS ARE FRIVOLOUS AS TO OUT-OF-STATE DEFENDANTS, AND REMAIN UNSUPPORTED BY FACTS.

Plaintiffs' Instant complaint advances sweeping assertions of Florida jurisdiction and venue untethered to any Florida-directed conduct by several out-of-state defendants. Defendants submitted sworn affidavits in the Middle District that they were never paid by MAF and had no Florida-targeting relevant to Plaintiffs' theories; Plaintiffs offered no contrary evidence in discovery. Re-filing the same airy jurisdictional and venue claims here, without new facts, compounds the violation.

### VII. THE MANIFEST FRIVOLITY OF THIS CASE DEMONSTRATES THAT COUNSEL EITHER FAILED TO UNDERTAKE A REASONABLE PRE-FILING INQUIRY, OR WERE ASLEEP AT THE WHEEL.

Rule 11 requires attorneys to really "stop and think" before bringing a RICO claim, especially when it involves dragging individuals from across the nation to a faraway forum. That's why it's shocking where counsel for Plaintiffs roped John Lettman into this case, where the sole mention of him in the entire complaint is that he is "a citizen and resident of Pennsylvania." To that, Lettman replies: guilty as charged! However, that is not a sufficient factual allegation to support forcing Lettman to litigate an unarticulated "conspiracy to violate RICO" lawsuit based on internet memes. No reasonable attorney would have filed this case.

Counsel may argue that they have clean hands, pointing at one another to avoid the repercussions of filing this obviously defective suit. However, that doesn't prevent sanctions. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, **or party** that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added). And where the client has made a "knowing factual misrepresentation" or is the "mastermind" behind the frivolous case, sanctions against a client are appropriate. *Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001) (quotation marks omitted), abrogated on other grounds as recognized by *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018). Rule 11 sanctions must be calibrated to deter repetition. Rule 11(c)(4). Given Plaintiffs' voluntary dismissal and immediate re-filing across districts, the public threat post, the shotgun pleading, and the ludicrous RICO theory, significant deterrence is needed.

18

### VIII. CONCLUSION AND PRAYER FOR RELIEF

Defendants respectfully requests that the Court: (1) Strike the defective pleading and dismiss it with prejudice; (2) Award Defendants their reasonable attorneys' fees and expenses incurred as a result of the violations; and (3) Direct Defendants to submit sworn declarations of fees and expenses within a time certain so the Court may determine the precise award; and (4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: October 1, 2025

| /s/ Gary C. De Pury | /s/Matthew Larosiere | /s/ Zachary Z. Zermay |
|---|---|---|
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Email: Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, and Lettman* | *Lead Counsel for Matthew Larosiere* |

### CERTIFICATE OF RULE 11 SAFE HARBOR SERVICE

I HEREBY CERTIFY on this 1st day of October, 2025, I served the foregoing via e-mail and United States Mail to all of Plaintiff's counsel of record. I will not file this motion with the Court for 21 days.

/s/ Matthew Larosiere

Matthew Larosiere, Esq.
Fla. Bar № 1005581