UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE; and JOHN LETTMAN,

*Defendants*.

_____/

**DEFENDANTS JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, AND JOHN LETTMAN'S CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' RULE 11 MOTION**

i

## TABLE OF CONTENTS

I. **PLAINTIFFS CONCEDE THE MOST EGREGIOUS RULE 11 VIOLATIONS** ................................................................................................. 1

    A. Plaintiffs Offer No Defense of Suing Defendant Lettman Without a Single Allegation ................................................................................................. 1

    B. Plaintiffs Do Not Defend Their Venue or Personal-Jurisdiction Theories ... 2

    C. Plaintiffs Failed to Defend the Lanham Act Claim ....................................... 2

    D. Plaintiffs Ignore Record Evidence of Improper Purpose ............................... 3

    E. Plaintiffs Do Not Rebut the Evidentiary Problems in Their Factual Allegations ................................................................................................. 4

II. **PLAINTIFFS MISREPRESENT CASE LAW AND THE RECORD AS IT RELATES TO CLAIMS GROUNDED IN DEFAMATION** ............................... 5

    A. Plaintiffs Did, In Fact, Bring a Defamation Claim ........................................ 5

    B. Plaintiffs Do Not Rebut That Their Claims Are Defamation-Equivalent and Trigger §770 ............................................................................................... 6

    C. Plaintiffs Misread Caselaw or Attempt to Mislead the Court ......................... 7

    D. Plaintiffs Removed References to Defamation To Frustrate Defenses ............ 9

III. *HARTMAN* **DOES NOT SAVE PLAINTIFFS' THEORY** ................................ 9

IV. **PLAINTIFFS' OWN PUBLICATION OF THE "FEDCAD" MEME UNDERCUTS THEIR CLAIMS** ........................................................................ 10

V. **CONCLUSION** ........................................................................................................ 10

Defendants submit this Reply to address the points raised—and identify points unaddressed—in Plaintiffs' Opposition. Plaintiffs' response confirms the objective frivolity of the Amended Complaint. The Opposition answers almost none of the Rule 11 violations identified in the Motion. The most serious defects are not disputed at all, and the remaining arguments reinforce that Plaintiffs are attempting to convert reputational grievances and internet commentary into federal racketeering, federal advertising claims, and state torts without factual or legal basis.

Because the Opposition largely proceeds by omission, this Reply focuses on those concessions and on the clearest violations of Rule 11(b)(2) and (b)(3). Each is independently sufficient to warrant sanctions.

## I. PLAINTIFFS CONCEDE THE MOST EGREGIOUS RULE 11 VIOLATIONS

### A. Plaintiffs Offer No Defense of Suing Defendant Lettman Without a Single Allegation

Plaintiffs were first put on notice that they had alleged nothing about the Pennsylvania-based Lettman on October 1, 2025. (Doc. 23-2 at A-18). The Amended Complaint alleges nothing whatsoever about Defendant John Lettman beyond his state of residence. Plaintiffs' Opposition does not even mention his name.

Rule 11(b)(3) requires that factual contentions have evidentiary support. Plaintiffs have twice certified claims under RICO, Lanham Act, and tortious interference against an individual about whom they failed to identify a single action. By failing to defend this decision, Plaintiffs effectively admit they had no reasonable basis to name Lettman. Plaintiffs' complete inability to articulate even a theoretical justification is a clear example of Rule 11(b)(3) and (b)(2) violative conduct.

1

B. <u>Plaintiffs Do Not Defend Their Venue or Personal-Jurisdiction Theories</u>

Defendants' Rule 11 motion explains that Plaintiffs attempt to sue out-of-state defendants who have no Florida-directed conduct, and against whom Plaintiffs had no contrary evidence in the previously dismissed middle district proceedings. Plaintiffs' opposition never addressed the sworn affidavits filed in the Middle District disproving jurisdiction, the lack of any Florida-specific conduct, or the absence of any new factual allegations supporting jurisdiction in the Amended Complaint. Their silence confirms Plaintiffs conducted no reasonable inquiry before re-filing identical defective jurisdictional assertions in this forum. Rule 11(b)(2) and (b)(3) require more.

