UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas
corporation; DD FOUNDATION, LLC, a
Texas limited liability company; and,
DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE;
ALEXANDER HOLLADAY; PETER
CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants.*

_____/

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT, AND IN
THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

i

## TABLE OF CONTENTS

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** ................................................................................... i

**I.   THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN** .............................................................. 2

   A. There is no personal jurisdiction under RICO ........................................... 3

   B. There is no personal jurisdiction for the remaining claims .................... 4

**II.   PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELEIF CAN BE GRANTED** ............................................... 5

   A.   The "Civil RICO" Claims ....................................................................... 5

   B.   The "Lanham Act" Claim ........................................................................ 8

   C.   The Florida Tortious Interference Claim ............................................... 9

**III.   THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS** ................................................ 10

**IV.   THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING** ....................................................................................... 13

   A, The Complaint is a type 1 shotgun pleading ......................................... 15

   B. The Complaint is a type 2 shotgun pleading ......................................... 16

   C. The Complaint is a type 4 shotgun pleading ......................................... 17

**V.   IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED** ......................................... 17

**VI.   CONCLUSION** ............................................................................ 18

**CERTIFICATE OF SERVICE** ............................................................ 19

Defendants John Elik, Matthew Larosiere, Alexander Holladay, Josh Kiel Stroke, and John Lettman respectfully move to dismiss the Amended Complaint. As explained below, the pleading suffers from fundamental defects that preclude any of the claims from proceeding against any Defendant. This motion is brought under Rules 12(b)(2), 12(b)(6), and 12(e).

## INTRODUCTION AND SUMMARY OF ARGUMENTS

The Amended Complaint attempts to transform internet speech into federal racketeering, federal false-advertising, and state tort liability. Plaintiffs' theory appears to be that the mere posting of an image and the discussion of Plaintiffs' business practices on public forums, is sufficient to constitute wire fraud, Lanham Act advertising, and actionable interference. The premise is untenable as a matter of law. The pleading fails to establish personal jurisdiction against several out-of-state defendants, fails to meet the most basic requirements of Rule 8 and Rule 9(b), and is barred by Florida's §770 doctrine governing defamation-equivalent claims.

Plaintiffs attempt to base jurisdiction on nothing more than the allegation that online statements were made somewhere on the internet. Plaintiffs attempt to avoid this defect by invoking RICO's nationwide service provision, but a jurisdictional theory premised on RICO necessarily fails when the RICO claim is facially deficient. As explained in detail below, the RICO allegations do not come close to stating a plausible claim: they do not plead predicate acts with the particularity required by Rule 9(b); they do not plead a distinct enterprise; they do not plead continuity; they do not plead a cognizable RICO injury to business or property; and they do not plead proximate causation consistent with *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451

(2006). Because Plaintiffs fail to allege a valid RICO claim, the nationwide service provision of §1965(b) cannot be invoked to create jurisdiction.

The defects do not end with jurisdiction. Even if jurisdiction existed, every substantive claim in the Amended Complaint would fail on its own terms. The RICO claim is an archetypal misuse of the statute. The Lanham Act claim fares no better: nothing alleged constitutes "commercial advertising or promotion," nor do Plaintiffs plausibly allege competition, material deception, or any injury cognizable under §1125(a). The tortious interference claim is devoid of factual content, naming two individuals without any meaningful description of the relationship, any act of interference, or any causal connection to Defendants. To the extent it is based on allegedly false statements, it is barred by Florida's Single Action Rule, by §770.01's notice requirement, and by §770.07.

Finally, the pleading is a textbook shotgun complaint. It indiscriminately lumps multiple defendants together, incorporates every preceding allegation into every count, and fails to identify which defendant supposedly committed which act. For all of these reasons, the Complaint must be dismissed.

## <u>ARGUMENT</u>

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN

When assessing a dismissal for lack of personal jurisdiction, Courts "first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 199 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon

a federal statute or a state long-arm statute. If a basis exists for granting jurisdiction, the court must then "determine whether the exercise of jurisdiction comports with due process." *Id*.

Supporting affidavits attached to this motion confirm that the nonresident defendants do not live in the State of Florida, and do not conduct any business in the State of Florida.

