UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-cv-81197-DMM

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

    Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTIONS TO DISMISS THE AMENDED COMPLAINT AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT [D.E. 32]**

Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., file their Response in Opposition to Defendants Joint Motion to Dismiss the Complaint and in the Alternative, for a More Definite Statement [D.E. 32], as follows:

**I.  INTRODUCTION.**

Defendants' Joint Motion to Dismiss [D.E. 32] does not test the legal sufficiency of the Amended Complaint [D.E. 13], but rather improperly disputes fact issues, addresses inapplicable defenses, and relies upon facts *outside* the pleading. The Amended Complaint pleads detailed, plausible RICO, Lanham Act, and Florida law claims, based on a coordinated scheme, to disseminate false online content, to divert customers and damage Plaintiffs' business. Defendants

"recharacterize" those claims as defamation, invoke inapplicable statutory defenses, and rely on extrinsic materials. The Motion should be denied.

## II.     LEGAL ARGUMENT

### A.     RICO' Provides Personal Jurisdiction Over All Defendants

Personal jurisdiction over RICO defendants is provided by 18 U.S.C. § 1965(b), where: (1) at least one defendant is subject to personal jurisdiction in the forum, and, (2) the "ends of justice" require nationwide service of process on additional non-resident defendants. *MasTec Renewables P.R., LLC v. Mammoth Energy Servs., Inc.*, 494 F. Supp. 3d 1233, 1240–41 (S.D. Fla. 2020); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942–46 (11th Cir. 1997). Defendant Larosiere is a Florida resident, satisfying § 1965(a). The "ends of justice" requirement is met where, as here, defendants are alleged to be co-conspirators in a single enterprise whose acts span multiple jurisdictions. *BCCI*, 119 F.3d at 945 ("We adopt the same approach and conclude that insofar as an asserted federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision."); *MasTec Renewables*, 494 F. Supp. 3d at 1241. Thus, the Court may exercise jurisdiction over the non-residents.

Critically, Plaintiffs are required only to plead a colorable RICO claim – not prove one – at this jurisdictional stage. *BCCI*, 119 F.3d at 940–41. The Amended Complaint pleads, in detail: (a) an enterprise (MAF Corp.) operating from (b) a coordinated scheme to disseminate false statements about DEFCAD via interstate wires; (c) repeated predicate acts of wire fraud, including social-media dissemination of fabricated claims; and (d) knowing participation by Defendants Elik, Stroke, and Lettman in furtherance of the conspiracy. See Am. Compl. ¶¶ 14–48.

These allegations satisfy the elements necessary to plead a colorable RICO claim under *MasTec Renewables* and *BCCI*. Moreover, Plaintiffs seeks to recover lost profits caused by a coordinated scheme to defraud, a recognized injury under RICO. *See, e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) (upholding RICO claim for lost profits caused by a business rival's false statements to a regulator); *Hartman v. Does 1–2*, 2025 WL 398846, at *1–2 (11th Cir. Feb. 4, 2025) (affirming $9 million wire-fraud-based RICO judgment for "business damages" arising from an online "smear campaign" that included "email blasts with negative information" about the plaintiff's owner's financial and litigation history).

Thus, this Court has personal jurisdiction over all RICO defendants, as they are alleged to have conspired to violate § 1962(c).  In order to prevent this the non-residents must establish "that the assertion of jurisdiction in the forum "will make litigation so gravely difficult and inconvenient that they [are] at a severe disadvantage in comparison to their opponent."  *BCCI,* 119 F.3d at 948; *see also, Lewis v. Mercedes-Benz SA, LLC,* 530 F. Supp. 3d 1183, 1211 (S.D. Fla. 2021).  They have not done so.  Their declarations attached to their Motion are far short of what is required. *See, e.g., In re Takata Airbag Products Liability Litigation, 396* F. Supp. 3d 1101, 1145 (S.D. Fla. 2019) ("Here, the Domestic Defendants' moving papers fail to demonstrate 'constitutionally significant inconvenience.'  Indeed, modern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum….").

