UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE; and JOHN LETTMAN,

*Defendants*.

_____/

**DEFENDANTS JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, AND JOHN LETTMAN'S CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

i

## TABLE OF CONTENTS

**ARGUMENT** ............................................................................................................................... 2

**I.  PLAINTIFFS STILL FAIL TO ESTABLISH PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN.** ......................................................................... 2

    A.    Plaintiffs do not rebut the sworn jurisdictional facts negating Florida contacts. ................................................................................................................. 3

    B.    Pendent personal jurisdiction rises or falls with the RICO anchor. ............. 3

**II. PLAINTIFFS HAVE NOT STATED A COLORABLE RICO CLAIM** ............ 3

    A.    "Each use of the internet" is not a Rule 9(b) predicate pleading. .................. 4

    B.    Response sidesteps the Motion's other identified defects. ............................ 6

    C.    Plaintiffs do not plausibly plead that any defendants "operated or managed" the affairs of the alleged enterprise. ............................................. 6

    D.    Plaintiffs do not plausibly plead continuity or a RICO "pattern." ................ 6

    E.    Plaintiffs fail to plead proximate cause because their theory depends on independent decisions of third parties. ......................................................... 7

**III.  PLAINTIFFS DO NOT ENGAGE WITH THEIR FAILURE TO PLEAD "COMMERCIAL ADVERTISING OR PROMOTION."** ...................................... 7

    A.    Plaintiffs' "competitor" and "market" allegations remain conclusory. .......... 8

**IV. THE TORTIOUS INTERFERENCE COUNT AND PLAINTIFFS' DEFAMATION-AVOIDANCE ARGUMENTS REMAIN DEFECTIVE (AND THE RESPONSE CONCEDES KEY POINTS).** ............................................... 8

**V.  PLAINTIFFS' CH. 770 ARGUMENTS IGNORE ADVERSE AUTHORITY.** 8

**VI. THE RESPONSE DOES NOT CURE THE SHOTGUN PLEADING PROBLEM** ........................................................................................................... 10

**VII. CONCLUSION** ................................................................................................. 10

## **INTRODUCTION**

Plaintiffs' opposition confirms the core problem with this case: it is an attempt to convert alleged online criticism and meme-posting into federal wire fraud predicates, civil RICO conspiracy, and Lanham Act false advertising while simultaneously insisting the Court must use the RICO count to exercise nationwide personal jurisdiction over non-resident defendants, some of which they have not made a single allegation against, save for state of residence.

The Amended Complaint asserts that "each use of the internet to spread damaging disinformation violates the federal wire fraud statute," and then re-labels purported reputational harm as "lost profits." The Opposition argues "Plaintiffs do not seek reputational damages" *but see* (Am. Compl.) ("Plaintiffs have also suffered diminished **customer goodwill**, lost sales and profit, and substantial **reputational and financial harm** in an amount exceeding $1 million.) (emphasis added). That is not a plausibly pleaded wire-fraud scheme, not pleaded with Rule 9(b) particularity, not a pattern of racketeering, and facially fails proximate causation.

RICO aside, Plaintiffs' Lanham claim fails because, even after the defect was identified, they failed to plausibly plead the alleged speech as "commercial advertising or promotion," and the tortious interference claim fails because Plaintiffs do not plead a protectable business relationship with the specificity Florida law requires. Finally, the Amended Complaint remains an impermissible shotgun pleading that obscures who did what and on what basis each element of each claim is supposedly satisfied.

1

## ARGUMENT

### I. PLAINTIFFS STILL FAIL TO ESTABLISH PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN.

Plaintiffs concede their jurisdiction theory is premised on pleading a "colorable RICO claim." (Doc. 37 at 2). The Motion explained why the RICO claim is facially deficient, and therefore cannot supply nationwide jurisdiction under § 1965(b). (Doc. 32 at 5-7) (Identifying failures under (Rule 9(b), predicate acts, continuity, distinct enterprise, traceable injury, and proximate cause).

The Response does not meaningfully answer those defects. Instead, it argues generally that Plaintiffs pleaded an enterprise and a "coordinated scheme," and relies on the assertion that repeated "social-media dissemination" equals wire fraud. (Doc. 37 at 2, 5). But Plaintiffs' own pleading theory is that posting the meme itself is the federal predicate—i.e., "each use of the internet" violates the wire fraud statute. *Id*.

