## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH  DIVISION

Case No. 9:25-cv-81197-DMM

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas
corporation,

       Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually,  and Zackary
Clark, individually

       Defendants.
_____/

## SECOND AMENDED COMPLAINT

Plaintiffs, Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. ("DEFCAD"),

file this Second Amended Complaint against Defendants, Messrs. John Elik, Matthew Larosiere,

Alexander Holladay, Peter Celentano, Josh Kiel Stroke, and John Lettman, and Zackary Clark,

and allege:

### Introduction.

Defendants jointly operate a 3D gun file business conducted through MAF Corp., which is

informally known as "The Gatalog". The Gatalog/MAF Corp. is accessed at www.thegatalog.com.

The Gatalog/MAF Corp. is the RICO enterprise, and is a direct competitor of Plaintiff, DEFCAD.

Defendants conspired to make false statements about DEFCAD and to steer them \to their

rival business, The Gatalog/MAF Corp.  These statements include: (1) DEFCAD has been hacked

and its customers' names "dumped" and/or "doxed" (publicized); and, (2) DEFCAD hosts its website in Iran.  Both statements influence 3D gun customers, because these customers generally shun government interference, avoid public exposure, and are fiercely patriotic.  These false statements have caused DEFCAD to lose profits.

DEFCAD seeks damages pursuant to civil RICO, the Lanham Act and Florida law.  In addition, DEFCAD seeks preliminary and permanent injunctive relief preventing Defendants from making further false statements to drive business to The Gatalog/MAF Corp.

### **Parties, Jurisdiction & Venue.**

1.      Plaintiff, Defense Distributed, is a Texas corporation with its principal place of business in Texas.

2.      Plaintiff, DEFCAD, Inc., is a Texas corporation with its principal place of business in Texas.

3.      Plaintiff, DD Foundation, LLC, is a Texas limited liability company whose members reside in Texas.

4.      Defendant, Matthew Larosiere, is a citizen and resident of Florida.

5.      Defendant, John Elik, is a citizen and resident of Illinois.

6.      Defendant, Alexander Holladay, is a citizen and resident of Florida.

7.      Defendant, Peter Celentano, is a citizen and resident of New York.

8.      Defendant, Josh Kiel Stroke, is a citizen and resident of Arizona.

9.      Defendant, John Lettman, is a citizen and resident of Pennsylvania.

10.     Defendant, Zackary Clark is a citizen and resident of South Carolina.

11.     The Court has subject matter jurisdiction of the RICO and Lanham Act claims as federal questions, 28 U.S.C. § 1331, and from RICO's civil damages provisions, 18 U.S.C. §§ 1964(c) and 1965(a).

12.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs (citizens of Texas) are completely diverse from each Defendant (citizens of Florida, Illinois, New York, Arizona, Pennsylvania and South Carolina).

13.     This Court has supplemental personal jurisdiction over Defendants for the Florida claims because they arise from the same common nucleus of facts as the RICO and Lanham Act claims.

14.     Venue is proper here, pursuant to 18 U.S.C. §1965(a), because Defendant, Mr. Larosiere, resides in this District. Jurisdiction and venue are proper as to the other Defendants because they conspired with Mr. Larosiere to violate RICO, and can thus be served outside this District pursuant to §1965(b).  Moreover, the "ends of justice" support adjudicating all members of this RICO conspiracy together in this action.

**Facts Common to All Counts.**

15.     Plaintiffs share the income produced by DEFCAD's legal file sharing business, through online sales, mainly generated through their website: www.defcad.com.

16.     Defendants are active in the 3D gun market and came together to challenge DEFCAD's position in this growing industry.

17.     Defendants began their plot to damage DEFCAD in 2019 when Defendant, Mr. Elik, reached out to Mr. Cody Wilson, owner and principal of DEFCAD, to collaborate in firearms software and hardware development.

18.     Defendant, Mr. Elik, visited DEFCAD's business facility in Austin, Texas.

19.     DEFCAD and Defendant, Mr. Elik, reached an agreement in 2019, whereby DEFCAD would pay him a fee for each customer he brought to DEFCAD's website, which was then being prepared for launch.

20.     In March 2020, DEFCAD launched www.defcad.com.

21.     After March 2020, DEFCAD made monthly payments to Defendant, Mr. Elik, pursuant to the agreement, until August 2022.

