**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants*.

_____/

## **DECLARATION OF MATTHEW LAROSIERE**

I, Matthew M. Larosiere, declare as follows under penalty of perjury:

1) My name is Matthew M. Larosiere. I am over eighteen years of age and competent to make this declaration.

2) I am counsel of record Defendants Elik, Kiel Stroke, and Lettman.

3) I am not counsel of record for Defendant Alexander Holladay.

4) I have personal knowledge of the facts stated in this declaration, except where stated otherwise, and if called as a witness I could and would testify competently to them.

5) In January 2026, Plaintiffs transmitted written discovery by email.

1

6) The requests for production transmitted to me in that January 2026 email were not signed.

7) At that time, I had only just been admitted in the Southern District of Florida and had not yet completed the CM/ECF registration process required for electronic filing access.

8) At that time, I had not provided prior written consent to service of discovery by email in this action.

9) I therefore took the position that the January 2026 email transmission did not constitute operative service on my clients, and I also took the position that no response was required to unsigned requests for production unless and until signed copies were served.

10) This was discussed via email in late January and early February.

11) On or about February 2, 2026, Plaintiffs sent written discovery by U.S. Mail, including interrogatories, requests for production, and requests for admission.

12) The February 2, 2026 discovery packet was materially different from the earlier discovery requests.

13) On February 5, 2026, I participated in a meet-and-confer with counsel regarding these discovery issues, including the earlier email transmission, the unsigned requests, and the timing of responses.

14) During those discussions, I stated my position that the February 2, 2026 mailing was the operative service event for purposes of calculating any response deadline as to my clients.

15) Following those discussions, it was my understanding that responses to the February 2, 2026 discovery packet would be served on March 4, 2026.

16) By mid-February 2026, I confirmed that my clients consented to prospective email service going forward.

17) I understand that the local rules require lawyers practicing in this district to register for this district's CM/ECF, which I have completed and indicated to opposing counsel.

18) After that confirmation, Plaintiffs' co-counsel responded in substance that the issue was resolved as to my clients.

19) I had thought that my registration was complete earlier in February, but I had made an error and had to re-complete the Southern District's CM/ECF training process.

20) On or about February 19, 2026, Mr. Foster sent an email to defense counsel asserting that Defendants' discovery responses were due immediately.

21) I responded that my clients would respond timely based on the February 2, 2026 mailing and that prospective email service had already been accepted.

22) After that exchange, Mr. Foster continued demanding another conference regarding discovery.

23) On more than one occasion in February 2026, Mr. Foster requested a conference without identifying the issues he wanted to discuss unless and until defense counsel pressed him for clarification.

24) Based on those communications, it appeared to me that Mr. Foster was repeatedly attempting to revisit the same service, signature, and response-timing issues that had already been discussed.

25) During the week of February 19, 2026, Mr. De Pury advised that he was not available until Tuesday.

26) Mr. Foster did not indicate whether or not Tuesday was acceptable.

27) Because I had availability that week, I understood that once a time was set when all counsel could attend, I would participate in that conference as well, as we had done in the past.

28) I intended to make myself available for a joint conference with counsel during the week Mr. De Pury was available.

29) I did not refuse to meet and confer.

30) In a later email exchange, after Mr. Foster again pressed for another conference, without particularity. This communication was sent after business hours on a Friday.

31) When I responded to Mr. Foster, I indicated my concern, and assured him I would be on the conference, as I always was.

32) Mr. Foster than invoked, again, the matters which I understood to be the subject of the February 5 conference.

33) I wrote words to the effect that there was "nothing to confer about" because I understood the issue he was raising to be the same issue the parties had already discussed earlier in February.

34) In that same communication, I also stated that I would timely respond.

35) When I said there was "nothing to confer about," I meant that I did not believe there was anything further to discuss regarding an issue that had already been addressed on multiple occasions and for which I had already stated my clients' response timetable.

36) I did not mean that I was refusing to participate in conferral generally, and I was not refusing to participate in a joint conference with counsel. I thought my email the previous day made it clear that I would be on the call with Mr. De Pury.

37) In one email, I mistakenly referred to the requests as having been mailed on January 8, 2026.

38) That reference was inadvertent.

39) I was referring to the discovery that had been served on February 2, 2026, and my consistent position was that responses would be served based on that February 2 service.

40) On or about February 26, 2026, after Plaintiffs had already filed their motion to compel, Mr. Foster initiated another email chain with Mr. De Pury regarding the same discovery issues.

41) I was not included on Mr. Foster's initial February 26 email to Mr. De Pury.

42) Mr. De Pury then re-included co-counsel on that email chain, including me.

43) In that email chain, Mr. De Pury asked whether co-counsel would also participate and asked for the topic of discussion.

44) In response, Mr. Foster stated: "I don't need your co-counsel. The topic is your failure to answer our discovery requests for your client, all served on you more than 30 days ago."

45) I understood that statement to refer to the same discovery issues that had already been discussed in early February.

46) Plaintiffs' decision to initiate another conferral regarding the same issues after filing their motion confirmed my understanding that no true conferral impasse existed before the motion was filed.

47) On or about February 26, 2026, I sent Plaintiffs' counsel a written proposal intended to resolve the issue without further motion practice.

48) In that proposal, I offered that, if Plaintiffs withdrew the motion, my clients would waive several issues that we expected would prolong the discovery process and serve complete responses on March 4, 2026, as we had planned to.

49) In that same proposal, I suggested that future meet-and-confer requests identify the subject of the requested conference so there would be no misunderstanding regarding the issue to be discussed.

50) Plaintiffs did not respond to that proposal at all.

51) At all relevant times, my position was that: (a) the January 2026 email transmission was not operative service absent consent; (b) unsigned requests for production did not require a response unless and until signed copies were served; and (c) after Plaintiffs served discovery on February 2, 2026, my clients would respond based on that date.

52) At no point did I refuse to meet and confer regarding these issues.

53) The relevant February 2026 email chains involving me, including the mid-February email-service exchange, the February 19 and subsequent

conferral emails, and my February 26, 2026 proposed-resolution email, are true and correct copies of those communications.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


*/s/ Matthew Larosiere*
Matthew Larosiere

Executed on March 2, 2026, in Orlando, FL.