**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas
corporation,

      Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., file their Response in Opposition to Defendants Motion to Dismiss the Second Amended Complaint (SAC) and in the Alternative, for a More Definite Statement [D.E. 56], as follows:

**I.    Introduction**

Plaintiffs jointly operate a lawful business of selling access to 3D printable gun files under the tradename "DEFCAD."[1]  Defendants are believed to own and operate a rival 3D gun business through a Florida corporation called MAF Corp.  The SAC alleges that defendants conspired to

---

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer." Wikipedia, viewed March 5, 2026.  This Response will refer to the Plaintiffs' business as DEFCAD for ease of reference.

1

publish damaging and false information about DEFCAD, namely that its customers' information was "hacked and dumped multiple times" on the internet, and that its website is hosted in Iran. These statements were published in the form of an internet meme reproduced in the SAC under the headline "FEDCAD." The use of the pun "FEDCAD" underscores the suggestion that DEFCAD is somehow aligned with federal authorities to the detriment of its customers even though its business is legal. And that innuendo was intended to scare potential customers away from DEFCAD. It has, to the tune of $1 million in lost profits.

The Motion is brought by all defendants except Mr. Celentano, who was defaulted for failure to answer or otherwise plead to the SAC.[2] The Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), contending the Court lacks personal jurisdiction over non-residents Elik, Stroke and Lettman. But as the Eleventh Circuit has held, RICO's jurisdictional provision, 18 U.S.C. §1965(d), only requires that defendants have contact with the United States, not any judicial district. *Republic of Panama v. BCCI Holdings (Luxembourg)S.A.,* 119 F.3d 935, 942 (11th Cir. 1997).[3] Defendants seek to avoid this outcome by asserting the RICO claim is so feeble as to be "non-colorable." This argument fails.

---

[2] It should be noted that defendant Matthew Larosiere, in addition to operating the MAF business is also a lawyer. He is representing fellow defendants Elik and Stroke in this case - but not himself. Lawyers have frequently been named as defendants in RICO cases. *See, e.g., Handeen v. Lemaire,* 112 F.3d 1339, 1349 (8th Cir. 1997) ("we will not shrink from finding an attorney liable when he crosses the line between traditional rendition of legal services and active participation in directing the enterprise," upholding such a RICO claim). He is also being sued by the State of California for illegally operating his gun business. *See The People of the State of California v. Gatalog Foundation Inc.,* case CGC-26-633508, (Superior Court of California, County of San Francisco), filed February 6, 2026.

[3] RICO is the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§1961-1968. As the Supreme Court has stated, the object of the civil provisions of the law is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood,* 528 U.S. 549, 557 (2000).

The arguments for dismissal for failure to state a claim under RICO and the other causes of action pursuant to Fed. R. Civ. P. 12(b)(6) are more developed, if not persuasive.[4] But as to RICO, the argument ignores the Eleventh Circuit's most recent civil RICO decision, *Hartman v. Does 1-2,* No. 23-13473, 2025 WL 398846 (11th Cir. 2025), which affirmed a $9 million jury verdict for a business suing a rival for lost profits predicated on false statements made on the internet. That precedent forecloses any argument that this case presents an unusual or inappropriate use of the statute. Finally, in the alternative the Motion seeks a "more definite statement" of the claims. This too is unavailing.

II. **There is personal jurisdiction over all defendants pursuant to 18 U.S.C. §1965(d)**

"The general rule is that courts address issues relating personal jurisdiction *before* reaching the merits of a plaintiffs' [RICO] claims." *In re Takata Airbag Products Liability Lit.,* 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). Defendant Larosiere is a resident of this district. Thus, personal jurisdiction over him was established when he was served pursuant to 18 U.S.C. §1965(d).[5] *See Takata Airbag, Products Liability Lit,* 396 F. Supp. 3d at 1143 ("Section 1965(d) can serve as the statutory basis for personal jurisdiction") (*quoting Republic of Panama,* 119 F.3d at 942). That provision also provides for jurisdiction over non-residents Elik, Stroke, and Lettman because they "have minimum contacts with the United States" as citizens. *BankAtlantic v. Coast to Coast Contractors, Inc.,* 947 F. Supp. 480, 490 (S.D. Fla. 1996) (applying this analysis to RICO because of its nationwide service of process provision). While their affidavits indicate they are not Florida

