UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

      *Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

      *Defendants*.

_____/

**DEFENDANT ZACKARY CLARK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE <u>DEFINITE STATEMENT</u>**

i

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................. 1

I. THIS COURT LACKS PERSONAL JURISDICTION OVER CLARK .................................................................................................................. 3

    A. There is no personal jurisdiction under RICO ............................................ 3

    B. Florida's long-arm statute does not reach Mr. Clark for Count II. .......... 3

II. COUNT I FAILS TO STATE A RICO CONSPIRACY CLAIM AGAINST MR. CLARK. ................................................................................... 4

    A.    The SAC does not plead wire fraud. ...................................................... 4

    B.    The SAC fails Rule 9(b), and the meme itself defeats several of Plaintiffs' conclusory characterizations. ...................................................... 7

    C.    The SAC does not plausibly allege that Mr. Clark agreed to a RICO conspiracy. ..................................................................................................... 8

    D.    The SAC does not plead a racketeering pattern or proximate causation as to Mr. Clark. ................................................................................ 9

    E.    *Hartman* does not save Count I ............................................................. 9

III. COUNT II FAILS TO STATE A LANHAM ACT FALSE-ADVERTISING CLAIM AGAINST MR. CLARK. ....................................... 10

    A.    The alleged post is not "commercial advertising or promotion." ....... 10

    B.    The SAC again rewrites the meme..................................................... 12

    C.    Much of the meme is nonactionable opinion or rhetorical hyperbole.14

IV. THE CLAIMS AGAINST MR. CLARK ARE AN IMPROPER REPACKAGING OF PUBLICATION-BASED GRIEVANCES, AND TO THE EXTENT PLAINTIFFS SEEK TO IMPOSE LIABILITY FOR EARLIER PUBLICATIONS, THOSE CLAIMS ARE TIME-BARRED. .. 14

V. THE SAC IS A SHOTGUN PLEADING AS TO MR. CLARK. ........ 15

VI. IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT. ................................. 16

VII. CONCLUSION ............................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................. 18

Defendant Zackary Clark moves to dismiss the Second Amended Complaint under Rules 12(b)(2) and 12(b)(6), and, in the alternative, for a more definite statement under Rule 12(e). As to Mr. Clark, the Second Amended Complaint alleges only that he posted the "FEDCAD" meme on X on December 31, 2025, and then piles on speculation that he "may have joined the conspiracy later," "likely" acted with Mr. Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF Corp. as an employee or independent contractor. SAC ¶¶ 36–39. Those allegations are insufficient to establish personal jurisdiction in Florida or to state either of the only counts asserted against him: Count I (RICO conspiracy) and Count II (Lanham Act false advertising).

## INTRODUCTION AND SUMMARY OF ARGUMENTS

. The Second Amended Complaint tries to make Mr. Clark part of a nationwide racketeering and false-advertising scheme based on one alleged reposting of a meme. The pleading does not allege that Mr. Clark lives in Florida, does business in Florida, owns property in Florida, or directed any Florida-specific conduct at any Florida plaintiff. To the contrary, the declaration submitted with this motion shows that Mr. Clark resides in South Carolina, has never been employed by or contracted with MAF Corp., conducts no business in Florida, owns no property in Florida, and independently reposted a meme he found on Plaintiffs' own website. (Ex. A).

That should end the jurisdictional inquiry. Plaintiffs attempt to avoid the absence of Florida contacts by invoking RICO's nationwide-service provision. But that provision does not apply unless the plaintiff pleads a colorable RICO claim. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941–42 (11th

1

Cir. 1997). Plaintiffs have not. As to Mr. Clark, the RICO count fails because the SAC does not plausibly allege wire fraud, does not plead fraud with particularity, does not plausibly allege that Mr. Clark agreed to conduct the affairs of a RICO enterprise, does not plausibly allege a racketeering pattern as to him, and does not plausibly allege proximate causation.

