UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas
corporation,

       Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually

       Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT CLARK'S MOTION TO DISMISS**

       Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., oppose the

Motion to Dismiss ("Motion") [D.E. 71] filed by defendant Zackary Clark.

## I.      Introduction

       Plaintiffs jointly operate a lawful business of selling access to 3D printable gun files under

the tradename "DEFCAD."[1]  Defendants are believed to own and operate a rival 3D gun business

through a Florida corporation called MAF Corp.  The Second Amended Complaint ("SAC") [D.E.

49] alleges that defendants conspired to publish false and damaging information about DEFCAD,

namely that its customers' information was "hacked and dumped multiple times" on the internet,

---

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer."
Wikipedia, viewed March 5, 2026.  This Opposition will refer to the Plaintiffs' business as
DEFCAD for ease of reference.

1

and that its website is hosted in Iran.  These statements were published in the form of an internet meme reproduced in the SAC under the headline "FEDCAD."  The use of the pun "FEDCAD" underscores the suggestion that DEFCAD is somehow aligned with federal authorities to the detriment of its customers even though its business is legal.  And that innuendo was intended to scare potential customers away from DEFCAD.  It has, to the tune of $1 million in lost profits.

Clark's Motion repeats the same arguments already asserted in the Motion to Dismiss filed by defendants Elik, Larosiere, Holladay, Stroke and Lettman [D.E. 56].  Specifically, the Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), contending the Court lacks personal jurisdiction over Clark because he is a non-resident.  But as the Eleventh Circuit has held, RICO's jurisdictional provision, 18 U.S.C. §1965(d), only requires that defendants have contact with the United States, not any judicial district.  *Republic of Panama v. BCCI Holdings (Luxembourg)S.A.,* 119 F.3d 935, 942 (11th Cir. 1997).[2]  Clark seeks to avoid this outcome by asserting Plaintiffs cannot avail themselves of RICO's jurisdictional provision because the RICO claim is so feeble as to be "non-colorable."  This argument fails.

Clark's other dismissal arguments under Fed. R. Civ. P. 12(b)(6) are more developed, if not persuasive.[3]  Indeed, the Eleventh Circuit's most recent civil RICO decision, *Hartman v. Does 1-2,* No. 23-13473, 2025 WL 398846 (11th Cir. 2025), affirmed a $9 million jury verdict for a business suing a rival for lost profits predicated on false statements made on the internet.  That

---

[2] RICO is the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968.  As the Supreme Court has stated, the object of the civil provisions of the law is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity."  *Rotella v. Wood,* 528 U.S. 549, 557 (2000).

[3] In deciding the Motion, the Court is to "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

precedent forecloses any argument that this case presents an unusual or inappropriate use of the statute. Finally, in the alternative the Motion seeks a "more definite statement" of the claims. This too is unavailing.

## II.      There is personal jurisdiction over Clark pursuant to 18 U.S.C. §1965(d)

"The general rule is that courts address issues relating personal jurisdiction *before* reaching the merits of a plaintiffs' [RICO] claims." *In re Takata Airbag Products Liability Lit.,* 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). Defendant Larosiere is a resident of this district. Thus, personal jurisdiction over him was established when he was served pursuant to 18 U.S.C. §1965(d).[4] *See Takata Airbag, Products Liability Lit,* 396 F. Supp. 3d at 1143 ("Section 1965(d) can serve as the statutory basis for personal jurisdiction") (*quoting Republic of Panama*, 119 F.3d at 942). That provision also provides for jurisdiction over non-resident Clark because he has "minimum contacts with the United States" as a citizen. *See BankAtlantic v. Coast to Coast Contractors, Inc.,* 947 F. Supp. 480, 490 (S.D. Fla. 1996) (applying this analysis to RICO because of its nationwide service of process provision). Although Clark's affidavit denies Florida residency, it does not deny United States citizenship, which is all that is necessary to defeat Clark's jurisdictional arguments.[5]

The Motion asserts that § 1965(d) is inapplicable because Plaintiffs' RICO claim is not "colorable." *See* Mot. at p. 3. As explained below, the SAC pleads a colorable RICO claim against all defendants. And once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction."

---

[4] It provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

[5] Clark's out of state residency could have been raised in a venue challenge, but he has not made one, and this has waived the issue. Fed. R. Civ. P. 12(h)(1)(B).

*See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012) ("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (internal citation and quotations omitted). Thus, the Court has personal jurisdiction over all defendants, including Clark.

### III.    The RICO claim states a cause of action

Contrary to Clark's assertions (*see* Mot. pp. 4-10), the SAC plausibly alleges a RICO claim. "A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies LLC v. Citigroup, Inc.,* 137 F.4th 1158, 1196 (11th Cir. 2025). The SAC alleges Defendants conspired with Larosiere to operate, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to DEFCAD. *See* SAC at ¶¶ 24-31. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. § 1343. See id. ¶¶ 41, 46.

