UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas
corporation; DD FOUNDATION, LLC, a
Texas limited liability company; and,
DEFCAD, INC., a Texas corporation,

*Plaintiffs,*

v.

JOHN   ELIK;   MATTHEW   LAROSIERE;
ALEXANDER     HOLLADAY;      PETER
CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants.*

_____/

**DEFENDANT ZACKARY CLARK'S REPLY IN SUPPORT OF HIS MOTION
TO DISMISS**

i

Plaintiffs' Opposition concerningly confirms the defects in the Second Amended Complaint ("SAC") in a manner suggesting that Plaintiffs' counsel has neither read the meme they purport to have cost them a million dollars, nor the complaint Mr. Clark moved to dismiss.

The opposition (1) doubles down on a reading of the "FEDCAD meme" that cannot be squared with the meme they incorporated into the SAC; (2) overstates the holding of *Hartman v. Does 1–2*; (3) ignores materially adverse authority rejecting attempts to recast publication-based grievances as RICO wire fraud; and (4) defends a tortious-interference claim that was neither asserted against Mr. Clark nor argued in his motion at all. *See* SAC Count III (asserted only against the Florida defendants); (Doc. 73 at 10) ("Clark's challenge to the SAC's tortious interference claim…is equally deficient.) *but see* (Doc. 71 at 2) ("even though the SAC alleges only one act by him and Count III is not even asserted against him."). Finally, Plaintiffs' Opposition never addresses the obvious significance of Plaintiffs' own hosting of the meme without commentary or refutation. (Doc. 71 at 3).

## I. PLAINTIFFS REFUSE TO GRAPPLE WITH THE TEXT OF THE FEDCAD MEME

Clark argued that the Court may consider the meme itself because Plaintiffs reproduced it and made it central to their claims, and that the meme's actual text does not say several of the things Plaintiffs attribute to it. (Doc. 71 at 8–9, 13–15). The Opposition does not address that argument at all. Instead, it repeats the same descriptions of the meme that Clark challenged. It says the meme conveyed that DEFCAD's website "is hosted in Iran," that the "FEDCAD" pun suggests alignment

1

with federal authorities, and that the meme's allegations scared customers away from DEFCAD. (Doc. 73 at 1–2, 8–10). The SAC does the same thing, alleging that the meme implied customers' identities would be known to federal authorities and anti-gun activists, and alleging that the meme falsely claimed DEFCAD "doxxes" customers to federal authorities, colluded with gun-control groups, and was published to divert customers to The Gatalog. (SAC ¶¶ 25–26, 34–35, 55). Yet the only meme before the Court—the one attached to SAC at page 5—does not say those things.

When a complaint incorporates an exhibit and the pleader's characterization conflicts with the exhibit itself, the exhibit controls. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Clark made exactly that point. (Doc. 71 at 8–9, 14–15). Plaintiffs' Opposition does not explain why the Court should disregard the actual words in the incorporated meme and accept Plaintiffs' broader paraphrase instead. That is not a response to Clark's argument, and it does not show the pleading is sufficient. (Doc. 73 at 1–2, 8–10).

## II. THE OPPOSITION OVERREADS HARTMAN AND DOES NOT CONFRONT COHEN.

As Plaintiffs are wont to, they continue to wield the unpublished *Hartman* decision as "foreclos[ing]" any argument that this case is an unusual or inappropriate use of civil RICO. (Doc. 73 at 2). As Clark explained, *Hartman* is unpublished, came after a nine-day trial and Rule 50 proceedings, and expressly stated that, "[b]eyond the issue of continuity," the defendants had not developed arguments "specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims," and the court expressed "no opinion" on those matters. (Doc. 71 at 9–10). The Opposition

does not grapple with that language. It simply cites *Hartman* as though it were a pleading-stage holding that online smear allegations satisfy wire fraud and civil RICO. (Doc. 73 at 2, 4–5.) It is not.

