**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-81197-MIDDLEBROOKS

DEFENSE DISTRIBUTED,
et al.,

      Plaintiffs,

v.

JOHN ELIK, et al.,

      Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants Elik, Larosiere, Holladay, and Stroke's Joint Motion to Dismiss the Complaint, and in the Alternative, for a More Definite Statement (DE 56) and Defendant Zachary Clark's Motion to Dismiss the Second Amended Complaint, and in the Alternative, for a More Definite Statement (DE 71). Plaintiffs have filed Responses. (DE 70, DE 73). Defendant Clark filed a Reply. (DE 83). For the following reasons, the Motions are denied.

### I.    BACKGROUND

Plaintiffs Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. (collectively, "Plaintiffs") bring this action against seven individual defendants—John Elik, Matthew Larosiere, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, and Zackary Clark (collectively, "Defendants")—arising from an alleged online misinformation campaign targeting Plaintiffs' 3D-printed-firearm file-sharing business. Plaintiffs operate the website DEFCAD.com and allege that Defendants jointly operate a competing enterprise known as "The Gatalog," associated with MAF Corp., a Florida corporation.

According to the Second Amended Complaint ("SAC," DE 49), Defendants conspired beginning in 2019 to harm Plaintiffs' business by disseminating false statements asserting, among other things, that DEFCAD had been "hacked and dumped," that it "doxxed" customers, and that its servers were hosted in Iran. Plaintiffs allege that these statements were published repeatedly across Reddit, Twitter (X), Facebook, and other online forums, often through a graphic labeled the "FEDCAD" meme. Plaintiffs further allege that the statements were made in commercial contexts directing customers to The Gatalog and that several Defendants amplified the meme through their own affiliated platforms, including ctrlpew.com and social media accounts.

Plaintiffs assert that the alleged misinformation campaign caused customers and file creators to cease doing business with DEFCAD, resulting in more than $1 million in lost revenue. They bring three causes of action: (1) conspiracy to violate RICO (count I); (2) false advertising under the Lanham Act (count II); and (3) tortious interference with business relationships under Florida law (count III) (asserted only against the Defendants Larosiere and Holladay). Plaintiffs seek damages, treble damages under RICO, disgorgement, attorneys' fees, and injunctive relief.

Defendants collectively move to dismiss the Second Amended Complaint under Rules 12(b)(2), 12(b)(6), and 12(e), arguing that the pleading fails to establish personal jurisdiction over the non-Florida defendants and does not state any viable claim under RICO, the Lanham Act, or Florida law. They contend that Plaintiffs cannot invoke RICO's nationwide service provision because the SAC does not plead a colorable RICO violation and characterizes the case as an improper attempt to convert online criticism into racketeering. Defendants further argue that the alleged online posts do not constitute "commercial advertising or promotion" under the Lanham Act and that the tortious interference claim lacks factual detail and is barred by Florida's Single Action Rule and Chapter 770. Defendant Clark separately argues that the SAC alleges only a single

2

reposting of the "FEDCAD" meme by him, relies on speculation to connect him to any broader scheme and fails to establish personal jurisdiction because he has no Florida contacts. He also contends that the meme itself does not contain several statements Plaintiffs attribute to it. Finally, all Defendants argue that the SAC is an impermissible shotgun pleading and, in the alternative to dismissal, they move for a more definite statement.

## II.  DISCUSSION

### A. Personal Jurisdiction

Personal jurisdiction is a threshold issue, and I must resolve it before reaching the merits. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). Here, the Parties' jurisdictional dispute is narrow. Plaintiffs do not contend that Florida's long-arm statute independently confers jurisdiction over the non-resident Defendants. The jurisdictional question therefore turns entirely on whether Plaintiffs may invoke RICO's nationwide service provision, 18 U.S.C. § 1965(d) ("All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."). Under Eleventh Circuit precedent, that provision applies only if the complaint pleads a "colorable" RICO claim—that is, one that is not "wholly immaterial or insubstantial." *Panama,* 119 F. 3d at 941–42. Because the applicability of § 1965(d) depends on the sufficiency of the RICO allegations, the jurisdictional inquiry requires an evaluation of whether the SAC states a colorable RICO claim in order to determine whether personal jurisdiction exists over the non-resident Defendants.

The SAC's allegations are not "wholly immaterial or insubstantial." *Panama*, 119 F.3d at 941–42. Plaintiffs identify a corporate enterprise (MAF Corp.), allege repeated wire-fraud

3

predicate acts over multiple years, and describe a coordinated effort to divert customers through false statements—allegations that, if true, satisfy each statutory element of §§ 1962(c) and (d).

