**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

      Plaintiffs,

v.

JOHN   ELIK,   individually;   MATTHEW
LAROSIERE,   individually;   ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and   JOHN   LETTMAN,   individually;   ZACK
CLARK, individually
                Defendants.

_____/

### PLAINTIFFS' OPPOSITION TO JOHN ELIK'S MOTION TO COMPEL

Defendant John Elik's motion to compel (Doc. 100) should be denied because it misrepresents Plaintiffs' discovery positions and because Plaintiffs' limited objections are proper.

The Motion seeks to compel the production of "responsive documents" because Plaintiffs have allegedly "refused to produce **anything**." Mot. at 1 (emphasis in original). Elik is wrong. Before Elik filed the Motion, Plaintiffs agreed to produce documents responsive to most of Elik's 66 document requests by April 21, 2026. The reasonableness of Plaintiffs' proposal is evidenced by the fact that Plaintiffs' voluminous production will be completed in less time (47 days) than Elik took to produce documents responsive to only 17 requests (55 days).

The Motion also incorrectly asserts that Plaintiffs have "refused to amend" their discovery responses. (Mot. at 2). In fact, the parties conferred for more than *three hours* about Plaintiffs' discovery responses, and Plaintiffs expressly advised Elik on the phone and in email that they would withdraw certain objections and get back to Elik about a few open issues within a couple

business days.  *See, e.g.*, Doc. 100-3 at 5-6.  Elik then hastily filed the Motion without waiting for Plaintiffs' final position on certain requests and without asking Plaintiffs to serve amended responses.

Plaintiffs extensively conferred with Elik, and the parties appear to genuinely dispute only *four* out of 66 RFPs (and *none* of Elik's 173 requests for admission). As explained below, Plaintiffs' objections to the four disputed requests are well-founded.  The Motion should be denied.

**A.      Plaintiffs Timely Responded to *371* Discovery Requests Served by Elik.**

On March 5, 2026, Elik served 198 document requests[1] and 173 requests for admission. Without requesting an extension, Plaintiffs timely responded to all of Elik's discovery requests on April 6, 2026.  For most of the requests, Plaintiffs agreed to produce responsive documents subject to a mutually acceptable protective order governing confidentiality, and Plaintiffs separately provided a draft protective order for Elik's review on April 8, 2026.  *See* Doc. 100-1, 100-6.

The parties met and conferred about Plaintiffs' discovery responses during two lengthy phone calls, spanning more than three hours in total, on April 8 and April 9, 2026.  During those discussions, Plaintiffs confirmed that they had already begun collecting responsive documents and that Plaintiffs would complete their production by April 21, 2026.  *See* Doc. 100-3 at 5.  Plaintiffs also agreed to withdraw certain objections, to confirm that Plaintiffs do not possess documents responsive to certain requests, and to further discuss with their clients whether to withdraw certain objections based on the relevance explanations offered by Elik's counsel.  *See id.*  At this time, there appear to be only four requests (RFP Nos. 61-63, 66) in genuine dispute.

**B.      Plaintiffs' Responses Comply with Rule 34.**

Elik first argues that Plaintiffs' responses are "facially noncompliant" with Rule 34 because they state that responsive documents would be produced within 10 days of entry of a protective

---

[1] Specifically, Elik served 66 "mirrored" requests for production on each of the three Plaintiffs, for a total of 198 document requests.

order.  Mot. 2. Tellingly, Elik does not explain how this response allegedly violates Rule 34.

Rule 34 provides, in pertinent part, that "production must … be completed no later than . . . [a] reasonable time specified in the response."  Fed. R. Civ. P. 34(b)(2)(B).  Rule 34 does not, as Elik demanded during conferral, require responses to specify a "date certain" for production.[2]  In any event, after Elik complained about the uncertainty of Plaintiffs' production date, Plaintiffs repeatedly offered to complete their production by April 21, 2026.  This is a reasonable amount of time given: (i) the voluminous nature of the requests; and (ii) that it took Elik 55 days to produce only a few dozen documents responsive to Plaintiffs' requests.[3]  As a result, Plaintiffs' responses comply with Rule 34.

## C.      Plaintiffs' Confidentiality Objections Are Proper.

Elik also contends that Plaintiffs belatedly "raised confidentiality only after the response deadline," "deployed the same objection across everything to be produced," and "would not withdraw this blanket position."  Mot. 2-3.  Elik is wrong on each claim.

Plaintiffs timely asserted confidentiality objections in their responses, *see* Doc. 100-1, and sent Defendants a draft confidentiality protective order on April 8, 2026, *see* Doc. 100-6.[4]

On April 8, 2026, Elik demanded that Plaintiffs withdraw their "blanket" confidentiality objections.  In response, Plaintiffs asked Elik to identify the requests where he believed the confidentiality objection was improperly asserted.  At the time, Elik identified only three requests

---

[2] Notably, Elik's responses to Plaintiffs' document requests did not specify a "date certain" for the completion of Elik's production.

