UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas
corporation; DD FOUNDATION, LLC, a
Texas limited liability company; and,
DEFCAD, INC., a Texas corporation,

*Plaintiffs,*

v.

JOHN   ELIK;   MATTHEW   LAROSIERE;
ALEXANDER      HOLLADAY;      PETER
CELENTANO; JOSH KIEL STROKE;  JOHN
LETTMAN; and ZACKARY CLARK,

*Defendants.*

_____/

## DEFENDANT JOHN ELIK'S MOTION TO COMPEL PLAINTIFFS' COMPLETE PRODUCTION, SEARCH CERTIFICATIONS, AND PROPER RFA RESPONSES

Because Judge Matthewman's discovery procedures limit discovery motions to five pages, Defendant has had to compress this dispute. Defendant has substantial materials evincing Plaintiffs' withholding of responsive documents. Defendant respectfully requests leave for 21-page briefing, with a response and reply on a schedule set by the Court, if the Court deems such would be helpful.

John Elik moves under Rules 26, 34, 36, and 37 for an order compelling Plaintiffs to conduct current, reasonable, request-specific searches; produce responsive materials to mirrored RFP Nos. 4, 16, 20, 21, 23, 41, 50, and 66; provide sworn search certifications; and amend their responses to RFA Nos. 126–128.

After certifying that their production was complete, Plaintiffs were shown that materials provided in the previous Middle District copyright action were responsive to some requests and not produced here. Rather than conduct a reasonable search, Plaintiffs elected to dump the entirety of their prior productions from the Middle District copyright action on Defendants. But those materials were not gathered in response to the present requests. (Ex. E at 8–9). Plaintiffs cannot satisfy Rule 34 by re-serving a stale production from a materially different case and calling it a search.[1]

Plaintiffs' prior counsel represented that Defense Distributed's Slack chat alone contained more than 1.5 million messages. (Ex. C at 1). Yet Plaintiffs produced only old Slack materials from the prior action. Prior counsel, who were sanctioned for their deficient searches, also admitted that they never bothered to search Plaintiffs'

---

[1] Defendant notes Plaintiffs and their counsel were sanctioned for the deficiencies in the searches they conducted, and the productions were never updated. *See* (Exs. B, D).

Slack messages involving fewer than 3 recipients. (Ex. A at 3–4). Plaintiffs have not shown that any Plaintiff searched for these materials here, and none were produced.

## ARGUMENT

Rule 26(g) requires discovery responses to be certified after a reasonable inquiry. Rule 34 requires a party to produce responsive documents and ESI in its possession, custody, or control, and objections must state whether responsive materials are being withheld. Rule 37 permits an order compelling production where a party fails to produce documents or gives evasive or incomplete responses. Rule 36 requires a party to admit, deny, or specifically qualify the matter requested.

### I.   Plaintiffs must conduct real searches and certify them.

Plaintiffs' responses are formulaic and non-entity-specific. RFP No. 4 seeks documents underlying the alleged profit-sharing between Plaintiffs. Plaintiffs responded that no responsive documents exist after "diligent search and reasonable inquiry." (Ex. F at 2–3). But Wilson testified that membership revenue flows through DD Foundation and that "all membership income flows to Defense Distributed." (Tr. of Wilson Dep. Vol. II at 9–10). He later testified that Defense Distributed receives virtually all Legio revenue. (Tr. of Wilson Dep. Vol. II at 30–31). That should generate records, yet none were produced.

RFP Nos. 20 and 21 seek external and internal technical investigations concerning Plaintiffs' website and code security. Plaintiffs responded that they produced documents "if any." (Ex. F at 7–8). But Wilson testified in his personal capacity that independent security experts reviewed Plaintiffs' platforms, including websites and back-end systems, and specifically identified vendors from which no

materials were produced. (Tr. of Wilson Dep. Vol. I at 77–78). Those materials bear directly on the truth of the alleged hack. *See also* (Doc. 33) (identifying similar materials, which were not produced).

RFP No. 41 seeks communications with or mentioning "JG." (Ex. F at 15–16). Wilson testified that, in anticipation of litigation, he communicated with J.G. by Signal concerning the FEDCAD meme and whether J.G. had hacked or leaked anything. (Tr. of Wilson Dep. Vol. II at 240–41). Ex. H confirms J.G. responded to Wilson's Signal message. (Ex. H at 1). No Signal messages were produced.

