UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et. al.,

*Plaintiffs,*

v.

JOHN ELIK, et al.,

*Defendants.*

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

Defendants oppose Plaintiffs' Motion to Strike the First, Second, Third, and Eighth Affirmative Defenses. (Doc. 130). The Motion should be denied.

Plaintiffs' motion depends almost entirely on the premise that the Court's prior order denying dismissal, (Doc. 90), finally and conclusively adjudicated Defendants' publication-based defenses. It did not. The order denied a pre-answer Rule 12(b)(6) motion. It did not decide the factual record, the publication chronology, Defendants' media status, the truth or substantial truth of the challenged statements, whether the alleged statements were actionable fact or protected opinion, or whether Plaintiffs seek duplicative damages for the same publication under different labels.

Nor is Doc. 90 immutable. Under Rule 54(b), "any order or other decision" adjudicating fewer than all claims or parties' rights "may be revised at any time" before final judgment. Fed. R. Civ. P. 54(b). The Eleventh Circuit recognizes the district court's "plenary power" to reconsider, revise, alter, or amend nonfinal orders before final judgment. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995). Thus, Plaintiffs' insistence that the issue is "already determined" is procedurally overstated and substantively wrong.

The affirmative defenses preserve defenses to claims and damages Plaintiffs themselves base on allegedly false online publications: the "FEDCAD" meme, alleged statements about hacking, doxxing, data dumping, and Iranian hosting, and alleged republication online. (Doc. 49 ¶¶ 24–41, 55, 65–69). Plaintiffs cannot premise all three claims on supposedly false publications, then strike defenses directed to falsity,

1

publication, accrual, single-publication damages, and protected commentary as irrelevant.

## I. Legal Standard

Rule 12(f) permits a court to strike an "insufficient defense," but striking an affirmative defense is a drastic remedy, strongly disfavored unless the defense has no possible relation to the controversy and its presence would prejudice the movant. *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962); *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318–19 (S.D. Fla. 2005). A defense should not be stricken unless it is patently frivolous or clearly invalid as a matter of law. *Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1191 (S.D. Fla. 2019).

That standard is especially important here. Plaintiffs do not identify any concrete prejudice. They instead ask the Court to extend an interlocutory ruling beyond its procedural setting and strike defenses before discovery has tested the statements, dates, publications, speakers, context, truth, and damages theories at issue.

## II. Doc. 90 Did Not Finally Resolve the Affirmative Defenses

Plaintiffs' primary argument is that Doc. 90 already rejected Chapter 770 and the single-action rule, making the First, Second, and Third Affirmative Defenses "clearly invalid." (Doc. 130 at 2 3). But Doc. 90 was not a Rule 12(f) ruling. It denied dismissal based on the allegations then before the Court. But affirmative defenses often depend on facts not pleaded in the complaint, including dates of publication, the identity and role of the speaker, the medium used, whether a challenged publication

is the first publication or a republication, and whether the plaintiff seeks overlapping damages for the same publication under multiple theories.

Plaintiffs also overread Doc. 90's RICO discussion. Doc. 90 stated that "coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud," citing *Hartman v. Does 1 2*, No. 23-13473, 2025 WL 398846 (11th Cir. Feb. 4, 2025). (Doc. 90 at 4). *Hartman* does not support the sweeping proposition Plaintiffs drew from it. *Hartman* was an unpublished, post-trial Rule 50 appeal. The Eleventh Circuit in *Hartman* expressly stated that, "[b]eyond the issue of continuity," the court "express[ed] and impl[ied] no opinion" on whether the evidence otherwise satisfied elements of RICO. *Hartman*, No. 23-13473, slip op. at 16–17. Respectfully, by taking Plaintiffs at their word, this Court adopted an unsupportable and clearly erroneous reading of *Hartman*.

Nonetheless, Plaintiffs rely on Doc. 90 as though it conclusively decided the legal nature of every allegedly false publication in this case. It did not. The issue on this Motion is not whether Defendants will ultimately prevail. The issue is whether their defenses are so clearly invalid that they should be stricken at the pleadings stage. They are not.

### III.  The First, Second, and Third Affirmative Defenses Are Not Clearly Invalid

Defendants' First, Second, and Third Affirmative Defenses are carefully framed. They apply only "[t]o the extent" Plaintiffs' claims are founded upon allegedly false or defamatory publications, a single publication, exhibition, or utterance, or multiple legal theories seeking recovery for harm arising from the same publication.

(Doc. 116 at 10). Defendants need not show at the pleading stage that Chapter 770 disposes of every claim in the case. A partial defense is still a defense. See Fed. R. Civ. P. 8(d)(2)–(3).

