UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et. al.,

        *Plaintiffs,*

v.

JOHN ELIK, et al.,

        *Defendants.*

_____/

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

i

## TABLE OF CONTENTS

**INTRODUCTION AND SUMMARY OF ARGUMENT** ........................................... 1

**ARGUMENT** ................................................................................................... 3

    I.    PLAINTIFFS CANNOT PROVE THAT DEFENDANTS CAUSED RECOVERABLE DAMAGES .......................................................................... 3

        A.    Tyra's Model Does Not Measure Injury Caused by Actionable Conduct. ..... 3

        B.    Plaintiffs' Own Publication of the Meme Defeats Their Causal Theory ....... 5

        C.    The Customer Exit Evidence Does Not Create a Triable Issue. ................... 7

        D.    Plaintiffs Cannot Recover Ghost Gunner, Defense Distributed, or DD Foundation damages. ............................................................................... 8

    II.    COUNT I FAILS BECAUSE PLAINTIFFS CANNOT PROVE A RICO CONSPIRACY THAT PROXIMATELY CAUSED THEIR INJURY. ................. 9

        E.    Plaintiffs Cannot Prove RICO Proximate Cause .......................................... 9

        F.    Plaintiffs cannot prove a wire-fraud scheme or fraudulent intent ............. 11

        G.    Plaintiffs Cannot Prove a RICO Agreement ............................................... 12

    III.    COUNT II FAILS BECAUSE PLAINTIFFS CANNOT PROVE FALSE ADVERTISING UNDER THE LANHAM ACT. ...................................................... 13

        H.    Plaintiffs Cannot Prove Commercial Advertising or Promotion .............. 13

        I.    Plaintiffs Cannot Prove Deception, Materiality or Injury ......................... 15

        J.    Plaintiffs Cannot Prove any Defendant is Plaintiffs' Commercial Competitor. ................................................................................................. 16

    IV.    COUNT III FAILS BECAUSE PLAINTIFFS CANNOT PROVE TORTIOUS INTERFERENCE BY LAROSIERE OR HOLLADAY. ................... 17

    V.    ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED LIMITING PLAINTIFFS' DAMAGES. ............................................. 19

    VI.    §770 BARS THIS ACTION. ......................................................................... 20

**CONCLUSION** ............................................................................................... 20

**REQUEST FOR HEARING** .......................................................................... 22

**Local Rule 7.1(a)(3) Certification** ................................................................ 22

**CERTIFICATE OF SERVICE** ....................................................................... 23

Defendants John Elik, Matthew Larosiere, Alexander Holladay, Josh Kiel Stroke, John Lettman, and Zackary Clark move for summary judgment on all claims asserted in Plaintiffs' Second Amended Complaint. Alternatively, Defendants move for partial summary judgment on Plaintiffs' claimed Ghost Gunner, Defense Distributed, and DD Foundation damages, and on Count III.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs alleged that Defendants conducted a coordinated commercial misinformation campaign that caused more than $1 million in lost profits. Discovery did not produce evidence of that claim. Plaintiffs' proof is now fixed. The resulting record does not establish the essential elements of RICO conspiracy, Lanham Act false advertising, or tortious interference. Plaintiffs do not identify a customer who saw any actionable statement by any Defendant and then stopped doing business with Plaintiffs. Plaintiffs cannot identify any admissible evidence connecting Defendants' alleged conduct to lost sales. Instead, they rely on Jason Tyra's report and generalized allegations. SMF ¶¶ SMF ¶¶ 24–32, 46, 48–49, 52–57, 59, 61, 75, 85, 87, 89.

Tyra's opinion does not fill the gap. Tyra claims to have analyzed the alleged economic effect of the FEDCAD meme's public existence. SMF ¶¶ 42, 54–57. The totality of his research and investigation was comparing sales numbers before and after a date set by his client, and claiming that 100% of the difference must have been because of the meme's existence generally. SMF ¶¶ 53–59, 61, 72–76. Tyra expressly testified that his damages conclusion did not depend on who caused them. SMF ¶ 76. That is not evidence of causation by these Defendants.

