UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et. al.,

*Plaintiffs*,

v.

JOHN ELIK, et al.,

*Defendants*.

_____/

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

0

## I. Plaintiffs' claims and alleged theory

1. Plaintiffs' claims are based on alleged online statements concerning DEFCAD, including statements that DEFCAD had been hacked, had its data dumped or doxxed, colluded with federal or anti-gun actors, and/or was hosted in Iran.

2. Plaintiffs contend that the FEDCAD meme and related statements caused customers and creators to stop doing business with Plaintiffs.

3. Plaintiffs contend that Defendants' alleged conduct caused lost revenue and profits to DEFCAD, Defense Distributed, and DD Foundation.

## II. Plaintiffs' disclosed proof

4. Plaintiffs served supplemental initial disclosures identifying the information they intend to use at trial, and the persons and entities they contend have discoverable information concerning their claims and damages. [Ex. H.]

5. Plaintiffs identified Cody Wilson as having knowledge of Plaintiffs' business operations, Plaintiffs' dealings with Defendants, statements and conduct attributed to Defendants, the impact of those statements on Plaintiffs' business relationships, operations, and revenue, and Plaintiffs' alleged damages. [Ex. H.]

6. Plaintiffs identified Barret Collier and Eric Goldhaber as persons with knowledge concerning alleged creator relationships and alleged interference with those relationships. [Ex. H.]

7. Plaintiffs identified "current and former DEFCAD customers who stopped using the platform" as persons with knowledge concerning their exposure to alleged statements and reasons for ending business with Plaintiffs. [Ex. H.]

8. Plaintiffs identified MAF Corp., "The Gatalog," and the individual Defendants as additional sources of information concerning the alleged enterprise, alleged statements, and alleged conduct. [Ex. H.]

9. On May 1, 2026, Plaintiffs' counsel Brendan Everman confirmed that materials identified in Plaintiffs' initial disclosures had been produced. [Ex. I.]

10. Plaintiffs did not disclose any consumer survey, market study, or customer research purporting to show that consumers associated any Defendant's statement with a purchasing decision. [Exs. H–I.]

11. Plaintiffs did not disclose any witness who would testify that he or she saw a specific statement by a specific Defendant and then decided to stop doing business with Plaintiffs because of that statement. [Exs. H–I.]

## III. Plaintiffs' discovery responses identify generalized theories, not defendant-specific causation proof

12. In response to Elik's interrogatory asking Plaintiffs to identify each statement Elik allegedly made, approved, adopted, or caused to be published, Plaintiffs invoked Rule 33(d), referred generally to documents produced in discovery, and asserted that Elik posted "hundreds of negative comments" about Plaintiffs on Reddit. [Ex. P.]

2

13. In response to an interrogatory asking why Elik's alleged statements were false or misleading, Plaintiffs identified the FEDCAD meme and asserted that Elik's alleged co-conspirators falsely represented that DEFCAD hosts its website in Iran. [Ex. P.]

14. Plaintiffs' discovery responses identify the Quick Start Guide on ctrlpew.com as the guide that allegedly contained the FEDCAD meme and referred readers away from Plaintiffs. [Ex. R.]

15. Plaintiffs contend Holladay published or controlled that guide based on Holladay's deposition testimony and ownership of the company that published the guide. [Ex. R.]

16. Plaintiffs identify the statement "Just say no FEDCAD. And their affiliated sites, Legio, Defense Distributed, ghostgunner.net, and ghostguns.com" as a statement Holladay allegedly made or published. [Ex. R; Ex. K.]

17. Plaintiffs contend Holladay's statements were made in a commercial context because they influence consumer behavior and because CtrlPew's website has a "shop" for commercial transactions. [Ex. R.]

18. Plaintiffs contend that Lettman made statements that DEFCAD or defcad.com was hosted in Iran. [Ex. S.]

19. Plaintiffs admit that Iran is not explicitly mentioned in the FEDCAD meme. [Ex. S.]

20. Plaintiffs contend that Collier, Goldhaber, and multiple customers stopped doing business with Plaintiffs because of the FEDCAD meme, related

misinformation, exit-survey responses, and Tyra's expert report. [Ex. R; Ex. S; Ex. U.]

21. In response to Clark's interrogatory asking Plaintiffs to state the material facts supporting their contention that Clark joined any alleged agreement, Plaintiffs cited Clark's friendship with other Defendants, alleged coordinated posting, and alleged inconsistencies in Defendants' statements. [Ex. U.]

