**Gmail**

Matthew Larosiere <larosieremm@gmail.com>

## Meet conference (court ordered)

**Everman, Brendan** <BEverman@pryorcashman.com>                    Fri, May 1, 2026 at 9:34 AM
To: Matthew Larosiere <larosieremm@gmail.com>
Cc: Gary De Pury <gary@depury.com>, "Zachary Z. Zermay (Zach@ZermayLaw.com)" <zach@zermaylaw.com>, Howard Foster <hfoster@fosterpc.com>

Matt, a few of your questions and concerns relate to documents that were produced by plaintiffs in the Middle District of Florida but have not been produced in this case.  Given the substantial similarity between the two cases, we will reproduce those documents in this case, so there is nothing that you obtained in that case that you cannot use here.  My firm is in the process of obtaining those documents, and I expect to produce them to you early next week.  Please see my other responses below in red.

1.    At the previous hearing, Mr. Everman indicated that the April 21st production would include copies of everything identified in the initial disclosures. You may or may not remember this, but this came up at the hearing, and this portion of our motion was not addressed in the reply. It was at the very end of the hearing where you told the judge that *everything* would be provided in that production, and it appeared the court accepted that, despite it not being explicitly identified in the order. Can you confirm whether or not this is the case with respect to the production?

Confirmed

2.    The April 23rd production was a unitary repository of responsive documents, many of which were documents just containing the text "no responsive documents exist." *See, e.g.,* PLTFS00001251, PLTFS00001252, PLTFS00001564-68. We have no way of knowing which documents are responsive to which requests, and which requests Plaintiffs are now stating no responsive documents exist to. Rule 34(b)(E)(i) requires that documents be produced either "as they are kept in the usual course of business" or must be "organize[d] and label[ed]… to correspond to the categories in the request[.]" Given many documents, such as the mentioned ones, were clearly generated in response to the requests—and each and every document produced was stripped of all metadata, contained Bates numbering and a "confidential" designation—and thus not "as they are kept in the usual course of business," can you please provide either a production chart or some other way for us to know which documents are responsive to which requests?

The documents stating "no responsive documents" relate to prompts in RFP 64 where there are no matching commits.

In our amended RFP responses, plaintiffs identified each RFP where they could not locate any responsive documents.

All documents produced in this case are stored electronically in the ordinary course of business and were exported for production (with bates numbers and appropriate confidentiality designations).  If you have questions about specific RFPs or documents (such as those referenced above for RFP 64), we will (within reason) try to answer your questions or explain which documents related to which RFPs.  But it would be incredibly burdensome, particularly given our forthcoming M.D. Fla. production and defendants' second set of discovery requests, to do this for hundreds of RFPs and thousands of documents.  And we do not believe it is required simply because we added bates numbers or confidentiality designations.  If that were true, it would be required for nearly every case, which certainly has not been my experience.  If you have authority to the contrary, please share it with me, and we will consider it.

Also, we did not strip any metadata and did not designate all documents as confidential.  If you have a document review platform, we can produce the documents as a load file and produce it with available metadata fields.

3.    There is, naturally, a problem with respect to the expert report. There are now 5 versions, all of which are materially different. I understand that, after the expert already testified that he only made one version of the report and the differences must have been created by someone other than himself, you are taking the position that these documents—which you directly produced to us, and stamped with bates numbers, and designated confidential—were actually work product, and that the only version we can keep is the version we received for the first time on April 28, 2026, from the deponent, and which was signed the day after the expert report was due. We have a serious problem with whether an

expert report is at play at all, as you seem to be taking the position that the one we timely received on February 19 is (and always has been) work product. We will be complying with our obligations under Rule 26(b)(5)(B) and, in detail, notifying the Court of what happened, including Mr. Foster's phone conversations with the deponent immediately prior to his questioning the deponent while on break, which were audible. Regardless, the testimony is what it is, and the bell cannot be un-rung.

Could you please identify the five referenced versions of Mr. Tyra's expert report?  I understand that we inadvertently produced unsigned drafts of Mr. Tyra's report at PLTF 170 and PLTF 190.  Those versions appear to have minor (not material) differences compared to his final report that was served months ago.  I wasn't involved in this case on February 19 and wasn't at the deposition on April 28, so I'm not sure what you're referring to, and neither is Howard.

