**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

     Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually
         Defendants.

_____/

**PLAINTIFFS' RESPONSES TO DEFENDANT JOHN LETTMAN'S FIRST**
**SUPERSEDING CONSOLIDATED INTERROGATORIES TO PLAINTIFFS**

Pursuant to Federal Rule of Civil Procedure 33, plaintiffs Defense Distributed, DD

Foundation, LLC, and DEFCAD, Inc. ("Plaintiffs") respond and object to the First Superseding

Consolidated Interrogatories propounded by defendant John Lettman ("Lettman").

1.      Identify each statement that You contend John Lettman made that any Plaintiff,
Defense Distributed, DD Foundation, LLC, DEFCAD, Inc., DEFCAD, or
Defcad.com was hosted in Iran.

**RESPONSE**: Pursuant to Federal Rule of Civil Procedure 33(d), the answer to this interrogatory
may be determined by examining the documents produced by the parties in discovery. Specifically,
Lettman made at least three public statements on Twitter and YouTube.

2.      State all facts on which You rely for Your contention that each statement identified
in response to the preceding interrogatory was false.

**RESPONSE**: DEFCAD does not own servers hosted in Iran. It does not host its application
overseas or in Iran. It does not permit the rehosting of its service overseas or in Iran.

1

3.      Identify each X post or other publication on which You rely for Your contention that John Lettman made such a statement.

**RESPONSE**: The answer to this interrogatory may be determined by examining the documents produced by Plaintiffs in this case.

4.      Explain where, in the "FEDCAD meme," Iran is mentioned.

**RESPONSE**: Iran is not explicitly mentioned in the FEDCAD meme. However, Plaintiffs understand that Lettman's false assertion that DEFCAD hosts its website in Iran is among the "outstanding things" mentioned in the FEDCAD meme.

5.      State all facts on which You rely for Your contention that John Lettman knew any Iran-hosting statement was false or misleading when made.

**RESPONSE**: Lettman did not verify, and could not have verified, that DEFCAD's website is hosted in Iran when he made the claims.  Additionally, Lettman's video shows that, when viewing an entity page, there was no displayed option to download or add the file to cart.  DEFCAD's website displays one of those two options to users in Pennsylvania, where Lettman is believed to reside. This demonstrates that Lettman was interacting with a website that does not serve the DEFCAD application.

6.      State all facts on which You rely for Your contention that John Lettman acted in a commercial context.

**RESPONSE**: All of Lettman's online statements were made in a commercial context because they influence consumer behavior.  Indeed, Lettman and the other defendants published false and misleading statements about Plaintiffs in forums where Plaintiffs' customers would likely see his statements.  Additionally, Lettman admitted during his deposition that he was practicing "consumer" advocacy.

7.      State all facts on which You rely for Your contention that John Lettman acted to divert customers or business away from any Plaintiff.

**RESPONSE**: Lettman and the other defendants published false and misleading statements about Plaintiffs in forums where Plaintiffs' customers would likely see their statements.  Additionally, Lettman admitted during his deposition that he was practicing "consumer" advocacy.  The purpose of these actions was to divert customers away from Plaintiffs and towards business owned or controlled by the defendants.

8.      Identify each business relationship or customer that You contend was harmed, lost, or deterred because of John Lettman.

**RESPONSE**: Barret Collier and Eric Goldhaber stopped hosting their files and designs on the Defcad website because of the FEDCAD meme and related misinformation propagated by Lettman and the other defendants.  Multiple other customers reported in exit surveys that they stopped doing

2

business with Plaintiffs for the same reasons.  The answer to this interrogatory may also be determined by examining the customer exit surveys produced by Plaintiffs in discovery as well as the expert opinion report of Jason Tyra.

9.      State how You contend John Lettman caused the harm, loss, or deterrence identified in response to the preceding interrogatory.

**RESPONSE**: Lettman agreed with the other defendants to propagate the FEDCAD meme and related misinformation about Plaintiffs.  Lettman performed IT services for defendants and acted at the direction of defendant Holladay.  Many customers reported that they stopped doing business with Plaintiffs because of defendants' actions.  In addition to his individual actions, Lettman caused harm by joining a conspiracy to harm Plaintiffs.  The answer to this interrogatory may also be determined by examining the customer exit surveys produced by Plaintiffs in discovery as well as the expert opinion report of Jason Tyra.

10.      Identify each person with knowledge on whom You rely for any contention that John Lettman is liable to any Plaintiff.

