**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

      Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually
          Defendants.

_____/

**PLAINTIFFS' RESPONSES TO DEFENDANT ZACKARY CLARK'S**
**FIRST SUPERSEDING CONSOLIDATED INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, plaintiffs Defense Distributed, DD

Foundation, LLC, and DEFCAD, Inc. ("Plaintiffs") respond and object to the First Superseding

Consolidated Interrogatories propounded by defendant Zackary Clark ("Clark").

1. Identify each statement, post, publication, republication, or communication by Zackary Clark on which any Plaintiff relies in support of any claim or contention in this action, including the December 31, 2025 X post and any statement concerning any Plaintiff, DEFCAD, FEDCAD, or the "FEDCAD meme."

**RESPONSE**: Pursuant to Federal Rule of Civil Procedure 33(d), the answer to this interrogatory may be determined by examining the Twitter posts produced by Plaintiffs in discovery and the documents produced by Clark with his initial disclosures.

2. State the material facts on which You rely for Your contention that the X account "@ArmedJoy" was controlled by Zackary Clark on December 31, 2025.

**RESPONSE**: Plaintiffs rely on Clark's sworn deposition testimony admitting this fact.

1

3. For each statement, post, publication, republication, or communication identified in response to Interrogatory No. 1, state why You contend it was false, misleading, actionable, or otherwise supports any claim against Zackary Clark.

**RESPONSE**: Plaintiffs contend that the FEDCAD meme is false, misleading, and actionable because DEFCAD encrypts its data, does not have a "database" that "has been hacked and dumped," has not "doxxed developer information to antigunners," and has not "attempted to blackmail" defendants. Additionally, Clark's co-conspirators have falsely represented that DEFCAD hosts its website in Iran.

4. State the material facts on which each Plaintiff relies for its contention that it was injured by any act of Zackary Clark.

**RESPONSE**: Plaintiffs contend that the false statements published by Clark and the other defendants have caused a substantial reduction in Plaintiffs' revenue and profits. In further response to this interrogatory, the answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra. In addition to his individual actions, Clark caused harm to Plaintiffs by joining a conspiracy with the other defendants.

5. State the material facts on which You rely for Your contention that Zackary Clark joined any agreement alleged in the Complaint, and identify each communication on which You rely for that contention.

**RESPONSE**: Clark testified during his deposition, and his public posts confirm, that the other defendants have been his friends and employers for years. The defendants' close relationship, coordinated posting of the FEDCAD meme and other false disparaging comments about Plaintiffs, and inconsistencies in their statements are circumstantial evidence of the agreement alleged in the Complaint.

6. State the material facts on which You rely for Your contention that Zackary Clark was affiliated with, employed by, or an independent contractor of MAF Corp.

**RESPONSE**: Clark testified that he was employed by defendant Larosiere (who owns MAF Corp.) and that Clark worked on Larosiere's YouTube channel, which is sponsored by MAF Corp.

7. State the material facts on which You rely for Your contention that Zackary Clark promoted The Gatalog in a manner intended to divert customers away from, or otherwise harm, any Plaintiff.

**RESPONSE**: Clark represented on Twitter for years that he is a member of the Gatalog. Clark also encouraged others to become a member of the Gatalog. In further response to this interrogatory, the answer to this interrogatory may be determined by examining the Twitter posts produced by Plaintiffs in discovery.

8. Identify each customer, creator, vendor, partner, business relationship, economic relationship, or other relationship that You contend was lost, harmed, impaired, or affected because of Zackary Clark. For each, state the material facts on which You rely for Your contention that Zackary Clark knew of the relationship.

**RESPONSE**: Barret Collier and Eric Goldhaber stopped hosting their files and designs on the Defcad website because of the FEDCAD meme and related misinformation propagated by Clark and the other defendants. Multiple other customers reported in exit surveys that they stopped doing

2

business with Plaintiffs for the same reasons.  Plaintiffs do not contend that Clark knew about these specific customer relationships. In further response to this interrogatory, the answer to this interrogatory may be determined by examining the customer exit surveys produced by Plaintiffs in discovery as well as the expert opinion report of Jason Tyra.

