# EXHIBIT 1

FILED
San Francisco County Superior Court

JUN 0 5 2026

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>GATALOG FOUNDATION INC., a Florida corporation; CTRLPEW LLC, a Florida limited liability company; ALEXANDER HOLLADAY; MATTHEW LAROSIERE; JOHN ELIK AKA "Ivan The Troll"; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CGC-26-633508<br><br>ORDER CONTINUING HEARING ON DEFENDANTS' MOTIONS TO QUASH FOR LACK OF PERSONAL JURISDICTION TO ALLOW JURISDICTIONAL DISCOVERY |

The motions to quash service of summons for lack of personal jurisdiction filed by Defendants Gatalog Foundation, Inc. and Matthew Larosiere, CTRLPew LLC and Alexander Holladay, and John Elik came on for haring on June 5, 2026. Having considered the pleadings and papers on file in the action, and the arguments of counsel presented at the hearing, the Court hereby continues the hearing on Defendants' to allow the People to conduct jurisdictional discovery.

**THE PEOPLE'S ALLEGATIONS**

In its Complaint ("Compl."), the People of the State of California (the "People"), by and through Attorney General Rob Bonta and San Francisco City Attorney David Chiu, seek a permanent injunction,

- 1 -

civil penalties, and other equitable relief against Defendants. The People allege as follows: 3D printed guns are a growing subset of "ghost guns," which are "firearms that lack a serial number and are made by private, unlicensed individuals from firearm products sold or produced without a background check." (Compl. ¶¶ 3, 29; see also *id.* ¶¶ 28-31.) "They are easy to produce with 3D printing equipment and materials readily available for purchase online or at common retailers, such as a 3D printer and plastic filament, and firearm parts widely available for purchase from firearm dealers or parts suppliers." (*Id.* ¶ 3; see also *id.* ¶¶ 21, 37-44.) California faces a public safety crisis from the proliferation of ghost guns, many of which are used in homicides and other serious crimes. (*Id.* ¶¶ 2, 33-36, 45-49.)[1]

Defendants are "unlawfully distributing computer code for 3D printing firearms and prohibited firearm accessories" and "promoting and facilitating the unlawful manufacture of 3D printed firearms and firearm accessories," in violation of Civil Code sections 3273.61 and 3273.625 and the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ("UCL"). (*Id.* ¶ 1.)[2] In particular, Defendants "mak[e] computer code and instructions for producing over 150 different designs of lethal firearms and prohibited firearm accessories available" on the Internet "through two websites that they own, control, or manage: thegatalog.com and ctrlpew.com." (*Id.* ¶¶ 5, 50-52.) "Each website links to profiles that Defendants maintain on Odysee.com, an online video and filesharing platform through which Defendants make the code available." (*Id.* ¶¶ 5, 53-77, 84-92.) Among the designs distributed through the Gatalog's Printable Frames and Receivers profile is "The CAG19," described as a "California Compliant Glock 19-based Carbine kit." (*Id.* ¶ 69.) The instructions state the design is legal in California and that "[t]his project is aimed to provide Californians with the entire legal process to print and assemble a California compliant Glock 19 carbine." (*Id.*) However, 3D printing such a firearm without a manufacturer's license is illegal under California law. (*Id.*)

"To subsidize their operations, Defendants also sell merchandise related to 3D printed firearms

---

[1] See *Bondi v. VanDerStok* (2025) 604 U.S. 458, 464 ["police departments around the Nation have confronted an explosion of crimes involving these 'ghost guns'" (cleaned up)] [upholding application of federal Gun Control Act to manufacturers and sellers of "weapon parts kits"].)

[2] Civil Code section 3273.61(a)(1) provides that a civil action may be brought against a person who "knowingly . . . [d]istributes, by any means including the internet, any digital firearm manufacturing code to any other person in this state . . . ." Section 3273.625(a) provides that "[i]t is unlawful to knowingly, willfully, or recklessly cause another person to engage in the unlawful manufacture of firearms, or to knowingly, willfully, or recklessly aid, abet, promote, or facilitate the unlawful manufacture of firearms."