C. <u>Plaintiffs Failed to Defend the Lanham Act Claim</u>

Plaintiffs' Opposition is evasive as to the "commercial advertising or promotion" requirement. (Doc. 23 at 9). The Motion explained that memes and critical commentary are not "commercial advertising or promotion." Seeing that Defendants cited *Johnson & Johnson* for this proposition, Plaintiffs responded by ignoring the threshold issue of "commercial advertising or promotion" and focusing instead on "literal[] fals[ity]," which is odd given their heretofore full-throated resistance to their claims sounding in defamation.

Plaintiffs cannot reasonably allege "competition," another threshold requirement, as the Motion identifies—and Plaintiffs did not dispute that no Defendant can reasonably be said to be in "competition" with Plaintiffs because none of them attempt to commercialize the works of third parties, hence the vague way Plaintiffs define a nonexistent market. *Cf. Johnson & Johnson Vision Care, Inc. v. 1-*

2

*800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) (Contract lens manufacturer suing contact lens seller).

The continued pursuit of the Lanham Act claim in the manifest absence of any factual basis for 'commercial advertising and promotion' or 'competition' means the pleading failed Rule 11(b)(2–3). The alleged competition is *ipse dixit*, identifying no overlapping products, business model, or otherwise. Labels aside, it is objectively unreasonable to treat this as a *Johnson & Johnson*-type ad campaign: there are no customers exposed in a purchasing context, no offer, no actual ad "campaign," and no pre-filing evidentiary basis that anyone was deceived "as a consumer" rather than just persuaded by criticism. Especially where counsel must "stop and think" before filing claims such as these, bare conclusory allegations cannot be enough to satisfy Rule 11(b). *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991).

### D. <u>Plaintiffs Ignore Record Evidence of Improper Purpose</u>

The Motion identifies, and Plaintiffs do not in any material way address: (1) their abandoned counterclaims in the Middle District; (2) their immediate re-filing of materially identical claims here with *less* factual support; (3) why the re-filing coincided with sanctions pressure in the Middle District; and, most importantly, (4) why their common principal publicly linked death threats and taunts to this action. The Motion was detailed with record evidence of improper purpose. Defendants' attempt to brush this aside by asserting—supported only by the unsworn representations of counsel—that the claims are "[u]nsupported" and that Plaintiffs "have pursued well-grounded claims based on factual evidence and recognized legal

3

theories of commercial injury." (Doc. 24 at 8). The Motion provides record evidence of improper purpose, and the Opposition provides no alternative explanation.

      E. <u>Plaintiffs Do Not Rebut the Evidentiary Problems in Their Factual Allegations</u>

Plaintiffs assert that Defendants did not contend any particular fact violated Rule 11(b)(3). This would be devastating if it were true. The glaring issue of Lettman's inclusion aside, the Motion identified Plaintiffs' dramatic factual allegations lacking any support and contradicted by Plaintiffs' own materials, coinciding with each of the items Plaintiffs—who maintain this *isn't* grounded in defamation—insist were false. (Doc. 23 pp. 16-18). These concerned the "Iran hosting," "hacked/dumped," and "doxxing" allegations. Each item Plaintiffs claim is false is rebutted by clear reference to Plaintiff's own materials in the Motion.

Plaintiffs' Opposition does not address the contrary evidence, does not identify a single supporting document, and does not explain the source of these allegations. Their silence confirms that no evidentiary support existed when Plaintiffs re-filed the Amended Complaint—precisely what Rule 11(b)(3) prohibits.

With regard to enterprise, although the Amended Complaint calls MAF Corp. an 'enterprise,' it pleads no structure, no roles, no ongoing organization, no relationship among Defendants apart from conclusory 'followed his direction' language, and no distinction between the alleged RICO 'persons' and the 'enterprise.' Plaintiffs' Opposition does not attempt to cure these defects.

As far as tortious interference is concerned, while the Amended Complaint now vaguely gestures toward 'exit interviews' and two people, Plaintiffs still do not

4

identify any statements, any dates, any communications by any specific Defendant, any contract or expectancy with these individuals, or any pre-filing evidentiary support for these claims. These placeholders do not cure Rule 11(b)(3) deficiencies.