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, and other claims. The Eleventh Circuit has held that a potential statutory basis for jurisdiction may exist under RICO because it contains a nationwide service-of-process provision. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). The other asserted statutes lack such provisions, and thus their jurisdictional analysis must be based on the state's long-arm statute. On this, the jurisdictional analysis is different for the RICO claim and all other claims.

A. There is no personal jurisdiction under RICO

Even where the eleventh circuit has recognized a potential statutory basis for personal jurisdiction under RICO, Plaintiffs can only take advantage of it if its "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-2. "In other words, whether a basis exists for exercising personal jurisdiction under RICO depends on whether [Plaintiffs] ha[ve] stated a 'colorable' RICO claim. If [Plaintiffs] ha[ve] not stated a colorable claim, we do not address the applicable due-process requirements." *Courbain v. Scott*, 596 Fed.Appx. 729 at 732 (11th Cir. 2014).

3

Similar to the complaint in *Courbain*, Plaintiffs here "make[] broad allegations" but "do[] not connect these allegations to any predicate act as defined by 18 U.S.C. §1961." *Id.* at 733. The deficiencies in Plaintiffs' pleading are more thoroughly argued *infra*, but no jurisdiction exists under RICO because Plaintiffs did not state a "colorable" RICO claim, and even if it did, personal jurisdiction would not comport with due process, for the same reasons the other claims do not.

### B. There is no personal jurisdiction for the remaining claims

Because the remaining claims are not based on laws containing a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants. *See Delong Equip. Co.*, 840 F.2d at 847–48; Fed.R.Civ.P. 4(e). Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, an individual commits a tortious act within Florida, an individual carries on business within the state, or the individual injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or his services were used within Florida in the ordinary course of business. Fla. Stat. § 48.193(1)(a). The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida. Id. § 48.193(2). Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6. *See Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla.1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a) 6).

4

Plaintiffs have made no jurisdictional allegations against the nonresident Defendants whatsoever. There are no factual allegations underlying any relationship to the forum state, likely because, as shown by the attached affidavits, no jurisdictionally relevant connection to this state exists for any of the nonresident Defendants.

## II. PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELEIF CAN BE GRANTED

A.    The "Civil RICO" Claims

Plaintiffs' RICO count is the centerpiece of the Amended Complaint and the jurisdictional anchor upon which Plaintiffs attempt to premise their roping of individuals all over the country to a faraway forum. It therefore demands close scrutiny. Plaintiffs have not pled a single RICO element. The theory advanced—a kind of defamation-by-RICO—has been rejected by every circuit to consider similar attempts. The claim not only fails Rule 8, but independently fails Rule 9(b), fails the substantive requirements of §§ 1962(c) and (d), and fails to allege any cognizable RICO injury or proximate causation. At its core, Plaintiffs' RICO case depends upon treating online criticism as "wire fraud," and treating a nebulous reputational harm as a federal racketeering injury. That is not the law.

Wire fraud, as it could pertain to a RICO claim, covers "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals,

pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343. In this context, the scheme must relate to actually taking money or property from the Plaintiff. *Kousisis v. United States* 605 U.S. 114 (2025). As with many of Plaintiff's claims, circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

Count I alleges a civil RICO conspiracy under 18 U.S.C. § 1962(d), predicated on alleged violations of § 1962(c). To do so, Plaintiffs must allege that Defendants conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Predicate acts of racketeering must be specifically alleged, and where the predicate is wire fraud, Rule 9(b) requires particularity as to the "who, what, when, where, and how." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

Plaintiffs' pleading does none of this. Instead, it simply declares that "[e]ach use of the internet to spread damaging disinformation violates the federal wire fraud statute" (Compl. ¶34), and that Defendants' alleged meme-posting therefore constitutes a "pattern of racketeering activity" somehow carried out through non-party MAF. (Compl. ¶¶37–48). This is not a good-faith attempt to plead racketeering.

First, no predicate act is plausibly alleged. Online memes are not "schemes to defraud" under 18 U.S.C. § 1343.

Second, the enterprise allegations are facially defective. Conclusory invocations of an "enterprise" cannot substitute for facts showing a distinct legal entity or association-in-fact. *Pelletier*, 921 F.2d 1518–22. The Amended Complaint retains the same bare enterprise allegation   that Larosiere "acting through" MAF is the enterprise   without any structure, hierarchy, roles, or acts attributable to an "enterprise" distinct from the alleged actors. See (Am. Compl. ¶¶ 46–48).