Each affidavit is narrowly framed, self-serving, and fails to rebut the jurisdictional allegations, including: (a) their participation in a coordinated disinformation campaign; (b) knowing dissemination of false statements via interstate wires; (c) coordination with Florida-based co-conspirators.  Rather than contradicting the pleadings, the affidavits largely ignore them, addressing isolated facts while omitting the alleged conspiracy and enterprise. Such affidavits are

insufficient. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (conclusory, self-serving affidavits that fail to rebut specific jurisdictional allegations do not defeat personal jurisdiction at the motion-to-dismiss stage).

Moreover, once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction." *See, e.g., Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012)("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.")(internal citation and quotations omitted). Thus, the Court has personal jurisdiction of all defendants for all claims.

### B. Defendants' Arguments Under Rule 12(b)(6) Fail as a Matter of Law.

#### 1. Legal Standard.

On a Rule 12(b)(6) motion, the Court's review is strictly limited to the four corners of the complaint and any documents incorporated into it. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). Well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *Speaker*, 623 F.3d at 1379.

Consideration of materials outside the pleadings is improper unless the document is: (1) central to the plaintiff's claims, and, (2) its authenticity is undisputed. *Speaker*, 623 F.3d at 1379; *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016). A complaint survives dismissal even if recovery ultimately appears remote or unlikely. *Speaker*, 623 F.3d at 1380.

196768164v4

2. **The Motion Relies on Matters Outside the Amended Complaint.**

As a threshold matter, Defendants' Motion to Dismiss should be denied because it repeatedly relies on materials outside of the four corners of the Amended Complaint. Specifically, Defendants rely upon: (a) a separate legal action involving Plaintiffs; (b) pleadings, orders, and filings from that separate action; (c) Defendants' Rule 11 Motion for Sanctions; (d) Defendants' characterizations of events and conduct that are not pled. These materials are not central to Plaintiffs' claims, are not referenced or incorporated into the Amended Complaint, and cannot properly be considered on a Rule 12(b)(6) motion. *Speaker*, 623 F.3d at 1379; *Student Aid Ctr.*, 281 F. Supp. 3d at 1332 (court "could not consider documents outside the complaint" on motion to dismiss). Defendants improperly invite the Court to resolve factual disputes, weigh competing narratives, and assess credibility through the extrinsic documents. See *Speaker*, 623 F.3d at 1380.

3. **Plaintiffs Sufficiently Plead a RICO Claim.**

"A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). The Amended Complaint alleges: Defendants conspired with Larosiere to operate his corporation, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to Plaintiff's business. Am. Compl. at ¶¶ 21, 25, 26, 29. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. § 1343. AC ¶34, damaging DEFCAD through lost profits. *Id*. at ¶ 35.

The Motion asserts the RICO claim alleges "defamation by RICO" and as such "has been rejected by every circuit to consider similar attempts." Mot. at p.5. Yet, the Motion cites no such

5

circuit court decision. The Florida Supreme Court made it clear the tort of defamation exists to permit a plaintiff "to prove injury to his or her reputation in the community." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). Plaintiffs do not seek reputational damages. Plaintiffs seek lost profits, a well-established remedy for wire fraud. *See, e.g., Bridge*, 553 U.S. 639 (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator); *Hartman*, 2025 WL 398846 at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness").

Defendants' reliance upon *Freitas v. Medina*, 2025 WL 1425491 at *1-2 (S.D. Fla. 2025), is misplaced. There the plaintiffs sought damages caused by "a coordinated defamatory campaign," designed to "destroy their reputations", expressly alleging, "Defendants' primary means of carrying out the conspiracy was through defamation…". *Id*. at *6. The plaintiffs there were individuals, not businesses, and did not seek lost profits. The facts alleged here are distinct, in that the Plaintiffs are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages, through defamation).

The Motion contends, "the enterprise allegations are facially defective" because the allegations lack "structure, hierarchy, roles, or acts attributable to an enterprise distinct from the alleged actors." Mot. at p.7. The listed factors do not apply, as they are only for association-in-fact enterprises, not single entity corporate enterprises, which is alleged here. *See, e.g.*, *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

The Motion next argues the Amended Complaint fails to allege a "pattern of racketeering activity", Mot. at p.7, citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-59 (11th Cir. 2018); however, *Jackson* is not a RICO case. By contrast, the Eleventh Circuit's recent *Hartman* decision held an ongoing smear campaign constitutes an open pattern of racketeering. *Hartman*, 2025 WL 398846 at *5. This is alleged here. It is also a closed pattern, having been ongoing for two years, since May 2023, and already caused significant damage. Am. Compl. ¶ 23. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. GA 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims). The Amended Complaint plausibly alleges a civil RICO claim by pleading Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to divert customers from DEFCAD to Defendants' competing business. See Am. Compl. ¶¶ 21–48.