Plaintiffs' opposition never grapples with the Amended Complaint's missing elements; it simply repeats that the Complaint pleads a RICO enterprise and "repeated wire fraud" because Defendants allegedly spread false statements online.

But the Amended Complaint's wire-fraud predicate is pleaded as a conclusion ("each use of the internet to spread damaging disinformation violates the federal wire fraud statute"), without alleging a scheme to defraud, the object of the fraud, the property obtained, the victims defrauded, or the "who/what/when/where/how" Rule 9(b) requires for wire-fraud predicates. A RICO count pleaded in that manner is not "colorable," and Plaintiffs therefore cannot invoke § 1965(b) to create personal jurisdiction over non-resident defendants.

2

A. <u>Plaintiffs do not rebut the sworn jurisdictional facts negating Florida contacts.</u>

The Response asserts Defendants must prove "constitutionally significant inconvenience" and that Defendants' affidavits are "self-serving" and "ignore" the allegations. (Doc. 37 at 3). This ignores the fact that when a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990) (cleaned up).

The affidavits submitted here negate any Florida business, property, or employment contacts by Elik and Lettman, and any Florida ties for Stroke. Plaintiffs respond by simply decrying the jurisdictional affidavits rather than providing competing facts. That is insufficient. Plaintiffs made no attempt to submit competing affidavits or evidence establishing minimum contacts or any Florida-directed course of conduct sufficient for specific jurisdiction, and as such, this Court lacks personal jurisdiction over Elik, Stroke, and Lettman.

B. <u>Pendent personal jurisdiction rises or falls with the RICO anchor.</u>

Plaintiffs argue that if RICO jurisdiction exists, pendent personal jurisdiction carries the Lanham Act and state claims. (Doc. 37 at 4). That is purely derivative. If the RICO claim is not colorable, there is no nationwide-service hook and thus no pendent personal jurisdiction to bootstrap other claims.

For all of the aforementioned reasons, and those mentioned in the Motion, the claims against Elik, Stroke, and Lettman should be dismissed under 12(b)(2).

## II. PLAINTIFFS HAVE NOT STATED A COLORABLE RICO CLAIM

The Response's core RICO defense is to characterize online statements and reposts as wire fraud predicate acts and to invoke cases allegedly allowing "business damages" from "smear campaigns." (Doc. 37 at 3-7). That does not address what the Motion actually challenged: Plaintiffs' failure to plead, with particularity, the elements of wire fraud predicates (the "who/what/when/where/how" of the communications and a scheme to defraud in the legal sense), continuity, the existence of a distinct enterprise, and proximate causation.

Aside from continuing to mis-represent *Hartman* and now *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 643–45, 658–59 (2008) (tax-lien auction case; defendants allegedly used related entities to bid and submitted false affidavits and attestations of compliance with a county bidding rule, thereby obtaining liens that would otherwise have been awarded to plaintiffs; holding first-party reliance is not an element, while reaffirming RICO's proximate-cause "direct relation" requirement and warning that the "complete absence of reliance" may defeat proximate cause). Plaintiffs' opposition makes no attempt to cure these defects aside from by assertion.

A. "Each use of the internet" is not a Rule 9(b) predicate pleading.

Plaintiffs' own formulation—"each use of the internet" violates wire fraud—confirms the pleading defect: it is a generalized theory that publication itself equals a federal predicate. (Doc. 13 ¶34).

The Response's attempt to defend this by listing platforms and a broad time range (e.g., "Reddit," "Twitter/X," "beginning May 2023") is not Rule 9(b) particularity and does not identify the required details of specific wire transmissions attributable

4

to each defendant. Wire fraud requires a scheme to defraud, or to obtain money or property under fraudulent pretenses, and use of interstate wires in furtherance of that scheme. Especially not as to Lettman, which Plaintiffs have consistently ignored until—for the third time—their failure to say *a single thing* about him save for his state of residence was identified. (Doc. 37 at 14) ("The Complaint further alleges that all Defendants – including Lettman – acted by agreement) *but see* (Doc. 10) (Saying nothing of Lettman aside from his State of Residence).