22.     At that time, Defendant, Mr. Elik became associated with The Gatalog, and its affiliated business, MAF Corp., a Florida corporation ("MAF"), which sells merchandise used in conjunction with The Gatalog's 3D gun files.

23.     Defendant, Mr. Elik then became hostile and demanded that if DEFCAD did not remove certain files from its website, Gatalog would spread disinformation about DEFCAD.

24.     Mr. Elik followed through on the threat, and in May 2023, by agreement with the other Defendants, his business partners began posting a "FEDCAD" meme — a graphic stating, "FRIENDS DON'T LET FRIENDS USE FEDCAD."

25.     The ad perniciously tells potential DEFCAD customers DEFCAD should be known as "FEDCAD" because its database has been "hacked" and "dumped" multiple times, implying customers' identities and other personal information would be known to federal authorities and anti-gun activists who might harass them:

**FRIENDS DON'T LET FRIENDS USE FEDCAD**

'Friends don't let Friends use defcad.

Defcad's database has been hacked and dumped on multiple occasions. They do not encrypt their data, and keep it stored unsalted - all your information is in a row. That they never disclosed and breaches is reason enough not to use the site.

They pass off unusable, untested, bogus files as if they are working projects in order to milk money out of people. Wow! A 3D printable M82? That's so cool! Turns out it's a low-poly videogame model, but they won't say so until they've got your money. Additionally, for things that are actually tested and documented, they do not update files to latest versions - many out of date files to be found. That you can't (or shouldn't) trust the files you get there might be a signal not to use the site, but it gets better.

Defcad can, and has, doxxed developer information to antigunners. They did this with only the slightest pressure, and made no serious attempt to obfuscate. They then attempted to blackmail myself and others with our personal information in an attempt to force money out of us - to support a lawsuit where defcad was getting sued, and myself and such others were not. Certainly shady for a company that claims that it only collect money from users so that it can fight lawsuits. Of course, they forget to mention that they'll extort you and that they've yet to actually win a lawsuit.

And while I could go on, I'll leave you with the notion that Defcad is wretchedly awful, should be avoided, shouldn't be used, and should be publicly shamed.

We can discuss its founder having paid a 16 year old for sex and other outstanding things that your money will be used for if you give it to them another time!' - @NaviGoBoom

26.     Defendants published and amplified this false meme across Reddit, Twitter (X), Facebook, and other social media forums, always in commercial contexts directing users to TheGatalog.com.

27.     Defendant Celentano, by agreement with the Co-Defendants, repeatedly posted the "FEDCAD" meme on Reddit. His posts remain among the top search results for "DEFCAD" on Google, where he warned potential customers not to use DEFCAD and directed them instead to The Gatalog.

28.     Defendant Holladay, an affiliate of The Gatalog, per agreement with the co-Defendants, embedded the "FEDCAD" meme in his own business's "Quick Start Guide" for 3D printing firearms, publishing it on www.ctrlpew.com, in December 2023. It also directs readers to "just say no" to FEDCAD and its "affiliate sites," which include Defense Distributed.

29.     In late 2024, Defendant Lettman repeatedly posted content on X indicating DEFCAD was hosted in Iran.

30.     In April 2024, the meme was pinned to the top of the r/fosscad Reddit forum — a community of over 100,000 people in the 3D gun marketplace — ensuring maximum exposure of the false message DEFCAD was unsafe and compromised.

31.     Defendant, Josh Stroke, through the persona "Zona", funded through Larosiere's MAF Corp., reposted the "FEDCAD" meme across dozens of online channels in 2023 and 2024.

32.     In the 3D gun marketplace it is well known consumers shun publicity and government scrutiny. Thus, when such allegations are made falsely, they are malicious, i.e., designed to destroy the seller-customer relationship.

33.     Defendants targeted the meme at DEFCAD's partners, including non-parties, Messrs. Barret Collier and Eric Goldhaber, who ceased working with the company after receiving the negative misinformation.

34.     Defendants' false allegations of DEFCAD being hacked, its data dumped, and being hosted in illegal territories like Iran, have damaged DEFCAD by significantly decreasing DEFCAD's revenue and profits.

35.     Moreover, Defendants continued and continue to make the same false allegations on the internet repeatedly since May 2023.