---

[4] In deciding the Motion the Court is to "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

[5] It provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

3

residents, they do not deny being residents of the United States, which is all that is necessary to defeat their jurisdictional arguments.

The Motion asserts Plaintiffs cannot use §1965(d) because the RICO claim is not "colorable." Motion at p. 4 (*citing Courbain v. Scott,* 596 Fed. Appx. 729, 732 (11th Cir. 2014)). That decision affirmed the dismissal of a *pro se* complaint against the plaintiff's ex-wife's lawyer which did not allege any RICO violations, much less a pattern of them, as required. *Id.* at p. 733. The complaint also failed to identify a RICO enterprise. *Id.* It was thus not a "colorable" RICO claim. The RICO claim here identifies a pattern of wire fraud predicate acts and an enterprise, MAF Corp. Therefore it is colorable, and the Motion's argument is unsupported.

In conclusion, the argument that the SAC fails to allege personal jurisdiction over the out of state defendants is wrong. And once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction." *See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012) ("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.")(internal citation and quotations omitted). Thus, the Court has personal jurisdiction of all defendants for all claims. The Motion inexplicably ignores pendent personal jurisdiction. Plaintiffs need not rely upon Florida's long-arm statute to obtain personal jurisdiction.[6]

---

[6] Moreover, the Motion does not make a venue argument pursuant to Fed. R. Civ. P. 12(b)(3). Thus, that basis for dismissal or transfer of the case has now been waived. *Id.* at 12((h)(1)(A).

### III. The RICO claim states a cause of action

#### a. The elements

"A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies LLC v. Citigroup, Inc.,* 137 F.4th 1158, 1196 (11th Cir. 2025). The SAC alleges Defendants conspired with Larosiere to operate his corporation, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to Plaintiff's business. SAC at ¶¶ 24-31. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. §1343. SAC ¶46, damaging DEFCAD through lost profits. *Id.* at ¶ 41.

#### b. This is not a defamation claim; business damages caused by false statements are permissible under RICO

The Motion asserts the RICO claim alleges "defamation by RICO" and as such "has been rejected by every circuit to consider similar attempts." Mot. at p. 5. One would think that the Motion would cite some of these decisions in light of such a definitive statement of the law. Yet the Motion cites no such circuit court decision. In fact, the Second Circuit has affirmed a judgment for a RICO plaintiff paired with a defamation claim. *See Securiton Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 263-64 (2d Cir. 1995). Moreover, the Florida Supreme Court has made it clear the tort of defamation exists to permit a plaintiff "to prove injury to his or her reputation in the community." *Jews for Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1108 (Fla. 2008). Plaintiffs do not seek reputational damages. Plaintiffs seek lost profits, a well-established remedy for wire fraud. *See, e.g., Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648 (2008) (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator);

*Hartman*, 2025 WL 398846, at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness").[7] It is true that defamation is not a RICO predicate act, but mail and wire fraud are, and false statements so disseminated are a feature in many RICO claims brought by businesses.