The Lanham Act count fails for similar reasons. A single reposted meme is not "commercial advertising or promotion," particularly where the alleged speaker is not plausibly pleaded as a commercial competitor, the post does not propose a commercial transaction, and the meme itself does not say several of the things Plaintiffs attribute to it. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950–53 (11th Cir. 2017) (criticism or commentary about a business does not become commercial speech merely because it may affect the business); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (11th Circuit's formulation of "commercial advertising or promotion.").

Finally, the pleading against Mr. Clark is an object lesson in group pleading. The counts lump him together with all other defendants, even though the SAC alleges only one act by him and Count III is not even asserted against him. If dismissal is not granted, Plaintiffs should at least be required to state with precision what exact statements by Mr. Clark are actionable, which legal theory each statement supposedly satisfies, and how one post on one date supposedly caused the losses claimed.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER CLARK

A. <u>There is no personal jurisdiction under RICO</u>

Plaintiffs' response brief correctly recognized that their personal-jurisdiction theory as to nonresident defendants rises or falls with the existence of a colorable RICO claim. That is the law. A plaintiff may invoke RICO's nationwide-service provision only if the asserted federal claim is not "wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941–42.

The SAC does not plead a colorable RICO claim against Mr. Clark. At most, it alleges one reposting of one meme on one date, followed by speculation that he "may have joined" a conspiracy and "likely" acted with someone else's approval. SAC ¶ 36. That is not enough to plead wire fraud, a pattern of racketeering, a knowing agreement to conduct an enterprise's affairs through racketeering, or proximate causation. The defects are addressed more fully below, but for jurisdictional purposes the point is straightforward: because Count I fails on its face, Plaintiffs cannot use RICO to haul a South Carolina resident into Florida federal court.

Nor does Plaintiffs' pendent-personal-jurisdiction theory help. Pendent personal jurisdiction requires a valid anchor claim. Without a colorable RICO claim against Mr. Clark, there is no anchor to which Count II can attach.

B. <u>Florida's long-arm statute does not reach Mr. Clark for Count II.</u>

Because Count II arises under the Lanham Act, not a statute with nationwide service, the Court must look to Florida's long-arm statute and due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

The SAC does not allege any facts bringing Mr. Clark within Florida Statutes § 48.193. It does not allege that he operated, conducted, or carried on business in Florida, committed a tortious act in Florida, or caused injury to a person or property in Florida while engaged in Florida solicitation or service activities. Fla. Stat. § 48.193(1)(a). Plaintiffs are Texas entities, not Florida residents, and the only injury they plead is lost profits to their Texas business. SAC ¶ 41. Florida law is clear that economic injury alone is insufficient to establish long-arm jurisdiction under the out-of-state-injury provision. *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987) (the relevant provision "contemplate[s] personal injury or physical property damage").

Mr. Clark's attached declaration confirms the absence of any Florida nexus: Mr. Clark resides in South Carolina, does no business in Florida, and owns no property here. (Ex. A). Plaintiffs have pleaded no Florida-specific conduct by him and no Florida-specific injury from him. That is fatal to long-arm jurisdiction.

## II. COUNT I FAILS TO STATE A RICO CONSPIRACY CLAIM AGAINST MR. CLARK.

A.  The SAC does not plead wire fraud.

Count I depends entirely on the premise that internet criticism of Plaintiffs constitutes wire fraud. The SAC says exactly that: "Each use of the internet to spread damaging disinformation violates the federal wire fraud statute." SAC ¶ 40. That is not the law.

Wire fraud requires a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1343. Business

4

disparagement and reputational attack do not become wire fraud merely because they are harmful or even false. The federal fraud statutes do not convert every harmful publication into racketeering.

Multiple circuits have rejected efforts to recast business-smear or disparagement campaigns as mail or wire fraud where the alleged conduct is not truly fraud aimed at obtaining money or property. In *Méndez Internet Management Services, Inc. v. Banco Santander de Puerto Rico*, the plaintiff alleged that a website operator published critical statements about his business, causing account closures and government scrutiny. The First Circuit held the RICO theory failed because there was no plausible allegation that the speaker stood to gain financially from the plaintiff's collapse, no plausible allegation anyone was actually deceived in the relevant way, and the gravamen was defamation, which "standing alone" was not enough to amount to mail or wire fraud. 621 F.3d 10, 16–18 (1st Cir. 2010).