#### a.  Business damages caused by false statements are permissible under RICO

Clark contends that a RICO claim must be dismissed if it is based on defamation, "business-smear or disparagement." *See* Mot. p. 5. Although it is true that defamation is not a RICO predicate act, mail and wire fraud are. As a result, courts routinely recognize that businesses may bring RICO claims premised on false statements made by competitors. *See, e.g., Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648 (2008) (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator); *Hartman*, 2025 WL

398846, at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness"); *Securiton Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 263-64 (2d Cir. 1995) (affirming judgment for RICO and defamation claims).

Clark's attempt to distinguish *Hartman* is unpersuasive. *See* Mot. at pp. 9-10. Although the schemes were different, *Hartman* confirms that a business competitor's false "smear campaign" can be actionable under RICO. Clark's straw man argument – that "online criticism, standing alone" is insufficient to establish wire fraud (*see* Mot. p. 10) – is simply irrelevant.

The fact that Clark may not have participated in the entirety of the smear campaign is also irrelevant. A RICO conspirator who agrees to the overall objective of the conspiracy can be liable for all damage caused by the conspiracy even if he does not commit all predicate acts. *See, e.g., Salinas v. U.S.,* 522 U.S. 52, 65 (1997) (affirming the § 1962(d) RICO conspiracy conviction of a defendant who did not personally commit any predicate acts); *accord Allstate Ins. Co. v. Palterovich,* 653 F. Supp. 1306, 1321 (S.D. Fla. 2009) ("A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts"). Indeed, all conspirators who "participate in the enterprise responsible for the RICO violations" have joint and several liability. *Id.* at 1334.

### b. The SAC alleges a pattern of racketeering activity

Clark next argues the SAC fails to allege a "pattern of racketeering activity." Mot. at p. 9. This argument lacks merit. The SAC alleges that the scheme began in May 2023 and that it

continued through at least December 31, 2025, when Clark posted the FEDCAD meme on the internet. SAC at ¶ 36. Because the scheme has been ongoing for two and a half years (*see id.* at ¶¶ 24, 35, 36, 41), the SAC adequately alleges a closed pattern of racketeering activity. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. Ga. 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims).

### c.   The RICO scheme is ongoing and will not stop absent judicial intervention

In conclusion, the SAC plausibly alleges that Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to divert customers from DEFCAD to defendants' competing business. Defendants used social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) December 2025. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id.* Taken as true, these allegations describe a conspiracy to commit an ongoing pattern of wire fraud through an enterprise which has damaged plaintiffs.

### d.   The SAC alleges a RICO conspiracy

Citing nothing, the Motion contends the allegations of the SAC are inadequate to allege Clark's entry into the conspiracy to damage DEFCAD. Mot. at p. 8. The allegation that a person joins a conspiracy at a later time than others is commonplace and does not amount to speculation. *See, e.g., Inteliquent, Inc. v. Free Conferencing Corp.,* 503 F. Supp. 3d 608, 632 (N.D. Ill. 2020) ("in order to be a member of the [RICO] conspiracy, the defendant need not join at the beginning

6

or know all the other members or means by which its purposes were to be accomplished"). The SAC alleges Clark posted the offending meme on X (formerly Twitter) on a specific date. SAC at ¶ 36. He did so with the agreement of the other defendants, and likely with the approval of the ringleader, Larosiere. *Id.* at ¶ 37. This is not speculation. It is very specific and factual.[6] The Motion also asserts Clark's one predicate act of wire fraud "cannot bootstrap him into a broader campaign through speculation that he joined later." Mot. at p. 9. It certainly can, for the reasons detailed above. All the SAC needs to allege is that Clark agreed to the overall criminal endeavor. He need not even commit one act of wire fraud. The RICO allegations against Clark are sufficient.

### e.  The wire fraud allegations comply with Fed. R. Civ. P. 9(b)

Contrary to Clark's assertion (*see* Mot. at p. 7), the allegations in the SAC comply with Fed. R. Civ. P. 9(b). Specifically, the SAC alleges that Clark committed wire fraud on December 31, 2025 by posting the FEDCAD meme on X (formerly Twitter). SAC at ¶ 36. That allegation provides all the necessary information, the "who, what and where" required by the rule.[7] The SAC *does* inform Clark and the other defendants what they, individually, did to violate RICO. Tellingly, the Motion does not even state what fact is missing as to Clark. This argument must be rejected.