The Opposition also says nothing about *Center for Immigration Studies v. Cohen*, which Plaintiffs' counsel Mr. Foster personally litigated materially identical claims, where the D.C. circuit rejected a RICO wire-fraud theory built on allegedly false internet publications. (Doc. 79 at 1–2). *Cohen* is particularly relevant because there, as here, Plaintiffs' counsel was trying to "shoehorn a defamation claim into the RICO framework." 410 F. Supp. 3d at 191. Clark's motion argued that Plaintiffs are doing the same thing here. (Doc. 71 at 4–7, 15–16). The Opposition does not distinguish *Cohen*  which Plaintiffs are no doubt aware of—or explain why that reasoning does not apply. It simply ignores it while continuing to rely on an overread of *Hartman*.

### III.   THE OPPOSITION DOES NOT EXPLAIN HOW THE SAC PLEADS A SCHEME TO OBTAIN MONEY OR PROPERTY BY FRAUD AS TO CLARK.

Clark's argued that the SAC alleges only one repost by Clark and does not allege that Clark obtained or sought to obtain money or property from Plaintiffs, customers, or anyone else by deceit. (Doc. 71 at 4–8). The Opposition never answers that point. Instead, the Opposition asserts that "business damages caused by false statements are permissible under RICO" and that businesses "may bring RICO claims premised on false statements made by competitors." (Doc. 73 at 4–5). But that is not the question Clark raised. The question is whether the SAC plausibly alleges that Clark's one repost was part of a scheme whose object was money or property.

The Opposition does not identify the property Clark supposedly sought to obtain, the victim from whom he sought to obtain it, or the transaction through which that occurred. It simply repeats the conclusion that the "scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute." *Id.* at 4. That is not an explanation of why the SAC is sufficient as to Clark.

The Supreme Court has repeatedly made clear that the federal fraud statutes require a scheme whose object is money or property, not merely deception plus downstream harm. *Kelly v. United States*, 590 U.S. 391, 398–404 (2020); *Ciminelli v. United States*, 598 U.S. 306, 312–17 (2023); *Kousisis v. United States*, 145 S. Ct. 1382, 1388–94 (2025). The Eleventh Circuit's recent decision in *Saville v. Webb* is especially on point: the court affirmed dismissal where the plaintiff failed to explain how the challenged statements were part of a scheme to gain money or property from a victim, failed to identify that victim, and failed to allege what the defendant gained. No. 24-10998, 2025 WL 2254239, at *6–7 (11th Cir. Aug. 7, 2025). Plaintiffs' Opposition never supplies those missing features here.

Appellate authority from other circuits points the same way. In *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, the First Circuit held the complaint failed to allege a scheme to defraud anyone of money or property within the meaning of the mail and wire fraud statutes. 904 F.2d 786, 791  93 (1st Cir. 1990). In *Méndez Internet Management Services, Inc. v. Banco Santander de Puerto Rico*, the First Circuit explained that the ordinary fraud pattern involves deceit that induces a harmful transaction and ordinarily benefits the deceiver, found no plausible allegation that

4

the speaker stood to gain financially, and concluded that defamation-like allegations "standing alone" could not amount to mail or wire fraud. 621 F.3d 10, 16–18 (1st Cir. 2010). In *United States v. Baldinger*, the Sixth Circuit described similar allegations as "for the most part" amounting to defamation rather than traditional mail fraud because the proprietary-gain component was missing. 838 F.2d 176, 180–81 (6th Cir. 1988). And in *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, the Ninth Circuit rejected a mail/wire-fraud theory aimed at harm to reputation and goodwill where the scheme was not acquisitive. 215 F.3d 923, 926–27 (9th Cir. 2000). The Opposition does not explain why the SAC's theory falls on the permissible side of those cases. It just asserts that competitor falsehoods can sometimes support RICO. That does not answer Clark's actual argument.

Nor do Plaintiffs' citations solve the problem. Bridge v. Phoenix Bond & Indemnity Co. involved false attestations used to obtain property interests in tax liens. 553 U.S. 639, 647–50 (2008). Clark never argued that harmful false statements can never support a RICO claim. He argued that the SAC does not plausibly allege that Clark's one repost was part of a scheme to obtain money or property by deceit. Doc. 71 at 4–8. The Opposition cites Bridge for a proposition much broader than the case supports and still does not explain how the SAC satisfies the money-or-property requirement as to Clark.