Defendants dispute the sufficiency of the predicate act, enterprise, continuity, and causation allegations, but those arguments go to the ultimate merits of the RICO claim. Courts have recognized that coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud. *See Hartman v. Does 1–2*, No. 23-13473, 2025 WL 398846, at *1 (11th Cir. Feb. 4, 2025). At this stage, I ask only whether the allegations are so insubstantial as to preclude reliance on § 1965(d). They are not. Accordingly, I conclude that the SAC pleads a colorable RICO claim for purposes of invoking § 1965(d).

Because the SAC pleads a colorable RICO claim, § 1965(d) provides personal jurisdiction over all Defendants for the RICO count. Once jurisdiction is proper as to that federal claim, a court may exercise pendent personal jurisdiction over the remaining claims—the Lanham Act count and the Florida tort claim—because they arise from the same nucleus of operative fact. *See Action Embroidery Corp. v. Atl. Embrodiery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) ("Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (internal quotation marks omitted).

Defendants identify no independent jurisdictional defect apart from their challenge to the RICO count, and Plaintiffs do not rely on Florida's long-arm statute for the non-RICO claims. Thus, the only jurisdictional dispute is whether Plaintiffs may invoke § 1965(d). Having resolved that issue in Plaintiffs' favor, no separate personal jurisdiction analysis is required for the remaining claims.

## B. 12(b)(6) arguments

A Rule 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must … contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

### 1. RICO claim

To state a civil RICO claim under § 1962(c), a plaintiff must plausibly allege that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts, which (5) proximately caused (6) injury to the plaintiff's business or property. *Otto Candies LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). Defendants challenge nearly every element, arguing that the SAC attempts to convert online criticism into racketeering activity.

The SAC alleges a corporate enterprise (MAF Corp.), repeated wire-fraud predicate acts over a multi-year period, Defendants' participation in the scheme, and more than $1 million in lost profits. These allegations satisfy the elements of §§ 1962(c) and (d) at the pleading stage. A corporate enterprise requires no structural allegations beyond those pled here. *Boyle v. United*

*States*, 556 U.S. 938, 946 (2009). Internet communications may constitute wire fraud. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Multi-year conduct supports continuity. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020). And coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud. *Hartman v. Does 1–2*, No. 23-13473, 2025 WL 398846, at *6–7 (11th Cir. Jan. 31, 2025). The alleged predicate acts are also related because they share the same purpose (diverting customers), the same participants (Defendants), the same victims (Plaintiffs), and the same method (false statements disseminated online).

The SAC also plausibly alleges that Defendants participated in the operation or management of the enterprise by coordinating and executing the dissemination of the challenged statements. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Plaintiffs further allege proximate cause by asserting that Defendants' false statements diverted customers and file creators away from DEFCAD, resulting in more than $1 million in lost revenue—an injury directly flowing from the alleged racketeering acts. The wire-fraud allegations also satisfy Rule 9(b), as the SAC identifies the specific statements, the dates and platforms on which they were made, and the defendants responsible for them. See *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Defendant Clark's separate arguments do not warrant dismissal. First, even if Clark reposted the meme only once, a single wire transmission may constitute a predicate act, and a defendant may be liable for RICO conspiracy without personally committing any predicate acts so long as he knowingly joined the scheme. *Salinas v. United States*, 522 U.S. 52, 65 (1997). Second, whether the "FEDCAD" meme contained the statements Plaintiffs attribute to it is a factual dispute. At this stage, the Court must accept Plaintiffs' description of the content as true and may

6

not weigh competing interpretations of the meme. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Third, Clark's contention that he joined the conspiracy too late to be liable misunderstands the law. A conspirator need not join at the outset, know all details, or participate in every act; it is enough that he agreed to further the enterprise's unlawful objective. *See United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). These issues are factual and inappropriate for resolution under Rule 12(b)(6).

Because the SAC plausibly alleges a RICO enterprise, predicate acts, relatedness, continuity, agreement, proximate cause, and injury, the motion to dismiss the RICO claim is denied.