[3] Plaintiffs served the requests on January 8, 2026, and Elik responded on March 4, 2026.

[4] It was not until April 14, 2026, that Elik finally provided a proposed redline in response to Plaintiffs' proposed protective order.  Given that Elik's redline makes numerous material revisions to the standard protective order proposed by Plaintiffs, Plaintiffs and Elik are scheduled to meet and confer about the protective order on April 15, 2026.  If the parties are unable to resolve their disagreement, Plaintiffs will promptly bring the issue to the Court's attention.

(RFP Nos. 52-54(1)).  Before Elik filed the Motion, Plaintiffs expressly confirmed in writing that they would withdraw those three confidentiality objections.  *See* Doc. 100-3 at 5.

In the Motion, Elik specifically challenges, for the first time, Plaintiffs' confidentiality objections to RFP Nos. 8-12.   After consideration, Plaintiffs agree to withdraw those confidentiality objections.  However, Elik's motion goes much further.  Elik seeks to overrule, without explanation or citation to authority, Plaintiffs' confidentiality objections to more than a dozen other Requests, including those seeking Plaintiffs' technical data security reports and communications (RFP Nos. 20-21, 41-42), Plaintiffs' nonpublic customer exit surveys (RFP Nos. 22, 24-38), and Plaintiffs' software information (RFP Nos. 57-58, 61-65).  Elik's request to prevent Plaintiffs from designating those categories of documents as confidential is both overbroad and premature.  Any confidentiality disputes should be addressed on a document-by-document basis.

**D.      There Is No Dispute Regarding Most of the Identified Requests.**

Elik is not entitled to any relief with respect to the following Requests (*see* Mot. 3-4) because Plaintiffs have agreed to produce responsive documents or do not possess responsive documents:

- RFP Nos 1-3, 7-12, 16, 18-21, 23-33, 46, and 60: Plaintiffs have agreed to produce responsive documents, *see* Doc. 100-1;

- RFP Nos. 35, 41-42, 54-55, 57-58, and 64-65: Plaintiffs agreed, during the meet-and-confer process, to produce responsive documents, *see, e.g.,* Doc. 100-3 at 5; and

- RFP Nos. 4, 44-45, 56, 59: Plaintiffs do not possess responsive documents, *see, e.g.,* Doc. 100-3 at 5.

**E.      Plaintiffs' Limited Objections Are Well-Founded.**

It appears that there is a legitimate dispute regarding only four out of 66 requests—namely, RFP Nos. 61-63 and 66.

RFP Nos. 61-63 seek the "complete commit history" and other related files for the DEFCAD website and all of Plaintiffs' applications and services ancillary to the DEFCAD website.  As explained in the attached declaration, a "commit history" is effectively a ledger

showing all changes made to Plaintiffs' software code over time.  Ex. 1, Walliman Decl. ¶ 5. Plaintiffs' software code is private, proprietary, and frequently modified in the ordinary course of business.  *Id.* ¶ 6.  It would likely require dozens of hours of engineer labor to produce the software code in textual form, which could span ***hundreds of thousands*** of pages.  *Id.* ¶ 7.  Because Plaintiffs have agreed to produce commit histories that are more narrowly tailored to the issues in this case, *see* RFP Nos. 64-65, Plaintiffs' objections to RFP Nos. 61-63 should be sustained.[5]

Elik also seeks all of Plaintiffs' communications relating to a trademark infringement lawsuit that was litigated for two years, from 2022-2023.  *See* RFP No. 66 ("From January 1, 2022, to present, produce documents sufficient to identify the contents of any documents exchanged or communications with or pertaining to the Everytown lawsuit.").  Elik contends that this request is relevant because he believes that Plaintiffs provided personal information to an anti-gun organization in connection with that lawsuit.  Mot. 5.  But RFP No. 1 is grossly overbroad because it seeks all communications about the lawsuit, including privileged communications between Plaintiffs and their counsel as well as confidential documents exchanged during discovery.  In any event, the issue of whether Plaintiffs provided "personal information to an anti-gun organization" in connection with that lawsuit is simply irrelevant.  Even if true, it would not prove that DEFCAD's database was "hacked" and "dumped."  Accordingly, Plaintiffs' objections to RFP No. 66 should be sustained.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion and award to Plaintiffs their reasonable fees incurred in defending the Motion.

---

[5] It would also be incredibly dangerous for Plaintiffs to produce their software code to defendants, notwithstanding a protective order.  After being sued, defendants have, upon information and belief, unsuccessfully attempted, and solicited third party actors to attempt, to hack and "dump" DEFCAD's database to prove their challenged representations to be true.  Ex. 1 ¶ 10.  If given Plaintiffs' entire commit history, defendants could use an artificial intelligence program to help exploit any data security vulnerabilities with Plaintiffs' website and applications.  *See id.* ¶¶ 8-12.

Dated:  April 14, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*