## II.    RFP No. 23 is independently compelling.

RFP No. 23 seeks records showing how the FEDCAD meme became accessible on Defcad.com, including identities of uploaders, reviewers, approvers, and editors, logs, IP addresses, browser information, and communications. (Ex. F at 8–10). Plaintiffs' response is not credible.

Plaintiffs admit the FEDCAD meme was hosted on Defcad.com and publicly accessible, admit they knew this before the action and before discovery, and admit they will continue hosting it. (Ex. I at 8, 15). DEFCAD's own Terms of Service state that contribution records, including personal information and sign-off, are "maintained indefinitely." (Ex. M at 5). Yet Plaintiffs produced no upload receipt, sign-off, log, metadata, IP/browser information, review communication, approval communication, edit record, or deletion record.

The omission is material. Wilson testified as corporate representative that he believed Thomas Odom uploaded the meme without Wilson directing him. (Tr. of Wilson Dep. Vol. II at 258–60). But Wilson's own draft of his anti-copyright manifesto

3

already contemplated a "DEFCAD link to FEDCAD meme" in a footnote discussing the meme. (Ex. L at 2). That either impeaches Wilson's testimony or proves the production is incomplete. Either way, Plaintiffs must search and produce RFP No. 23 materials.

### III.   RFP Nos. 50 and 66 are contradicted by Plaintiffs' production.

RFP No. 50 seeks records sufficient to establish each time private, sensitive, confidential, or personally identifying information in Plaintiffs' custody was publicly posted. Plaintiffs say no responsive documents exist. (Ex. F at 19–20). But Plaintiffs produced PLTFS00002480, showing a public-facing post or draft containing private banking information, including account and routing information. (Ex. J at 1). That is facially responsive.

RFP No. 66, as modified by the Court's Order (Doc. 115) seeks communications concerning personal identifying information with anti-gunner groups besides those from discovery in the Everytown lawsuit. Plaintiffs say no responsive documents exist. (Ex. F at 30–31). But Plaintiffs produced communications where such information was shared with anti-gunner groups, including Wilson forwarding a DDLegio post and DOJ release and calling it the "First major 3D gun developer prosecution." (Ex. K at 1). Plaintiffs' "no documents" response cannot be squared with their own production absent an updated search and response.

### IV.   Plaintiffs' RFA responses are evasive.

RFA Nos. 126–128 ask Plaintiffs to admit that Wilson paid a minor for sexual relations. Plaintiffs objected as "harassing," "improper," and not likely to lead to admissible evidence, then admitted only that Wilson was charged with sexual assault

and pleaded guilty to Injury to a Child. (Ex. I at 61–62). That does not admit, deny, or qualify the facts requested. Plaintiffs placed the truth or falsity of the FEDCAD meme, which mentions Wilson's alleged sexual relations with a 16-year-old, directly at issue. This could have been resolved at the deposition, but Mr. Wilson chose to be evasive there too. (Tr. of Wilson Dep. Vol. I at 202–04). Plaintiffs must answer RFA Nos. 126–128 directly.

## **RELIEF REQUESTED**

Defendant requests an order requiring Plaintiffs to: (1) conduct current searches for mirrored RFP Nos. 4, 16, 20, 21, 23, 41, 50, and 66; (2) search Slack chats, Signal, texts, emails, website logs, security/vendor files, accounting records, banking records, and personal devices or accounts used for Plaintiff business communications; (3) produce responsive materials; (4) order Plaintiffs to submit an affidavit detailing how and where they searched for responsive documents; (5) provide sworn declarations identifying custodians of the search, search terms, methods, any inaccessible or deleted ESI; (6) amend RFA Nos. 126–128; and (7) award expenses under Rule 37(a)(5).

Respectfully submitted,  DATED April 11, 2026

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Defendants Elik, Stroke, Lettman, and Clark.*

5

## Local Rule 7.1(a)(3) Certification

Pursuant to S.D. Fla. L.R. 7.1(a)(3), undersigned certifies that he conferred in good faith with Plaintiffs' counsel through written correspondence and in-person on May 6, 2026. The parties were unable to resolve the issues raised in this motion.

Respectfully submitted,

*/s/ Matthew M. Larosiere*

Matthew M. Larosiere, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 14th day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

7