A. The First Affirmative Defense preserves a condition-precedent issue.

The First Affirmative Defense asserts that, to the extent Plaintiffs' claims are founded upon allegedly false or defamatory publications or broadcasts, Plaintiffs failed to provide the presuit notice required by section 770.01. (Doc. 116 at 10). Plaintiffs argue this defense is legally impossible because they did not plead a defamation count. That is too broad.

Plaintiffs' own pleading and motion practice frame this case around supposedly false public communications. The SAC alleges Defendants published and amplified the "FEDCAD" meme and related statements online, supposedly in commercial contexts and for purposes of diverting business. (Doc. 49 ¶¶ 24–41, 55, 65–69). Plaintiffs' opposition to dismissal similarly described the case as one about false online content intended to scare customers away from DEFCAD. (Doc. 70 at 1–2, 11–13). Whether any publication, speaker, or platform falls within section 770.01's "newspaper, periodical, or other medium" language, and whether any Defendant is entitled to the protections afforded to qualifying media defendants, is at minimum a fact-dependent issue.

Florida law recognizes that internet publications may fall within section 770.01. *See Comins v. VanVoorhis*, 135 So. 3d 545, 557–58 (Fla. 5th DCA 2014). *Comins* held that a blog operated to disseminate news or analytical comment on

4

matters of public concern can be an "other medium" within the statute. *Id*. That is enough to defeat Rule 12(f).

At minimum, the First Affirmative Defense has a possible relation to the controversy. Plaintiffs may dispute whether section 770.01 ultimately applies, but a disputed defense is not a legally insufficient defense.

B. <u>The Second and Third Affirmative Defenses are even stronger because sections 770.05 and 770.07 expressly reach "any other tort" founded on a publication.</u>

Plaintiffs treat all Chapter 770 defenses as if they rise and fall with § 770.01. They do not. § 770.05 is broader. It provides that "[n]o person shall have more than one choice of venue for damages for libel or slander, invasion of privacy, or any other tort founded upon any single publication, exhibition, or utterance," and that recovery "shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." Fla. Stat. § 770.05. § 770.07 then provides that the cause of action for damages founded upon a single publication, exhibition, or utterance "as described in s. 770.05" accrues at the time of first publication. Fla. Stat. § 770.07.

That statutory text is not limited to a complaint that includes a count captioned "defamation." It expressly reaches "any other tort" founded upon the same publication. Plaintiffs' contrary position would allow a plaintiff to evade publication-based limitations by omitting a defamation count while suing for the same alleged false publication under other labels.

Florida law does not permit that. In *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, the Fourth District explained that the single-action rule prevents plaintiffs from circumventing defenses to defamation by recasting the same

5

publication-based facts into other causes of action seeking the same harm. 831 So. 2d 204, 208 (Fla. 4th DCA 2002). *Gannett Co. v. Anderson* likewise rejected an effort to avoid defamation limitations through relabeling. 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006). And in *Tymar Distribution LLC v. Mitchell Group USA, LLC*, Judge Altonaga rejected the precise argument Plaintiffs make here  that the single-action rule is inapplicable merely because no defamation count is pleaded. 558 F. Supp. 3d 1275, 1287–89 (S.D. Fla. 2021). *Tymar* held that "it does not matter whether the defamation claim fails, succeeds, or is not brought at all," because strategic non-pleading of defamation is the type of gamesmanship *Callaway* sought to prevent. *Id*. at 1288.

Those authorities at least establish a substantial legal dispute. Plaintiffs may argue this Court in Doc. 90 read *Callaway* differently at the motion-to-dismiss stage. But Rule 54(b) permits revision of nonfinal rulings, and Rule 12(f) does not permit striking a defense unless it is clearly invalid. Given the text of sections 770.05 and 770.07, *Callaway*, *Gannett*, and *Tymar*, the Second and Third Affirmative Defenses are not clearly invalid.

C. <u>Plaintiffs' federal claims do not justify striking partial state-law and damages defenses.</u>

Plaintiffs argued in opposition to dismissal that state defamation doctrines cannot bar federal RICO or Lanham Act claims. (Doc. 70 at 11). Even if that premise were accepted, it would not justify striking the defenses. Defendants' affirmative defenses are pleaded "in whole or in part." (Doc. 116 at 10). They apply at minimum to Plaintiffs' Florida tortious-interference claim, to publication-based damages, to

6

duplicative recovery, and to the extent Plaintiffs attempt to recover multiple times for the same alleged publication-based harm.