1

The problem is compounded by Plaintiffs' conduct, who themselves hosted the same meme on their websites during the alleged damages period, amassing thousands of views. SMF ¶¶ 33–34, 36–37. Tyra did not disaggregate that publication from any alleged harm. SMF ¶¶ 42–45, 54–57, 72–73, 75–76. Nor could he. His model treats the meme's public availability as the cause of damages, while Plaintiffs themselves made the meme publicly available and advertised a download for the meme to their 150,000-strong customer email list.

Count I fails because Plaintiffs lack evidence that any RICO predicate proximately caused injury to Plaintiffs' business or property. Count II fails because Plaintiffs cannot prove commercial advertising or promotion, or resulting injury. Count III fails because Plaintiffs identify no actual, identifiable business relationship known to Larosiere or Holladay that would have been completed absent any alleged interference by them and no damages calculation tied to such a relationship. Summary judgment should be entered for Defendants.

### LEGAL STANDARD

Summary judgment is required when the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant shows an absence of evidence supporting an essential element on which the nonmovant bears the burden, the nonmovant must come forward with evidence sufficient for a reasonable jury to find in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986).The Court need not accept conclusory inferences or unsupported speculation. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla" of evidence does not create a

2

genuine issue for trial. *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012). Nor may the nonmovant "survive summary judgment by relying upon conclusory assertions." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Summary judgment is appropriate where the nonmovant's proof is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52 (1986).

<u>ARGUMENT</u>

**I.     <u>PLAINTIFFS CANNOT PROVE THAT DEFENDANTS CAUSED RECOVERABLE DAMAGES.</u>**

All three claims require causation and injury. Plaintiffs must prove that Defendants' actionable conduct caused legally recoverable harm. They cannot.

Plaintiffs hang their hats on Tyra's report, the exit surveys which do not mention the meme, and vague allusions to Collier and Goldhaber (of which they have not produced any documents identifying a concrete business relationship). (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11.) None of that evidence establishes a causal chain from a Defendant's actionable conduct to a specific lost customer, lost sale, lost relationship, or lost profit.

A. <u>Tyra's Model Does Not Measure Injury Caused by Actionable Conduct.</u>

Tyra was retained to assess the economic effect of the FEDCAD meme on Plaintiffs' business. (Ex. G.) But that is not the same as measuring damages caused by Defendants' actionable conduct. Tyra did not prepare regression models, reviewed no customer data, or any analytics. (Ex. F at 9:11–22). He is not a marketing expert. (Ex. F at 11:18–20.) He took no interest in who created the meme, who posted it, or

how many people saw it. (Ex. F at 14:10–18.) He did not identify a single customer who saw the FEDCAD meme and chose not to do business with Plaintiffs. (Ex. F at 31:3–11). He did not attempt to determine whether any customer actually saw the meme. (Ex. F at 107:16–22). Nor did he verify that the sales figures Plaintiffs provided. (Ex. F at 30:6–22.) He did not review materials concerning the factual veracity of the claims made in the FEDCAD meme. (Ex. F at 62:9–14). He testified that Defendants' alleged operation of a competing website was not an integral part of his report, and that, to the extent the report made a factual claim about what Defendants did, his conclusions centered on what the meme did. (Ex. F at 65:9–16).

Most importantly, Tyra testified that his damages conclusion did not depend on who caused the damages. (Ex. F at 137:7–12). That admission defeats Plaintiffs' ability to use his opinion as proof of causation by these Defendants. A damages model that measures only the abstract market effect of a publicly available meme does not prove that Defendants caused Plaintiffs' damages.

The law requires more. In *Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.*, the court granted summary judgment because the plaintiff could not establish RICO proximate causation and because its damages model did not fit its liability theory. 502 F. Supp. 2d 1237, 1238–39 (S.D. Fla. 2007), aff'd, 582 F.3d 1227 (11th Cir. 2009). The Eleventh Circuit affirmed exclusion of the damages model because the expert's methodology did not "fit" the liability theory. *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233–34 (11th Cir. 2009). The same defect exists here. Plaintiffs' liability theory depends on actionable conduct by

4

Defendants, but Tyra's model measures alleged losses from the meme's public availability, regardless of source, or Plaintiff's own dissemination.