22. In response to Clark's interrogatory asking Plaintiffs to identify each customer, creator, vendor, partner, business relationship, economic relationship, or other relationship allegedly lost, harmed, impaired, or affected because of Clark, Plaintiffs identified Collier, Goldhaber, customer exit surveys, and Tyra's report. [Ex. U.]

23. Plaintiffs do not contend that Clark knew about the specific customer relationships identified in response to Clark's interrogatory. [Ex. U.]

24. In response to Clark's interrogatory asking Plaintiffs to state the amount of damages each Plaintiff contends it suffered as a result of Clark, Plaintiffs referred to Tyra's report, attorney's fees and costs, Clark's individual actions, and alleged conspiracy liability. [Ex. U.]

25. Plaintiffs' interrogatory responses do not identify a customer who saw a specific post by a specific Defendant and then made a specific purchasing or cancellation decision because of that post. [Exs. P–U.]

26. Plaintiffs' interrogatory responses do not identify any transaction that was lost because of a statement by a particular Defendant. [Exs. P–U.]

4

27. Plaintiffs' interrogatory responses do not identify any creator who ceased doing business with Plaintiffs because of a statement by a particular Defendant.

28. Plaintiffs' interrogatory responses do not identify any damages amount attributable to any individual Defendant. [Exs. P–U.]

## IV. DEFCAD's own website hosted the FEDCAD meme

29. Wilson testified that the FEDCAD meme was available on Plaintiffs' website. [Ex. C, Wilson Dep. Vol. I 71:12–22.]

30. Wilson testified that he had ultimate control over the DEFCAD website. [Ex. C, Wilson Dep. Vol. I 71:23–72:4.]

31. Plaintiffs admitted in interrogatory responses that Thomas Odom uploaded the FEDCAD meme to the Defcad.com website. [Ex. U.]

32. Plaintiffs admitted in interrogatory responses that the FEDCAD meme was previously available on the Defcad.com website. [Ex. U.]

33. Tyra testified that his analysis was based on the meme existing and being publicly available, and that he did not analyze where the meme was available. [Ex. F, Tyra Dep. 24:3–6; 24:11–17.]

34. Tyra agreed that a plain posting of the FEDCAD meme on DEFCAD's own website, without commentary or refutation, would have a significant impact on customer purchasing decisions. [Ex. F, Tyra Dep. 44:8–22; 45:1–25; 46:1–2.]

35. Tyra was shown a screenshot of the FEDCAD meme hosted on Defcad.com and did not identify commentary or refutation surrounding the posting. [Ex. F, Tyra Dep. 46:10–22.]

5

36. Plaintiffs have not identified evidence showing how many of the persons who viewed or downloaded the meme from Defcad.com also viewed any allegedly actionable statement by any Defendant. [Exs. P–U.]

## V. Tyra's damages opinions

37. Tyra is Plaintiffs' disclosed damages expert. [Ex. G.]

38. Tyra testified that his report contains all opinions he intends to offer in this case. [Ex. F, Tyra Dep. 9:4–10.]

39. Tyra did not prepare regression models. [Ex. F, Tyra Dep. 9:11–15.]

40. Tyra testified that he is not a marketing expert. [Ex. F, Tyra Dep. 11:18–20.]

41. Tyra testified that he did not independently determine who created the FEDCAD meme, who first posted it, or how many people saw it. [Ex. F, Tyra Dep. 14:10–18.]

42. Tyra testified that he did not perform any analysis with respect to where the meme was available. [Ex. F, Tyra Dep. 24:3–17.]

43. Tyra testified that he analyzed the existence of a publicly accessible meme containing a call to action asking people not to use the DEFCAD platform. [Ex. F, Tyra Dep. 24:11–17.]

44. Tyra testified that he did not render any conclusions with respect to Defendants' conduct. [Ex. F, Tyra Dep. 24:7–10.]

45. Tyra testified that he had no evidence on hand suggesting Defendants had anything to do with the meme. [Ex. F, Tyra Dep. 24:18–25.]

46. Tyra testified that he did not identify a single customer who saw the FEDCAD meme and chose not to subscribe to DEFCAD. [Ex. F, Tyra Dep. 31:3–6.]

47. Tyra testified that he did not verify that the sales figures Plaintiffs provided were the actual amounts attributable to the business segments analyzed in his report. [Ex. F, Tyra Dep. 30:6–22.]

48. Tyra testified that he did not review materials concerning the factual veracity of the claims made in the FEDCAD meme. [Ex. F, Tyra Dep. 62:9–14.]

49. Tyra testified that he saw no reference in the FEDCAD meme to any company aside from DEFCAD. [Ex. F, Tyra Dep. 62:21–23.]