4.    Withheld documents. This is separate from the first point, as a document we know is being withheld is not necessarily one you intend to rely upon or identified in your Rule 26 disclosures:

a.    Plaintiffs have produced exactly zero texts, emails, or internal chats or messages responsive to any request for production. Defendants possess materials, or have previously reviewed materials that prove that Plaintiffs either failed to conduct a search, or are intentionally withholding responsive materials without any objection.

i.    The only exception to this is Plaintiffs' email communications with "JG," however, this production failed to include several emails that Defendants know Plaintiff has due Plaintiff's production from the Middle District Copyright Action. The failure to produce these records again suggests that no diligent search occurred, or that responsive materials were intentionally withheld. Additionally, the emails that were produced indicate that "JG" and Plaintiffs communicated through Signal and text message, yet none of these messages were produced - where are these messages? Plaintiffs literally called "JG" "their hacker" in the emails produced, the relevance of these messages are devastatingly critical to the claims. These messages also make reference to compensation given to "JG" by plaintiffs, yet no receipts or accounting materials reflecting this were produced. Where are these materials?

We have not intentionally withheld any responsive documents.  As noted above, we will produce the M.D. Fla. documents, so you can use them here.  We searched for these documents and produced what we have, including some responsive Slack messages.

b.    Of particular note are Plaintiff's "Slack" chats, which include millions of messages and are already known to contain responsive materials due to Plaintiff's production from the Middle District Copyright Action.

I'm not sure which messages you believe are responsive, but we will produce the M.D. Fla. documents, so you can use them here.

c.    RFP 3, 4: Plaintiffs produced no texts, Signal messages, or internal chats concerning the sharing of profits between the Plaintiffs. Plaintiffs claimed they share profits in their complaint.  There are no responsive texts, messages, or chats.

d.    RFP 5, 8, 9, 10, 11, 18: Are Plaintiffs certifying that their responses to these requests are complete, and that no other communications or records exist?  In double-checking this, we believe there is at least one podcast denying/disputing the FEDCAD meme.  We will produce that podcast (and any other responsive podcasts).  Otherwise, the production is complete.

e.    RFP 19: No texts, Signal messages, or internal chats concerning Plaintiffs' principal's unfortunate issues stemming from his sexual relations with a 16-year-old and the subsequent damages it caused were produced. Defendants are aware that Plaintiffs discussed this topic in their "Slack" chat. Are additional records being withheld?

f.    RFP 22: No texts, Signal messages, or internal chats concerning Plaintiff's copyright infringement and the subsequent damages it caused were produced. Defendants are aware that Plaintiffs discussed this topic in their "Slack" chat. Are additional records being withheld?

g.    RFP23: No texts, Signal messages, or internal chats concerning

h.    Plaintiff's own publication of the meme were produced. No records showing the publication and subsequent edits to the meme were posted. The Plaintiffs edited the meme after serving their responses on April 23, yet did not supplement

any materials to this request, despite this request clearly asking for these records. Defendants know for a fact that Defendants have communications and records concerning Plaintiff's own publication of the meme, especially after Plaintiffs coordinated updates to the meme after April 23. Defendants are further aware that Plaintiffs discussed their posting of the meme in their "Slack" chat, yet none of these chats were produced.

i.     RFP24: No texts, Signal messages, or internal chats or records concerning Plaintiff's own posting of the meme and the subsequent damages it caused were produced. Paired with the withheld responsive materials for RFP23, it seems that an entire universe of extremely relevant materials are being withheld without an objection, or that Plaintiffs failed to conduct a search.

j.     RFP 28-29: No texts, Signal messages, or internal chats concerning Plaintiff's running background checks on customers and requiring the upload of Social Security Numbers or Drivers licenses and the subsequent damages these caused were produced. Plaintiff's own production indicates that the majority of individuals who canceled their Defcad/LEGIO memberships did so because of these reasons. Are additional records being withheld, or did Plaintiffs literally never discuss the reason most of their customers were leaving?

k.     RFP 34-36: No texts, Signal messages, or internal chats concerning any lost customer citing the Fedcad meme itself was produced. Do Plaintiffs literally have no factual support for their claims whatsoever? Additionally, no texts, Signal messages, or internal chats concerning any lost customer citing other reasons itself was produced, despite hundreds of customers citing other reasons when ending their subscriptions. Did Plaintiffs literally never discuss why people were leaving their site?

l.     RFP 31: No texts, Signal messages, or internal chats concerning Plaintiffs' bizarre blog posts and the subsequent damages these caused were produced. Plaintiff's own production indicates that the maany individuals who canceled their Defcad/LEGIO memberships did so because of this reason. Are additional records being withheld, or did Plaintiffs literally never discuss this reason that customers gave for leaving the site?