**RESPONSE**: The answer to this interrogatory may also be determined by examining Plaintiffs' trial witness list.

11.      Identify each document on which You rely for any contention that John Lettman is liable to any Plaintiff.

**RESPONSE**: The answer to this interrogatory may also be determined by examining the documents produced by the parties during discovery as well as the expert opinion report of Jason Tyra.

12.      State the amount of damages that each Plaintiff contends it suffered as a result of John Lettman.

**RESPONSE**: The answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra.  Specifically, Mr. Tyra's report calculates the losses suffered by Plaintiffs' businesses.  Additionally, Plaintiffs have incurred substantial attorneys' fees and costs in this case, which continue to accrue.

13.      State how You calculated that amount.

**RESPONSE**: The answer to this interrogatory may also be determined by examining the financial/accounting records produced by Plaintiffs during discovery as well as the expert opinion report of Jason Tyra.

14.      Identify all persons and entities responsible for the security of DEFCAD software and systems.

**RESPONSE**: Garret Walliman, Defense Distributed, and Ryan O'Boyle.

15.  Identify each security update, including the date that each was implemented, that has affected DEFCAD software and systems since 2021, along with the purpose for each update, as well as the issues that each update was meant to address.

**RESPONSE**: Plaintiffs object to this interrogatory on the grounds that the Court has already denied defendant Elik's motion to compel substantially similar document requests. *See* Doc. 115 at ¶ 5 (finding that Elik's RFP Nos. 61-63 because they are "overbroad, unduly burdensome, and disproportional to the needs of this case"). Specifically, this interrogatory is vague, overbroad, unduly burdensome, and disproportional to the needs of the case because Plaintiffs have already produced data security reports and software code commits, among other discovery, disproving the false statements in the FEDCAD meme. DEFCAD continuously updates its data security, software, and computer systems, with hundreds of updates each year on a variety of issues. DEFCAD performs these updates in accordance with best practice for software development. It would be incredibly burdensome for Plaintiffs to review and summarize hundreds (if not thousands) of irrelevant and undefined "security update[s]" since 2021. This immense burden is not proportional to the minimal (if any) benefit that Lettman would obtain from the requested information.

16.  Explain why Your principal, Cody Rutledge Wilson, offered to pay "JG" a "stupid tax." A responsive answer must include what You understand a "stupid tax" to be.

take it easy man. I wasn't looking for a handout or anything. I sent you back a $2000 machine you sent me by accident....I had two ghost gunners briefly. It's not about the money.

On Thu, Aug 23, 2018 at 5:47 PM Cody Wilson <crw@defdist.org> wrote:
I insist on paying. I consider it the "stupid tax," and it should help us improve. No doubt we've been slipping in the transition from Shopify.

Do you have a bitcoin address?

crw

**RESPONSE**: In 2018, Cody Wilson offered to pay "JG" for reporting a security vulnerability relating to an ecommerce website called Ghost Gunner, which is unrelated to DEFCAD. Wilson insisted on compensating JG because JG performed a valuable service for Wilson. Specifically, by advising Wilson about the Ghost Gunner security vulnerability, Wilson was able to fix the issue before a bad actor could exploit it. Wilson referred to his goodwill payment to JG as a "stupid tax" and wanted to establish a working relationship with JG to report any potential data security issues.

17.  Explain every payment, gratuity, bounty, or other compensation given to "JG," including via cryptocurrency. Your explanation must include what JG was being compensated for with specificity: for example, how much he was given, any agreement(s) associated with the compensation, as well as the details concerning what JG did to receive the compensation.

**RESPONSE**: Plaintiffs do not have any record of making payments to JG.

4

18. Identify any and all internal software lifecycle tools You, Your employees, or Your contractors operate as a component of the Defcad.com website. For the purposes of this question, "software lifecycle tool" means any program, tool, software, or service that assists with the software engineering or software programming lifecycle of a computer software program, whether 3rd-party, contracted, or self-hosted, including the following: source code repositories, continuous integration, continuous delivery, static analysis, security vulnerability analysis, critical vulnerability analysis, security reporting, security review, automated testing, unit testing, penetration testing, dependency management, entropy analysis, pre-commit hooks, exposure analysis, or compliance testing.

**RESPONSE**: Github, Mandiant, Vscode, Claude, and Docker.

19. From January 1, 2020, to present, explain Your interactions with "JG," including what was being discussed in the conversation You had on or about October 25, 2023. As a part of this explanation, please include a full explanation of what the "similar vuln" mentioned in that conversation was, what the "one we recently discussed" was, as well as what sort of information could have been accessed if someone were to exploit either of those vulnerabilities.