9.    For each customer, creator, vendor, partner, business relationship, economic relationship, or other relationship identified in response to Interrogatory No. 8, state how You contend Zackary Clark caused the alleged loss, harm, impairment, or effect.

**RESPONSE**: Plaintiffs contend that the false statements published by Clark and his co-conspirators have caused a substantial reduction in Plaintiffs' revenue and profits.  In further response to this interrogatory, the answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra.

10.    State the amount of damages that each Plaintiff contends it suffered as a result of Zackary Clark, and explain how each amount was calculated.

**RESPONSE**: The answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra.  Specifically, Mr. Tyra's report calculates the losses suffered by Plaintiffs' businesses.  Additionally, Plaintiffs have incurred substantial attorneys' fees and costs in this case, which continue to accrue.  In addition to his individual actions, Clark caused harm to Plaintiffs by joining a conspiracy with the other defendants.

11.    Explain how You determined that any alleged injury, lost customer, lost relationship, lost sale, lost revenue, or other claimed damage was caused by Zackary Clark rather than by any other cause, including Plaintiffs' own hosting or publication of the FEDCAD meme or FEDCAD-19, third-party sharing of the same materials, Antelope Hill Publishing, market conditions, customer choice, or any other cause.

**RESPONSE**: The answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra and the customers exit surveys produced by Plaintiffs in this case.  Plaintiffs further state that Barret Collier and Eric Goldhaber have advised them they stopped hosting their files and designs on the Defcad website because of the FEDCAD meme and related misinformation propagated by Clark and the other defendants.  Plaintiffs further state that the timing of events generally establishes that defendants, not other things, caused the substantial reduction in Plaintiffs' revenue and profits.  In addition to his individual actions, Clark caused harm to Plaintiffs by joining a conspiracy with the other defendants.

12.    Identify each person with knowledge on whom You rely for any contention that Zackary Clark is liable to any Plaintiff.

**RESPONSE**: The answer to this interrogatory may be determined by examining Plaintiffs' trial witness list.

13.    Identify each copy, version, instance, link, embedded display, or other availability of the "FEDCAD meme" on any website, platform, server, or service owned, controlled, operated, or used by any Plaintiff, including Defcad.com.  For each,

3

identify where it was located, when it was made available, how long it remained available, and whether it remains available.

**RESPONSE**:  A version of the "FEDCAD meme," sourced from Twitter, was available on the Defcad.com website from May 22, 2024 until May 2, 2026.  It is no longer available on any website, platform, server, or serviced owned or controlled by Plaintiffs.

14. Identify each person who created, uploaded, published, linked, embedded, made available, reviewed, approved, or otherwise approved of making the "FEDCAD meme" available on Defcad.com or any other website, platform, server, or service owned, controlled, operated, or used by any Plaintiff.

**RESPONSE**: Thomas Odom uploaded the FEDCAD meme to the Defcad.com website.

15. Identify any denial, disclaimer, explanation, response, or other statement included with, near, linked to, or otherwise associated with any copy or version of the "FEDCAD meme" hosted or made available by any Plaintiff.

**RESPONSE**: The FEDCAD meme is no longer available on any website, platform, server, or serviced owned or controlled by Plaintiffs.  The meme was previously available on the Defcad.com website, which contained a link to the Middle District of Florida litigation between the parties where Plaintiffs denied the allegations in the meme.

16. State how many views, impressions, downloads, accesses, or other engagements each copy or version of the "FEDCAD meme" received through any website, platform, server, or service owned, controlled, operated, or used by any Plaintiff, and explain how You determined those figures.

**RESPONSE**: The FEDCAD meme on the Defcad.com website had 2,738 views and 561 downloads.  Plaintiffs determined the views by reviewing its database and the downloads by reviewing the webpage.

17. Explain why You did not bring this action against any other person or entity known to You to have shared, published, republished, displayed, linked to, or otherwise disseminated the "FEDCAD meme."