- 2 -

and solicit donations." (*Id.* ¶¶ 5, 90.)  Thus, Defendants Larosiere and Holladay operate another company, MAF Corp., that sells "parts kits specifically designed to complete the firearms printed using the Gatalog's digital firearms code." (*Id.* ¶ 90.)  The CTRLPew website directs users to MAF Corp., which is also featured as a preferred part vendor. (*Id.*)

"Through the CTRLPew website, Defendants sell merchandise, solicit donations for gun developers, and earn commissions through affiliate links to various 3D printing equipment, material, and other items.  Defendants Holladay, Larosiere, and Elik each have their own pages for receiving donations through the CTRLPew website." (*Id.* ¶ 89.)  "CTRLPew sells merchandise directed to California residents," including a mock warning sticker that specifically references California law concerning the sale of 3D printers for manufacturing firearms. (*Id.* ¶ 91.)  The CTRLPew website terms of service instruct "California Users and Residents" to resolve complaints by contacting the California Department of Consumer Affairs. (*Id.*)

"As part of their investigation, the People used Defendants' code to build a fully functioning Glock-style handgun.  The People downloaded the code and instructions necessary for building this deadly weapon from Defendants' website with a few simple keystrokes.  The download was performed from a computer in San Francisco with a California-based IP address." (*Id.* ¶ 6; see also *id.* ¶¶ 60, 74-83.)

Defendant Gatalog Foundation is a Florida corporation with its principal place of business in Orlando, Florida, and was previously known as Deterrence Dispensed. (*Id.* ¶ 9.)  Defendant CTRLPew LLC is a Florida limited liability company with its principal place of business in Orlando, Florida. (*Id.* ¶ 10.)  Defendant Alexander Holladay is a principal of both Gatalog Foundation and CTRLPew LLC, serving as the Treasurer of the former and Manager and Registered Agent of the latter. (*Id.* ¶ 11.)  Defendant Matthew Larosiere is the President and Registered Agent of Gatalog Foundation. (*Id.* ¶ 12.)  Defendant John Elik is the Director of Gatalog Foundation and utilizes the internet alia "IvanTheTroll." (*Id.* ¶ 13.)

"The individual Defendants are principals in the corporate entities associated with Defendants' activities, and also actively contribute to those activities by "developing their own digital firearm manufacturing code and making it available for download on Gatalog's Odysee Profiles." (*Id.* ¶ 93.)

Defendant Holladay "develops his own designs for 3D printed firearms and firearm accessories, using the handling '@ctrtlpew.' Posts for his designs are available on CTRLPEW's website under that handle, with links to the files available on the Gatalog Odysee profiles." (*Id.* ¶ 94.) He has six designs posted on CTRLPew and available for download on Odysee, including two frames/receivers and a silencer. (*Id.*) Defendant Larosiere also develops his own designs for 3D printed firearms; there are two printable frame/receiver designs attributed to him on CTRLPew, with linked files available for download on the Gatalog Odysee profiles. (*Id.* ¶ 95.) Defendant Elik also develops his own designs for 3D printed firearms and firearm accessors; there are over 20 designs attributable to him under the alias "IvanTheTroll" on CTRLPew, with linked files available for download on the Gatalog Odysee profiles, including designs for over 15 frames/receivers and several large-capacity magazines. (*Id.* ¶ 96.) Defendants intentionally availed themselves of the benefits and protections of California including by: distributing digital firearm manufacturing code and associated instructions into California, including digital firearm manufacturing code and instructions specifically aimed at California users; selling associated merchandise directed to a California audience; directing website users to avail themselves of protections provided by California law; and soliciting and accepting donations from California to support the distribution of digital firearms code." (*Id.* ¶ 24.)

## JURISDICTIONAL FACTS

Defendants' motions to quash are supported by the declarations of the three individual Defendants, pertinent portions of which are summarized below.

Defendant Holladay is the Manager and Registered Agent of CTRLPew, LLC and the Treasurer of Gatalog Foundation, Inc. (Holladay Decl. ¶ 1.) He also "operate[s] the website located at thegatalog.com." (*Id.* ¶ 4.) He asserts that the website is not owned, operated, or controlled by Gatalog Foundation, which "has never been operational." (*Id.* ¶¶ 3-4.) "The Gatalog.com is owned and operated by CTRLPew as a fan site and informational resource for the public." (*Id.* ¶ 4.) TheGatalog.com website "functions as an informational hub containing general information and hyperlinks to profiles on Odysee.com, a third-party file-sharing platform. TheGatalog.com does not host files for download." (*Id.* ¶ 6.) It "generates no revenue and is not monetized in any way." (*Id.* ¶ 7.) Holladay describes it as "a

- 4 -

passive, informational portal." (Id. ¶ 34.)