## II. PLAINTIFFS MISREPRESENT CASE LAW AND THE RECORD AS IT RELATES TO CLAIMS GROUNDED IN DEFAMATION

Critical to Plaintiff's theory is whether their action sounds in defamation. Repeatedly in the Opposition, Plaintiffs attempt to distinguish their claims as something other than defamation. This is relevant both because a defamation scheme cannot establish wire fraud, and because the single action rule bars such claims here.

### A. Plaintiffs Did, In Fact, Bring a Defamation Claim

Conveniently absent from their opposition is the fact that, in the now-dismissed counterclaims from the Middle District action, Plaintiffs *did* assert defamation. *Larosiere v. Wilson*¸ 6:24-cv-01629 (Dkt. 52) (Claiming, as part of "compet[ing[ with Defense Distributed" that Defendants "Defames and Disparages Defense Distributed"). Indeed, the section titled "The Gatalog[1] Defames and Disparages Defense Distributed" in the now-dismissed counterclaims contains virtually identical allegations to the instant complaint, including that Defendants "engaged in wire fraud…when [they] devised and executed a scheme to defame and falsely disparage DEFCAD's business practices" through "the FEDCAD trade libel[.]" *Id*. ¶¶110-117 *cf*. Compl.

---

[1] "The Gatalog" refers to a disorganized, loose collective of many thousands of hobbyists on the internet that Plaintiffs previously placed at the center of their imagined RICO enterprise.

5

Plaintiffs' attempts to recast this dispute as something other than a scheme to defame "by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims" does not change the fact that all of their claims are rooted in defamation. *Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 16, 2025).

The Opposition fails to separate any claim from its roots in defamation. In fact, the Opposition spills no shortage of ink repeating that Defendants' statements were "false" "falsehoods" posted "falsely," "online." (Doc. 24). This is critical because…

### B. <u>Plaintiffs Do Not Rebut That Their Claims Are Defamation-Equivalent and Trigger §770</u>

Plaintiffs admit reputational harm is central to their theory. The Opposition repeatedly characterizes the alleged conduct as a "smear campaign" (Doc. 24 at 4) of "false online content" (*Id.* at 9) resulting in the loss of business due to reputational impact. This confirms the gravamen is reputational injury, not property loss or competitive fraud. In fact, the Opposition does nothing to address that "[n]ot only are the posts non-commercial, nothing beyond the *ipse dixit* assertions of Plaintiffs credibly allege that any party is actually in competition or even the same industry as any other party." (Doc. 23 at 9). The Opposition fails to do more than argument by assertion.

Plaintiffs' arguments about "media defendants," which are odd given they recognize Defendants as "authors," nevertheless have no bearing on the first-publication rule. The Opposition completely fails to address § 770.07.

### C. Plaintiffs Misread Caselaw or Attempt to Mislead the Court

Plaintiffs suggest that *Frietes* and the Single Action Rule can only be read to apply where a literal defamation claim was brought and actually defeated. Their suggestion that *David v. General Dynamics*—a Middle District case which spent barely two paragraphs engaging with the Rule at all—was a "clarifying" decision that selectively undid decades of case law inconvenient to them is difficult to reconcile with the text of the decision, as the very case they cite for the proposition recognizes a "deep[] divi[sion]" between the Middle and Southern Districts on the application of this rule. 2025 WL1951850 at *5 (citing *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1314 n.4 (M.D. Fla. 2025) (collecting cases)). The application of the Rule in the Southern District, where Plaintiffs deliberately re-cast this cause, is the opposite of their suggestion.

The cases *actually* engaging with this issue are *Tymar, Callaway,* and *Gannett*. "In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). While the rule obviously applies following a "successful invocation of a defamation privilege" *Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla. 1992), the Southern District has repeatedly observed that "[s]trategically not pleading a defamation count to avoid application of the rule is the type of gamesmanship contemplated by *Callaway* and would allow a plaintiff to 'circumvent[] a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm.'" *Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp.

7

3d 1275, 1287–88 (S.D. Fla. 2021); *see also Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (plaintiff could not avoid defamation statute of limitations by amending claim from describing publication as "false and defamatory" to one "worded in such a way to portray the plaintiff in a false light." (cleaned up). Certainly, "the protections afforded by [defenses to defamation] cannot be undone by engaging in a semantic exercise such as this." *Id.* at 8.