Third, there is no "pattern of racketeering activity." Plaintiffs rely on episodic internet posts in 2023 and 2024 (Am. Compl. ¶¶23–35). That does not satisfy either closed-ended continuity (no substantial duration) or open-ended continuity (no threat of future racketeering). *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–59 (11th Cir. 2018). Allegations that Defendants mocked Plaintiffs online—even if repeated do not transform criticism into organized crime. Plaintiffs' mere recitation, without any factual allegations, that the supposed pattern is "both closed and open" does not cure the defect. (Am. Compl. ¶ 43.)

Fourth, the claim is an improper attempt to repackage reputational and business grievances as RICO. In *Freites*, the Court dismissed nearly identical RICO allegations where "Defendants' primary means of carrying out the conspiracy was through 'defamation' which involved 'Defendants repeatedly disseminat[ing] false statements about Plaintiffs via emails, social media postings, and online videos.'" 2025 WL 1425491, at *6. The same defect is present here: Plaintiffs allege reputational injury and customer loss from public statements, not property loss caused by criminal fraud.

Finally, the conspiracy claim under § 1962(d) fails because there is no substantive violation or agreement to commit a substantive violation alleged *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations.")

RICO requires the existence of an "enterprise," which must be distinct from the "person" alleged to have conducted its affairs and must exhibit structural features including a purpose, relationships among associates, and longevity. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Conclusory assertions that Defendants "acted through" an entity do not satisfy this requirement.

B.      The "Lanham Act" Claim

Count II alleges false advertising under § 43(a)(1)(B) of the Lanham Act. To do so, Plaintiffs must allege that Defendants made false or misleading statements of fact in "commercial advertising or promotion," that such statements actually deceived or had the tendency to deceive consumers in a material way, and that the deception caused injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). The Lanham Act does not federalize defamation; it is aimed at false claims made in commercial advertising. The Complaint falls far short. Plaintiffs allege that, in online posts, Defendants branded DEFCAD as "FEDCAD," accused it of being "hacked and dumped," and claimed it "doxxes" customers and colludes with authorities. (Am. Compl. ¶¶49–55). That is not a Lanham Act case.

First, the challenged speech is not "commercial advertising or promotion." A meme posted on the internet is not an advertising campaign. Not only are the posts non-commercial, nothing beyond the *ipse dixit* assertions of Plaintiffs credibly allege

8

that any party is actually in competition or even the same industry as any other party, hence the vague way Plaintiffs refer to the imagined "3D gun market" they claim Defendants "are active" in. (Doc. 13 ¶ 15). Defendants cannot comprehend how Plaintiffs "compete" with them.

Second, the alleged statements are criticism and opinion. *See Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (Lanham Act does not cover reputational harm caused by noncommercial commentary).

Third, the Complaint alleges no facts showing consumer deception or how the nonexistent deception was material. Unburdened by evidentiary support, Plaintiffs recite that consumers "shun publicity" and that certain partners ceased working with them, but they allege no facts establishing that consumers were deceived, or materially influenced.

C.    The Florida Tortious Interference Claim

Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of that relationship; (3) the defendant's intentional and unjustified interference with it; and (4) damages. The Amended Complaint has none of this.

Plaintiffs' allegations in ¶¶56–62 fail every element. They identify no legally protectable business relationships, only vaguely alluding to "customers and potential customers" and two non-party individuals. (Compl. ¶58). Plaintiffs then assert in

conclusory fashion that "the Florida Defendants[1]" interfered by "spreading false statements" (Compl. ¶60). But the Complaint pleads no act of any Floridian tied to any particular customer, contract, or transaction. Instead, it merely recycles generalized, group-pled allegations. That is not tortious interference.

Plaintiffs' reliance on group labels and speculation cannot substitute for concrete allegations that any Floridian individually interfered with an identifiable relationship. The complaint identifies no agreement, document, message, or transaction involving Collier or Goldhaber at all.

## III.   THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS

Very analogous to *Freites*, all four of Plaintiffs' claims are premised on the idea that the "Fedcad meme" was false. As articulated in Defendant's Rule 11 Motion, Plaintiffs admit Defendants are authors and thus eligible for §770 protection.