Defendants acted pursuant to a shared plan, used social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) April 2024. *Id*. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id*. Taken as true, these allegations satisfy the elements of conduct, enterprise, pattern, and racketeering activity required under 18 U.S.C. §§ 1962(c) and (d). *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

Accordingly, Defendants' request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

### 4. **Plaintiffs Sufficiently Pleads Lanham Act – False Advertising.**

Count II alleges the same misconduct violates § 1125(a)(1)(B) of the Lanham Act,[1] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising." The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 137-38 (2014). That is precisely what is alleged here. *See also, Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising). The first element, "literal falsity" is met if the advertisement is "literally false", which is what Plaintiffs allege. The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the Amended Complaint.

The second element is the ad "deceived, or had the capacity to deceive, consumers." *Id*. Plaintiffs allege the "FEDCAD" post deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false. *Id*. at 1319. The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision." *Id*. This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred. Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

The Motion asserts the Complaint does not state a false advertising claim because "the alleged speech is not commercial advertising or promotion." Mot. at p.8, asserting the posts are "non-commercial. Once again, it cites no authority in support of this assertion. The requirements

---

[1] 15 U.S.C. § 1125(a).

for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Belcher Pharmaceuticals, LLC v. Hospira, Inc.,* 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020). The Amended Complaint alleges facts that support these elements, namely Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme is an attempt to influence DEFCAD's customers. The Motion's contention that, "a meme posted on the internet is not an advertising campaign," is unsupported and wrong. If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

The Motion then asserts, "the alleged statements are criticism and opinion," citing *Boule v. Hutton,* 328 F.3d 84, 90-91 (2d Cir. 2003). That decision holds, in relevant part, that statements made to an art magazine were not "commercial speech" because the article addressed a matter of "public concern," fraud in the art market, and thus, given the forum, was subject to the First Amendment protection. But the decision does not hold all statements of opinion are so protected, as the Motion claims. Rather, it holds, "A statement of opinion is not actionable under the Lanham Act if it 'could not reasonably be seen as stating or implying provable facts' about a competitor's goods or services." *Id*. at 92. The challenged statements in the meme, that DEFCAD has been hacked, and customer names have been made public, are false. Therefore, they are not entitled to First Amendment protection and are actionable. The Lanham Act claim should not be dismissed.

### 5. Plaintiffs Adequately Plead Tortious Interference.

To state a claim for Tortious Interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights;

9

(2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and, (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.,* 262 F. 3d 1152, 1154 (11th Cir. 2001).

The Amended Complaint plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. Am. Compl. ¶¶ 31, 56–64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id.* ¶¶ 22–34, 59–61. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id.* ¶¶ 31–35, 62–63.

Plaintiffs have adequately plead a tortious interference claim under Florida law, so Defendants' motion to dismiss should be denied.

    **C.**    **Chapter 770 and the Single Action Rule Do Not Apply.**

First, Defendants' Chapter 770 and "single-action rule" arguments fail because state defamation doctrines cannot be used to bar or restrict federal statutory claims under the RICO or the Lanham Act. Federal causes of action arise under federal law, and are governed by federal pleading standards and federal remedial schemes. As courts have long held, "a federal right cannot be defeated by the forms of local practice," and state procedural or doctrinal rules may not impose "unnecessary burdens upon rights of recovery authorized by federal laws." *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296–97 (1949); See *Schaeffer v. School Bd. of Broward Cnty.*, 69 F. Supp. 3d 1327,

1330–31 (S.D. Fla. 2014) (holding Florida's statutory notice requirement "applies solely to state-law tort claims" and cannot bar a federal cause of action). Defendants' attempt to create a straw man through Florida defamation law to bar or limit Plaintiffs' federal RICO and Lanham Act claims is improper.