Plaintiffs' theory in the response collapses this into allegedly false online statements about DEFCAD that, in some undisclosed manner, resulted in "lost profits" to the multiple Plaintiffs and suggests that Plaintiffs here "are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages)" (Doc. 37) *but see* (Am. Compl. ¶ 53, 64) (explicitly seeking redress for "diminished customer goodwill, lost sales and profit, and substantial reputational and financial harm"). The Response does not connect any alleged misrepresentation to an identified transactional deprivation (who was deceived, by what statement, when, and how that deception caused a transfer of money/property to defendants), and instead relies on conclusory "competitive gain" rhetoric. That does not equate to a scheme to defraud for money or property, and Plaintiffs never plead the essential mechanics of fraud, much less with the particularity Rule 9(b) requires.

The Amended Complaint's predicate allegation is quintessentially conclusory—"each use of the internet to spread damaging disinformation violates the federal wire fraud statute"—and the Opposition doubles down on that framing rather

5

than supplying missing facts. A pleading that treats online commentary as *per se* wire fraud cannot satisfy 12(b)(6).

B. <u>Response sidesteps the Motion's other identified defects.</u>

The Motion identified multiple independent reasons the RICO claim is facially deficient. The Response does not engage those elements in any meaningful, claim-specific way; it simply asserts Plaintiffs pleaded "in detail" an enterprise and scheme. (Doc. 37 at 2) *but see* (Am. Compl.) (13-page strike suit devoid of detail.).

C. <u>Plaintiffs do not plausibly plead that any defendants "operated or managed" the affairs of the alleged enterprise.</u>

Plaintiffs attempt to avoid the Amended Complaint's enterprise defects by arguing they pled a "single entity corporate enterprise" and therefore need not plead structure, hierarchy, or roles. (Doc. 37 at 6). That misses the point.

Even accepting a corporate enterprise *arguendo*, Plaintiffs must plausibly allege that each defendant participated in the enterprise's affairs in a manner cognizable under RICO. Plaintiffs' enterprise narrative is internally inconsistent: the Amended Complaint begins by asserting Defendants "jointly operate" a competing business known as "The Gatalog," yet the RICO count pivots to MAF Corp. as the enterprise. (Am. Compl.) Plaintiffs do not plead how the alleged meme-posting constituted conducting the affairs of MAF Corp., rather than merely alleged individual speech by some-but-not-all Defendants about one Plaintiff.

D. <u>Plaintiffs do not plausibly plead continuity or a RICO "pattern."</u>

As with all essential elements, the Response argues only by assertion. Plaintiffs claim both closed- and open-ended continuity based on alleged posts

6

spanning roughly May of 2023 through April of 2024. The "pattern" requirement demands more than "this happened for a while." Plaintiffs do not plead a threat of ongoing racketeering activity; they plead a finite campaign of online commentary and memes regarding DEFCAD.

> E. <u>Plaintiffs fail to plead proximate cause because their theory depends on independent decisions of third parties.</u>

Even if Plaintiffs had pleaded predicate fraud (they have not), Plaintiffs' causation theory runs through independent choices by third parties. As identified in the Motion and ignored in the Response, *Anza v. Ideal Steel Supply Corp.* reversed similar allegations as failing proximate cause requirements. 547 U.S. 451 (2008). As alleged, Plaintiffs' asserted damages—lost customers and lost profits—are inherently mediated by market actors' discretionary decisions, not direct acquisition of Plaintiffs' property by deception that RICO requires.

Because Count I fails as a matter of pleading and substance, it should be dismissed under Rule 12(b)(6). And because it is not "colorable," Plaintiffs cannot rely on it for nationwide personal jurisdiction under § 1965(b).

### III. PLAINTIFFS DO NOT ENGAGE WITH THEIR FAILURE TO PLEAD "COMMERCIAL ADVERTISING OR PROMOTION."

Plaintiffs' Lanham claim repackages the same alleged speech (the "FEDCAD" meme) as "false advertising." The opposition argues that if the meme was posted online "to reach DEFCAD's customers," it is "commercial." That is not the test.