36.     On December 31, 2025, Defendant Clark, who may have joined the conspiracy later, posted the same FEDCAD meme using the handle "@Armed Joy", on X, likely with the approval of Larosiere:



37.     Plaintiffs understand Defendant, Mr. Clark, is affiliated with MAF Corp., the RICO enterprise, as an employee or independent contractor, and joined the conspiracy knowing and approving of the co-conspirators actions taken against DEFCAD.

38.     In particular, Plaintiffs understand Defendant, Mr. Clark, is the editor of an online show sponsored by MAF Corp., called "Fuddbusters", for which Defendant, Mr. Larosiere, is the host:



**Fuddbusters Channel Intro**

10,141 views • 4 years ago

Welcome to the channel! If you want to support Fuddbusters, check out these options:

https://www.patreon.com/FuddBusters
https://www.subscribestar.com/fuddbus...

Thank you for coming, hope to see you soon!

39.     In addition, Defendant Clark promotes the Gatalog online:



40.     Each use of the internet to spread damaging disinformation violates the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "schemes to defraud" involving interstate wires, with "wires" including social media posts used in a scheme to defraud.

41.     DEFCAD estimates Plaintiffs have lost at least $1,000,000 in profits as a direct result of the false statements Defendants have made online, detailed above.

## COUNT I- CONSPIRACY TO VIOLATE RICO

42.     Plaintiffs reincorporate Paragraphs 1 to 41 above, as if fully restated herein.

43.     Defendants' scheme to destroy DEFCAD, to which all the Defendants agreed to undertake, required an ongoing series of wire fraud violations.

44.     The scheme is intended to damage Plaintiffs by taking away customers through false statements, and Defendants' wire fraud crimes have done so.

45.     Each Defendant is a "person" as defined by 18 U.S.C. §1961(3).

46.     Wire fraud is made a form of "racketeering activity" by RICO as defined by 18 U.S.C. § 1961(1)(B).

47.     The ongoing wire fraud Defendants agreed to commit, and committed, constitutes a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).

48.     This is both a "closed" pattern, as it has occurred over a lengthy period, and an "open" pattern, as it will not cease without judicial intervention.

49.     Defendants' pattern of wire fraud has been committed through MAF, which Defendant, Mr. Larosiere, owns.

50.     At all times, the other Defendants followed Defendant, Mr. Larosiere's direction in carrying out their roles in the scheme through this Florida corporation, which is a RICO enterprise as defined by 18 U.S.C. § 1961(4).

51.     MAF affects interstate commerce through contracts with customers in various states to sell gun parts and through its internet activity.

52.     Thus, by agreeing to the scheme to be carried out through the MAF enterprise, each Defendant conspired to violate 18 U.S.C. §1962(c), which makes it illegal for any person "employed by or associated with" an enterprise to commit a pattern of racketeering activity through the enterprise.

53.     Thus, each Defendant has violated 18 U.S.C. §1962(d), which prohibits conspiracies to violate 1962(c).

WHEREFORE, Plaintiffs request a judgment be entered against Defendants, jointly and severally, for three times their damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems proper pursuant to 18 U.S.C. §1964(c), and enter preliminary and permanent injunctions against Defendants barring them from continuing to make allegations against Plaintiffs to the effect any of them has  been hacked and/or that its customers identities are being made public, pursuant to 18 U.S.C. §1964(a).

### COUNT II- VOLATION OF THE LANHAM ACT,  (FALSE ADVERTISING)

54.     Plaintiffs incorporate Paragraphs 1-41 above, as if fully restated herein.

55.     Defendants violated the Lanham Act by engaging in false or misleading representations of fact in commercial advertising and promotion, including but not limited to: (a) Branding DEFCAD as "FEDCAD" and asserting that DEFCAD's database had been "hacked and dumped multiple times"; (b) Falsely claiming that DEFCAD "doxxes" its customers by providing personal information to federal authorities and anti-gun activists; (c) Alleging that DEFCAD colluded with gun-control groups and federal authorities; (d) Disseminating these statements through the "FEDCAD" meme and related graphics across social media platforms, including

Reddit, Twitter (X), Facebook, and other online forums; and, (e) Publishing the meme in commercial contexts intended to divert customers from DEFCAD to The Gatalog and related enterprises.

56.     These statements are false or misleading as to material facts and are likely to deceive, had the tendency to deceive, or actually deceived consumers, as alleged herein.