Defendants' reliance upon *Freites v. Medina*, 2025 WL 1425491, at *1-2 (S.D. Fla. 2025) (*see* Motion at p. 7) is misplaced. There the plaintiffs sought damages caused by "a coordinated defamatory campaign," designed to "destroy their reputations", expressly alleging, "Defendants' primary means of, carrying out the conspiracy was through defamation…". *Id*. at *6. The plaintiffs there were individuals, not businesses, and did not seek lost profits. The facts alleged here are distinct, in that the Plaintiffs are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages, through defamation). This argument simply ignores *Hartmman,* which is not only on point factually but is also the most recent Eleventh Circuit RICO case to go to trial. Defendants' failure to address *Hartmman* is inexplicable. *See Bovee v. Broom*, 732 F.3d 743, 744-45 (7th Cir. 2013) ("[A] lawyer looks undignified with his head in the sand. The belief that ostriches stick their heads in the sand to avoid seeing danger is a canard. Lawyers shouldn't do it either."). Therefore, the Motion has failed to cite any authority supporting its main argument on RICO, that this type of damage claim cannot be brought.

---

[7] The *Hartman* plaintiffs asserted defamation claims with their RICO claims. *Hartman,* 2025 WL 398846, at *2. The defamation claim did not go to trial, but the opinion does not indicate any rule prohibiting it.

6

### c. The RICO enterprise is MAF Corp.

The Motion contends, "the enterprise allegations are facially defective" because the allegations lack "structure, hierarchy, roles, or acts attributable to an enterprise distinct from the alleged actors." Mot. at p. 7. The listed factors do not apply, as they are only for association-in-fact enterprises, not single entity corporate enterprises, which is alleged here. *See, e.g.*, *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). The RICO statute expressly allows corporations to be enterprises. 18 U.S.C. §1961(4).

### d. The SAC alleges a pattern of racketeering activity

The Motion next argues the SAC fails to allege a "pattern of racketeering activity." Mot. at p. 7 (*citing Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-59 (11th Cir. 2018)). This is quite odd because *Jackson* is not a RICO case. However, *Hartman* holds that an ongoing smear campaign constitutes an open pattern of racketeering. *Hartman*, 2025 WL 398846 at *5. This is alleged here. The scheme began in May 2023 and continues. Defendant Clark posted the FEDCAD meme on the internet on December 31, 2025. SAC at ¶ 36. It is also a closed pattern, having been ongoing for two and a half years and already caused significant damage. SAC at ¶¶ 24, 35, 36, 41. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. Ga. 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims).

### e. The RICO scheme is ongoing and will not stop absent judicial intervention

In conclusion, the SAC plausibly alleges a civil RICO claim by pleading Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to

7

divert customers from DEFCAD to defendants' competing business. Defendants use social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) December 2025. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id*. Taken as true, these allegations describe a conspiracy to commit an ongoing pattern of wire fraud through an enterprise which has damaged plaintiffs.

Accordingly, Defendants' request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

## IV. The SAC sufficiently pleads a Lanham Act claim for false advertising

Count II alleges the same misconduct violates §1125(a)(1)(B) of the Lanham Act,[8] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising." The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 137-38 (2014). That is precisely what is alleged here. *See also Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising). The first element, "literal falsity" is met if the advertisement is "literally false," which is what Plaintiffs allege. The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the SAC.

---

[8] 15 U.S.C. §1125(a).

The second element is the ad "deceived, or had the capacity to deceive, consumers." *Id*. Plaintiffs allege the "FEDCAD" posts deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false. *Id*. at 1319. The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision." *Id*. This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred. Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

The Motion asserts the Complaint does not state a false advertising claim because "the alleged speech is not commercial advertising or promotion." Mot. at p. 8. Once again, the Motion cites no authority in support of this assertion. The requirements for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute "advertising' or 'promotion' within that industry." *Belcher Pharmaceuticals, LLC v. Hospira, Inc.,* 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020). The SAC alleges facts that support these elements, namely that Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme campaign is an attempt to influence DEFCAD's customers. The Motion's contention that, "a meme posted on the internet is not an advertising campaign," is unsupported and wrong. If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

The Motion then asserts, "the alleged statements are criticism and opinion." Motion at p. 9 (citing *Boule v. Hutton,* 328 F.3d 84, 90-91 (2d Cir. 2003)). That decision holds, in relevant part, that statements made to an art magazine were not "commercial speech" because the article addressed a matter of "public concern," fraud in the art market, and thus, given the forum, was