Likewise, in *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, even though deceptive conduct allegedly helped one party take business from another, the court held there was no scheme to defraud the plaintiff of money or property where the plaintiff itself was not deceived in the relevant sense and the deceived third parties were not deprived of money or property. The First Circuit held that the complaint did not sufficiently allege a scheme to defraud anyone of money or property within the meaning of the mail and wire fraud statutes. 904 F.2d 786, 791–93 (1st Cir. 1990).

The Ninth Circuit rejected a similar attempt to use RICO against a campaign aimed at harming a hotel's reputation and customer goodwill, emphasizing the

5

absence of a scheme to obtain property by deception. *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 926–27 (9th Cir. 2000). There, a hotel tried to turn an allegedly damaging campaign against its business and customer goodwill into mail/wire-fraud predicates for RICO. The Ninth Circuit rejected that theory because, even assuming goodwill could be a property interest in some settings, the defendant had not sought to obtain that property through deception; the conduct was harmful and possibly harassing, but "not acquisitive." The court emphasized that the mail- and wire-fraud statutes are aimed at wrongful transfers of property, not merely reputational or goodwill harm.

And the Sixth Circuit has described materially similar allegations as sounding in defamation, not traditional fraud. *United States v. Baldinger*, 838 F.2d 176, 180–81 (6th Cir. 1988). That case involved letters falsely sent to a rival's customers claiming the rival was operating without a license. The Sixth Circuit held the mail-fraud theory could not stand unless the scheme had the required proprietary-gain component, and it described the allegations as, "for the most part," amounting to defamation rather than the traditional kind of fraudulent misconduct covered by the mail-fraud statute.

As to Mr. Clark, the defect is even sharper. The SAC alleges only that he reposted a meme. It does not allege that he obtained or sought to obtain money or property from Plaintiffs, from customers, or from anyone else by deceit. It does not allege he solicited a purchase, entered any transaction, impersonated anyone, misdirected funds, or used false pretenses to induce anyone to part with money or

6

property. Instead, the SAC alleges only a supposed effort "to damage Plaintiffs by taking away customers through false statements." SAC ¶ 44. That is not wire fraud.

    B.  <u>The SAC fails Rule 9(b), and the meme itself defeats several of Plaintiffs' conclusory characterizations.</u>

Where the alleged predicate is wire fraud, Rule 9(b) applies. 7. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (RICO complaint with multiple defendants "should inform each defendant of the nature of his alleged participation in the fraud."). Plaintiffs must plead the who, what, when, where, and how of the fraud, including what the defendant gained from it. *Id.*

The SAC does not do that as to Mr. Clark. It alleges only one date and one post. It does not plead what property Mr. Clark supposedly sought to obtain, what transaction he induced, what he gained, who relied, or how one reposting proximately caused the $1 million figure pleaded globally in paragraph 41.

More importantly, the Court may consider the meme itself because the SAC reproduces it and makes it central to the claims. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). And the meme's actual text does not say several of the things Plaintiffs attribute to it.

The SAC and (Doc. 70) repeatedly assert that the meme claimed DEFCAD hosted its website in Iran, colluded with federal authorities and gun-control groups, and directed consumers to The Gatalog. *See, e.g.*, SAC ¶¶ 55(a)–(e). *But the meme itself says none of that*. (Doc. 49 at 5). It says nothing about Iran. It says nothing about federal authorities. It says nothing about gun-control groups. It says nothing about The Gatalog. And its "doxxed" allegation refers to "developer information to

7

antigunners," not customer information to federal authorities. Plaintiffs cannot satisfy Rule 9(b) by paraphrasing the meme into something harsher, broader, and more commercial than the document itself. When the incorporated document dispels a conclusory characterization, the document controls. *Hi-Tech Pharms.*, 910 F.3d at 1189.

  C. <u>The SAC does not plausibly allege that Mr. Clark agreed to a RICO conspiracy.</u>

 To plead a RICO conspiracy under § 1962(d), Plaintiffs must plausibly allege that Mr. Clark knowingly agreed to the overall objective of the conspiracy or agreed to commit two predicate acts. *Republic of Panama*, 119 F.3d at 950.