---

[6] Clark asserts, without citation to authority, that "the SAC must still plausibly allege that Mr. Clark agreed to conduct that enterprise's [MAF Corp.] affairs through racketeering." *See* Mot. at pp. 8, 9. Clark is wrong. The Eleventh Circuit has rejected the application of the "operation or management" requirement of RICO pleading in conspiracy cases. *See U.S. v. Browne,* 505 F.3d 1229, 1276, n.33 (11th Cir. 2007); *Design Pallets, Inc., v. Gray Robinson, P.A.,* 2008 WL 3200275 at *5, n.11 (M.D. Fla. 2008). While the Supreme Court did enunciate such a requirement for RICO claims arising under §1962(c) in *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993), that decision did not apply to RICO conspiracy claims, and the Eleventh Circuit has so held.

[7] The Eleventh Circuit has noted that Rule 9(b) "must not abrogate the concept of notice pleading." *Otto Candies,* 137 F.4th at 1178.

**f. The SAC alleges DEFCAD's injury was proximately caused by the wire fraud scheme**

Clark contends the SAC does not allege DEFCAD's injury was directly caused by the wire fraud scheme to harm it because the damage was caused by "defendants collectively" and does not identify a particular business relationship lost.  *See* Mot. at p. 9.  But *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 457-61 (2006), the only authority cited, says nothing about a supposed need for damages to be attributed to a particular defendant rather than a group of defendants.  And in *Hartman* the racketeering was committed by a group of defendants.  *Hartman,* 2025 WL 398846 at \*3.  Nor does *Anza* or *Hartman* require naming lost customers to state a RICO claim.  To reiterate, Rule 8, which applies to the Complaint (except for the allegations of wire fraud), establishes notice pleading.  Any such requirement, as is suggested in the Motion, would be inconsistent with that standard.  Given that Clark has failed to cite any authority supporting a heightened pleading standard, his argument should be rejected.

Accordingly, Clark's request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

**IV.    The SAC sufficiently pleads a Lanham Act claim for false advertising**

Count II of the SAC alleges the same misconduct violates § 1125(a)(1)(B) of the Lanham Act,[8] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising."  The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch."  *Lexmark Int'l, Inc. v. Static Control Components,*

---

[8] 15 U.S.C. §1125(a).

*Inc.,* 572 U.S. 118, 137-38 (2014).  That is precisely what is alleged here.  *See also Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising).  The first element, "literal falsity" is met if the advertisement is "literally false," which is what Plaintiffs allege.  The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the SAC.

The second element is the ad "deceived, or had the capacity to deceive, consumers."  *Id*. Plaintiffs allege the "FEDCAD" posts deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false.  *Id*. at 1319.  The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision."  *Id*. This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred.  Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

Clark argues that the Lanham Act claim should be dismissed because a meme is not "commercial speech."  Mot. at p. 11.  Not so.  The requirements for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute "advertising' or 'promotion' within that industry."  *Belcher Pharmaceuticals, LLC v. Hospira, Inc.,* 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020).  The SAC alleges facts supporting these elements, namely that Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme campaign is an attempt to influence DEFCAD's customers.  If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

Clark also asserts that some of the statements are nonactionable opinions or rhetorical hyperbole. *See* Mot. at p. 14. But the challenged statements in the meme – *i.e.*, that DEFCAD has been hacked and that customer names have been made public – are not opinions. They are false statements of fact. Accordingly, the Lanham Act claim should not be dismissed.

### V.   The SAC alleges tortious interference

Clark's challenge to the SAC's tortious interference claim (Count III) is equally deficient.

To state a claim for tortious interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.,* 262 F. 3d 1152, 1154 (11th Cir. 2001).

The SAC plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. SAC at ¶¶ 63, 64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id*. at ¶ 65. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id*. at ¶¶ 41, 69.

Because Plaintiffs have adequately pleaded their tortious interference claim under Florida law, Clark's motion to dismiss should be denied.

10

## VI.     The SAC is not a shotgun pleading

Clark's assertion the SAC constitutes an impermissible shotgun pleading (*see* Mot. at pp. 15-16) is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself.

The SAC pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F. 3d 1313, 1321-23 (11th Cir. 2015).   The pleading expressly alleges each Defendant's individual role in the scheme, including Clark's posting and amplification of the "FEDCAD" meme.  Plaintiffs are entitled to discovery to determine the full extent of Clark's involvement in the RICO conspiracy.

Additionally, although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading if the allegations are relevant and the counts remain intelligible. *See Weiland*, 792 F.3d at 1324.  Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct.  Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims.  *See id.; Barmapov*, 986 F.3d at 1325–26.

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

## VII.     A more definite statement is unnecessary

A motion pursuant to Fed. R. Civ. P. 12(e) is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs'

claim resulted.   Clark's Motion, as well as Defendants' other filings, include several pages addressing the merits – confirming that they are fully capable of responding.   Clark's request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e).

## VIII.   Conclusion

In conclusion, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated:  March 23, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*

12