### IV. THE OPPOSITION DOES NOT SHOW THAT THE SAC SATISFIES RULE 9(B) AS TO CLARK.

Clark argued that Rule 9(b) applies because wire fraud is the alleged predicate, and that the SAC does not plead what property Clark sought to obtain, what

5

transaction he induced, what he gained, who relied, or how one repost proximately caused Plaintiffs' global damages number. (Doc. 71 at 7–8). The Opposition's answer is that paragraph 36 supplies the "who, what and where." (Doc. 73 at 7). That does not address Clark's argument. Clark never contended the SAC omitted a date or a platform. He argued that the SAC omitted the particulars needed to plead fraud as to Clark. The Opposition does not identify where the SAC pleads those missing details because it does not.

That is not enough under Eleventh Circuit law. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.* requires the plaintiff to allege the precise misrepresentations, the time, place, and person responsible, how the statements misled the plaintiff, and what the defendants gained. 116 F.3d 1364, 1380–81 (11th Cir. 1997). *Ambrosia Coal & Construction Co. v. Pages Morales* adds that a multi-defendant RICO complaint must inform each defendant of the nature of his alleged participation in the fraud. 482 F.3d 1309, 1316–17 (11th Cir. 2007). The Opposition does not explain how the SAC meets those standards as to Clark. It simply asserts compliance. That is not enough.

## V. THE OPPOSITION DOES NOT EXPLAIN HOW THE SAC'S CLARK-SPECIFIC CONSPIRACY ALLEGATIONS ARE ANYTHING OTHER THAN SPECULATION.

Clark's motion pointed out that the SAC alleges Clark "may have joined the conspiracy later," "likely" acted with Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF. (Doc. 71 at 8–9; SAC ¶¶ 36–37). The Opposition responds: "This is not speculation. It is very specific and factual." (Doc. 73 at 6–7). But the Opposition does not explain why the Court should ignore the

qualifiers in the pleading itself. It does not identify concrete facts showing an agreement by Clark. It merely relabels speculative allegations as factual ones.

In *O'Malley v. O'Neill*, the Eleventh Circuit held that similar RICO conspiracy allegations were "merely conclusory and unsupported by any factual allegations." 887 F.2d 1557, 1561 (11th Cir. 1989). The same problem is present here. Plaintiffs' response does not identify the factual allegations in the SAC that plausibly show Clark knowingly agreed to the overall objective of any racketeering conspiracy. Instead, it shifts to general propositions about later-joining conspirators and criminal conspiracy law, without showing why or how the SAC already pleads the necessary agreement by Clark. (Doc. 73 at 6–7).

**The Opposition also answers an argument Clark did not make.** It cites *United States v. Browne and Design Pallets, Inc. v. GrayRobinson, P.A.* for the proposition that a § 1962(d) conspiracy claim does not require "operation or management" in the *Reves* sense. (Doc. 73 at 7 n.6). But Clark's point was not that Plaintiffs failed to plead a formal *Reves* element. Clark's point was that the SAC does not plausibly plead Clark's agreement at all. (Doc. 71 at 8–10). The Opposition never explains why the SAC's actual Clark allegations satisfy that standard.

### VI. The Opposition does not answer the jurisdictional point because it does not address Republic of Panama's threshold requirement.

Clark argued that Plaintiffs cannot invoke RICO's nationwide-service provision unless the RICO claim is at least colorable. (Doc. 71 at 3–4). The Opposition responds by saying Clark is a United States citizen and that this is "all that is necessary to defeat Clark's jurisdictional arguments." (Doc. 73 at 3). That is not what

*Republic of Panama* says. The Eleventh Circuit held that nationwide service is available where the asserted federal claim is not "wholly immaterial or insubstantial." 119 F.3d 935, 941–42 (11th Cir. 1997). The Opposition skips over this threshold issue.

The same problem appears in the Opposition's citation to district-court cases like *Bank Atlantic* and *Takata*. (Doc. 73 at 2–4). Those cases do not erase *Republic of Panama*'s threshold. They presuppose it. So the Opposition's jurisdiction section does not show personal jurisdiction exists over Clark.

### VII. THE OPPOSITION DOES NOT SHOW THAT THE SAC PLEADS "COMMERCIAL ADVERTISING OR PROMOTION" AS TO CLARK, AND IT OVERREADS LEXMARK.