### 2. *Lanham Act*

To state a false-advertising claim under § 43(a), a plaintiff must allege: (1) the defendant made a false or misleading statement of fact; (2) in commercial advertising or promotion; (3) that deceived or was likely to deceive consumers; (4) the deception was material; and (5) the plaintiff suffered injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

The SAC alleges that Defendants made specific factual misrepresentations about DEFCAD's data security and hosting location—namely, that its customer data had been "hacked and dumped" and that its website was hosted in Iran—and disseminated those statements to consumers in the same market to divert business to competing platforms. Plaintiffs further allege that these statements were material to consumers' purchasing decisions and caused lost customers and revenue. The SAC also plausibly alleges that Defendants and Plaintiffs are direct competitors in the online firearms file-hosting market and that Defendants disseminated the challenged statements to influence consumer choice—allegations sufficient to plead "commercial advertising

7

or promotion." *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (commercial speech includes statements made by competitors to influence consumer decisions). Plaintiffs also plausibly allege materiality because data security and hosting location are central to consumer trust in online file-hosting services, and the SAC asserts that customers left DEFCAD after reading the challenged statements. These allegations satisfy the essential elements at the pleading stage.

Defendants argue that the statements are mere opinion or criticism, not commercial speech, and not material. But Plaintiffs allege that the statements were factual, false, and disseminated for competitive advantage—allegations the Court must accept as true at this stage. Whether the statements were in fact false, whether they influenced consumers, and whether they qualify as commercial advertising or promotion are factual questions inappropriate for resolution under Rule 12(b)(6).

Clark separately argues that the "FEDCAD" meme does not contain the statements Plaintiffs attribute to it and therefore cannot support liability. That argument raises a factual dispute. At this stage, the Court must accept Plaintiffs' description of the meme's content as true and may not weigh competing interpretations. Plaintiffs also allege that Clark's repost was part of a coordinated promotional campaign among competitors to divert customers. Because the SAC plausibly alleges that Defendants made false, material statements in commercial advertising or promotion that caused Plaintiffs economic injury, the motion to dismiss the Lanham Act claim is denied.

### 3. Tortious interference

To state a claim for tortious interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship; (2) the defendant's knowledge of that relationship; (3)

intentional and unjustified interference with that relationship; and (4) resulting damages. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

The SAC alleges ongoing business relationships with DEFCAD customers and file creators, Defendants' knowledge of those relationships, intentional interference through the dissemination of false statements, and resulting financial harm. These allegations satisfy the essential elements at the pleading stage. *See Gossard v. Adia Servs., Inc.*, 723 So. 2d 182, 184 (Fla. 1998) (plaintiff need only allege an identifiable business relationship, not a formal contract).

Defendants argue that Plaintiffs fail to identify specific customers and that Chapter 770 bars the claim. As to the first argument, it is unnecessary to name individual customers in the complaint. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) (rejecting this argument in the tortious interference context). As to the second argument, Defendants' reliance on Chapter 770 and the single-action rule is misplaced. Chapter 770 applies only to actions "for damages founded upon the publication of libel or slander," Fla. Stat. § 770.01, and Plaintiffs have not asserted a defamation claim. The single-action rule prevents duplicative recovery when a plaintiff pleads defamation alongside other torts based on the same publication; it does not recharacterize non-defamation torts as defamation or impose Chapter 770's notice requirement where defamation is not pled. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Tortious interference is a distinct tort with distinct elements, and neither doctrine bars Plaintiffs' claim. For these reasons, the Motion to Dismiss the tortious-interference claim is denied.

None of the remaining arguments raised by Defendants warrant dismissal. First, Defendants contend that the SAC is an impermissible shotgun pleading. A shotgun pleading is one that is "so vague or ambiguous that the opposing party cannot respond," or that fails to give

9

adequate notice of the claims asserted. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). The SAC does not suffer from either of these deficiencies. It separates each cause of action into distinct counts, identifies the defendants to whom each count applies, and alleges the factual basis for each claim with sufficient clarity to permit a meaningful response. Dismissal on shotgun pleading grounds is unwarranted.

Second, Clark argues that Plaintiffs "did not address" the affidavit he submitted with his motion. (DE 83 at 10). Plaintiffs were not required to do so. On a Rule 12(b)(6) motion, the Court generally may consider only the complaint and documents central to it; affidavits submitted by defendants to contradict the allegations are not part of the record at this stage. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Considering Clark's affidavit would convert the motion into one for summary judgment under Rule 12(d), which is inappropriate at this early stage. Because the affidavit is outside the pleadings and offered solely to contest Plaintiffs' version of events, it cannot be considered, and Plaintiffs' decision not to address it has no bearing on the sufficiency of their claims.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motions to Dismiss (DE 56 and 71) are **DENIED.**

**SIGNED** in Chambers at West Palm Beach, Florida, this ___ day of April, 2026.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

10