A defense need not defeat every count to survive Rule 12(f). If it may limit recovery, narrow damages, affect accrual, or defeat one claim in part, it should remain.

### IV.   The Eighth Affirmative Defense Is Directly Relevant to Every Claim

Plaintiffs also move to strike the Eighth Affirmative Defense, which asserts that the challenged statements and publications were "true, substantially true, nonactionable opinion, rhetorical hyperbole, or otherwise protected commentary," and specifically identifies statements concerning "alleged hacking, Iranian hosting, and doxxing." (Doc. 116 at 11 12). Plaintiffs call these "defamation defenses." (Doc. 130 at 3–4). That is wrong.

Truth, substantial truth, opinion, and rhetorical hyperbole go directly to Plaintiffs' claims. Plaintiffs' Lanham Act claim requires a false or misleading statement of fact in commercial advertising or promotion. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308–09 (11th Cir. 2010). If the challenged statements were true, substantially true, opinion, hyperbole, or protected commentary, they are not actionable Lanham Act false advertising.

The same is true for RICO. Plaintiffs' RICO theory depends on characterizing online statements as wire fraud. But wire fraud requires a scheme to defraud involving material falsehood or deception. See 18 U.S.C. § 1343; *Bridge v. Phoenix*

*Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). Truth, substantial truth, opinion, and hyperbole are therefore not collateral "defamation defenses"; they negate the alleged fraudulent character of the supposed predicate acts.

They also matter to tortious interference. Plaintiffs allege that Defendants intentionally and unjustifiably interfered with business relationships by publishing false statements. (Doc. 49 ¶¶ 63–69). If the challenged statements were true, substantially true, opinion, hyperbole, or protected commentary, that bears directly on whether any interference was wrongful or unjustified.

Nor can Plaintiffs credibly claim lack of notice. The Eighth Affirmative Defense identifies the precise categories of statements at issue: hacking, Iranian hosting, and doxxing. (Doc. 116 at 11 12). Those are the same categories Plaintiffs plead throughout the SAC. (Doc. 49 ¶¶ 24–41, 55, 65). Plaintiffs know exactly what the defense addresses.

Finally, even if the Court concludes that some portion of the Eighth Affirmative Defense is more properly characterized as a denial than an affirmative defense, the remedy is not striking it. Courts routinely treat mislabeled defenses as denials when they negate an element of the plaintiff's claim. *See Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007). "In attempting to controvert an allegation in the complaint, a defendant occasionally may label his negative averment as an affirmative defense rather than as a specific denial." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §

8

1269 (3d ed. 2004). The Eighth Affirmative Defense gives fair notice and is central to the merits

## V.  None of Plaintiffs' Authorities Support Striking the Affirmative Defenses

Plaintiffs rely on cases striking defenses that had already been explicitly rejected or were pleaded as bare legal conclusions. (Doc. 130 at 3–4). Those cases do not control here.

This is not a situation where Defendants copied a defense the Court finally adjudicated after factual development. Doc. 90 was an interlocutory pleading-stage order. It did not address Defendants' Answer, did not construe Rule 8(d)'s allowance for alternative defenses, did not decide the factual predicates for sections 770.01, 770.05, or 770.07, and did not adjudicate the truth or character of the alleged false statements.

Nor are these defenses bare conclusions. The First through Third Affirmative Defenses identify the statutes, the condition precedent, the single-publication theory, the accrual theory, and the alleged "FEDCAD" meme. (Doc. 116 at 10). The Eighth identifies the precise subjects of the challenged statements: hacking, Iranian hosting, and doxxing. (Doc. 116 at 11–12). That is enough fair notice for Rule 8.

## VI.  Alternatively, Leave to Amend Should Be Granted

If the Court concludes any defense should be clarified, separated, or supplemented with additional factual matter, the proper remedy is leave to amend, not striking with prejudice. Fed. R. Civ. P. 15(a)(2). Plaintiffs have not shown futility,

9

prejudice, or bad faith. At most, they identify disputes over the scope and application of defenses that can be refined by amendment and tested after discovery.

## CONCLUSION

Plaintiffs' Motion to Strike should be denied. The challenged affirmative defenses are conditional, tied directly to Plaintiffs' publication-based theories, and are not clearly invalid as a matter of law. Alternatively, Defendants request leave to amend any defense the Court finds insufficiently pleaded.

Respectfully submitted,
DATED:  May 21, 2026

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 21st day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Matthew Larosiere

Matthew Larosiere, Esq.
Fla. Bar № 1005581

11