*TocMail, Inc. v. Microsoft Corp.* confirms the same principle in the Lanham Act context. 67 F.4th 1255 (11th Cir. 2023). There, the Eleventh Circuit held that theoretical lost-sales assertions and an expert's hypothetical market-capture calculation did not establish injury where the plaintiff lacked evidence that customers would have purchased from it but-for the challenged advertising. *Id*. at 1263–65. Plaintiffs have the same problem here. They do not identify, and Tyra explicitly disclaimed, any evidence that any customer would have purchased from Plaintiffs but for a Defendant's actionable statement. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11; Ex. F at 31:3–11; 107:16–22.)

Nor can Plaintiffs rely on an expert's *ipse dixit* to avoid Rule 56. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must assist the trier of fact by logically advancing a material aspect of the case. *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004). A damages model that ignores the causal question the law requires does not come close to sufficing.

B.  <u>Plaintiffs' Own Publication of the Meme Defeats Their Causal Theory</u>

Plaintiffs' causation theory is even weaker because Plaintiffs themselves hosted the allegedly harmful meme. Wilson testified that the FEDCAD meme was

available on Plaintiffs' website. (Ex. C at 71:12–22.) Wilson also testified that he had ultimate control over the DEFCAD website. (Ex. C at 71:23–72:4.) After initially denying it (Ex. AA at RFA No. 73), Plaintiffs ultimately admitted that their employee uploaded the FEDCAD meme to Defcad.com, and that one of the DEFCAD-hosted copies received thousands of views. (Ex. U at Rog. Nos. 13–16). Plaintiffs even sent out an email blast to the 150,000 members of their email list which linked recipients to a page where they could download the meme. No commentary or refutation regarding the meme's claims were included with this download – just a copy of the meme that Plaintiffs themselves amplified to their own customers. (Ex. J at ¶12-19).

Tyra testified that his analysis was based on the meme existing and being publicly available, and that he did not perform any analysis with respect to where it was available. (Ex. F at 24:3–17). He agreed that a plain posting of the FEDCAD meme on DEFCAD's own website, without commentary or refutation, would have a significant effect on customer purchasing decisions. (Ex. F at 44:8–22; 45:1–25; 46:1–2.) He was then shown a screenshot of the meme hosted on Defcad.com and did not identify commentary or refutation surrounding that posting. (Ex. F at 46:10–22.)

Yet Tyra did not disaggregate Plaintiffs' own publication from any alleged damages. (Ex. F at 24:3–17; 87:8–17; 88:3–25.) His model therefore does not measure damages caused by Defendants. It measures, at most, a supposed market reaction to the public existence of a meme that Plaintiffs themselves distributed.

A plaintiff must show that the defendant's conduct caused the claimed injury. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)

(Lanham Act plaintiff must show economic or reputational injury "flowing directly from the deception wrought by the defendant's advertising"); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (civil RICO requires a direct relation between injury and injurious conduct). Plaintiffs' publication shatters the causal chain.

C. The Customer Exit Evidence Does Not Create a Triable Issue.

Plaintiffs' customer exit/cancellation evidence also fails to establish causation. Plaintiffs produced customer exit responses, but those responses include numerous reasons unrelated to the FEDCAD meme, including cost, inability to access files, duplicate subscriptions, lack of use, billing issues, and personal financial hardship. (Ex. E.) Wilson reviewed customer exit responses during his deposition. (Ex. D at 107:20–108:25). He admitted that he created a "drop-down" option specifically mentioning "FEDCAD." (Ex. D at 98:4-98:8). Even so, of 235 responses, the entire set only contains seventeen instances of the word "FEDCAD." (Ex. E). Sixteen of those instances are the "drop-down" option Plaintiffs deliberately created, with the only other exit survey containing the word simply says "didn't have enough time to use fedcad." (Ex. E at 22). None of the seventeen reference the meme. Despite testifying that all of the customers represented in the survey were likely lost because of the meme, Wilson testified that he had no reason to think a customer who cancelled because of personal financial hardship left because of the meme. (Ex. D at 107:21–108:4) *but see* (Ex. E at 5). He also testified that it was unlikely that a customer who stated he remained "a huge fan" and cancelled because he did not use the service often enough left because of the meme. (Ex. D at 108:5–15) *but see* (Ex. E at 5).