50. Tyra testified that he saw no advertisement for any product or service in the FEDCAD meme. [Ex. F, Tyra Dep. 62:24–63:2.]

51. Tyra testified that Defendants' alleged operation of a competing website was not an integral part of his report. [Ex. F, Tyra Dep. 65:9–16.]

52. Tyra attributed 100 percent of any downward trend to the FEDCAD meme. [Ex. F, Tyra Dep. 87:8–11.]

53. Tyra testified that he applied no standard method for determining that causation. [Ex. F, Tyra Dep. 87:14–17; 88:3–7.]

54. Tyra testified that he did not attempt to determine whether any individual customer actually saw the FEDCAD meme. [Ex. F, Tyra Dep. 107:16–22.]

55. Tyra testified that his damages conclusion did not depend on who caused the alleged damages. [Ex. F, Tyra Dep. 137:7–12.]

56. Tyra's report attributes an average monthly lost-sales figure of $90,234 to the FEDCAD meme. [Ex. G.]

57. Tyra did not calculate damages attributable to any individual Defendant. [Ex. F; Ex. G.]

58. Tyra did not identify any methodology for allocating alleged damages among individual Defendants. [Ex. F; Ex. G.]

## VI. Customer exit evidence

59. Plaintiffs' customer exit/cancellation responses include numerous reasons unrelated to the FEDCAD meme, including cost, inability to access files, duplicate subscriptions, lack of use, billing issues, and personal financial hardship. [Ex. E.]

60. Wilson testified that he had no reason to think several customers left because of the FEDCAD meme. [Ex. D, Wilson Dep. Vol. II 107:21–108:15.]

61. Plaintiffs have not identified testimony from any customer-exit respondent stating that he or she saw a specific statement by a specific Defendant and canceled because of that statement. [Ex. E; Exs. P–U.]

## IX. Alleged RICO enterprise and MAF Corp. evidence

62. Plaintiffs contend that MAF Corp. and/or The Gatalog constitute or are associated with the alleged RICO enterprise. [Exs. P–U.]

63. Wilson testified that, as to certain individuals, Plaintiffs had no documents showing direct commercial relationships with MAF Corp., but relied on posts,

discount-code references, or deposition testimony. [Ex. D, Wilson Dep. Vol. II 198:7–199:25; 208:1–211:4.]

64. Wilson testified that he did not have documents showing any MAF Corp. payments related to the FEDCAD meme in "so stark terms." [Ex. D, Wilson Dep. Vol. II 230:19–231:16.]

65. Plaintiffs have not identified evidence that any Defendant received proceeds from a transaction lost by Plaintiffs because of the FEDCAD meme. [Exs. P–U.]

66. Plaintiffs have not identified evidence tracing any alleged lost sale, subscription, or customer to any alleged enterprise activity. [Exs. P–U.]

## X. Tortious-interference evidence

67. Plaintiffs identify Collier, Goldhaber, and multiple customers as relationships allegedly harmed by Holladay. [Ex. R.]

68. Plaintiffs also rely on customer exit surveys and Tyra's report to support alleged harm to business relationships. [Ex. R.]

69. Plaintiffs' responses do not identify an actual agreement between Plaintiffs and Collier or Goldhaber that probably would have been completed absent interference by Larosiere or Holladay. [Ex. R.]

70. Plaintiffs' responses do not identify a damages calculation for injury to any specific relationship with Collier, Goldhaber, or any identified customer. [Ex. R; Ex. G.]

71. Tyra did not calculate damages caused by interference with any specific relationship involving Collier, Goldhaber, or any identified customer. [Ex. F; Ex. G.]

72. Plaintiffs have not identified testimony from Collier or Goldhaber stating that Larosiere or Holladay knew of a specific agreement or prospective agreement between Plaintiffs and Collier or Goldhaber and intentionally interfered with that agreement. [Exs. H; P–U.]

## XI. Scienter and truth-related evidence

73. On October 5, 2023, JG wrote to Cody Wilson, "I never leaked any database to anyone," but did not deny accessing, hacking, copying, or viewing any database. [Ex. A.]

74. On August 27, 2023, Wilson referred internally to JG as "our hacker friend." [Ex. B.]

75. Elik declares that he did not create or post the FEDCAD meme. [Ex. J.]

76. Elik declares that the text appearing below the word "FEDCAD" appears to be an amalgamation of various postings he made over time. [Ex. J.]

77. Elik declares that the postings he recognizes in the FEDCAD meme were made based on his personal knowledge and that he believed them to be true. [Ex. J.]

Respectfully submitted,
DATED:  May 28, 2026

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Email: Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 28th day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581