We produced all documents responsive to RFPs 19, 22, 23, 24, 28, 29, 31, 34, 35, and 36. We are not withholding responsive documents.

m.  RFP 50: No texts, Signal messages, or internal chats concerning Plaintiff literally posting the private banking information of one of the Defendants on their website were produced. Plaintiff claims they have no materials whatsoever about how this, or any other instance of posting private information happened. Is Plaintiff withholding materials? If not, where did the records of doing this go?

My client understands that you're referring to a blog post showing proof of payment to an account named Additive Modeling Solutions.  I think that blog post is non-responsive, but we will produce it.

n.     RFP 52-53: No texts, Signal messages, or internal chats concerning how Defendants are in competition with Plaintiffs were produced. The only document produced appears to have been created in response to this request. Do Plaintiffs literally have no records or communications at all from before this request was asked that indicate competition between Defendants and Plaintiffs?

We have produced all documents responsive to RFPs 52 and 53.

o.     As for the git materials in the later RFPs: The productions failed to produce the authors. These were explicitly asked for this material in connection. In addition, we, of course, do not have the authors' roles.

i.     The responses are screenshots. We asked for the textual representations. We made it painfully. This is not what we asked for. We provided example commands.

The screenshots are textual representations.  We will make a supplemental production showing the author for each produced commit.  This could take a few days.

p.     RFP 54(2), 55: We asked for the roles assigned to the users of the GitHub organization. You only gave us names in a screenshot.  The produced documents show the roles ("owner" or "member"), if available.  Some documents do not show roles because the users were "outside collaborators," i.e. not members of the Defdist org, and do not have a role in the org.

q.   RFP 56: How do Plaintiffs not know who owns the GitHub organization despite producing it to us?  I believe this may have been an oversight.  I will confirm and produce responsive documents if available.

r.   RFP 60: The materials omit Git commit 43c0c46676211616e006660c6de934ea2ddff4c22, which was explicitly requested. We even provided a screenshot. It also contains language that we requested in other RFPs. It was produced in the Middle District case. Why was this not produced?

This was produced.  You have a typo – the highlighted 6 above – in your request, but we produced it anyway.

s.   RFP 66, as limited: No texts, Signal messages, or internal chats concerning communications with anti-gun groups were provided. However, Defendants know that Plaintiffs communicated extensively about the identities of individuals, including by sharing private information about them, with anti-gun groups such as GNET, King's College, and ICSR. Yet none of those communications were produced.

Plaintiffs do not have any responsive documents.

**Brendan Everman**

**Pryor Cashman LLP**

255 Alhambra Cir., Suite 800 | Miami, FL 33134

Direct: 786-582-3007 | Cell: 305-851-1472

beverman@pryorcashman.com

---

**From:** Matthew Larosiere <larosieremm@gmail.com>
**Sent:** Thursday, April 30, 2026 1:26 AM
**To:** Everman, Brendan <BEverman@pryorcashman.com>
**Cc:** Gary De Pury <gary@depury.com>; Zachary Z. Zermay (Zach@ZermayLaw.com) <zach@zermaylaw.com>; Howard Foster <hfoster@fosterpc.com>
**Subject:** Re: Meet conference (court ordered)

Thank you, Brendan. As for our new requests, I have been hard at work fine-tooth-combing and eliminating anything that could even be arguably duplicative between all the Plaintiffs and Defendants. As I have gone on, it has "snowballed" and I expect the last few will be dramatically reduced. I have attached a draft version of Elik's, Stroke's, and Clark's, which is 99% final. I think you will be pleased to hear that, with those 3 alone, I reduced the total number of RFPs from 106 to 53, and ROGs from 188 to 65. I will continue to work at this and you have my commitment that the forthcoming ones will be even more pared down, and I will have them to you either tonight or tomorrow.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]