**RESPONSE**: The call proposed with JG in the email dated October 25, 2023 never occurred, and JG never disclosed the "security vuln" to Plaintiffs. Plaintiffs believe that JG was referring to a security vulnerability relating to the payment technology used at the Ghost Gunner or Ghost Guns ecommerce sites.

---

From:        Garret Walliman [gw@defdist.org]
on behalf of  Garret Walliman <gw@defdist.org> [gw@defdist.org]
Sent:        10/25/2023 6:11:48 PM
To:          Joe G [jg@exfiltrate.io]
Subject:     Re: this weekend

Howdy man,

You bet, I'm free this weekend. How does Saturday at 4PM CT work for you?

On Wed, Oct 25, 2023 at 5:08 AM Joe G <jg@exfiltrate.io> wrote:

> Will you be around to chat this weekend? I noticed you tightened some stuff down! Awesome! I did see another potential candidate for a similar vuln like the one we most recently discussed. This one I think is in a gunspring django instance.

--

Regards,
**Garret**
*Lead Software Developer, Defense Distributed*
gw@defdist.org

5

20.     Explain what "database" "JG" was referring to in his 10/06/2023 email to Your principal, Cody Rutledge Wilson. (For your reference, see the following image.)

**RESPONSE:**  Plaintiffs understand that JG was referring to the false allegation in the FEDCAD meme that DEFCAD's customer database was "hacked" and "dumped."   JG offered to "sign something" denying those false allegations.

```
From:          Joe G [jg@exfiltrate.io]
on behalf of   Joe G <jg@exfiltrate.io> [jg@exfiltrate.io]
Sent:          10/6/2023 2:14:53 AM
To:            Cody Wilson [crw@defdist.org]
Subject:       Joe - signal
Attachments:   publickey - jg@exfiltrate.io - 0xDAC9B35A.asc; signature.asc
```

Saw your message on signal, I was trying to set back up on my phone and I locked myself out for 7 days.

lmk when you're able to talk, but yeah, I mean, I never leaked any database to anyone, so, I could sign something yes. Do I need to hire a lawyer? What's up? Can you call me via normal call?

21.     Explain Your relationship to "magneticone.com." A responsive answer will include the services they provide or formerly provided to You. (For your reference, s*ee* the following image.)

**RESPONSE**: Plaintiffs have no relationship with magneticone.com.  Plaintiffs believe that magneticone.com made a migration plugin for Ghost Gunner, an ecommerce website unrelated to DEFCAD, in 2018.

22.     List all locations where DEFCAD source code is hosted outside of DEFCAD, Defense Distributed, and employee systems.

**RESPONSE**: Plaintiffs are unaware of any DEFCAD source code being hosted outside of Plaintiffs' systems.

23.     Explain why You deny making modifications to Defcad.com software to close, fix, solve or patch vulnerabilities, breaches, or security issues while also producing evidence of You doing those exact actions.

**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, and argumentative. Without more information, Plaintiffs are unable to formulate a response to this interrogatory.

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing interrogatory responses are true and correct to the best of my knowledge and belief.

Executed on May 14, 2026

**RESPONSE**: Plaintiffs have no relationship with magneticone.com. Plaintiffs believe that magneticone.com made a migration plugin for Ghost Gunner, an ecommerce website unrelated to DEFCAD, in 2018.

22. List all locations where DEFCAD source code is hosted outside of DEFCAD, Defense Distributed, and employee systems.

**RESPONSE**: Plaintiffs are unaware of any DEFCAD source code being hosted outside of Plaintiffs' systems.

23. Explain why You deny making modifications to Defcad.com software to close, fix, solve or patch vulnerabilities, breaches, or security issues while also producing evidence of You doing those exact actions.

**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, and argumentative. Without more information, Plaintiffs are unable to formulate a response to this interrogatory.

### VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing interrogatory responses are true and correct to the best of my knowledge and belief.

Executed on May 14, 2026

Name: Cody Wilson
Title: Owner and Manager of Plaintiffs

**PLAINTIFFS' RESPONSES TO DEFENDANT JOHN LETTMAN'S FIRST SUPERSEDING CONSOLIDATED REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, plaintiffs Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. respond and object to First Superseding Consolidated Requests for Admission propounded by defendant John Lettman.

1. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any statement at issue in this action referred specifically to You.

**RESPONSE**: Deny

2. Admit that, before February 6, 2026, You had no Pre-Filing Material identifying any specific customer of Yours who stopped doing business with You because of any statement at issue in this action, the FEDCAD meme, any Iran-hosting statement attributed to John Lettman, or any Reddit post attributed to Peter Celentano.

**RESPONSE**: Deny

3. Admit that, before February 6, 2026, You had no Pre-Filing Material identifying any specific vendor, partner, or creator of Yours who was harmed because of any statement at issue in this action.