**RESPONSE**: Plaintiffs brought this action against all known members of the Gatalog who have disseminated the FEDCAD meme.

18. Identify each copy, version, instance, link, embedded display, or other availability of "FEDCAD-19" on any website, platform, server, or service owned, controlled, operated, or used by any Plaintiff, including Defcad.com.  For each, identify where it was located, when it was made available, who made it available, who reviewed or approved making it available, and whether it remains available.

**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, unintelligible, and unlikely to lead to the discovery of admissible evidence.  Clark does not identify what "FEDCAD-19" is or explain its alleged relevance to this case, which is not apparent to Plaintiffs.

19. Identify each instance in which any Plaintiff addressed, denied, responded to, commented on, or otherwise discussed any claim made on the FEDCAD-19.  For clarity, the claims made on the FEDCAD-19 include the following:

a.   "Cody Wilson is a child sex predator."
b.   "All my homies use odysee"
c.   "Fuck Defcad"







**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, unintelligible, and unlikely to lead to the discovery of admissible evidence.  Clark does not identify "the FEDCAD-19" or explain its alleged relevance to this case, which is not apparent to Plaintiffs.

20.    Explain the nature and extent of any relationship, representation, consultation, professional service, engagement, or other relationship between Jason M. Tyra or Jason M. Tyra, PLLC and any Plaintiff, Cody Rutledge Wilson, or any related entity or individual acting on any Plaintiff's behalf.  For each such relationship, state the dates, matters, cases, transactions, legal issues, fees, compensation, or other consideration paid, promised, or contemplated.

**RESPONSE**: Mr. Tyra has prepared Defense Distributed's taxes since 2016.  Mr. Tyra has billed Defense Distributed for tax filings and public reports on an annual basis.  Mr. Tyra's compensation has varied over the course of the relationship.  Plaintiffs further state that the answer to this interrogatory may be determined by examining the documents produced by Plaintiffs in discovery.

21.    Identify any social media accounts, profiles, pages, channels, handles, usernames, or similar accounts on any social media, microblogging, video- sharing, or community platform that any Plaintiff, or any current or former officer, director, employee, agent, contractor, or person acting on any Plaintiff's  behalf,  possesses, controls,  possessed,  or  controlled  for  any purpose related to any Plaintiff, DEFCAD, Defcad.com, FEDCAD, the allegations in this action, or the claims and defenses in this action.  For each, state the platform, handle, URL if known, account

purpose, and each person with administrative, moderator, owner, or other elevated permissions.

**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.  Plaintiffs have had dozens (if not hundreds) of officers, directors, employees, agents, contractors, and "persons acting on [their] behalf" over the last few years.  It would be incredibly burdensome for Plaintiffs to attempt to determine each of these individuals' "social media accounts, profiles, pages, channels, handles, usernames, or similar accounts on any social media, microblogging, video- sharing, or community platform[s]" and the purpose of each such account.  Clark fails to provide any objective criteria for Plaintiffs to determine whether such accounts are "related to … the allegations in this action, or the claims and defenses in this action."  Plaintiffs' burden in responding to this interrogatory would not be proportional to the minimal (if any) benefit to Clark from this discovery.

22. Identify any GitHub usernames, accounts, organizations, repositories, or other GitHub identities that any Plaintiff, or any current or former officer, director, employee, agent, contractor, or person acting on any Plaintiff's behalf, possesses, controls, possessed, or controlled for any purpose related to any Plaintiff, DEFCAD, Defcad.com, DEFCAD services, DEFCAD- related software, FEDCAD, the allegations in this action, or the claims and defenses in this action.  For each, state the username, account, organization, repository, URL if known, purpose, and each person with owner, administrator, maintainer, contributor, or other elevated permissions.