CTRLPew LLC maintains and operates the CTRLPew website. (Id. ¶ 9.)[3] That website provides "guides, tutorials, and blog posts related to 3D printing of firearms and firearm accessories." (Id.) It also links to third-party Odysee profiles associated with "Gatalog" and contains a "File Drops" section and a search function to "Search the Gatalog." (Id.) CTRLPew generates revenue through the sale of merchandise and the solicitation of donations on the CTRLPew website. (Id. ¶ 10.) Holladay asserts that "[n]one of this revenue is derived from sales—to California or any other state—of three-dimensional works relating to firearms, California-targeted marketing, or any activity directed at California residents." (Id.) Holladay "create[s] certain written, pictorial, and three-dimensional works relating to firearms," which he publishes on the CTRLPew website. (Id. ¶ 5.) Holladay "did not upload files to the Odysee platform," nor did he instruct anyone else to upload works he created to Odysee. (Id. ¶ 17.) "To the extent that any of my designs appear on those [Odysee] profiles, they were posted by others, and I did not direct those postings." (Id. ¶ 18.) CTRLPew has no physical presence, employees, or assets in California. (Id. ¶ 26.) It has not directed any advertising, paid media, geofenced or geotargeted campaigns, or solicitations specifically at California residents. (Id. ¶ 28.) Holladay has no personal contacts with California, such as residence, domicile, assets, etc. (Id. ¶¶ 11-13.)

Defendant Larosiere is the President of Gatalog Foundation, Inc. (Larosiere Decl. ¶ 1.) He incorporated Gatalog Foundation as a Florida corporation in 2021. (Id. ¶ 3.) Gatalog Foundation never became operational: it "has never published a newsletter, conducted any business, maintained any functional website, distributed any content, or engaged in any other activity." (Id. ¶ 4.) Larosiere is not involved with the ownership or administration of the website thegatalog.com. (Id. ¶ 5.) He does not own, operate, manage, or control that website; did not create, design, or develop it; and has "no administrative access to or editorial control over the website or its contents." (Id.) "Gatalog Foundation does not own, operate, manage, or control TheGatalog.com." (Id. ¶ 6.) Larosiere has not, through the Gatalog Foundation or otherwise, "operated a website, curated links to third-party platforms, managed Odysee profiles, or distributed any files or content." (Id. ¶ 15.) Larosiere has never uploaded files to the Odysee

---

[3] CTRLPew apparently is an abbreviation for the CTRL key on a keyboard and "Print every weapon."

platform. (*Id.* ¶ 12.) He "did not direct or instruct anyone to upload files to Odysee aimed at California residents." (*Id.*) Larosiere does not own, control, or manage any Odysee profile. (*Id.* ¶ 14.) He has "no administrative access to that [sic] profile and do[es] not curate, edit, or moderate content on Odysee." (*Id.*) Like Holladay, he does not have any contacts with California. (*Id.* ¶¶ 17-25.)

Defendant Elik is a Director of Gatalog Foundation. (Elik Decl. ¶ 3.) "Gatalog Foundation has never been operational, has never conducted any business, and has never operated a public website or distributed any content." (*Id.*) Elik has not, "through Gatalog Foundation or on behalf of Gatalog Foundation, operated a website, curated links to third-party platforms, managed Odysee profiles, or distributed any files or content." (*Id.* ¶ 4.)

Elik previously had account credentials for a profile associated with Deterrence Dispensed, a predecessor of Odysee.com. (*Id.* ¶¶ 15-17.) His profile later automatically transferred to Odysee.com after the platform hosting it twice rebranded. (*Id.*) The Deterrence Dispensed profile name on Odysee.com was changed to "The Gatalog." (*Id.* ¶ 18.) Elik has not "posted any files or content to the Odysee profiles associated with 'The Gatalog' since in or around June 2025." (*Id.* ¶ 19.) Elik "did not upload files to the Odysee profiles associated with 'The Gatalog' from California or for a California audience," nor did he "direct or instruct anyone to upload files to Odysee profiles aimed at California residents." (*Id.* ¶ 10.) He likewise does not have any personal contacts with California. (*Id.* ¶¶ 5-9.)

The evidence submitted by the People in opposition to Defendants' motions generally supports their allegations, as well as providing additional details, some of which clarify or even conflict with the facts set forth in Defendants' declarations. That evidence consists principally of sworn affidavits and discovery responses submitted by Defendants in other litigation, together with screenshots of their websites.