This is not a "disagreement about application," as Plaintiffs suggest. As explained, Plaintiffs' claims were essentially cut-and-pasted from an overwrought 73-page RICO counterclaim previously filed in the Middle District which identified them as sounding in defamation. Cutting their losses, moving venue, and trying again (but this time removing references to "defamation") is an aggressive and deliberate form of the conduct foreclosed by *Frietes*, *Tymar*, and *Callaway*. If it were as Plaintiffs suggest, *Frietes*' clear articulation that "it does not matter whether the defamation claim fails, succeeds, **or is not brought at all**" would have been complete surplusage. But it wasn't. Instead, it recognized, after engaging with a long string of cases, that "If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercise or strategic gamesmanship by asserting various additional claims." *Frietes* at *5. Plaintiffs knew of this issue when they deliberately removed references to defamation, knew that removal failed when presented with the October 1 motion, and did nothing to correct it. Their subsequent filing violates 11(b)(2).

D. <u>Plaintiffs Removed References to Defamation To Frustrate Defenses</u>

As already explained, it is clear that Plaintiffs knowingly and intentionally removed references to Defamation when bringing these claims, especially where the counterclaims were dismissed in the face of a motion to compel additional documents which showed Plaintiffs *knew* the statements in the FEDCAD meme were true, in violation of 11(b)(2). Detailed articulations that each statement in the meme was grounded in truth were present in the October 1 and as-filed Rule 11 motions. (Doc. 23-2 pp. 15-17). Plaintiffs, rather than engaging with the detailed factual narrative in the Rule 11 motions they had more than a month to review, chose to simply assert that "The RICO Claim is Well Grounded in Law and Fact" without responding to a single of Defendants' detailed articulations as to why Plaintiffs *knew* their complaint lacked factual support. Plaintiff's silence confirms their filing violated Rule 11(b)(3).

## III. *HARTMAN* DOES NOT SAVE PLAINTIFFS' THEORY

Plaintiffs wield *Hartman* like a talisman, citing it six times in the Opposition. But *Hartman* does not even remotely stand for the position they allege it does, as identified in the Motion. (Doc. 23 at 8). Plaintiffs assert that a post-trial appeal on the narrow issue of continuity *in a case concerning a post-discovery detailed allegation of a scheme to engage in criminal impersonation for the specific purpose of business destruction* somehow endorses their facially deficient 13-page strike suit. Defendants were ready to respond to Plaintiffs' invocation of *Hartman*, as Plaintiffs' counsel referred to *Hartman* while threatening to counter-sanction Defendants before the Motion was filed. (Doc. 23-3). As such, the Motion analyzed *Hartman* and confirmed

9

it doesn't even remotely stand for the broad position Plaintiffs claim. Plaintiffs respond by pretending Defendants never said it.

### IV. PLAINTIFFS' OWN PUBLICATION OF THE "FEDCAD" MEME UNDERCUTS THEIR CLAIMS

Despite arguing performatively that their claims *aren't* grounded in defamation, the Opposition identifies the "FEDCAD meme" as the sole source of their "commercial injury." The Motion identifies a complete lack of credible allegations that the FEDCAD meme contained false information or caused any harm. Plaintiffs rebut this with unsupported assertions to the contrary. These assertions in the Opposition, however, cannot be rectified with the fact that Plaintiffs have disseminated on their own website, without comment or refutation, since May 22, 2024, the very same meme.[2] This cannot be squared with Rule 11's substantive obligations.

### V. CONCLUSION

The motion should be granted.          DATED: November 19, 2025

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/ Matthew Larosiere* | */s/ Zachary Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Larosieremm@gmail.com | zach@zermaylaw.com |
| Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, and Lettman* | *Lead Counsel for Matthew Larosiere* |

---

[2] Anonymous, "FEDCAD Meme," Defcad.com, May 22, 2024, https://defcad.com/library/fedcad-meme/, *archived at* https://web.archive.org/web/20251120020227/https://defcad.com/library/fedcad-meme/.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 19th day of November, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905