Florida's Legislature has long recognized the need to cabin defamation-style litigation. § 770 imposes clear statutory prerequisites and limitations on such suits: (1) § 770.01 requires pre-suit notice to the defendant at least five days before filing; (2) § 770.05 bars multiple suits arising from the same publication and limits to a single venue; and (3) § 770.07 provides that the cause of action accrues upon first publication.

### A.   Plaintiffs Failed to Provide §770.01 Notice

---

[1] *But see* (Doc. 31-1 at 2) (purporting that the Complaint alleges Florida Tortious interference against the New York-based Celentano.

Plaintiffs admit that Defendants are authors and therefore media defendants. Plaintiffs have not alleged, and cannot show, compliance with § 770.01's notice requirement.

B. <u>The Single Action Rule Bars These Claims</u>

All of Plaintiffs' claims are predicated on allegedly false statements published online. (Compl. ¶¶56–68). These are defamation-style allegations, and **stem from actual defamation allegations previously brought and abandoned,** regardless of how Plaintiffs label them. As the *Frietes* court explained in a similar situation:

> In Florida, a single publication gives rise to a single cause of action. This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication [or publications] upon which plaintiff's defamation claim is based. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. Moreover, the underpinnings of the single-action rule make clear that <u>it does not matter whether the defamation claim fails, succeeds, or is not brought at all</u>. **If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims**.

*Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 16, 2025), appeal dismissed sub nom. *Freites C. v. Medina*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025). As *Freites* makes clear, it does not matter whether their claim is styled on defamation. What matters is that "the underlying facts are premised on false and defamatory publications." *Id*.

The defamation-equivalency is manifest from a quick look at Plaintiffs' abandoned Middle District litigation. In November of 2024, Plaintiff Defense Distributed filed a claim under the Lanham Act, Digital Millennium Copyright Act,

for Florida Tortious Interference, for Florida Trade Libel, and the Florida Deceptive and Unfair Trade Practices Act, all relating to the same publications. *Larosiere v. Wilson*, 6:24-cv-1629 (M.D. Fla. ___) (Doc. 29).

There, speaking of the same "FEDCAD meme," Plaintiffs stated that **the very same** Defendants "regularly used interstate wire communications, including social media, email, and messaging platforms, to disseminate **false and defamatory** statements about Defense Distributed…all with the intent to deceive and defraud." (Larosiere v. Wilson, Doc. 29 ¶ 154) (emphasis added). *Cf.* (Am. Compl. ¶ 34) "Each use of the internet to spread **damaging disinformation** violates the federal wire fraud statute" (emphasis added). This is the exact conduct *Gannett* foreclosed. *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (plaintiff could not avoid defamation statute of limitations by amending claim from describing publication as "false and defamatory" to one "worded in such a way to portray the plaintiff in a false light." (cleaned up).

In so far as showing that all of the claims are based on the same publication, the Plaintiffs tell us this, as the Complaint's counts cite all the same allegations. (Doc. 13 at ¶ 37, 49, 56). This makes application of the single action rule obvious.

§ 770.05, Fla. Stat. has been understood to limit defamation-style cases "to only **one** suit in **one** chosen venue to avoid multiple suits upon the one cause of action." *Perdue v. Miami Herald Pub. Co*. 291 So.2d 604, 606 (Fla.1974) (emphasis added). In other words, to prevent Plaintiff's exact conduct.

12

What's more, the single action rule forbids Plaintiff's slipshod attempts to contort their defamation claim into three separate counts, each "explicitly speak[ing] about...'false accusations,' and damaging reputations.'" *Frietes* at *5. *Frietes* concerned postings to Twitter and YouTube, like the instant case. All four causes of action refer to the same publications. Thus, they cannot be brought consistent with the Single Action rule.

    C.  <u>The Claims Are Outside The Statute of Limitations Under §770.07</u>

§ 770.07's accrual rule means that any claim sounding in libel, slander, or defamation, has the statute of limitations run from the date of first publication. Plaintiff's theory of liability is based on statements first published as early as 2023. (Compl. ¶¶23–35). May 15, 2023, was 2 years, 4 months, and 10 days before the date of filing. This is beyond the two years afforded by § 95.11, Fla. Stat. Under §770.07, all causes of action stemming from the publication accrued at first publication; it cannot be revived by repetition.