Second, Plaintiffs do not assert a defamation claim. The Amended Complaint does not plead libel, slander, or reputational injury as a standalone tort. Instead, it alleges statutory and business-tort claims – civil RICO, Lanham Act false advertising, and tortious interference – based on a coordinated scheme to disseminate false and misleading online content for competitive and commercial gain, resulting in lost customers, diverted sales, unjust enrichment, and ongoing economic harm. Courts routinely reject attempts to recast such claims as defamation where, as here, the gravamen of the action is commercial deception and interference, not reputational harm alone. See *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1332–33 (S.D. Fla. 2012).

Third, Defendants' reliance on Fla. Stat. § 770 is misplaced for the independent reason that Chapter 770 applies only to defamation claims against "media defendants" – such as newspapers, broadcasters, or periodicals engaged in the business of disseminating news. *Tobkin v. Jarboe*, 695 So. 2d 1257, 1258–59 (Fla. 4th DCA 1997). Courts in this District have repeatedly refused to extend Chapter 770 to private individuals or competitors who publish statements online outside the business of news reporting. *Five for Ent.*, 877 F. Supp. 2d at 1332. The Amended Complaint alleges Defendants are private competitors, not media entities, who created and amplified false memes and statements to divert customers to a rival platform. Chapter 770 therefore has no application to the claims pled.

Fourth, the same defect defeats Defendants' invocation of Florida's single-action rule. That doctrine applies only where a defendant has successfully invoked a defamation privilege and the

11

plaintiff seeks to repackage the same defamatory publication into a different tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). As recently clarified, "where a defendant has not successfully invoked an affirmative defense to defamation, the single-action rule presents no bar" to related claims. *David v. Gen. Dynamics Info. Tech., Inc.*, 2025 WL 1951850, at *5 (M.D. Fla. July 15, 2025) (quoting *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1320 (M.D. Fla. 2025)). Plaintiffs assert no defamation claim, Defendants have invoked no defamation privilege, and the Amended Complaint alleges injuries far beyond reputation alone. The single-action rule is therefore inapplicable as a matter of law.

Fifth, as stated above, Defendants' arguments improperly rely on matters outside the four corners of the Amended Complaint, including references to separate litigation, alleged "abandoned" claims, filings in other actions, and Defendants' own Rule 11 motion. None of those materials are incorporated by reference, and none may be considered here. The Court must evaluate the claims as pled – not as Defendants attempt to reframe them.

Finally, Defendants' statute-of-limitations arguments fail. They assume – contrary to the pleading – that Plaintiffs' claims "sound in defamation" and accrued upon a single publication. The Amended Complaint instead alleges an ongoing and continuing scheme involving repeated acts from 2023 through the present. Whether Defendants can prove otherwise is a factual issue not resolvable on a motion to dismiss.

In short, Defendants' Chapter 770 and single-action arguments depend on rewriting the Amended Complaint, importing extrinsic facts, and applying inapplicable state defamation doctrines to federal statutory and business-tort claims. That is not the function of Rule 12, and these arguments provide no basis for dismissal.

196768164v4

### D. The Amended Complaint is Not a Shotgun Pleading.

Defendants' assertion the Amended Complaint constitutes an impermissible shotgun pleading is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself. The Eleventh Circuit identified four general types of shotgun pleadings: (1) complaints that incorporate all prior allegations into each count; (2) complaints replete with vague, conclusory, or immaterial facts; (3) complaints that fail to separate distinct causes of action into separate counts; and, (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F. 3d 1313, 1321-1323 (11th Cir. 2015); See *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). The "unifying characteristic" is that a shotgun pleading fails to give adequate notice of the claims and the grounds upon which each claim rests. *Weiland,* at 1323.

#### 1. The Amended Complaint is Not a Type-1 Shotgun Pleading.

Although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading where the allegations are relevant and the counts remain intelligible. See *Weiland*, 792 F.3d at 1324. Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct. Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims. *Id.;* See *Barmapov*, 986 F.3d at 1325–26.

#### 2. The Amended Complaint is Not a Type-2 Shotgun Pleading.

The Amended Complaint pleads detailed, concrete facts, including: the nature of the false statements disseminated ("FEDCAD" claims of hacking and data breaches); the platforms used (Reddit, Twitter/X, online forums); the time period (beginning May 2023); the competing

13

enterprise (MAF and The Gatalog); the mechanism of injury (diversion of customers, reputational harm, lost business relationships); and the specific statutory predicates (wire fraud under 18 U.S.C. § 1343). These are not vague or immaterial allegations but fact-specific assertions that go well beyond "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3. The Amended Complaint is Not a Type-3 Shotgun Pleading.