To plead false advertising under 15 U.S.C. § 1125(a)(1)(B), Plaintiffs must plausibly allege that the challenged statements were made in "commercial

7

advertising or promotion." The Eleventh Circuit defines "commercial advertising or promotion" as encompassing four elements:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (cleaned up). The Amended Complaint fails to make plausible allegations to this effect, the Motion identified this, and the Response ignores this failure.

### A. Plaintiffs' "competitor" and "market" allegations remain conclusory.

The Motion pointed out that Plaintiffs rely on vague references to a "3D gun market" and conclusory assertions of "direct competitor" status. The opposition does not identify any factual allegation demonstrating a plausible competitive relationship between Plaintiffs and each moving defendant, or that the challenged posts were advertising within that alleged competitive marketplace.

### IV. THE TORTIOUS INTERFERENCE COUNT AND PLAINTIFFS' DEFAMATION-AVOIDANCE ARGUMENTS REMAIN DEFECTIVE (AND THE RESPONSE CONCEDES KEY POINTS).

The Motion pointed out that the "Florida Defendants" are alleged, in conclusory terms, to have interfered "by spreading false statements," without tying any Floridian's act to an identifiable relationship, contract, or transaction. (Doc. 32 at 11-12). The Response answers with generalities rather than transaction-specific facts. (Doc. 37 at 10).

### V. PLAINTIFFS' CH. 770 ARGUMENTS IGNORE ADVERSE AUTHORITY.

Despite arguing that they are *not* seeking reputational redress (Doc. 37 at 6) *but see* (Am. Compl.) (explicitly seeking $1 million as redress for "substantial reputational and financial harm"), Citing nothing standing for the proposition, the Response's primary answer to Chapter 770/single-action is that state defamation doctrines cannot "bar" federal claims, and that Chapter 770 applies "solely to state-law tort claims." (Doc. 37 at 10-11).

The Motion did not argue state law "defeats" federal rights; it argued Plaintiffs cannot evade defamation limitations by relabeling publication-based reputational harms as other causes of action, and (2) Plaintiffs' own citation to *Schaeffer* underscores that Florida's statutory notice requirement applies to state-law tort claims—i.e., exactly where Count III resides.

The Motion explained that § 770.07 accrues defamation-style claims at first publication and cannot be revived by repetition, and identified the pleaded publication timeframe beginning in 2023. The Response's insistence that these are "business torts" does not address accrual where the same publication is the operative wrong and the same alleged harm is claimed across counts.

Unaddressed in the response is that Plaintiffs have routinely admitted Defendants are authors. (Doc. 12 at 10). This, of course, matters only to the notice requirement, which is not the most fatal component of the §770 scheme to their claims. The single action and accrual rule are. Plaintiffs likely know this, as they suddenly switch to inapposite foreign jurisdictions to stitch together an argument

9

that the rule long recognized in this Court and binding here, somehow does not apply. *See* (Doc. 32 pp. 10-13).

The response cannot avoid that the Complaint explicitly seeks reputational damages. Ch. 770 isn't a bar to federal claims, it prevents re-packaging defamation into myriad forms, as Plaintiffs here attempt.

### VI. THE RESPONSE DOES NOT CURE THE SHOTGUN PLEADING PROBLEM

The Response argues incorporation "alone" does not create a shotgun pleading and claims the counts remain "intelligible." (Doc. 37 at 13). But the Amended Complaint does exactly what *Weiland/Barmapov* label the "type 1" cardinal sin: each count incorporates all preceding allegations. (Am. Compl. ¶¶ 13, 49, 56). The Motion cited Eleventh Circuit authority for why this practice impedes notice and forces defendants (and the Court) to guess which facts support which elements. The Response's generalized defense of "common nucleus" pleading does not change what the pleading does on its face.

### VII. CONCLUSION

The motion should be granted.   DATED: January 5, 2026

| /s/ Gary C. De Pury | /s/ Matthew Larosiere | /s/ Zachary Zermay |
|---|---|---|
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Larosieremm@gmail.com | zach@zermaylaw.com |
| Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, and Lettman* | *Lead Counsel for Matthew Larosiere* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 5th day of January, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