57.     Defendants made these statements knowingly and with the intent to harm DEFCAD and divert business to their own competing enterprises, in part, because in the context of this market for products, the Defendants deception was likely to influence purchasing decisions.

58.     Defendants' false advertising directly and proximately caused actual damages to Plaintiffs, including lost revenue, lost customers, lost goodwill, and reputational harm.

59.     Defendants have been unjustly enriched by profits obtained as a result of their false advertising.

60.     Plaintiffs have no adequate remedy at law, as the false and misleading statements continue to be disseminated online, causing ongoing harm to DEFCAD's business.

WHEREFORE, Plaintiffs request judgment against Defendants for the amount of their damages, disgorgement of their profits obtained from the violations of the Lanham Act detailed above, attorneys' fees and costs pursuant to 15 U.S.C. §1117.  Plaintiffs also seek preliminary and permanent injunctions against Defendants to stop their false advertising pursuant to 15 U.S.C. §1116.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS UNDER FLORIDA LAW  *(Against Solely the Florida Defendants)*

61.     Plaintiffs incorporate Paragraphs 1-41 above, as if fully set forth herein.

62.     Defendants, Messrs. Larosiere and Holladay, are residents of Florida, and this Court is directed solely to those to Defendants.

11

63.     Plaintiffs had advantageous business and contractual relationships with customers, vendors, and partners, including, but not limited to: customers and potential customers navigating or seeking to navigate the DEFCAD site; and creators who host files and designed on the DEFCAD site, like Messrs. Barret Collier and Eric Goldhaber, who hosted their files and designs on the DEFCAD site and generated income for DEFCAD when customers purchased their filed and designs.

64.     Defendants, Messrs. Larosiere and Holladay, had knowledge of these relationships by virtue of their own participation in the same 3D-gun-file marketplace and through prior dealings and communications with DEFCAD and its representatives. Defendants specifically targeted Plaintiffs' customers and business partners with the intent of disrupting and terminating those relationships.

65.     Defendant Larosiere, acting through his Florida corporation MAF Corp., and Defendant Holladay, acting through his affiliate website ctrlpew.com, intentionally and without justification interfered with these relationships by publishing and amplifying the false "FEDCAD" meme and related statements that (a) DEFCAD had been "hacked and dumped multiple times," (b) DEFCAD "doxxed" its customers, and (c) DEFCAD's servers were hosted in Iran.

66.     These false statements were made in commercial contexts, including Reddit, Twitter (X), and Florida-based online forums, with the intent and foreseeable effect of deterring DEFCAD's customers and partners from doing business with Plaintiffs and redirecting them to The Gatalog and MAF Corp.

67.     Interviews with former customers of the DEFCAD site confirmed multiple customers specifically stopped doing business with DEFCAD through its site because of the FEDCAD meme and related misinformation propagated by Defendants.

68.     In addition, Messrs. Collier and Goldhaber stopped hosting their files and designs on the DEFCAD site because of the FEDCAD meme and related misinformation propagated by Defendants.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered identifiable losses, including the termination of business relationships with Collier and Goldhaber, who refuse to host their designs and files on Plaintiffs' site due to the Defendants' misinformation campaign. Plaintiffs have also suffered diminished customer goodwill, lost sales and profit, and substantial reputational and financial harm in an amount exceeding $1 million.

WHEREFORE, Plaintiffs request judgment against Defendants for compensatory damages, costs, and any other and further relief the Court deems proper.

February 6, 2026.

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com
*Attorneys for Plaintiffs*


By:  _s/  GREGORY S. WEISS_____
     GREGORY S. WEISS
     Florida Bar No. 163430

And

FOSTER PC
Howard Foster, Admitted *Pro Hac Vice*
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
312-726-1600
hfoster@fosterpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

        *s/* GREGORY S. WEISS
        GREGORY S. WEISS, ESQ.
        Florida Bar No. 163430

**SERVICE LIST**:

**Matthew Larosiere, Esq.**
Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Tel. (561) 452-7575
Larosiere@gmail.com
*Attorney for Defendants, John Elik,*
*Alexander Holladay, Josh Kiel Stroke*
*and John Lettman*

**Zachary Z. Zermay, Esq.**
Zermay Law, P.A.
1200 Fourth Street, #1102
Key West, FL 33040
Tel. (305) 767-3529
*Attorney for Defendant, Matthew Larosiere*