9

subject to the First Amendment protection. But the decision does not hold all statements of opinion are so protected, as the Motion claims. Rather, it holds, "A statement of opinion is not actionable under the Lanham Act if it 'could not reasonably be seen as stating or implying provable facts' about a competitor's goods or services." *Id*. at 92. The challenged statements in the meme, that DEFCAD has been hacked, and customer names have been made public, are false. Therefore, they are not entitled to First Amendment protection and are actionable. The Lanham Act claim should not be dismissed.

### V.   The SAC alleges tortious interference

To state a claim for Tortious Interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.,* 262 F. 3d 1152, 1154 (11th Cir. 2001).

The SAC plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. SAC at ¶¶ 63, 64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id*. at ¶ 65. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id*. at ¶¶ 41, 69.

Plaintiffs have adequately pleaded their tortious interference claim under Florida law, so Defendants' motion to dismiss should be denied.

## VI. Chapter 770 and the single-action rule do not apply

Defendants' Chapter 770 and "single-action rule" arguments (*see* Motion at pp. 10-13) fail for several reasons.

First, state defamation doctrines cannot bar or restrict federal statutory claims under the RICO or the Lanham Act. Federal causes of action arise under federal law and are governed by federal pleading standards and federal remedial schemes. As the Supreme Court has long held, "a federal right cannot be defeated by the forms of local practice," and state procedural or doctrinal rules may not impose "unnecessary burdens upon rights of recovery authorized by federal laws." *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296–97 (1949). Defendants' attempt to create a straw man through Florida defamation law to bar or limit Plaintiffs' federal RICO and Lanham Act claims is improper.

Second, Plaintiffs do not assert a defamation claim. The SAC does not plead libel, slander, or reputational injury as a standalone tort. Instead, it alleges statutory and business-tort claims – civil RICO, Lanham Act false advertising, and tortious interference – based on a coordinated scheme to disseminate false and misleading online content for competitive and commercial gain, resulting in lost customers, diverted sales, unjust enrichment, and ongoing economic harm. Courts routinely reject attempts to recast such claims as defamation where, as here, the gravamen of the action is commercial deception and interference, not reputational harm alone. *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1332–33 (S.D. Fla. 2012).

Third, Defendants' reliance on Fla. Stat. § 770 is misplaced for the independent reason that Chapter 770 applies only to defamation claims against "media defendants" – such as newspapers,

11

broadcasters, or periodicals engaged in the business of disseminating news. *Tobkin v. Jarboe*, 695 So. 2d 1257, 1258–59 (Fla. 4th DCA 1997). Courts in this District have repeatedly refused to extend Chapter 770 to private individuals or competitors who publish statements online outside the business of news reporting. *Five for Ent.*, 877 F. Supp. 2d at 1332. The SAC alleges Defendants are private competitors, not media entities, who created and amplified false memes and statements to divert customers to a rival platform. Chapter 770 therefore has no application to the claims pled.

Fourth, the same defect defeats Defendants' invocation of Florida's single-action rule. That doctrine applies only where a defendant has successfully invoked a defamation privilege and the plaintiff seeks to repackage the same defamatory publication into a different tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). As recently clarified, "where a defendant has not successfully invoked an affirmative defense to defamation, the single-action rule presents no bar" to related claims. *David v. Gen. Dynamics Info. Tech., Inc.*, 2025 WL 1951850, at *5 (M.D. Fla. July 15, 2025) (quoting *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1320 (M.D. Fla. 2025)). Plaintiffs assert no defamation claim, Defendants have invoked no defamation privilege, and the SAC alleges injuries far beyond reputation alone. The single-action rule is therefore inapplicable as a matter of law.