 The SAC does neither. It says Mr. Clark "may have joined the conspiracy later," "likely" acted with Mr. Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF as an employee or contractor. SAC ¶¶ 36–37. Those are not factual allegations; they are speculation and legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There are no pleaded facts from which a knowing agreement can plausibly be inferred.

 The corporate-enterprise point raised in (Doc. 70) does not cure this defect. Even assuming MAF Corp. could serve as an enterprise, the SAC still must plausibly allege that Mr. Clark agreed to conduct that enterprise's affairs through racketeering. It does not. The jurisdictional declaration, moreover, directly refutes the SAC's speculation that he was a MAF employee or contractor and states he acted independently. (Ex. A).

D. <u>The SAC does not plead a racketeering pattern or proximate causation as to Mr. Clark.</u>

As to Mr. Clark, Plaintiffs allege one post on one date. That is not a "pattern of racketeering activity." 18 U.S.C. § 1961(5). Plaintiffs cannot bootstrap him into a broader campaign through speculation that he "joined later." SAC ¶ 36.

Nor does the SAC plausibly allege that Mr. Clark conducted or participated in the operation or management of any enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("participate in the operation or management of the enterprise itself" is the operative standard under RICO). The pleading says only that he reposted a meme and supposedly promoted The Gatalog online. That is not operation or management. Even if the *Reves* showing is not required, the SAC still pleads no facts showing Clark knowingly agreed to the enterprise's racketeering objective.

And Plaintiffs do not plead proximate causation. Civil RICO demands a direct relation between the injury asserted and the injurious conduct alleged. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–61 (2006) (requiring "some direct relation between the injury asserted and the injurious conduct alleged."). The SAC pleads a lump-sum lost-profits figure and attributes it to "Defendants" collectively over a multi-year period. SAC ¶ 41. It does not identify any sale, customer, vendor, partner, or other business relationship lost because of Mr. Clark's one December 31, 2025 post.

E. *Hartman* does not save Count I

Plaintiffs' response relies heavily on *Hartman v. Does 1-2.* But *Hartman* does not rescue this pleading. First, *Hartman* is unpublished. *Hartman v. Does1-2*, No. 23-13473, 2025 WL 398846 (11th Cir. Feb. 4, 2025) (unpublished). Second, *Hartman*

9

came to the Eleventh Circuit after a nine-day trial, a jury verdict, and post-trial Rule 50 proceedings. *Id.* at *1. The court reviewed the evidence in the light most favorable to the verdict, not the sufficiency of a bare complaint. Third, *Hartman* involved a far more elaborate scheme than anything alleged against Mr. Clark here: deceptive lookalike domains, false contact information, spoofed email accounts purporting to be the plaintiff, email blasts to a compiled contact list, efforts to conceal the perpetrators' identity, and links back to the rival business. *Id.* at *2–*4.

Fourth, and critically, the Eleventh Circuit expressly said that "[b]eyond the issue of continuity, Defendants have not developed any argument specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims," and that it was expressing "no opinion" on whether the evidence otherwise satisfied those elements. *Id.* at *7. *Hartman* therefore does not establish that online criticism, standing alone, is sufficient at the pleading stage to allege wire fraud. It especially does not do so for a defendant like Mr. Clark, who is alleged to have made only one tweet.

Count I should be dismissed.

### III. COUNT II FAILS TO STATE A LANHAM ACT FALSE-ADVERTISING CLAIM AGAINST MR. CLARK.

A. <u>The alleged post is not "commercial advertising or promotion."</u>

The Lanham Act reaches false or misleading descriptions in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In this Circuit, that requires commercial speech, by a defendant in commercial competition with the plaintiff, for the purpose of influencing consumers to buy the defendant's goods or services,

10

disseminated sufficiently to the relevant purchasing public. *Suntree Techs.*, 693 F.3d at 1349; *Tobinick*, 848 F.3d at 950–53.