Clark argued that one reposted meme is not plausibly "commercial advertising or promotion" under controlling law. (Doc. 71 at 10–14). The Opposition's answer is essentially that, if the meme was posted online to reach DEFCAD's customers and deceives them, then it is "commercial." (Doc. 73 at 9). But Clark's motion cited *Suntree Technologies, Inc. v. Ecosense International, Inc.* and *Edward Lewis Tobinick, M.D. v. Novella* for a more demanding standard: commercial speech, by a defendant in commercial competition with the plaintiff, for the purpose of influencing customers to buy the defendant's goods or services, disseminated sufficiently to the relevant purchasing public. (Doc. 71 at 10–13). The Opposition simply asserts a much looser standard and assumes the conclusion.

Plaintiffs also overread *Lexmark International, Inc. v. Static Control Components, Inc.*. The Opposition cites *Lexmark* as though it established that what is alleged here is a "classic Lanham Act false-advertising claim." (Doc. 73 at 8–9). The

Supreme Court expressly noted that whether the challenged statements qualified as "commercial advertising or promotion" was "not before us" and assumed the point without deciding it. 572 U.S. 118, 136 n.1 (2014).

Additional circuit authority points the same way as *Tobinick*. In *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, the First Circuit explained that the speech must, at a bare minimum, target a class or category of purchasers and not merely isolated recipients. 332 F.3d 6, 19–20 (1st Cir. 2003). In *Bosley Medical Institute, Inc. v. Kremer*, the Ninth Circuit held that online criticism of a business was not commercial use where it expressed opinion rather than proposed a commercial transaction. 403 F.3d 672, 677–80 (9th Cir. 2005). And in *Farah v. Esquire Magazine*, the D.C. Circuit rejected the idea that adversarial speech becomes commercial merely because it may affect a marketplace or indirectly benefit the speaker. 736 F.3d 528, 541–42 (D.C. Cir. 2013). The Opposition ignores all of this.

## VIII.  THE OPPOSITION UNDERSCORES THE NOTICE AND GROUP-PLEADING PROBLEM INSTEAD OF ANSWERING IT.

Clark argued that the SAC lumps him into multi-defendant counts despite alleging only one specific act by him. (Doc. 71 at 15–18.) The Opposition's treatment of Count III proves the point. It spends a section arguing that "Clark's challenge to the SAC's tortious interference claim (Count III) is equally deficient." (Doc. 73 at 10–11). But Count III is pleaded "Against Solely the Florida Defendants" and expressly names only Larosiere and Holladay. (SAC at 11–12). Clark is not a Florida defendant, and made no challenge to Count III in his motion. So instead of explaining how the

9

SAC provides Clark with notice of the claims actually asserted against him, the Opposition demonstrates the very group-pleading problem Clark raised.

## IX. PLAINTIFFS NEVER ADDRESS THAT THEY THEMSELVES HOSTED THE MEME WITHOUT COMMENTARY OR REFUTATION.

Clark's declaration states that he found the "FEDCAD meme" on Plaintiffs' Defcad.com website; that Plaintiffs' posting was the first Google result for "Fedcad meme"; that he copied the meme from Plaintiffs' website and posted it to Twitter; and that he viewed the claims in the meme as credible because Plaintiffs had posted it to their own website "without any commentary to the contrary." (Doc. 71-1 at 2.) The Opposition does not respond to that point at all.

## CONCLUSION

The Opposition does not show that the SAC states a claim against Clark or establishes personal jurisdiction over him. It does not explain how the SAC pleads a scheme to obtain money or property by fraud as to Clark. It does not show compliance with Rule 9(b). It does not explain why the SAC's speculative allegations plausibly plead a RICO conspiracy. It ignores *Republic of Panama*'s threshold requirement. It does not show that Clark's one repost qualifies as "commercial advertising or promotion." And it never addresses Plaintiffs' own hosting of the meme without commentary or refutation. Clark's motion should therefore be granted. (Doc. 71).

Respectfully submitted,

DATED:  March 30, 2026

10

/s/Matthew Larosiere
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email:
Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for
Defendants Elik, Stroke,
Lettman, and Clark*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 30th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Matthew Larosiere

Matthew Larosiere, Esq.
Fla. Bar № 1005581

11