7

Plaintiffs' discovery responses do not identify testimony from any exit-survey respondent stating that he or she saw a statement by a Defendant and cancelled because of that statement. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11). The exit responses do not identify a specific Defendant's actionable publication, do not establish reliance, and do not quantify damages. They cannot carry Plaintiffs' burden on causation or injury.

D. Plaintiffs Cannot Recover Ghost Gunner, Defense Distributed, or DD Foundation damages.

Neither the FEDCAD meme nor the Complaint mentions the Ghost Gunner or Defense Distributed. (Ex. F at 63:7–10; 63:15–21). Yet Tyra's report—Plaintiffs' sole damage calculation—attributed 95% of the damages caused by the meme to lower sales of the Ghost Gunner manufacturing machine tool. (Exs. G, G-2). Plaintiffs have not identified evidence showing that any purchaser declined to purchase a Ghost Gunner because of any statement attributed to any Defendant. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11). Plaintiffs cannot recover damages for things not mentioned in the challenged meme or complaint. They have no such evidence.

The Lanham Act requires injury flowing directly from deception caused by the defendant's advertising, which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Likewise, civil RICO does not allow recovery for remote injuries untethered to the alleged racketeering

conduct. *Holmes*, 503 U.S. at 268. Summary judgment should therefore be entered, at minimum, against all claimed Ghost Gunner, Defense Distributed, and DD Foundation damages.

## II. COUNT I FAILS BECAUSE PLAINTIFFS CANNOT PROVE A RICO CONSPIRACY THAT PROXIMATELY CAUSED THEIR INJURY.

Count I asserts conspiracy to violate RICO. To prevail, Plaintiffs must prove that each Defendant knowingly agreed to participate in a RICO enterprise's affairs through a pattern of racketeering activity and that Plaintiffs were injured in their business or property "by reason of" the RICO violation. 18 U.S.C. § 1964(c).

A RICO conspiracy claim requires an actionable underlying RICO violation or agreement to commit one. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). A plaintiff must show that the alleged conspirator "objectively manifested, through words or actions, an agreement to participate" in the conduct of the affairs of the enterprise through a pattern of racketeering activity. *Id.*; see also *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010). Plaintiffs can prove none of this.

### E. Plaintiffs Cannot Prove RICO Proximate Cause

Civil RICO requires a direct causal relationship between the alleged racketeering conduct and the alleged injury. The connection cannot be remote, contingent, or indirect. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348–49 (11th Cir. 2016). The central question is whether the alleged violation led directly to the plaintiff's injuries. *Id.* Foreseeability is not enough. *Id.*; see also *Anza v. Ideal Steel*

9

*Supply Corp.*, 547 U.S. 451, 457–61 (2006); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9–12 (2010); *Holmes*, 503 U.S. at 268.

Plaintiffs' RICO theory depends on a chain of inferences: Defendants allegedly published false statements; unidentified customers allegedly saw them; those customers allegedly believed them; those customers allegedly stopped doing business with Plaintiffs; and Plaintiffs' total revenue decline allegedly resulted from those decisions rather than from any other cause, including Plaintiffs' own publication of the meme. Plaintiffs' discovery responses confirm that they rely on Tyra, exit surveys, Collier and Goldhaber, and timing. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11.) They do not identify a customer who saw a specific Defendant's specific alleged predicate act and withheld business because of it. (*Id.*) Tyra did not conduct that analysis. (Ex. F at 14:10–18; 24:3–17; 31:3–11; 107:16–22; 137:7–12).

*Ray* is on point here. There, the Eleventh Circuit rejected a civil RICO theory where the plaintiffs did not plead a direct link between the alleged misrepresentation and the purchasing decision. 836 F.3d at 1349–50. Even where fraud is alleged, the plaintiff must prove that the alleged deception caused an injury to business or property that would not otherwise have occurred. *Id*. Plaintiffs have no such evidence. *See also Boca Raton*, 502 F. Supp. 2d at 1238–39 (granting summary judgment where claimed RICO injury was not directly caused by alleged misconduct, and damages theory was "baggy"). Plaintiffs' RICO injury here is at least as indirect. The alleged predicate acts were online statements; the alleged injury depends on unidentified

10

third-party customer reactions; and the only damages model does not connect the alleged predicate acts to actual customer decisions.