**RESPONSE**: Deny

4. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that You had a contract or other business relationship with Barret Collier or Eric Goldhaber during the period relevant to the Complaint.

**RESPONSE**: Deny

5. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that Barret Collier or Eric Goldhaber ceased doing business with You because of the FEDCAD meme.

**RESPONSE**: Deny

6. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any Defendant knew of any specific business relationship belonging to You before the alleged interference.

**RESPONSE**: Deny

8

7. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. shared the income produced by DEFCAD's file-sharing business.

**RESPONSE**: Deny

8. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any Defendant stated that You were hosted in Iran.

**RESPONSE**: Deny

9. Admit that, before February 6, 2026, You had Pre-Filing Material showing that a website configured to present as DEFCAD was available from a server in Iran.

**RESPONSE**: Admit

10. Admit that, before February 6, 2026, You had Pre-Filing Material showing that DEFCAD's website published the FEDCAD meme.

**RESPONSE**: Admit

11. Admit that, before February 6, 2026, You had Pre-Filing Material showing that an individual known as "JG" identified a vulnerability that enabled access to DEFCAD data or source code.

**RESPONSE**: Deny

12. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any statement that DEFCAD had been hacked was false.

**RESPONSE**: Deny

13. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any statement that DEFCAD customer data had been dumped was false.

**RESPONSE**: Deny

14. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any customer or potential customer stated that any statement at issue in this action, or the FEDCAD meme, caused that person to believe a false statement about You.

**RESPONSE**: Deny

15. Admit that, before February 6, 2026, You had no Pre-Filing Material showing how You calculated any specific amount of damages caused by any specific Defendant.

**RESPONSE**: Deny

16.     Admit that, before February 6, 2026, You had no Pre-Filing Material showing that You were injured by any act of an alleged enterprise referred to in the Complaint as "The Gatalog/MAF Corp."

**RESPONSE**: Deny

17.     Admit that, before February 6, 2026, You had no Pre-Filing Material identifying any agreement by any Defendant to participate in an enterprise through MAF Corp., "The Gatalog," or "The Gatalog/MAF Corp."

**RESPONSE**: Deny

18.     Admit that, before February 6, 2026, You had no Pre-Filing Material identifying any agreement between any two Defendants, or among all Defendants, to carry out a common scheme through MAF Corp., "The Gatalog," or "The Gatalog/MAF Corp."

**RESPONSE**: Deny

19.     Admit that, before February 6, 2026, You had no Pre-Filing Material describing the membership, structure, hierarchy, rule, role, chain of command, or decision-making process of the alleged enterprise referred to in the Complaint as "The Gatalog/MAF Corp."

**RESPONSE**: Deny

20.     Admit that, before February 6, 2026, You had no Pre-Filing Material showing that Matthew Larosiere directed any out-of-state Defendant to engage in conduct that injured You, to publish or republish the FEDCAD meme, or to carry out the alleged scheme.

**RESPONSE**: Deny

21.     Admit that, before February 6, 2026, You had no Pre-Filing Material showing that any out-of-state Defendant followed any direction given by Matthew Larosiere in carrying out the alleged scheme.

**RESPONSE**: Deny

22.     Admit that, before February 6, 2026, You had no Pre-Filing Material showing that MAF Corp. paid Peter Celentano, Josh Kiel Stroke, John Lettman, or Zackary Clark.

**RESPONSE**: Deny

23. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that "The Gatalog," as alleged in the Complaint, was a legal entity or business organization separate from MAF Corp.

**RESPONSE**: Deny

24. Admit that, before February 6, 2026, You had no Pre-Filing Material identifying any meeting, call, message exchange, or other communication in which all Defendants agreed to carry out the alleged scheme.

**RESPONSE**: Deny

25. Admit that, before February 6, 2026, You had no Pre-Filing Material showing that Zackary Clark was affiliated with MAF Corp. as an employee or independent contractor.

**RESPONSE**: Deny

11

**PLAINTIFFS' RESPONSES TO DEFENDANT JOHN LETTMAN'S FIRST
SUPERSEDING CONSOLIDATED REQUESTS FOR PRODUCTION TO PLAINTIFFS**

Pursuant to Federal Rule of Civil Procedure 34, plaintiffs Defense Distributed, DD

Foundation, LLC, and DEFCAD, Inc. respond and object to the First Superseding Consolidated

Requests for Production propounded by defendant John Lettman.