**RESPONSE**: Plaintiffs object to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.  Plaintiffs have had dozens (if not hundreds) of officers, directors, employees, agents, contractors, and "persons acting on [their] behalf" over the last few years.  It would be incredibly burdensome for Plaintiffs to attempt to determine each of these individuals' "GitHub usernames, accounts, organizations, repositories, or other GitHub identities" and the purpose of each account.  Clark also fails to provide any objective criteria for Plaintiffs to determine whether such accounts are "related to … the allegations in this action, or the claims and defenses in this action."  Plaintiffs' burden in responding to this interrogatory would not be proportional to the minimal (if any) benefit to Clark.

23. Explain what the Git repository "JG" emailed to Cody Rutledge Wilson on or about August 23, 2018 contained at that time.

**RESPONSE**: The git repository "JG" was a private, local repository of software code and a ledger of changes for the ecommerce website Ghostgunner.net.  It did not contain any customer information, database information, or any security credentials.

24. Explain how DEFCAD, Inc. operates DEFCAD without a database containing any information about users, and explain why DEFCAD, Inc. denied knowing about an Iranian server hosting mirrored DEFCAD content while also denying that it did not take action to block, restrict, condemn, or otherwise steer users away from that system.

**RESPONSE**: The DEFCAD application operates as a CMS preserving no customer information.  Any customer information handled as part of operations is passed through to third party

verification services. DEFCAD has no knowledge of an Iranian server hosting mirrored DEFCAD content but has taken action to take down third party sites trying to spoof the service.

25.     Explain how Antelope Hill Publishing came to be referenced, linked, promoted, advertised, or otherwise displayed on any blog, website, platform, server, or service owned, controlled, operated, or used by any Plaintiff, and explain whether and how You excluded Antelope Hill Publishing as a cause of any alleged customer loss, reputational injury, lost revenue, or other claimed damages.

**RESPONSE:** Thomas Odom accepted a payment in exchange for an ad placement for Antelope Hill Publishing on the DEFCAD newsletter. With respect to the cause of Plaintiffs' damages, the answer to this interrogatory may be determined by examining the expert opinion report of Jason Tyra. Plaintiffs further state that the timing of events generally establishes that defendants, not other things, caused the substantial reduction in Plaintiffs' revenue and profits.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing interrogatory responses are true and correct to the best of my knowledge and belief.

Executed on May 14, 2026

Name: Cody Wilson
Title: Owner and Manager of Plaintiffs

8

**PLAINTIFFS' RESPONSES TO DEFENDANT ZACKARY CLARK'S FIRST SUPERSEDING CONSOLIDATED REQUESTS FOR PRODUCTION**

Pursuant to Federal Rule of Civil Procedure 34, plaintiffs Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. respond and object to the First Superseding Consolidated Requests for Production propounded by defendant Zackary Clark.

1.      Produce each statement, post, publication, republication, communication, screenshot, URL, archived copy, native copy, or other copy identified in response to Interrogatory No. 1.

**RESPONSE**:  Plaintiffs have produced all responsive documents that could be located after diligent search.

2.      Produce each Document or Communication reflecting, referring to, or evidencing that the X account "@ArmedJoy" was controlled by Zackary Clark on December 31, 2025.

**RESPONSE**:  Plaintiffs have produced all responsive documents that could be located after diligent search.  Plaintiffs also refer Clark to the transcript from his May 12, 2026 deposition.

3.      Produce each Document or Communication reflecting, referring to, or evidencing Your contention that any statement, post, publication, republication, or communication identified in response to Interrogatory No. 1 was false, misleading, actionable, or otherwise supports any claim against Zackary Clark.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

4.      Produce each Document or Communication identified, referenced, relied upon, or described in response to Interrogatory No. 5 concerning Your contention that Zackary Clark joined any agreement alleged in the Complaint.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

5.      Produce each Document or Communication reflecting, referring to, or evidencing Your contention that Zackary Clark was affiliated with, employed by, or an independent contractor of MAF Corp.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

6.      Produce each Document or Communication reflecting, referring to, or evidencing Your contention that Zackary Clark promoted The Gatalog in a manner intended to divert customers away from, or otherwise harm, any Plaintiff.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