Thus, Defendant Holladay, who initially identified himself utilizing the pseudonym "The Gatalog," states, "My web domain, TheGatalog.com, hosts a website which serves as an index with links to various accounts owned by other people that host 3-D printable firearms parts related computer files." (Roberts Decl. Ex. C ¶ 5.) Among the linked accounts is an account with a different website called Odysee. (*Id.* ¶ 8.) In a second lawsuit, which Defendant Larosiere brought against a company, Defense

- 6 -

Distributed, and others for copyright infringement, he described himself as "a firearms industry attorney and author" who "engage[s] in the design and development of firearms technologies, and produce[s] pictorial, written, and visual artworks related to [his] work." (*Id.* Ex. G ¶ 2.) Larosiere is the author and owner of numerous copyrighted works including "photographic visual art works," "literary works" (written documentation, which apparently includes instructional manuals and computer code), and "three-dimensional art works" (3D models) depicting various firearms. (*Id.* Ex. G ¶ 5.)[4] Larosiere stated that each of these works was either created by him or at his direction by Defendant Elik pursuant to a written agreement. (*Id.* Ex. G ¶ 8.) Larosiere created certain of the works himself and published them utilizing John Elik's pseudonym, Ivan The Troll. (*Id.* Ex. G ¶ 10.) He alleged that the defendant company had posted the works as its own on "Ghostguns.com." (*Id.* Ex. G ¶ 17.) Defendant Elik filed a closely similar declaration in the same lawsuit. (*Id.* Ex. H.) In sworn answers to interrogatories served in the same case, Larosiere identified "Odysee.com, via the account 'The Gatalog's Printable Frames and Receivers,'" as a website or other platform on which he, or a third party acting with his authorization, "posted, published, disseminated, or otherwise made viewable the actual works at issue." (*Id.* Ex. N, 44.)

The People also present evidence that the Gatalog website links to a chat forum operated by Defendants, "the primary purpose of which is to develop operational files for dissemination on Odysee." (Opposition, 14; Chan Decl. Ex. OO.) The forum includes a chat room dedicated to California in which some of the participants are based in California, discuss which firearm models to make, and how to avoid California gun laws. (Baron Decl. ¶ 5, Exs. B, C.) CTRLPew owns the forum, while the three individual Defendants have all been administrators of the forum during the relevant time period. (Roberts Decl. ¶ 13, Ex. M; Baron Decl. ¶¶ 7-10, Exs. D-K.)

## EVIDENTIARY OBJECTIONS

Defendants' numerous evidentiary objections to the People's evidence are overruled. The Court may take judicial notice of court records, including the records of other courts, pursuant to Evidence Code section 452(d). (*South Lake Tahoe Property Owners Group v. City of South Lake Tahoe* (2023) 92

---

[4] Attached copyright assignment agreements make clear that the underlying works include documents that describe and detail the assembly of specific firearms, CAD design files and technical drawings for those firearms, and photographs depicting the firearms. (Roberts Decl. Ex. I.)

Cal.App.5th 735, 751-752; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 218-219 & fn. 11.)  Although the truth of matters asserted in such records is generally not subject to judicial notice, sworn declarations and discovery responses signed by Defendants constitute party admissions that are properly noticeable for their truth.  (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 485 ["a court may take judicial notice of a party's admissions or concessions, but only in cases where the admission cannot reasonably be controverted, such as in answers to interrogatories or requests for admission, or in affidavits and declarations filed on the party's behalf."].)  Defendants have properly authenticated screenshots of Defendants' websites, including the Gatalog Odysee profiles and portions of chat rooms on Defendants' chat forum.  (See, e.g., *People v. Goldsmith* (2014) 59 Cal.4th 258, 268 [document may be authenticated by "witness testimony, circumstantial evidence, content and location"]; *Adoption of X.D.* (2025) 114 Cal.App.5th 812, 831-833 [screenshots of text messages were properly authenticated]; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 523 [observing it is "routine in law-and-motion practice" for a party to submit declarations by persons who can attest to the authenticity of attached exhibits]; Evid. Code § 1552 [presumption that a printout from a website is an accurate copy].)  The People do not offer those documents for their truth, and thus Defendants' hearsay objections are groundless.

## **LEGAL STANDARD**

Under California's long-arm statute, California courts may exercise jurisdiction on any basis consistent with the Constitutions of California and the United States.  (Code Civ. Proc. § 410.10.) Jurisdiction is proper if a defendant has minimum contacts with California such that a suit here does not offend traditional notions of fair play and substantial justice.  (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

"'Minimum contacts' may support either general (also called 'all-purpose') jurisdiction or specific (also called 'case-linked') jurisdiction."  (*SK Trading International Co. Ltd. v. Superior Court* (2022) 77 Cal.App.5th 378, 386 ("*SK Trading*"); see *Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 225, 262 ("*Bristol-Myers*").)  The paradigm of general jurisdiction for an individual is his or her domicile, and for a corporation its state of incorporation or principal place of business.  (*Daimler AG v. Bauman*

- 8 -

(2014) 571 U.S. 117, 137.)  If general jurisdiction exists, the defendant may be sued in California whether or not its contacts with the state are related to the controversy alleged in the litigation.  (See *id.*)