Additionally, Plaintiffs, Texas companies, necessarily allege damages in Texas by bringing RICO claims. Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. *Middleton v. Hollywood Reporter, LLC*, 686 F. Supp. 3d 1272, 1275 (S.D. Fla. 2023). Texas' statute of limitations for libel is one year, and thus all claims stemming from the publication are time barred under either reading.

**IV. THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING**

Defendants move to dismiss the complaint in its entirety under 12(b)(6) because it is an impermissible shotgun pleading. A shotgun pleading is a complaint that violates either Fed. R. Civ. P. 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.* 792 F.3d 1313, 1320 (11th Cir. 2015). 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) mandates a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

These rules ensure a pleader "present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading", as well as for the benefit of the court charged with determining "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Because shotgun pleadings are "calculated to confuse the 'enemy,' and the court," they fail to state a claim and are often disposed of on a 12(b)(6) motion. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n.14 (Tjoflat, J., dissenting).

The Eleventh Circuit has "identified four...categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. These consist of 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint"; 2) a complaint "replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a

complaint which fails to separate each cause of action or claim for relief into a different count; and 4) a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.". *Barmapov*, 986 F.3d 1325 (quoting *Weiland*, 792 F.3d at 1321). The complaint fits into three of the four categories of prohibited shotgun pleading.

    A, <u>The Complaint is a type 1 shotgun pleading</u>

    A Type 1 shotgun pleading is one that "contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint." *Id, see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, *N.V.*, 598 F.3d 802, 806 & n. 4 (11th Cir.2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir.2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading").

The typical Type 1 shotgun pleading is deficient because each count includes irrelevant factual allegations and legal conclusions, calculated to confuse opposing counsel and the court, rather than articulate a basis of relief. Most commonly, a Type 1 shotgun pleading commits this "cardinal sin" by incorporating by reference all of a pleading's prior paragraphs until the last count comprises the entire lawsuit. *Weiland*, 792 F.3d at 1321.

The instant complaint commits the same sin through each count including all of the same paragraphs. (Doc. 13 at ¶ 37, 49, 56).

B. The Complaint is a type 2 shotgun pleading

A type 2 shotgun pleading, the "next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258 at 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir.1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); Anderson v. Dist Bd. Of Trs. Of Cent. Fla. Mty. Coll., 77 F.3d 364 at 366 (11th Cir. 1996)

(complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (internal citation omitted).

The instant complaint is a Type 2 shotgun pleading in that its vague factual allegations are impossible to connect to any specific purported actions of any specific Defendant, and makes no distinction as to which alleged Defendant is alleged to have committed what specific acts, and what acts are relevant to what causes of action.

C. The Complaint is a type 4 shotgun pleading

The fourth type of shotgun pleading is one which commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d 1323. Of note, the complaint says *nothing* about Lettman save for his state of residence, and identifies not a single independent action of Larosiere, exclusively "lumping" him with Holladay and non-party MAF Corp. Clearly, even Plaintiffs are confused by their own pleading, as they purport to have stated a claim for tortious interference under Florida law against the New York-based Celentano. (Doc. 31-1 at 2).

In sum. each of the Counts is asserted against "Defendants." As such, Defendants cannot reasonably be required to respond.

**V. IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED**

For all of the reasons explained *supra*, the thirteen-page strike suit is so vague and ambiguous that Defendants cannot reasonably prepare a response to it. It should

be dismissed in its entirety, but if it is not, it must be more definitely stated. Fed.

Rul. Civ. P. 12(e).

### VI. CONCLUSION

The Complaint is due to be dismissed, and because Plaintiffs have brought

these same claims in a different venue, they should be dismissed with prejudice.

Respectfully submitted,

DATED:  December 15, 2025

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/ Matthew Larosiere* | */s/ Zachary Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Defendant Alex Holladay* | *Lead Counsel for* | *Lead Counsel for* |
| | *Defendants Elik, Stroke,* | *Defendant Matthew* |
| | *and Lettman* | *Larosiere* |

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 15th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Zachary Z. Zermay

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905

19