Each cause of action – RICO, Lanham Act false advertising, and tortious interference – is pled in a separate count, with its own elements and supporting allegations. Defendants do not (and cannot) contend that multiple causes of action are improperly merged into a single count. This alone defeats any Type-3 shotgun pleading argument. See *Weiland*, 792 F.3d at 1323.

### 4. The Amended Complaint is Not a Type-4 Shotgun Pleading.

The Amended Complaint pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland*, 792 F. 3d at 1321–23 (11th Cir. 2015). The pleading expressly alleges each Defendant's individual role in the scheme, including Elik's origination and coordination of the disinformation campaign; Celentano's repeated posting and amplification of the "FEDCAD" meme on Reddit and search-engine-visible forums; Holladay's embedding and publication of the meme on his Florida-based commercial platform, ctrlpew.com; Stroke's reposting of the meme across multiple channels under the "Zona" persona using funds from MAF Corp.; and, Larosiere's direction of the scheme through his Florida entity, MAF Corp., which served as the RICO enterprise. The Complaint further alleges that all Defendants – including Lettman – acted by agreement to disseminate false statements about DEFCAD, including claims that DEFCAD had been hacked, its data dumped, and that its servers were hosted in Iran, in order to divert customers to The Gatalog. These allegations are tied to

196768164v4

specific actors, platforms, timeframes, and conduct, and each Count is expressly limited to the Defendants against whom it is brought (including the Florida-only tortious-interference claim).

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

### E. Defendants' Request for a More Definite Statement Fails as a Matter of Law.

A Rule 12(e) motion is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs claim resulted. Defendants' Motion, as well as their other filings, include several pages addressing the merits – confirming that they are fully capable of responding. Defendants' request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e), and the request should be denied.

### III. CONCLUSION.

Defendants' Joint Motion to Dismiss asks this Court to do precisely what Rule 12 forbids: resolve factual disputes, import extrinsic litigation history, apply inapplicable state-law doctrines to federal claims, and weigh the merits of Plaintiffs' allegations. The Amended Complaint pleads detailed, defendant-specific facts establishing personal jurisdiction and plausibly stating claims under RICO, the Lanham Act, and Florida law. Defendants' jurisdictional arguments misstate the governing standards, their Rule 12(b)(6) arguments ignore controlling precedent, and their reliance on Chapter 770, the single-action rule, and materials outside the four corners of the pleading is legally improper. Because the Amended Complaint satisfies Rule 8 and provides clear notice of the claims and grounds for relief, dismissal – or a more definite statement – is unwarranted.

196768164v4

WHEREFORE, Plaintiffs, Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc., respectfully request that the Court: (a) deny Defendants' Joint Motion to Dismiss in its entirety; (b) deny Defendants' alternative request for a more definite statement under Rule 12(e); (c) decline to consider any matters outside the four corners of the Amended Complaint in resolving Defendants' Rule 12 motions; and, (d) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com

By: _s/ GREGORY S. WEISS_
    GREGORY S. WEISS
    Florida Bar No. 163430

And

Howard Foster, Admitted *Pro Hac Vice*
FOSTER PC
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
Tel. (312) 726-1600
Email: hfoster@fosterpc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

                                       *s/*   GREGORY S. WEISS
                                              GREGORY S. WEISS, ESQ.
                                              Florida Bar No. 163430

**SERVICE LIST**:

**Matthew M. Larosiere, Esq.**
6964 Houlton Cir.
Lake Worth, FL 33467
Tel. (561) 452-7575
Email: larosieremm@gmail.com
*Attorney for Defendants, John Elik, John Lettman and Josh Kiel Stroke*

**Gary C. De Pury, Esq.**
21035 Leonard Road
Lutz, FL 33558
Tel. (813) 607-6404
Email: Gary@DePury.com
*Attorney for Defendant, Alexander Holladay*

**Zachary Z. Zermay, Esq.**
3000 Coral Way, Suite 115
Coral Gables, FL 33145
Tel. (305) 767-3529
Email: zach@zermaylaw.com
*Attorney for Defendant, Matthew Larosiere*

196768164v4