Fifth, as stated above, Defendants' arguments improperly rely on matters outside the four corners of the SAC, including references to separate litigation, alleged "abandoned" claims, filings in other actions, and Defendants' own Rule 11 motion. None of those materials are incorporated by reference, and none may be considered here. The Court must evaluate the claims as pled – not as Defendants attempt to reframe them.

Finally, Defendants' statute-of-limitations arguments fail. They assume – contrary to the pleading – that Plaintiffs' claims "sound in defamation" and accrued upon a single publication. The SAC instead alleges an ongoing and continuing scheme involving repeated acts from 2023 through the present. Whether Defendants can prove otherwise is a factual issue not resolvable on a motion to dismiss.

In short, Defendants' Chapter 770 and single-action arguments depend on rewriting the SAC, importing extrinsic facts, and applying inapplicable state defamation doctrines to federal statutory and business-tort claims. That is not the function of Rule 12, and these arguments provide no basis for dismissal.

### VII. The SAC is not a shotgun pleading

Defendants' assertion the SAC constitutes an impermissible shotgun pleading, Motion at pp. 13-16, is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself. The Eleventh Circuit identified four general types of shotgun pleadings: (1) complaints that incorporate all prior allegations into each count; (2) complaints replete with vague, conclusory, or immaterial facts; (3) complaints that fail to separate distinct causes of action into separate counts; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. *See Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F. 3d 1313, 1321-1323 (11th Cir. 2015); *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). The "unifying characteristic" is that a shotgun pleading fails to give adequate notice of the claims and the grounds upon which each claim rests. *Weiland,* at 1323.

#### a. The SAC is not a type-1 shotgun pleading.

Although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading where the allegations are

13

relevant and the counts remain intelligible. *See Weiland*, 792 F.3d at 1324. Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct. Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims. *See id.; Barmapov*, 986 F.3d at 1325–26.

### b. The SAC is not a type-2 shotgun pleading.

The SAC pleads detailed, concrete facts, including: the nature of the false statements disseminated ("FEDCAD" claims of hacking and data breaches); the platforms used (Reddit, Twitter/X, online forums); the time period (beginning May 2023); the competing enterprise (MAF Corp. and The Gatalog); the mechanism of injury (diversion of customers, reputational harm, lost business relationships); and the specific statutory predicates (wire fraud under 18 U.S.C. § 1343). These are not vague or immaterial allegations but fact-specific assertions that go well beyond "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### c. The SAC is not a type-3 shotgun pleading.

Each cause of action – RICO, Lanham Act false advertising, and tortious interference – is pled in a separate count, with its own elements and supporting allegations. Defendants do not (and cannot) contend that multiple causes of action are improperly merged into a single count. This alone defeats any Type-3 shotgun pleading argument. *See Weiland*, 792 F.3d at 1323.

### d. The SAC is not a type-4 shotgun pleading.

The SAC pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland*, 792 F. 3d at 1321–23 (11th Cir. 2015). The pleading expressly alleges each Defendant's individual role in the scheme, including Elik's origination and coordination of the disinformation campaign; Celentano's repeated posting and

amplification of the "FEDCAD" meme on Reddit and search-engine-visible forums; Holladay's embedding and publication of the meme on his Florida-based commercial platform, ctrlpew.com; Stroke's repeated reposting of the meme across multiple channels under the "Zona" persona using funds from MAF Corp.; and Larosiere's direction of the scheme through his Florida entity, MAF Corp., which served as the RICO enterprise. These allegations are tied to specific actors, platforms, timeframes, and conduct, and each Count is expressly limited to the Defendants against whom it is brought (including the Florida-only tortious-interference claim).

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

### VIII. A more definite statement is unnecessary

A motion pursuant to Fed. R. Civ. P. 12(e) is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs' claim resulted. Defendants' Motion, as well as their other filings, include several pages addressing the merits – confirming that they are fully capable of responding. Defendants' request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e), and the request should be denied.

### IX. Conclusion

In conclusion, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated:  March 9, 2026                                     Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*