The SAC does not plausibly plead those elements as to Mr. Clark. Nor does it plausibly plead that he is a commercial competitor. It merely says Plaintiffs "understand" he is affiliated with MAF as an employee or independent contractor and that he "promotes the Gatalog online." SAC ¶¶ 37–39. Those are threadbare conclusions, and his jurisdictional declaration refutes them. (Ex. A). Even if he separately promoted Gatalog—whatever it is—the allegedly false FEDCAD meme still is not plausibly pleaded as Clark's commercial advertising or promotion, and Count II improperly attributes to that meme statements it does not contain.

The SAC does not plausibly plead commercial speech. A single reposted meme on Twitter does not propose a commercial transaction, advertise a product, offer a service, state a price, or tell consumers to buy from Mr. Clark. *Tobinick*, 848 F.3d at 950–53. Plaintiffs' (Doc. 70) says that a meme becomes commercial if posted online to reach customers. That is not the law. Speech does not become commercial merely because it concerns a business, is critical of a business, or may indirectly benefit someone economically. *Id* at 950 "A plain reading of [the articles at issue] makes clear that they do not fall within the core notion of commercial speech as they do not propose a commercial transaction. Instead, Dr. Novella's articles evoke many characteristics of noncommercial speech. The articles "communicate information, express opinion, and recite grievances." (cleaned up).

11

And it does not plausibly plead dissemination sufficient to constitute "advertising or promotion" within the relevant industry. One alleged post by one alleged speaker on one date is not an advertising campaign.

B. <u>The SAC again rewrites the meme</u>

The Lanham count repeats the same problem discussed above. It alleges, among other things, that Defendants falsely branded DEFCAD as "FEDCAD," falsely said its database had been "hacked and dumped multiple times," falsely claimed DEFCAD "doxxes" customers by providing information to federal authorities and anti-gun activists, falsely alleged collusion with gun-control groups and federal authorities, and published the meme in commercial contexts intended to divert customers to The Gatalog. SAC ¶ 55. But the meme itself simply does not say that.

> **FRIENDS DON'T LET FRIENDS USE FEDCAD**
>
> "Friends don't let Friends use defcad.
>
> Defcad's database has been hacked and dumped on multiple occasions. They do not encrypt their data, and keep it stored unsalted - all your information is in a row. That they never disclosed and breaches is reason enough not to use the site.
>
> They pass off unusable, untested, bogus files as if they are working projects in order to milk money out of people. Wow! A 3D printable M82? That's so cool! Turns out it's a low-poly videogame model, but they won't say so until they've got your money. Additionally, for things that are actually tested and documented, they do not update files to latest versions - many out of date files to be found. That you can't (or shouldn't) trust the files you get there might be a signal not to use the site, but it gets better.
>
> Defcad can, and has, doxxed developer information to antigunners. They did this with only the slightest pressure, and made no serious attempt to obfuscate. They then attempted to blackmail myself and others with our personal information in an attempt to force money out of us - to support a lawsuit where defcad was getting sued, and myself and such others were not. Certainly shady for a company that claims that it only collect money from users so that it can fight lawsuits. Of course, they forget to mention that they'll extort you and that they've yet to actually win a lawsuit.
>
> And while I could go on, I'll leave you with the notion that Defcad is wretchedly awful, should be avoided, shouldn't be used, and should be publicly shamed.
>
> We can discuss its founder having paid a 16 year old for sex and other outstanding things that your money will be used for if you give it to them another time!" - @NaviGoBoom

It says nothing about Iran, federal authorities, gun-control groups, or "The Gatalog." And the "doxxed" allegation concerns "developer information to antigunners," not customers to federal authorities. Because the meme is incorporated into the pleading, Plaintiffs cannot survive dismissal by characterizing it as something it is not. *Hi-Tech Pharms.*, 910 F.3d at 1189.

13

C. <u>Much of the meme is nonactionable opinion or rhetorical hyperbole.</u>

The meme contains a mix of asserted facts, rhetorical opinion, and invective. Statements such as "Defcad is wretchedly awful," "should be avoided," "shouldn't be used," and "should be publicly shamed" are classic opinion and exhortation, not commercial advertising. *Tobinick*, 848 F.3d at 950–53. So are value-laden accusations like "shady" and "milk money out of people," at least absent a concrete commercial solicitation or advertisement. Plaintiffs cannot convert that speech into a Lanham Act claim simply by alleging that it hurt their business.