F. Plaintiffs cannot prove a wire-fraud scheme or fraudulent intent.

At summary judgment, Plaintiffs must produce evidence of the alleged fraudulent conduct; labels and group accusations are not evidence. *Celotex*, 477 U.S. at 322–23; Leigh, 212 F.3d at 1217. Plaintiffs' alleged racketeering predicates are wire fraud based on online statements. Wire fraud requires proof of a scheme to defraud, the use of interstate wires in furtherance of the scheme, and specific intent to defraud. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009); *United States v. Hasson*, 333 F.3d 1264, 1270–71 (11th Cir. 2003). A civil RICO claim predicated on fraud must be supported by evidence of the alleged fraudulent conduct, not broad labels or group accusations. *See Am. Dental*, 605 F.3d at 1291; *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

Plaintiffs have no evidence that Defendants knowingly made false statements as part of a scheme to defraud. The record contains evidence that Defendants had reasons to believe at least significant portions of the challenged statements were true or substantially grounded. In response to a signal message Wilson failed to preserve (Ex. D at 267:11–23) JG wrote to Cody Wilson that he "never leaked any database to anyone," but he did not deny accessing, hacking, copying, or viewing any database. (Ex. A). Wilson internally referred to JG as "our hacker friend." (Ex. B). Elik declares that he did not create or post the FEDCAD meme, that the text below "FEDCAD"

11

appears to be an amalgamation of statements he made over time, and that he believed those statements were true based on personal knowledge. (Ex. J).

Plaintiffs' positions cannot fill the gap. They rely on generalized allegations that the meme was false and that "co-conspirators" made related statements. (Ex. P at Rog. Nos. 8–12, 14–16; Ex. Q at Rog. Nos. 10–16; Ex. R at Rog. Nos. 3–14; Ex. S at Rog. Nos. 3–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 3–11.) They identify no evidence that any Defendant knowingly joined an agreement to commit wire fraud. Plaintiffs bear that burden here. *Celotex*, 477 U.S. at 322–23. On this record, Plaintiffs cannot prove that Defendants made knowingly false online statements with intent to defraud, much less that those statements caused Plaintiffs' claimed losses.

G.   Plaintiffs Cannot Prove a RICO Agreement

Plaintiffs' RICO theory depends heavily on conclusory group allegations, but a RICO conspiracy requires evidence of an agreement to participate in racketeering activity. *Jackson*, 372 F.3d at 1269. Plaintiffs must show a common objective to violate RICO, not merely association or a shared dislike of Mr. Wilson.

Plaintiffs contend that MAF Corp. and/or The Gatalog constitute the alleged RICO enterprise. (Ex. Q at Rog. Nos. 10–16; Ex. R at Rog. Nos. 15–17; Ex. U at Rog. Nos. 5–7.) But, as Wilson testified, Plaintiffs have no documents showing direct commercial relationship between most Defendants and MAF Corp. and instead relied vague allusions and discount codes. (Ex. D at 198:7–199:25; 208:1–211:4.) Wilson also testified that he did not have documents showing any payments related to the FEDCAD meme in "so stark terms." (Ex. D at 230:19–231:16.) Plaintiffs have not

12

identified evidence that any Defendant received proceeds from a transaction lost by Plaintiffs because of the FEDCAD meme or evidence tracing any alleged lost sale, subscription, or customer to any alleged enterprise activity. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–16; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11). Thus, with no evidence any Defendant agreed to conduct an enterprise's affairs through wire fraud, Count I fails.

### III.   COUNT II FAILS BECAUSE PLAINTIFFS CANNOT PROVE FALSE ADVERTISING UNDER THE LANHAM ACT.

To prevail on a Lanham Act false-advertising claim, Plaintiffs must prove that Defendants made false or misleading statements in commercial advertising or promotion, that the statements deceived or had the capacity to deceive consumers, that the deception was material, that the statements affected interstate commerce, and that Plaintiffs were injured or likely to be injured as a result. See 15 U.S.C. § 1125(a)(1)(B); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260–61 (11th Cir. 2004); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). Plaintiffs lack evidence on multiple essential elements.