1.      Produce each statement identified in response to Interrogatory No. 1, including any post, publication, screenshot, URL, archived copy, or other copy of the statement in Your possession, custody, or control.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

2.      Produce each X post or other publication identified in response to Interrogatory No. 3, including any screenshot, URL, archived copy, or other copy of the publication in Your possession, custody, or control.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

3.      Produce documents sufficient to show the existence, identity, and nature of each business relationship or customer identified in response to Interrogatory No. 8, and any communication in Your possession, custody, or control reflecting that the relationship or customer was harmed, lost, or deterred because of John Lettman.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

4.      Produce each written or recorded statement, note, memorandum, email, text, or other document in Your possession, custody, or control that memorializes information provided by any person identified in response to Interrogatory No. 10.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

5.      Produce each document identified in response to Interrogatory No. 11.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

6.      Produce documents sufficient to identify the contents of each update identified in response to Interrogatory No. 15.

12

**RESPONSE**: Plaintiffs object to this request on the grounds that the Court has already denied defendant Elik's motion to compel substantially similar document requests. *See* Doc. 115 at ¶ 5 (finding that Elik's RFP Nos. 61-63 because they are "overbroad, unduly burdensome, and disproportional to the needs of this case"). Specifically, this request is vague, overbroad, unduly burdensome, and disproportional to the needs of the case because Plaintiffs have already produced data security reports and software code commits, among other discovery, disproving the false statements in the FEDCAD meme. DEFCAD continuously updates its data security, software, and computer systems, with hundreds of updates each year on a variety of issues. DEFCAD performs these updates in accordance with best practice for software development. It would be incredibly burdensome for Plaintiffs to collect, review, and produce hundreds (if not thousands) of irrelevant and undefined "security update[s]" since 2021. This immense burden is not proportional to the minimal (if any) benefit that Lettman would obtain from the requested documents.

7.  Produce Your most recent Public Information Filing, annual report, franchise tax report, business registration, certificate of formation, certificate of existence, or similar filing or registration document filed with or issued by the Secretary of State, or equivalent agency, of the state in which Your entity is domiciled or organized.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

8.  From January 1, 2021, to the present, produce all board minutes, board meeting minutes, director meeting minutes, board resolutions, board packages, agenda, and any attachments or exhibits thereto for Defense Distributed, Defcad, Inc., DD Foundation, or any other entity operated or controlled by You. This Request includes all drafts, final versions, handwritten notes, recordings, transcripts, and any documents distributed or referenced during board or director meetings.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

9.  From January 1, 2021, to the present, produce all Documents and Communications sufficient to identify all current and former employees, officers, directors, board members, and independent contractors of Defense Distributed, Defcad, Inc., DD Foundation, or any other entity operated or controlled by You. This Request includes, but is not limited to, organizational charts, payroll records, employee lists, contractor lists, W-2/1099 forms, employment agreements, Slack user directories, email directories, and any other documents that identify the names, titles, roles, dates of employment, or status of such individuals.

**RESPONSE**: Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, disproportional to the needs of the case, and invades the privacy rights of third parties. Plaintiffs have millions of Slack messages alone. It would be incredibly burdensome to collect, review, and produce all documents and communications identifying all employees or independent contractors, and it would invade their privacy rights to disclose their payroll and tax records. This substantial burden is not proportional to the minimal (if any) benefit that Lettman would obtain

from the requested documents, which have no apparent relevance to the claims or defenses in this case.

10.     From January 1, 2021, to the present, produce all Documents and Communications sufficient to identify all current and former Google Workspace users, accounts, or email addresses associated with Defense Distributed, Defcad, Inc., DD Foundation, DEFCAD, Defcad.com, or any other entity operated or controlled by You.  This Request includes, but is not limited to:
   a.     All Google Workspace admin console reports, user lists, directory listings, or account rosters;
   b.     Any spreadsheets, Slack messages, emails, or internal documents listing Google Workspace users or email addresses; and
   c.     All documents showing user creation dates, roles, permissions, or deactivation dates.

**RESPONSE**: Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case to the extent it seeks all documents and communications identifying all "current and former" users, accounts, or email addresses for Plaintiffs "or any other entity operated or controlled" by Plaintiffs.  Plaintiffs have millions of Slack messages alone.  It would be incredibly burdensome to collect, review, and produce all documents and communications identifying all users, accounts, or email addresses.  This substantial burden is not proportional to the minimal (if any) benefit that Lettman would obtain from the requested documents, which have no apparent relevance to the claims or defenses in this case.