9

7. Produce documents sufficient to show the existence, identity, nature, and scope of each customer, creator, vendor, partner, business relationship, economic relationship, or other relationship identified in response to Interrogatory No. 8.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

8. Produce each Document or Communication reflecting, referring to, or evidencing that any customer, creator, vendor, partner, business relationship, economic relationship, or other relationship identified in response to Interrogatory No. 8 was lost, harmed, impaired, or affected because of Zackary Clark.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

9. Produce each Document or Communication reflecting, referring to, or evidencing any causation analysis, damages analysis, lost-customer analysis, lost-relationship analysis, lost-sale analysis, lost-revenue analysis, or other damages calculation identified, referenced, relied upon, or described in response to Interrogatory Nos. 9, 10, or 11.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

10. Produce each written or recorded statement, note, memorandum, email, text message, direct message, interview summary, or other Document or Communication that memorializes, records, summarizes, or reflects information provided by any person identified in response to Interrogatory No. 12.

**RESPONSE**: Plaintiffs object to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks all documents provided to Plaintiffs by every trial witness. Subject to these objections, Plaintiffs state that they have produced all documents supporting their contention that Clark is liable to Plaintiffs.

11. Produce documents sufficient to show each copy, version, instance, link, embedded display, location, date of availability, period of availability, current availability, denial, disclaimer, explanation, response, view count, impression count, download count, access count, or other engagement count identified, referenced, relied upon, or described in response to Interrogatory Nos. 13, 15, or 16.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

12. Produce each Document or Communication reflecting, referring to, or evidencing the creation, uploading, publication, linking, embedding, review, approval, or making available of the "FEDCAD meme" on Defcad.com or any other website, platform, server, or service owned, controlled, operated, or used by any Plaintiff, as identified, referenced, relied upon, or described in response to Interrogatory No. 14.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

13. Produce documents sufficient to show each copy, version, instance, link, embedded display, location, date of availability, period of availability, current availability, reviewer, approver, publisher, uploader, response, denial, comment, or discussion identified, referenced, relied upon, or described in response to Interrogatory Nos. 18 or 19 concerning FEDCAD-19.

**RESPONSE**: Plaintiffs object to this request as vague, ambiguous, unintelligible, and unlikely to lead to the discovery of admissible evidence.  Clark does not identify what "FEDCAD-19" is or explain its alleged relevance to this case, which is not apparent to Plaintiffs.

14. Produce each Document or Communication reflecting, referring to, or evidencing any relationship, representation, consultation, professional service, engagement, date, matter, case, transaction, legal issue, fee, compensation, or other consideration identified, referenced, relied upon, or described in response to Interrogatory No. 20 concerning Jason M. Tyra or Jason M. Tyra, PLLC.

**RESPONSE**: Plaintiffs object to this request to the extent it seeks communications between Plaintiffs and Mr. Tyra on grounds that it is overbroad, unduly burdensome, harassing, and seeks the disclosure of privileged communications and expert work product.
 have produced all responsive documents that could be located after diligent search.

15. Produce documents sufficient to show each social media account, profile, page, channel, handle, username, platform, URL, account purpose, administrator, moderator, owner, or person with elevated permissions identified in response to Interrogatory No. 21.

**RESPONSE**: Plaintiffs object to this request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.  Plaintiffs have had dozens (if not hundreds) of officers, directors, employees, agents, contractors, and "persons acting on [their] behalf" over the last few years.  It would be incredibly burdensome for Plaintiffs to attempt to determine each of these individuals' "social media accounts, profiles, pages, channels, handles, usernames, or similar accounts on any social media, microblogging, video- sharing, or community platform[s]" and the purpose of each such account.  Clark also fails to provide any objective criteria for Plaintiffs to determine whether such accounts are "related to … the allegations in this action, or the claims and defenses in this action."  Plaintiffs' burden in responding to this request would not be proportional to the minimal (if any) benefit to Clark from this discovery.

16. Produce documents sufficient to show each GitHub username, account, organization, repository, identity, URL, purpose, owner, administrator, maintainer, contributor, or person with elevated permissions identified in response to Interrogatory No. 22.