For specific jurisdiction, a suit must '*relate to* the defendant's contacts with the forum.' A strict causal relationship between the defendant's in-state activity and the litigation is not needed for specific personal jurisdiction, and some relationships will support jurisdiction without a causal showing." (*In re Fuel Industry Climate Cases* (2026) 117 Cal.App.5th 882, 889 (cleaned up).)  "A court may exercise specific jurisdiction over a foreign defendant—i.e., one domiciled outside the jurisdiction . . .—provided: (1) the defendant takes some act by which it purposefully avails itself of the privilege of conducting activities within the forum State; (2) the plaintiff's claims arise out of or relate to the defendant's contacts with the forum; and  (3) maintenance of the suit is reasonable, such that it does not offend traditional notions of fair play and substantial justice.  The plaintiff must satisfy the first two prongs of the test; if the plaintiff does so, the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be unreasonable." (*Id.* at 889-890 (cleaned up).)  When a defendant moves to quash service for lack of personal jurisdiction, the plaintiff bears the burden of proving facts supporting the exercise of jurisdiction by a preponderance of the evidence. (*Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 293.)

## DISCUSSION

### I.  Specific Jurisdiction

The People do not contend that Defendants are subject to general personal jurisdiction in California.  Thus, the issue presented is whether Defendants are subject to specific jurisdiction in California as to the claims asserted by the People. (See Opposition, 21 ["Specific jurisdiction is at issue here."].)

The parties disagree as to the appropriate standard that applies when, as here, a party asserts personal jurisdiction over a company that sells or distributes goods over the internet. Defendants take the position that "posting content accessible worldwide does not constitute 'express aiming' at California and that foreseeability of forum effects is insufficient." (Opening Brief, 8.)[5]  Defendants argue that "personal

---

[5] Defendants' three opening briefs are substantially identical.  This tentative ruling cites to the opening

- 9 -

jurisdiction turns on whether Defendants purposefully directed conduct at California." (*Id.*; see also *id.* at 21 ["Defendants did not purposefully direct any conduct toward California"].)  Defendants rely heavily on the California Supreme Court's 2002 decision in *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, as well as on rulings by certain federal courts.  (Opening Brief, 14-16; Omnibus Reply, 7-8.)  They contend that as in *Pavlovich*, the Odysee profiles containing their digital firearms code are "passive—they are globally accessible and devoid of California-specific targeting, solicitation, or commercial activity." (Opening Brief, 15; see also *id.* at 16 [websites and profiles "lack geographic filtering, state-specific listings, targeted solicitation, or any mechanism to channel transactions to California"].)

The People, in contrast, rely primarily upon the "effects test" derived from *Calder v. Jones* (1984) 465 U.S. 783 as well as recent Ninth Circuit authority.  (Opposition, 22, 24-25.)  In contrast to *Pavlovich*, they argue, Defendants' websites "specifically target California by: (1) promoting and distributing California specific digital code files, (2) referring complaints to the California Department of Consumer Affairs, (3) including chatrooms dedicated to California users, (4) soliciting donations, (5) selling merchandise into California . . . , and (5) promoting the sale of firearms parts kits into California (by a company Defendants control) to turn 3D prints into operable firearms." (*Id.* at 27.)

As the parties' dueling briefs illustrate, the law governing personal jurisdiction over e-commerce defendants is somewhat unsettled.  For the reasons discussed in the next section, the Court grants the People's request to conduct jurisdictional discovery so that it may resolve Defendants' motions on a complete factual record.  Nevertheless, the Court offers the following preliminary discussion of the authorities it finds most persuasive, which the parties should use as a guide to jurisdictional discovery and may address in supplemental briefing following the completion of such discovery.

### A.      Purposeful Availment/Direction

The first prong of the personal jurisdiction test "may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." (*Briskin v. Shopify, Inc.* (9th Cir. 2025) (en banc) 135 F.4th 739, 751 fn. 10, quoting *Davis v. Cranfield Aerospace Sols., Ltd.* (9th Cir. 2023).)[6]  To analyze

brief filed on behalf of Defendants CTRLPew LLC and Holladay.