Count II should therefore be dismissed.

**IV. THE CLAIMS AGAINST MR. CLARK ARE AN IMPROPER REPACKAGING OF PUBLICATION-BASED GRIEVANCES, AND TO THE EXTENT PLAINTIFFS SEEK TO IMPOSE LIABILITY FOR EARLIER PUBLICATIONS, THOSE CLAIMS ARE TIME-BARRED.**

As to Mr. Clark, Counts I and II fail on their own elements. But the publication-based character of the case reinforces the pleading defect.

The SAC is still, at bottom, a complaint about allegedly false online publications. Florida courts do not permit plaintiffs to evade defamation limits by relabeling publication-based grievances as other torts. *See Gannett Co. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (dismissing similar allegations as "not distinguishable in any material respect from a libel claim."); Freites v. Medina, No. 25-cv-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 15, 2025), appeal dismissed, No. 25-12067, 2025 WL 2638566 (11th Cir. Aug. 27, 2025). Plaintiffs' current federal labels do not alter the fact that, as to Mr. Clark, the case is based on one allegedly false publication.

14

The limitations point is narrower for Mr. Clark, because the SAC alleges his post occurred on December 31, 2025. But Plaintiffs also try to treat him as part of a broader campaign allegedly beginning in May 2023. SAC ¶ 35. To the extent Plaintiffs seek to hold Mr. Clark liable for publications predating his alleged involvement, those claims are untimely and cannot be revived by the conclusory allegation that he "may have joined the conspiracy later." SAC ¶ 36.

### V. THE SAC IS A SHOTGUN PLEADING AS TO MR. CLARK.

Even if the Court were not to dismiss on the more fundamental grounds above, the SAC should be dismissed as an impermissible shotgun pleading as to Mr. Clark.

Most obviously, it is a type-four shotgun pleading. It asserts multiple claims against multiple defendants while failing to specify which defendant is responsible for which acts and which claims. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (Eleventh Circuit's taxonomy of shotgun pleadings). That defect is acute for Mr. Clark. The SAC alleges one specific act by him, then lumps him into counts accusing all "Defendants" of an alleged multi-year racketeering and false-advertising scheme. SAC ¶¶ 42–60. It does not specify which predicate acts he supposedly agreed to commit, which specific Lanham statements he supposedly made beyond the one meme, what enterprise role he supposedly had, or how one post caused the damages alleged.

It is also a type-one shotgun pleading because each count incorporates all preceding allegations wholesale, including allegations having nothing to do with Mr. Clark and allegations concerning Florida-only claims not asserted against him. *Id.*

And it is, at minimum, rife with vague and conclusory allegations as to him—"may have joined," "likely with the approval," "Plaintiffs understand," "affiliated," "promotes"—that do not permit a meaningful responsive pleading.

### VI. IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT.

XIf the Court declines to dismiss, it should require Plaintiffs to replead under Rule 12(e). As to Mr. Clark, the SAC is too vague to answer intelligibly. Plaintiffs should be required to specify (1) what exact statement by Mr. Clark they contend is false; (2) whether the claims against him are based on the December 31 twitter post or also on other persons' earlier publications; (3) which portions of the mem are alleged to be false, as opposed to opinion, rhetoric, or commentary; (4) what goods or services Mr. Clark allegedly advertised or promoted; (5) what property Mr. Clark allegedly sought to obtain through wire fraud; (6) what facts support the allegation that he agreed to any conspiracy; and (7) what specific loss Plaintiffs attribute to his conduct.

## VII. CONCLUSION

For these reasons, Defendant Zackary Clark respectfully requests this Honorable Court dismiss the Second Amended Complaint as against him for lack of personal jurisdiction and for failure to state a claim. In the alternative, he requests a more definite statement.

Respectfully submitted,

DATED: March 9, 2026

/s/Matthew Larosiere
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email:
Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for*
*Defendants Elik, Stroke,*
*Lettman, and Clark*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 9th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar № 1005581