H. Plaintiffs Cannot Prove Commercial Advertising or Promotion

"Commercial advertising or promotion" requires commercial speech by a defendant in commercial competition with the plaintiff, for the purpose of influencing consumers to buy the defendant's goods or services, disseminated sufficiently to the relevant purchasing public. *Tobinick v. Novella*, 848 F.3d 935, 950–52 (11th Cir. 2017). Commercial speech generally proposes a commercial transaction; courts look to whether the material is an advertisement, whether it references a specific product,

13

and whether the speaker had an economic motivation. *Id.*; *see also Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349–50 (11th Cir. 2012).

*Tobinick* is dispositive of Plaintiffs' overbroad theory. There, the Eleventh Circuit held that critical blog posts about a medical practice were not commercial speech even though the defendant had economic connections to his online platform. 848 F.3d at 952–53. The Lanham Act does not convert criticism, commentary, or consumer advocacy into advertising merely because they appear online or concern commercial actors. *Id.*; *see also Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 553–54 (5th Cir. 2001) (statements in informal communications were not commercial advertising or promotion where they were not disseminated as part of an advertising campaign).

Plaintiffs' best commercial-advertising exhibit is Ex. K. Plaintiffs identify a Quick Start Guide on ctrlpew.com as allegedly containing the FEDCAD meme and referring readers away from Plaintiffs. (Ex. R at Rog. No. 1). The screenshot includes "Just say no FEDCAD," references Plaintiffs' sites, contains "WHERE DO I GET THE PARTS KITS?," and depicts MAF branding lower on the page. (Ex. K).

But that is far from enough. Ex. K is a screenshot from ctrlpew.com. Plaintiffs cannot prove Defendants together made that page, controlled it, or used it at all to sell that Defendant's goods or services. (Ex. R at Rog. Nos. 1–7). Plaintiffs' commercial-context theory is only that Holladay's online statements "influence consumer behavior" and that CtrlPew has a "shop." (Ex. R at Rog. No. 5). But the CtrlPew shop is mentioned nowhere in the complaint, and Plaintiffs have no evidence

14

that Defendants benefit from it in any way. Plaintiffs make similar "commercial context" assertions against other Defendants by claiming their statements influenced consumer behavior or were "consumer advocacy." (Ex. P at Rog. No. 5; Ex. S at Rog. Nos. 6–7). This is woefully deficient.

Nor do Plaintiffs identify consumer evidence showing that anyone saw Ex. K, or any other posting of the meme, and purchased from any Defendant. (Ex. R at Rog. Nos. 8–14; Ex. F at 31:3–11; 107:16–22).

Plaintiffs cannot group-plead their way through Rule 56. Even if Ex. K could support some argument about one publication on one website, it is not evidence that each Defendant engaged in commercial advertising or promotion.

I.   Plaintiffs Cannot Prove Deception, Materiality or Injury

Plaintiffs also lack proof that any challenged statement deceived consumers, materially affected purchasing decisions, or caused injury. For a Lanham Act false-advertising claim, the challenged deception must be material, meaning likely to influence purchasing decisions. *Johnson & Johnson*, 299 F.3d at 1250. Where a plaintiff alleges implied falsity or misleadingness, it must come forward with evidence of consumer deception rather than rely on its own characterization of the message. *Id.* at 1247–48; *see also Osmose, Inc. v. Viance*, LLC, 612 F.3d 1298, 1319–20 (11th Cir. 2010).

Plaintiffs have no such proof. (Ex. P at Rog. Nos. 10–16; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4, 8–11). The exit-survey evidence contains numerous cancellation

15

reasons unrelated to the meme. (Ex. E; Ex. D at 107:20–108:25.) Plaintiffs' own publication of the meme further breaks any causal chain. (Ex. U at Rog. Nos. 13–16.)

### J.  Plaintiffs Cannot Prove any Defendant is Plaintiffs' Commercial Competitor.

The Lanham Act claim independently fails because Plaintiffs cannot prove that any Defendant was in commercial competition with Plaintiffs in the relevant market. Under the Eleventh Circuit's test, Plaintiffs must prove commercial speech "by a defendant who is in commercial competition with plaintiff" and made "for the purpose of influencing consumers to buy defendant's goods or services." *Tobinick*, 848 F.3d at 950; *see also Suntree*, 693 F.3d at 1349–50.