11.     From January 1, 2021, to the present, produce all Documents and Communications sufficient to identify all current and former Slack users, accounts, workspaces, channels, or email addresses associated with Defense Distributed, Defcad, Inc., DD Foundation, DEFCAD, Defcad.com, or any other entity operated or controlled by You.  This Request includes, but is not limited to:
   a.     All Slack workspace admin reports, user directories, member lists, or exportable user rosters;
   b.     Any spreadsheets, internal documents, Slack messages, or emails listing Slack users, their usernames, display names, email addresses, roles, including admin, owner, guest, etc., join dates, or deactivation dates; and
   c.     Any documents showing Slack user permissions, channel memberships, or account status.

**RESPONSE**: Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case to the extent it seeks all documents and communications identifying all "current and former Slack users, accounts, workspaces, channels, or email addresses" for Plaintiffs "or any other entity operated or controlled" by Plaintiffs.  Plaintiffs have millions of Slack messages alone.  It would be incredibly burdensome to collect, review, and produce all documents and communications identifying the requested users, accounts, workspaces, channels, or email addresses.  This substantial burden is not proportional to the

minimal (if any) benefit that Lettman would obtain from the requested documents, which have no apparent relevance to the claims or defenses in this case.

12. From January 1, 2021, to the present, produce all Documents and Communications, including but not limited to emails, letters, memoranda, notes, reports, meeting minutes, text messages, instant messages, social media posts or direct message, and any accompanying attachments, between You and any Government Entity, that concern, relate to, or reference:

    a. The Claims asserted by Plaintiffs in this action, Defense Distributed et al v. Elik et al, Case No. 9:25-cv-81197, S.D. Fla.; or

    b. any of the counterclaims or third-party claims asserted by Defense Distributed, or any Defendant/Counterplaintiff, in the related action Larosiere v. Wilson, Case No. 6:24-cv-01629, M.D. Fla., as set forth in:

        i. Doc. 29, Defendants' Answer and Counterclaim, entered November 19, 2024;

        ii. Doc. 49, First Amended Answer, Affirmative Defenses, Third-Party Complaint, and Counterclaim, entered December 27, 2024; or

        iii. Doc. 52, Second Amended Answer, Amended Third-Party Complaint, and Amended Counterclaim, entered January 3, 2025,

including but not limited to the civil RICO claims, Lanham Act claims, Computer Fraud and Abuse Act claims, tortious interference claims, trade libel claims, Florida Deceptive and Unfair Trade Practices Act claims, spoliation claims, or any claims involving alleged violations of ITAR, EAR, or export-control laws.

For the purposes of this request, "Government Entity" means any federal, state, local, or foreign government or quasi-government body, agency, department, office, official, or employee, including, without limitation, the U.S. Department of State, Directorate of Defense Trade Controls, Bureau of Alcohol, Tobacco, Firearms and Explosives, or any state attorneys general offices.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

13. From January 1, 2021, to the present, produce all Documents and Communications, including but not limited to emails, letters, memoranda, notes, reports, meeting minutes, text messages, instant messages, social media posts or direct message, and any accompanying attachments, between You and any Employer of Any Defendant, that concern, relate to, or reference:

    a. The Claims asserted by Plaintiffs in this action, Defense Distributed et al v. Elik et al, Case No. 9:25-cv-81197, S.D. Fla.; or

    b. any of the counterclaims or third-party claims asserted by Defense Distributed, or any Defendant/Counterplaintiff, in the related action Larosiere v. Wilson, Case No. 6:24-cv-01629, M.D. Fla., as set forth in:

        i. Doc. 29, Defendants' Answer and Counterclaim, entered November 19, 2024;

     ii.      Doc. 49, First Amended Answer, Affirmative Defenses, Third-Party Complaint, and Counterclaim, entered December 27, 2024; or

     iii.      Doc. 52, Second Amended Answer, Amended Third-Party Complaint, and Amended Counterclaim, entered January 3, 2025,

including but not limited to the civil RICO claims, Lanham Act claims, Computer Fraud and Abuse Act claims, tortious interference claims, trade libel claims, Florida Deceptive and Unfair Trade Practices Act claims, spoliation claims, or any claims involving alleged violations of ITAR, EAR, or export-control laws.