**RESPONSE**: Plaintiffs have already produced various GitHub related documents in response to defendant Elik's request for production.  Plaintiffs object to producing this request, which is based on Interrogatory No. 22, as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.  Plaintiffs have had dozens (if not hundreds) of officers, directors, employees, agents, contractors, and "persons acting on [their] behalf" over the last few years.  It would be incredibly burdensome for Plaintiffs to attempt to determine each of these

individuals' "GitHub usernames, accounts, organizations, repositories, or other GitHub identities" and the purpose of each username or identity.  Clark also fails to provide any objective criteria for Plaintiffs to determine whether such usernames or identities are "related to … the allegations in this action, or the claims and defenses in this action."  Plaintiffs' burden in responding to this request would not be proportional to the minimal (if any) benefit to Clark.

17. Produce each Document or Communication reflecting, referring to, or evidencing what the Git repository "JG" emailed to Cody Rutledge Wilson on or about August 23, 2018 contained at that time.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

18. Produce each Document or Communication reflecting, referring to, or evidencing the facts described in response to Interrogatory No. 24 concerning DEFCAD, Inc.'s operation of DEFCAD without a database containing any information about users, the Iranian server hosting mirrored DEFCAD content, and any action taken or not taken to block, restrict, condemn, or otherwise steer users away from that system.

**RESPONSE**: After diligent search, Plaintiffs have been unable to locate any documents responsive to this request.

19. Produce each Document or Communication reflecting, referring to, or evidencing how Antelope Hill Publishing came to be referenced, linked, promoted, advertised, or otherwise displayed on any blog, website, platform, server, or service owned, controlled, operated, or used by any Plaintiff.

**RESPONSE**:  Plaintiffs have produced all responsive documents that could be located after diligent search.

20. Produce each Document or Communication reflecting, referring to, or evidencing whether and how You excluded Antelope Hill Publishing as a cause of any alleged customer loss, reputational injury, lost revenue, or other claimed damages.

**RESPONSE**:  Plaintiffs have produced all responsive documents that could be located after diligent search.

21. From January 28, 2025, produce the complete thread of Documents and Communications in any internal Slack workspace, including the "#general" channel or any similarly named channel, consisting of the conversation started by Stephen Sheftall on January 28, 2025 at 10:47 AM and continuing through all replies, reactions, threads, and messages until the final message by Stephen Sheftall on January 28, 2025 at 3:46 PM.  This Request includes the entire continuous thread and all associated content, including but not limited to:

a. all messages, replies, threaded replies, reactions, emojis, and edits;

b. all attached files, images, links, screenshots, documents, or embedded content; and

c. all metadata, including timestamps, sender usernames or IDs, channel information, edit history, deletion logs if any, and thread context.

**RESPONSE**: Plaintiffs have produced all responsive documents that could be located after diligent search.

22.     From January 1, 2021, to the present, produce all Documents and Communications in Plaintiffs' possession, custody, or control that concern or discuss any public accusations of pedophilia, ephebophilia, child molestation, sexual assault of a minor, Cody Rutledge Wilson's guilty plea to a charge of sexual injury to a minor, or any similar topic, as they relate to Cody Rutledge Wilson. This Request includes, but is not limited to, internal discussions in any Slack workspace, channel, direct message, or thread.

**RESPONSE**: Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, harassing, vague, not proportional to the needs of the case, and seeks privileged communications. Plaintiffs allege that Clark and the other defendants have made false and misleading statements about Plaintiffs' business, including that its customer database has been "hacked" and "dumped" and that its website is hosted in Iran. Communications regarding allegations or sexual misconduct against Cody Rutledge Wilson are not relevant to any claims or defenses. Moreover, Plaintiffs have millions of communications across various platforms that may contain responsive communications on the listed sexual-related topics or "any similar topic." Plaintiffs' immense burden in collecting and reviewing millions of communications for documents that may be responsive to this vague request would not be proportional to the minimal (if any) benefit to Clark from this discovery.

Dated:  May 14, 2026

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*