[6] Courts generally use the purposeful availment test in suits sounding in contract and for unintentional tort claims, and the purposeful direction test in claims involving intentional tortious or "tort-like" acts. (*Herbal Brands, Inc. v. Photoplaza, Inc.* (9th Cir. 2023) 72 F.4th 1085, 1091 [applying purposeful

- 10 -

whether conduct was purposefully directed to the forum state, courts employ the "*Calder* effects" test, which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." (*Id.* at 751 (cleaned up).)  The purposeful direction test requires that the defendant "(1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." (*Id.*)  In applying these jurisdictional principles to "the ever-evolving worlds of technology, electronic communication, and e-commerce," federal and California courts have found "express aiming" where "defendants, in their regular course of business, sold a physical product via an interactive website and caused that product to be delivered to a forum state." (*Id.* at 755.)[7]

Thus, *Herbal Brands, Inc. v. Photoplaza, Inc.* (9th Cir. 2023) 72 F.4th 1085 involved a Delaware corporation with its principal place of business in Arizona that sold its health, wellness, fitness, and nutrition products directly to consumers or through third parties.  It sued in Arizona, alleging that defendants, New York residents, engaged in unauthorized sales of its products on Amazon in violation of the Lanham Act and state law.  Plaintiff alleged that defendants, in their regular course of business, "(1) operated a universally accessible interactive website; (2) made an unknown number of sales to Arizona residents; and (3) received cease-and-desist letters from Plaintiff, an Arizona resident, after which Defendants made no effort to stop selling to Arizona residents." (*Id.* at 1089.)  The district court granted defendants' motion to dismiss for lack of personal jurisdiction, holding that plaintiff failed to meet its burden of demonstrating that defendants "expressly aimed" their conduct at Arizona. (*Id.*)  It also denied plaintiff's request for jurisdictional discovery as unnecessary, "predicting that discovery would reveal only a 'sporadic smattering of sales to consumers in Arizona.'" (*Id.*)

On appeal, the Ninth Circuit reversed, holding that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the

---

direction test to claims for trademark infringement, false advertising, and tortious interference with business relationships].)  The purposeful direction test seems better suited to this case, which seeks injunctive relief and civil penalties against Defendants for "knowingly" violating California law prohibiting the distribution of digital firearm manufacturing code and "knowingly, willfully, or recklessly" facilitating the unlawful manufacture of firearms.  Defendants agree.

[7] California courts often follow Ninth Circuit authority on jurisdictional issues. (See, e.g., *In re Fuel Industry Climate Cases*, 117 Cal.App.5th at 890, 895, 898.)

- 11 -

forum, the defendant 'expressly aimed' its conduct at that forum." (*Id.* at 1093.) The court found that plaintiff "easily satisfied" the first and third elements of the *Calder* effects test: defendants' sale of products to Arizona residents was an intentional act, and the cease-and-desist letters informed defendants that their actions were causing harm in Arizona. (*Id.* at 1091.) As to the second element ("express aiming"), the court concluded that "operation of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale." (*Id.*) Rather, the court found, "operating a website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." (*Id.* at 1092 (cleaned up).) In an issue of first impression, the court concluded that defendants' sales of products to Arizona residents were the requisite "something more" and constituted "express aiming" even though there was "no evidence that the seller specifically targeted" the forum. (*Id.* at 1093.) In other words, "[t]he conduct purposefully directed at the forum is the seller's action of accepting the order and causing the product to be delivered to the forum." (*Id.* at 1093 fn. 5.)

Thus, "the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present. First, the sales must occur as part of the defendant's regular course of business instead of being 'random, isolated, or fortuitous.'" (*Id.* at 1094 (cleaned up).) "Second, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." (*Id.*) "Although other factors may be relevant in certain circumstances, the express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum." (*Id.*) Applying this test, the court held that "Defendants expressly aimed their conduct at Arizona because they allegedly sold products to Arizona residents via an interactive website in their regular course of business and caused those products to be delivered to the forum." (*Id.* at 1095; [8] see also, e.g., *Rodriguez v. Aquatic Sales Solutions LLC* (C.D. Cal. 2024) 735 F.Supp.3d 1208, 1224 [that

---

[8] The court emphasized that "[t]he outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum. Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law." (72 F.4th at 1095.) "Rather, "we require only that the sale must occur in the defendant's regular course of business." (*Id.*)

- 12 -

company operated an interactive website with a chat feature, and over 12% of its total sales were made to California residents, was sufficient to suggest that defendant expressly aimed its conduct at California]; *Swarts v. Home Depot, Inc.* (N.D. Cal. 2023) 689 F.Supp.3d 732, 742 [same, following *Herbal Brands*].)

The Ninth Circuit, sitting en banc, expanded on this holding in *Briskin*. There, Plaintiff, who made an online purchase from a retailer in California, alleged that Shopify, which processed the credit card transaction for the retailer, installed cookies on his electronic device, tracked its physical location, and collected data regarding his online shopping activity. The court held that "Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." (*Id.* at 756 (cleaned up).) Rejecting Shopify's argument that it did not expressly aim its conduct at California because it operates nationwide and that only eight percent of its worldwide merchants are located in California, the court expressly overruled prior cases "that require some sort of differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct." (*Id.* at 757-758 (cleaned up).) Rather, the court held, "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." (*Id.* at 758 (cleaned up).)