Plaintiffs' cannot satisfy that requirement. Plaintiffs' alleged injury centers on DEFCAD, a platform for digital firearm files and memberships. But Plaintiffs do not identify evidence that any named Defendant sells DEFCAD-competing digital files, DEFCAD-competing file subscriptions, or access to a competing paid file repository. Plaintiffs' own discovery responses instead rely on generalized allegations about redirection away from DEFCAD. (Ex. P at Interrog. No. 5; Ex. R at Interrog. Nos. 1, 5; Ex. S at Interrog. Nos. 6–7).

Tyra's testimony reinforces the point. He testified that the FEDCAD meme does not mention MAF, The Gatalog, Ghost Gunner, Defense Distributed, or DD Foundation, and that he saw no advertisement for any product or service in the meme. (Ex. F at 62:24–63:21). He also testified that Defendants' alleged operation of a competing website was not integral to his report and that his conclusions were not

16

based on that. (Ex. F at 65:9–16.) Thus, Plaintiffs' own damages proof fails to connect any alleged statement to competition between DEFCAD and any Defendant.

Plaintiffs cannot satisfy the Lanham Act by recasting criticism of DEFCAD as competition. "Speech that includes content on commercial topics is not automatically commercial speech." *Tobinick*, 848 F.3d at 952. Nor may Plaintiffs rely on an attenuated theory that links or a separate shop somewhere on a website indirectly "funnels" customers toward some revenue source. *Id*. at 953. The relevant question is whether the challenged speech was commercial advertising by a Defendant in commercial competition with Plaintiffs. Plaintiffs have no evidence of that.

Because Plaintiffs cannot prove commercial advertising, competition, deception, or injury caused by Defendants' alleged advertising, Count II fails.

## IV.   COUNT III FAILS BECAUSE PLAINTIFFS CANNOT PROVE TORTIOUS INTERFERENCE BY LAROSIERE OR HOLLADAY.

Count III is asserted against "the Florida defendants." Plaintiffs must prove: (1) the existence of a business relationship affording Plaintiffs existing or prospective legal rights; (2) Defendant's knowledge of that relationship; (3) intentional and unjustified interference with the relationship; and (4) damages. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

A protected relationship requires evidence of an actual and identifiable understanding or agreement that, in all probability, would have been completed had the defendant not interfered. *Ethan Allen*, 647 So. 2d at 815. A mere hope that past customers may buy again is not enough. *Id*. Nor can a plaintiff base a tortious

17

interference claim on the community at large. *Id.*; *see also Southern All. Corp. v. City of Winter Haven*, 505 So. 2d 489, 496 (Fla. 2d DCA 1987).

Plaintiffs do not have the required proof. Plaintiffs identify Collier, Goldhaber, and multiple customers as relationships allegedly harmed by Holladay. (Ex. R at Rog. No. 8.) Plaintiffs contend Collier and Goldhaber stopped hosting files and designs on DEFCAD because of the FEDCAD meme and related misinformation propagated by Holladay and other Defendants. (Ex. R at Rog. Nos. 8–9.) Plaintiffs also rely on customer exit surveys and Tyra's report. (Ex. R at Rog. Nos. 8–14). Against Larosiere, Plaintiffs identify the same material. (Ex. Q at Rog. Nos. 13–16).

Plaintiffs do not identify damages for injury to any specific relationship with Collier, Goldhaber, or any identified customer. (Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14; Ex. G). Plaintiffs also have not identified any evidence that Larosiere or Holladay knew of a specific agreement or prospective agreement between Plaintiffs and Collier or Goldhaber and intentionally interfered with that agreement. (Ex. H; Ex. Q at Rog. Nos. 13–16; Ex. R at Rog. Nos. 8–14). In fact, to this day, Plaintiffs continue to work with Goldhaber.

*Ethan Allen* forecloses claims based on a general customer base, generalized future sales, or a hope of repeat business. 647 So. 2d at 815. *International Sales* confirms that a protected relationship must afford existing or prospective legal rights and requires an understanding that would have been completed had the defendant not interfered. 262 F.3d at 1154. Plaintiffs' evidence does not meet that standard. Count III should be resolved in Defendants' favor.