For the purposes of this request, "Employer of Any Defendant" means any employer of a Defendant in this action, any of their current or former officers, directors, employees, contractors, agents, or representatives acting at their direction or on their behalf.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

14. From January 1, 2021, to the present, produce all Documents and Communications, including but not limited to emails, letters, memoranda, notes, reports, meeting minutes, text messages, instant messages, social media posts or direct message, and any accompanying attachments, between You and Knauf Group, that concern, relate to, or reference:

    a.     The Claims asserted by Plaintiffs in this action, Defense Distributed et al v. Elik et al, Case No. 9:25-cv-81197, S.D. Fla.; or

    b.     any of the counterclaims or third-party claims asserted by Defense Distributed, or any Defendant/Counterplaintiff, in the related action Larosiere v. Wilson, Case No. 6:24-cv-01629, M.D. Fla., as set forth in:

        i.      Doc. 29, Defendants' Answer and Counterclaim, entered November 19, 2024;

        ii.      Doc. 49, First Amended Answer, Affirmative Defenses, Third-Party Complaint, and Counterclaim, entered December 27, 2024; or

        iii.      Doc. 52, Second Amended Answer, Amended Third-Party Complaint, and Amended Counterclaim, entered January 3, 2025,

including but not limited to the civil RICO claims, Lanham Act claims, Computer Fraud and Abuse Act claims, tortious interference claims, trade libel claims, Florida Deceptive and Unfair Trade Practices Act claims, spoliation claims, or any claims involving alleged violations of ITAR, EAR, or export-control laws.

For the purposes of this request, "Knauf Group" means Knauf Group, Knauf Insulation, USG Corporation, any subsidiaries, any of their current or former officers, directors, employees, contractors, agents, or representatives acting at their direction or on their behalf.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

15. From January 1, 2021, to the present, produce all Documents and Communications, including but not limited to emails, letters, memoranda, notes, reports, meeting minutes, text messages, instant messages, social media posts or direct message, and any accompanying attachments, between You and ClearObject, that concern, relate to, or reference:

    a. The Claims asserted by Plaintiffs in this action, Defense Distributed et al v. Elik et al, Case No. 9:25-cv-81197, S.D. Fla.; or

    b. any of the counterclaims or third-party claims asserted by Defense Distributed, or any Defendant/Counterplaintiff, in the related action Larosiere v. Wilson, Case No. 6:24-cv-01629, M.D. Fla., as set forth in:

        i. Doc. 29, Defendants' Answer and Counterclaim, entered November 19, 2024;

        ii. Doc. 49, First Amended Answer, Affirmative Defenses, Third-Party Complaint, and Counterclaim, entered December 27, 2024; or

        iii. Doc. 52, Second Amended Answer, Amended Third-Party Complaint, and Amended Counterclaim, entered January 3, 2025,

including but not limited to the civil RICO claims, Lanham Act claims, Computer Fraud and Abuse Act claims, tortious interference claims, trade libel claims, Florida Deceptive and Unfair Trade Practices Act claims, spoliation claims, or any claims involving alleged violations of ITAR, EAR, or export-control laws.

For the purposes of this request, "ClearObject" means ClearObject, ClearObject, Inc., CloudOne, any subsidiaries, any of their current or former officers, directors, employees, contractors, agents, or representatives acting at their direction or on their behalf.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

16. From January 1, 2021, to the present, produce all Documents and Communications, including but not limited to emails, letters, memoranda, notes, reports, meeting minutes, text messages, instant messages, social media posts or direct message, and any accompanying attachments, between You and José Niño, AKA Jose Nino AKA José Alberton AKA Jose Alberton AKA "josealberton@protonmail.com", that concern, relate to, or reference:

    a. The Claims asserted by Plaintiffs in this action, Defense Distributed et al v. Elik et al, Case No. 9:25-cv-81197, S.D. Fla.; or

    b. any of the counterclaims or third-party claims asserted by Defense Distributed, or any Defendant/Counterplaintiff, in the related action Larosiere v. Wilson, Case No. 6:24-cv-01629, M.D. Fla., as set forth in:

        i. Doc. 29, Defendants' Answer and Counterclaim, entered November 19, 2024;

        ii. Doc. 49, First Amended Answer, Affirmative Defenses, Third-Party Complaint, and Counterclaim, entered December 27, 2024; or

iii.     Doc. 52, Second Amended Answer, Amended Third-Party Complaint, and Amended Counterclaim, entered January 3, 2025,

including but not limited to the civil RICO claims, Lanham Act claims, Computer Fraud and Abuse Act claims, tortious interference claims, trade libel claims, Florida Deceptive and Unfair Trade Practices Act claims, spoliation claims, or any claims involving alleged violations of ITAR, EAR, or export-control laws.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

17.     From January 1, 2021, to the present, produce all Documents and Communications contained in any internal Slack workspace, channel, direct message, or thread, including but not limited to all messages, threads, replies, reactions, attached files, screenshots, and embedded content, that mention, reference, discuss, or identify John Lettman, including by any real name, username, pseudonym, nickname, code name, or other term You use or have used to refer to him.  This Request includes any discussion of John Lettman's actions, statements, alleged conduct, involvement in this litigation, personal characteristics, or any reference to him by any pseudonym, nickname, or shorthand You or Your employees and contractors have used.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