Recent California cases take a similar approach. In *Thurston v. Fairfield Collectibles of Georgia, LLC* (2020) 53 Cal.App.5th 1231, California residents brought a putative class action against a Georgia company that sold its products through catalogs and through its website, alleging that the defendant's website was not fully accessible by the blind and visually impaired, in violation of the Unruh Civil Rights Act. Defendant's only contact with California was that its sales through its catalogs and its website included some sales to Californians. (*Id.* at 1235; see also *id.* at 1239 ["there is no evidence that [defendant's] website 'targeted' Californians (any more than residents of other states, or indeed other countries)."].) The trial court granted defendant's motion to quash, ruling that defendant did not have sufficient minimum contacts with California. The Court of Appeal reversed, holding that "under California case law, making a substantial number of sales of goods or services to California residents via

- 13 -

one's own website constitutes purposeful availment." (*Id.* at 1240;[9] see also *As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859, 1869 [Illinois paint manufacturer's sales to California distributors were sufficient to show purposeful availment; "An enterprise obtains the benefits and protections of our laws if as a matter of commercial reality it has engaged in economic activity within this state"].)[10] As the court put it, defendant's website was "the equivalent of a physical store in California." (*Id.* at 1235.)[11]

Finally, the Court finds it significant that one of the statutes that Defendants are alleged to have violated addresses this issue, in terms that appear consistent with the foregoing authority. Civil Code section 3273.61(f) states that there shall be a rebuttable presumption that a person has violated the prohibition against distribution of digital firearm manufacturing code if both of the following are true:

(1) The person owns or participates in the management of an internet website or other electronic portal, database, or platform that makes digital firearm manufacturing code available for purchase, download, or other distribution to individuals in California who are not federally licensed firearms manufacturers and who are not otherwise described in paragraph (1) of subdivision (a).

(2) Under the totality of the circumstances, the internet website or other electronic portal, database, or platform encourages individuals who access or use the internet website or electronic portal, database, or platform to upload or disseminate digital firearm manufacturing code or to use digital firearm manufacturing code to manufacture firearms, firearm accessories, or other devices described in subdivision (a) of Section 3273.60.

## B.   Nature Of The Controversy

The second prong of the specific jurisdiction test—the requirement that the plaintiff's claims "arise out of or relate to" the defendant's California contacts—must be decided on a complete record. In *Ford Motor Co. v. Montana Eighth Judicial District Court* (2021) 592 U.S. 351, the U.S. Supreme Court rejected a strict causation requirement, holding that the "arise out of or relate to" formulation does not require a causal link between the defendant's specific forum activity and the plaintiff's injury. "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some

---

[9] *Thurston* is binding on this Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

[10] The court observed that "[t]he vast majority of federal cases are in accord." (53 Cal.App.5th at 1240 [collecting authorities].)

[11] Justice Menetrez dissented, arguing that the defendant's website "is not directed at California." (53 Cal.App.5th at 1242-1245.) The Supreme Court denied review. (*Id.* at 1245.)

- 14 -

relationships will support jurisdiction without a causal showing." (*Id.* at 362; see also *In re Fuel Industry Cases*, 117 Cal.App.5th at 895 ["a defendant's forum contacts do not need to have given rise to the plaintiff's claims. Instead, courts must focus on a company's connections to the state, and whether those connections relate to the claims."].) Thus, in a product liability action, "specific jurisdiction attaches . . . when a company . . . serves a market for a product in the forum State and the product malfunctions there." (*Id.* at 363.)

For online sellers, this means that a plaintiff's claims arising from a product purchased through the seller's website will typically satisfy the relatedness prong because the claim arises directly from the product sale that constitutes the defendant's California contact. (See *Briskin*, 135 F.4th at 760 [plaintiff's claims arose out of Shopify's contact with his device, which Shopify allegedly knew was in California; plaintiff also alleged the kind of injury that would tend to be caused by Shopify's contacts with California merchants and consumers]; *Herbal Brands*, 72 F.4th at 1096 ["Plaintiff's claims—which allege harm caused by Defendants' sale of products—clearly arise out of and relate to Defendants' conduct of selling those same products to Arizona residents."]; *In re Fuel Industry Cases*, 117 Cal.App.5th at 896 ["plaintiffs must demonstrate [defendant] 'served a market' for the very product that plaintiffs allege is harmful and caused injury in California based on that product, and they must show a relationship among the defendant, the forum, and the litigation"]; *Thurston*, 53 Cal.App.5th at 1241 ["the controversy arises out of [defendant's] contacts with California, under any standard," where "[t]hose contacts consist of maintaining a virtual store on the Internet that makes substantial sales to Californians"].)