18

## V.   ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED LIMITING PLAINTIFFS' DAMAGES.

If the Court does not enter summary judgment on all claims, it should enter partial summary judgment limiting Plaintiffs' damages.

First, Plaintiffs cannot recover Ghost Gunner damages. The meme does not mention Ghost Gunner, nor does the SAC. (Ex. F at 63:7–10.) Second, Plaintiffs cannot recover Defense Distributed or DD Foundation damages based on the FEDCAD meme. The meme does not mention Defense Distributed or DD Foundation. (Ex. F at 63:15–21). Plaintiffs' membership-revenue structure does not transform DEFCAD-directed criticism into recoverable damages for every affiliated entity. Wilson testified that DD Foundation sells memberships, including Legio memberships, that DD Foundation has its own bank account, and that income ultimately flows to Defense Distributed. (Ex. D at 8:8–9:14; 12:12–14; 13:10–17).

Third, Plaintiffs cannot recover damages based on any alleged publication that they cannot attribute to a specific Defendant through admissible evidence. Plaintiffs' theory repeatedly relies on unparticularized group allegations. (Ex. P at Rog. Nos. 8–16; Ex. Q at Rog. Nos. 10–16; Ex. R at Rog. Nos. 8–16; Ex. S at Rog. Nos. 8–13; Ex. T at Rog. Nos. 10–15; Ex. U at Rog. Nos. 4–11.) Rule 56 requires evidence.

Fourth, Plaintiffs cannot recover damages that result from their own publication and amplification of the meme.

Finally, Plaintiffs cannot recover damages measured by Tyra's model because the model does not fit Plaintiffs' claims. It does not isolate damages caused by Defendants' actionable conduct, does not account for Plaintiffs' own publication of the

19

meme, does not disaggregate alternative causes, and does not tie any claimed loss to a specific customer, statement, platform, Defendant, or claim. (Ex. F at 14:10–18; 24:3–17; 30:6–22; 31:3–11; 87:8–17; 88:3–25; 107:16–22; 137:7–12.) *See Boca Raton*, 502 F. Supp. 2d at 1238–39; *TocMail*, 67 F.4th at 1263–65.

## VI.    §770 BARS THIS ACTION.

Each of the claims in the SAC are defamation-equivalent. Plaintiffs' counsel Mr. Foster even repeatedly told Defendants they were being sued for defamation and a "defamatory meme." (Ex. AA at 205:9-19, 209:20-21). Fla Stat. 770.05 limits plaintiffs to a single cause of action for any action arising out of a single publication, the cause of action accruing at first publication, regardless of whether defamation is affirmatively pled. As such, each count is barred, and under the accrual rule, it is beyond the statute of limitations.

## CONCLUSION

Defendants respectfully request that the Court enter summary judgment in their favor on Counts I, II, and III. Alternatively, Defendants request partial summary judgment on Count III and on Plaintiffs' claimed Ghost Gunner, Defense Distributed, and DD Foundation damages, and any other damages not tied to admissible evidence of causation by a specific Defendant's actionable conduct.

Respectfully submitted,
DATED:  May 28, 2026

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Email: Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

21

**REQUEST FOR HEARING**

Defendants request oral argument under Local Rule 7.1(b). A hearing would assist the Court because of the variety of issues raised in the motion. Defendants estimate that a hearing would require approximately 120 minutes total, with 60 minutes per side.

**Local Rule 7.1(a)(3) Certification**

In accordance with this Court's prior order, I certify that I conferred with opposing counsel regarding the exhibits attached to this motion. Plaintiffs marked virtually every document they produced, including materials in the public domain, as "confidential." Following the May 6 hearing, I and fellow defense counsel discussed in-person with opposing counsel how this over-designation should be handled in that we would redact any PII from Plaintiffs' documents. I conferred still more via email and text on May 27 with opposing counsel regarding the exhibits to this motion, but they would not identify whether these materials—which contain no sensitive information—may need to be sealed.

Respectfully submitted,

*/s/ Matthew Larosiere*
Matthew Larosiere

23

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 28th day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

23