18.     From January 1, 2021, to the present, produce all Documents and Communications contained in any Signal conversation, channel, direct message, or thread, including but not limited to all messages, threads, replies, reactions, attached files, screenshots, and embedded content, that mention, reference, discuss, or identify John Lettman, including by any real name, username, pseudonym, nickname, code name, or other term You use or have used to refer to him.  This Request includes any discussion of John Lettman's actions, statements, alleged conduct, involvement in this litigation, personal characteristics, or any reference to him by any pseudonym, nickname, or shorthand You or Your employees and contractors have used.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

19.     From January 1, 2021, to the present, produce all Documents and Communications between or among You and any Government Entity that concern, relate to, or reference any actual or suspected DDoS attack, Distributed Denial of Service attack, cyber-attack, or denial-of-service incident targeting DEFCAD, Defcad.com, or any related website, server, or online service operated by You.  This Request includes, but is not limited to:

a.     Any reports, complaints, notifications, or submissions made by You to a Government Entity regarding a DDoS attack or similar incident against

18

DEFCAD, Defcad.com, or any related website, server, or online service operated by You;

b. All responses, acknowledgments, requests for additional information, or follow-up communications from any Government Entity;

c. All internal documents, logs, incident reports, technical analyses, or communications discussing the DDoS attack(s) that were shared with, or prepared for, any Government Entity; and

d. Any communications referencing the decision to report or not report the incident to law enforcement or a government agency.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

20. From January 1, 2021, to the present, produce all Documents and Communications between or among You and any Government Entity concerning, relating to, or referencing any actual or suspected violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or any related cyber intrusion, unauthorized access, hacking, DDoS attack, or computer fraud incident.  This Request includes, but is not limited to:

a. Any reports, complaints, notifications, referrals, or submissions made by You to a Government Entity regarding CFAA violations or suspected CFAA violations;

b. All responses, acknowledgments, investigative requests, or follow-up communications received from any Government Entity;

c. Any internal documents, logs, incident reports, analyses, or evidence that were prepared for, or shared with, any Government Entity in connection with a CFAA report; and

d. All communications discussing the decision to report or not report any CFAA violation to law enforcement or a government agency.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

21. From January 1, 2021, to the present, produce all Documents and Communications between or among You and any Government Entity concerning, relating to, or referencing any actual or suspected hacking, breaching, unauthorized access, intrusion, compromise, or similar cyber incident involving any of Your computer systems, networks, websites, servers, databases, or online services, including but not limited to DEFCAD, Defcad.com, or any related platforms.  This Request includes, but is not limited to:

a. Any reports, complaints, notifications, referrals, or submissions made by You to a Government Entity regarding hacking, breaching, or unauthorized access incidents;

b. All responses, acknowledgments, investigative requests, or follow-up communications received from any Government Entity;

     c.    Any internal documents, logs, incident reports, technical analyses, forensic reports, or evidence that were prepared for, or shared with, any Government Entity in connection with such incidents; and

     d.    All communications discussing the decision to report or not report any hacking or breaching incident to law enforcement or a government agency.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

22.    From January 1, 2021, to the present, produce all Documents and Communications contained in any internal Slack workspace, channel, direct message, thread, Signal conversation, Signal channel, or Signal direct message, including but not limited to all messages, threads, replies, reactions, attached files, screenshots, embedded content, and associated metadata, including discussions about the existence, scope, impact, investigation, reporting, or remediation of any such incidents, that mention, reference, discuss, or relate to:

     a.    Any actual or suspected security incident, breach, hack, unauthorized access, intrusion, compromise, data dump, data leak, DDoS attack, or similar cyber event involving DEFCAD, Defcad.com, or any other website, platform, server, network, or online service operated or controlled by You; or

     b.    Any security vulnerabilities, system hardening efforts, incident response, forensic investigations, or protective measures taken in response to the above.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

23.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 1.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

24.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 2.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

25.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 3.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

26.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 4.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

27.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 5.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

28.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 6.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

29.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 7.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

30.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 8.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

31.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 9.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

32.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 10.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

33.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 11.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

34.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 12.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

35.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 13.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

36.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 14.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

37.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 15.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

38.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 16.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

39.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 17.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

40.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 18.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

41.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 19.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

42.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 20.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

43.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 21.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

44.     Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 22.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

45.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 23.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

46.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 24.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

47.    Produce all Pre-Filing Materials that support any denial or qualification of Request for Admission No. 25

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

Dated:  May 14, 2026

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: /s/ *Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*