## C.   Reasonableness

Once a plaintiff satisfies the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. (*In re Fuel Industry Climate Cases*, 117 Cal.App.5th at 896.) In making this determination, courts consider the following factors: "the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." (*Id.*, citing *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1070; see also *Briskin*, 135 F.4th at

- 15 -

761.) Because the Court is not in a position on the current record to find that the People have met their initial burden on the first two prongs, the Court defers its discussion of this issue.

## II.     The People Are Entitled To Jurisdictional Discovery.

In the alternative to an order denying Defendants' motions, the People seek a continuance of the hearing on Defendants' motions to enable them to conduct jurisdictional discovery. (Opposition, 33-34.) The People argue that "Defendants dispute personal jurisdiction while omitting key facts," and that Defendants do not address "myriad" California-specific facts, including "the extent to which Defendants' code has been downloaded in California, they have sold 3D printed firearm-related merchandise or parts kits in California, their websites are viewed in California, or how they use California-based infrastructure to improve Californians' access to website content." (*Id.* at 34.) Defendants oppose the request, arguing that "the State cannot identify a single Defendant-created California contact and proposes a fishing expedition to find one." (Reply, 25.) Reiterating their argument that "[m]ere passive accessibility is insufficient" under *Pavlovich*, Defendants contend that "discovery cannot cure the jurisdictional defect." (*Id.* at 26.) The Court disagrees, and finds that for the reasons proffered by the People, it cannot fully resolve the jurisdictional issues before it on the current record.

"The plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden [to demonstrate "minimum contacts"]." (*Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 710.) Further, "[a] trial court has the discretion to continue a hearing on a motion to quash service of summons for lack of personal jurisdiction to allow the plaintiff to conduct discovery on jurisdictional issues." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1173; accord, *Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 911.) "In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127.) The Court finds that standard is met here, and that limited jurisdictional discovery therefore is appropriate. (See *Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 30-31 [issuing writ of mandate directing trial court to rule on plaintiffs' timely request to conduct jurisdictional discovery and, if request is granted, to "consider any additional, relevant evidence

- 16 -

submitted and rule on the motion to quash based on the entire factual record"].)

The People seek leave to conduct jurisdictional discovery from Defendants and certain third parties concerning the following issues: "(1) Defendants' decisionmaking authority and control over the development and posting of content to the Odysee profiles; (2) Defendants' knowledge of content posted to the Odysee profiles originating from California developers; (3) information related to website views and downloads of digital firearm manufacturing code in California; (4) sales into California of 3D printed firearm related merchandise and parts kits to complete digital firearm manufacturing code available on Odysee; (5) donations made to Defendants through the link on the Ctrlpew website from California; (6) corporate records from Ctrlpew LLC and Gatalog Foundation Inc. related to California-specific revenue; and (7) the use of California-based internet infrastructure for Defendants' websites and to support the development of digital firearm manufacturing code posted to Odysee." (*Id.*) The Court generally agrees that under the authority discussed in Section I, *supra*, all of these topics appear to be appropriate areas for inquiry.

## CONCLUSION

The People are granted leave to conduct jurisdictional discovery, which shall be completed on or before August 7, 2026. On August 14, 2026 at 11:00 a.m., the Court will hold a case management conference. No later than five court days prior to the conference, the parties shall file a joint case management conference statement detailing the jurisdictional discovery completed and, if possible, proposing a schedule for the parties' supplemental briefs and a continued hearing date on Defendants' motions to quash. The Court hereby vacates the July 28, 2026 case management conference and hearing on the People's motion to seal and the August 14, 2026 hearing on the People's motion for a preliminary injunction and the related deadlines set forth in the Court's April 13, 2026 Order, which will be reset as appropriate following the continued hearing on Defendants' motions to quash.

IT IS SO ORDERED.

Dated: June 5, 2026

Ethan P. Schulman
Judge of the Superior Court

- 17 -

*The People of the State of California v. Gatalog Foundation Inc., et al.* CGC-26-633508
Order Continuing Hearing on Defendants' Motions to Quash

# CERTIFICATE OF ELECTRONIC SERVICE

## (CCP 1010.6, and CRC 2.251)

I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On June 5, 2026, I electronically served:

## ORDER CONTINUING HEARING ON DEFENDANTS' MOTIONS TO QUASH FOR LACK OF PERSONAL JURISDICTION TO ALLOW JURISDICTIONAL DISCOVERY

via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Date:     JUN 0 5 2026

Brandon E. Riley, Court Executive Officer

By: _____

Edward Santos, Deputy Clerk