UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

*Plaintiffs,*

v.

JOHN ELIK, et al.,

*Defendants.*

_____/

## **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES**

i

## TABLE OF CONTENTS

**INTRODUCTION AND SUMMARY OF ARGUMENT** ......................................... 1

**ARGUMENT** ..................................................................................................... 3

**I.    PLAINTIFFS' MOTION IS NOT A PROPER RULE 56 MOTION.**............... 3

**II.    DOC. 90 DOES NOT CONTROL BECAUSE PLAINTIFFS' *HARTMAN* ARGUMENT WAS WRONG AND THE ORDER WAS INTERLOCUTORY.** ..... 4

    A.    Plaintiffs' Misrepresentation of *Hartman*, Adopted by the Court, Supplied the RICO Premise That Kept the Case Intact. ...................................................... 4

    B.    Doc. 90 as Invoked by Plaintiffs Is Incompatible with Binding RICO Authority. ................................................................................................. 7

**III.    THE FIRST, SECOND, AND THIRD AFFIRMATIVE DEFENSES REMAIN AVAILABLE BECAUSE PLAINTIFFS' CLAIMS ARE PUBLICATION-BASED.** ........................................................................ 10

    A.    Plaintiffs' Claims Are Founded on Allegedly False Publications. ............... 10

    B.    Florida Law Prevents Plaintiffs from Evading Publication-Based Defenses by Relabeling the Claims. ..................................................................... 11

    C.    Sections 770.05 and 770.07 Are Not Limited to Counts Titled Defamation. ...................................................................................... 13

**IV.    THE EIGHTH AFFIRMATIVE DEFENSE REMAINS AVAILABLE BECAUSE TRUTH, OPINION, HYPERBOLE, AND PROTECTED COMMENTARY NEGATE PLAINTIFFS' CLAIMS.** ........................................... 14

    A.    Truth and Substantial Truth Negate Plaintiffs' Claims. ........................... 14

    B.    Opinion, Hyperbole, and Protected Commentary Are Not Actionable False Statements of Fact. ..................................................................... 15

    C.    Plaintiffs Have Not Factually Refuted the Defense. .................................. 16

**V.    THE FIFTH AND SIXTH AFFIRMATIVE DEFENSES REMAIN AVAILABLE BECAUSE PLAINTIFFS ATTACK STRAWMAN VERSIONS OF ESTOPPEL AND UNCLEAN HANDS.** .................................................. 17

    A.    Plaintiffs Have Not Carried Their Rule 56 Burden. .................................. 17

    B.    Plaintiffs' Own Publication and Use of the Meme Is Relevant to Equitable Defenses, Causation, and Remedies. ......................................................... 17

**CONCLUSION** ................................................................................................. 18

**CERTIFICATE OF SERVICE** ............................................................................ 19

ii

## INTRODUCTION AND SUMMARY OF ARGUMENT

That Plaintiffs' motion is not a proper Rule 56 motion aside, Plaintiffs' thrust is to wield (Doc. 90) as a sword. But that interlocutory order was, respectfully, clearly erroneous in adopting Plaintiffs' misrepresentation of the cited authority.

In truth, this is a second motion to strike, repackaged as a summary judgment motion. Plaintiffs filed no statement of material facts and identified no undisputed factual record. Instead, they ask the Court to enter "summary judgment" against six affirmative defenses based on the same pleading-stage argument already raised in their pending motion to strike: that Defendants' publication-based defenses supposedly disappeared because Plaintiffs avoided pleading a count titled "defamation." That argument is wrong for several independent reasons.

First, Plaintiffs have not carried their Rule 56 burden. Their own footnote states that the motion is "not accompanied by a statement of material facts" because Plaintiffs contend they "do not have to establish any undisputed material facts to prevail." (Doc. 146 at 3 n.1). But Plaintiffs seek summary judgment on affirmative defenses, arguing over their factual basis. (Doc. 146 at 1 2, 6). At minimum, they must either factually refute those defenses or establish that they are legally unavailable. They have done neither.

Second, Plaintiffs' reliance on Doc. 90 is misplaced. Doc. 90 was an interlocutory Rule 12 order denying dismissal on the pleadings. The RICO portion of Doc. 90—which informed the remainder of the order   rested on Plaintiffs' erroneous representation of *Hartman v. Does 1 2*, No. 23-13473, 2025 WL 398846 (11th Cir. Feb. 4, 2025). Plaintiffs told the Court that *Hartman* "forecloses any argument that

1

this case presents an unusual or inappropriate use" of civil RICO. (Doc. 70 at 3). It did not. Contrary to Plaintiffs' representation, the Eleventh Circuit in *Hartman* explicitly stated that, "[b]eyond the issue of continuity," it "express[ed] and impl[ied] no opinion" on predicate acts such as mail fraud or the other elements of RICO. *Hartman*, 2025 WL 398846, at *6.

Third, Plaintiffs' reading of *Hartman*—which permeates the order upon which they rely—cannot be reconciled with binding decisions in this circuit. Civil RICO requires a qualifying predicate fraud scheme, particularized predicate acts, direct causation, and non-speculative injury to business or property. See, e.g., *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–61 (2006); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9  12 (2010); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348–51 (11th Cir. 2016); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291  93 (11th Cir. 2010). *Hartman* did not silently discard those requirements in an unpublished decision.

Fourth, Plaintiffs' claims are founded on allegedly false publications. Plaintiffs' own motion describes the case as one about alleged false statements. (Doc. 146 at 1–3). Plaintiffs cannot base RICO, Lanham Act, and tortious-interference claims on allegedly false publications, then preclude Defendants from asserting defenses directed at their first publication, their truth, that they were opinion, that they were hyperbole, that they were protected commentary, that they did not cause damages, and equitable limitations on relief.

The motion should be denied.

2

## ARGUMENT

### I.   PLAINTIFFS' MOTION IS NOT A PROPER RULE 56 MOTION.

Summary judgment is available only where the movant shows "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Southern District's Local Rule 56.1 implements that requirement by requiring a movant to file a separate statement of material facts supported by record citations. S.D. Fla. L.R. 56.1(a).

A plaintiff seeking summary judgment on affirmative defenses must either "factually refute defendant's alleged affirmative defenses or establish that they are legally insufficient to defeat summary judgment." *Congress Park Office Condos II, LLC v. First-Citizens Bank & Tr. Co.*, 105 So. 3d 602, 607 (Fla. 4th DCA 2013); *see also* Fed. R. Civ. P. 56(a), (c). Plaintiffs did not factually refute anything. They rely on a footnote asserting that they need no facts at all. (Doc. 146 at 3 n.1).

At most, then, Plaintiffs have presented a legal sufficiency challenge, but Plaintiffs repeatedly attack the defenses for lack of evidence without identifying undisputed facts. (Doc. 146 at 1–2, 6). Plaintiffs have not made a showing that the complained-of defenses are unavailable as pled in all circumstances.

Plaintiffs' motion further states that it seeks judgment on the First, Second, Third, Fifth, Sixth, and Eighth Affirmative Defenses. (Doc. 146 at 1). Its conclusion, however, requests judgment on the "First, Second, Third, Fifth, Sixth, Seventh, and Eighth ADs." (Doc. 146 at 7). Plaintiffs made no argument regarding the Seventh Affirmative Defense. Any request for judgment on the Seventh Affirmative Defense should be denied as abandoned and unsupported.

3

## II.   DOC. 90 DOES NOT CONTROL BECAUSE PLAINTIFFS' *HARTMAN* ARGUMENT WAS WRONG AND THE ORDER WAS INTERLOCUTORY.

Plaintiffs' main argument as to the First, Second, and Third Affirmative Defenses is that Doc. 90 already decided the issue. (Doc. 146 at 4). That is procedurally and substantively wrong.

Doc. 90 denied dismissal based on the allegations in the Second Amended Complaint. It did not adjudicate affirmative defenses, nor did it decide publication chronology, accrual, the substantial truth of the statements, whether they were protected expression, whether they caused damages, or anything else on a Rule 56 record. And because Doc. 90 is interlocutory, it remains subject to revision before final judgment. Fed. R. Civ. P. 54(b); *see Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990).

Plaintiffs now ask this Court to convert a pleading-stage ruling they acquired by misrepresenting the cited authorities into merits-stage judgment extinguishing affirmative defenses. The Court should decline to do so.

A. <u>Plaintiffs' Misrepresentation of *Hartman*, Adopted by the Court, Supplied the RICO Premise That Kept the Case Intact.</u>

In opposing dismissal, Plaintiffs told the Court that Hartman "affirmed a $9 million jury verdict for a business suing a rival for lost profits predicated on false statements made on the internet," and that this "forecloses any argument that this case presents an unusual or inappropriate use" of civil RICO. (Doc. 70 at 3, 5–6). That

4

was the centerpiece of Plaintiffs' answer to the jurisdictional and merits arguments that placed the case at risk: Defendants argued that Plaintiffs had not pleaded a colorable RICO claim, could not invoke RICO's nationwide service provision, could not establish personal jurisdiction over the nonresident Defendants, and could not convert allegedly false online publications into civil RICO predicates. (Doc. 56 at 1 6, 8–10; Doc. 71 at 1–10, 14–15). Plaintiffs responded by making *Hartman* the gateway authority. According to Plaintiffs, *Hartman* established that business damages caused by false internet statements may support civil RICO claims predicated on wire fraud. (Doc. 70 at 2–5; Doc. 73 at 2, 4–5).

Worse, Plaintiffs' use of *Hartman* depended on treating the opinion's background discussion as if it were a holding. The passages Plaintiffs invoked appeared in the Eleventh Circuit's recounting of what happened in the district court below. *Hartman*, 2025 WL 398846, at *3–4.

Doc. 90 accepted this reading at the point where it mattered most. The Court recognized that personal jurisdiction was a threshold issue and that Plaintiffs did not contend Florida's long-arm statute independently conferred jurisdiction over the nonresident Defendants. (Doc. 90 at 3). The jurisdictional question therefore "turn[ed] entirely" on whether Plaintiffs could invoke RICO's nationwide service provision, which depended on whether the SAC pleaded a "colorable" RICO claim. *Id*. In resolving that threshold issue, the Court cited *Hartman* for the proposition that "coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud[,]" adopting Plaintiffs' reading of the case.

5

(*Id*. at 4). On that basis, the Court held that Plaintiffs pleaded a colorable RICO claim for purposes of § 1965(d). (*Id*.).

That ruling kept the case intact. Because the Court found a colorable RICO claim, it held that § 1965(d) supplied personal jurisdiction over all Defendants for the RICO count. (Id. at 4). And because jurisdiction was proper over the RICO count, the Court exercised pendent personal jurisdiction over the remaining Lanham Act and Florida tort claims. (*Id*. at 4–5). The same *Hartman*-based premise then reappeared in the Court's Rule 12(b)(6) analysis of the RICO claim. (*Id*. at 5–7). Thus, the misreading of *Hartman* supplied the colorable-RICO ruling, as well as the jurisdictional ruling.

*Hartman*, however, did not even remotely hold what Plaintiffs said it held. The Eleventh Circuit expressly declined to decide the predicate-act and other RICO-element issues Plaintiffs attributed to it:

> **Beyond the issue of continuity**, Defendants have not developed any argument specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims. **We express and imply no opinion as to whether the evidence was otherwise sufficient to satisfy those elements**.

*Hartman*, 2025 WL 398846, at \*6 (emphasis added). It thus cannot be cited for the proposition that "coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud." *Cf*. Doc. 90 at 4.

The sole issue the Eleventh Circuit addressed in *Hartman* was continuity. *Hartman*, 2025 WL 398846, at \*5–6. The panel explained that the defendants argued the alleged scheme lacked an open-ended threat of continued racketeering activity.

*Id.* at \*4–5. The court then held only that, on the trial record and arguments preserved, a reasonable jury could find open-ended continuity. *Id.* at \*5–6.

The Eleventh Circuit's explicit disclaimer defeats Plaintiffs' use of *Hartman* as adopted by this Court. Had the Court been presented with *Hartman*'s actual holding—and its express refusal to address predicate acts, wire fraud, causation, or the sufficiency of the evidence on any RICO element beyond continuity—Doc. 90 would have lacked the principal authority it cited for treating Plaintiffs' publication-based theory as a colorable civil RICO claim. But now Plaintiffs ask the Court to take the next step: to treat Doc. 90 as conclusively resolving affirmative defenses that *Hartman* never addressed and that Doc. 90 never adjudicated on a Rule 56 record.

Respectfully, Doc. 90's RICO analysis rested on clear error because it accepted Plaintiffs' overreading of *Hartman*. Rule 54(b) permits the Court to avoid compounding that error. Until final judgment, the Court retains plenary authority to reconsider, revise, alter or amend a non-final order, and is in fact "obliged to" if it concludes it was "clearly wrong." *Christianson*, 486 U.S. at 817. The Court therefore need not treat Doc. 90 as dispositive of defenses and issues that *Hartman* did not decide and that Plaintiffs' evidence-free Rule 56 motion does not present.

B.  <u>Doc. 90 as Invoked by Plaintiffs Is Incompatible with Binding RICO Authority.</u>

If *Hartman*  the backbone of the order Plaintiffs rely on—meant what Plaintiffs say, then a false online statement that allegedly causes lost sales would be enough to state civil RICO predicated on wire fraud. That is not Eleventh Circuit law.

RICO requires a qualifying predicate act. For mail or wire fraud, the plaintiff must plead and prove a scheme to defraud another of money or property. See 18 U.S.C. §§ 1341, 1343; *Kelly v. United States*, 590 U.S. 391, 398 (2020) (wire fraud requires "not only that defendants engaged in deception, but that an object of their fraud was property"); *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (federal fraud statutes reach only "traditional property interests"); *Kousisis v. United States*, 145 S. Ct. 1382, 1395 (2025) (money or property must be the "aim" of the fraud, not an incidental byproduct). Fraud is not established merely by identifying a false or harmful statement transmitted online. *See United States v. Pendergraft*, 297 F.3d 1198, 1208–09 (11th Cir. 2002).

RICO also requires particularized pleading and proof of the alleged fraud predicates. Civil RICO claims based on mail or wire fraud must satisfy Rule 9(b). *Am. Dental*, 605 F.3d at 1291. The plaintiff must identify the precise statements, the time and place they were made, the person responsible, how they misled, and what the defendant gained. *Id.*; *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007); *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025). Conclusory allegations and vague allusions to deception are not enough. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159–62 (11th Cir. 2019); *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343–44 (11th Cir. 2017); *Saville v. Webb*, No. 24-10998, 2025 WL 2254239, at *10–11 (11th Cir. Aug. 7, 2025).

8

RICO further requires direct causation. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). The Supreme Court has repeatedly held that the injury must bear a "direct relation" to the alleged predicate conduct. *Id.*; *Anza*, 547 U.S. at 457; *Hemi*, 559 U.S. at 9. This requirement is especially important where a competitor claims lost sales allegedly caused by the reaction of third parties. In *Anza*, the Supreme Court rejected a competitor's RICO claim for lost sales allegedly caused by the defendant's fraudulent tax practices because the State, not the competitor, was the direct victim of the alleged fraud, and the plaintiff's lost sales "could have resulted from factors other than" the alleged predicate acts. 547 U.S. at 458–59. In *Hemi*, the Court again rejected a RICO theory dependent on independent third-party conduct, explaining that the law generally does "not go beyond the first step." 559 U.S. at 10.

The Eleventh Circuit applies the same rule. *Ray* held that even where customers were allegedly misled, the "mere fact of having been misled does not ineluctably give rise to a RICO cause of action." 836 F.3d at 1349. *Simpson* rejected a RICO theory based on a high-level economic model because it provided "virtually no real evidence" of injury or proximate cause. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014). *Feldman* likewise rejected a RICO theory where the alleged wire communications did not directly cause the plaintiff's injury. 849 F.3d at 1343–44.

Plaintiffs' *Hartman* theory is incompatible with these cases. *Hartman* did not silently reverse decades of caselaw. It expressly declined to decide those issues. Plaintiffs cannot use *Hartman*, the centerpiece of Doc. 90, to erase affirmative

9

defenses that go directly to whether the alleged publications were false, actionable, causative, timely, duplicative, or subject to statutory limits.

### III.  THE FIRST, SECOND, AND THIRD AFFIRMATIVE DEFENSES REMAIN AVAILABLE BECAUSE PLAINTIFFS' CLAIMS ARE PUBLICATION-BASED.

The First, Second, and Third Affirmative Defenses apply "[t]o the extent" Plaintiffs' claims are founded on allegedly false or defamatory publications or broadcasts, single publications, exhibitions, utterances, or multiple legal theories seeking recovery for harm arising from the same publication. (Doc. 116 at 10). Plaintiffs do not show those defenses are legally unavailable. They argue only that the defenses cannot apply because Plaintiffs did not plead a claim labeled "defamation." (Doc. 146 at 4–5). But the law does not turn on that formalism.

### A.  Plaintiffs' Claims Are Founded on Allegedly False Publications.

Plaintiffs allege that Defendants "conspired to create and publish" the FEDCAD meme, which supposedly falsely represented that DEFCAD's database was "hacked and dumped," that DEFCAD cooperated with federal authorities and anti-gun activists, and that DEFCAD's servers are hosted in Iran. (Doc. 146 at 2–3). Plaintiffs further allege that the meme gained prominence online, scared customers in the 3D gun community, and caused more than $1 million in lost profits. (*Id.*).

That is, quite clearly, a publication-based theory. Plaintiffs' RICO claim depends on treating publications as wire-fraud predicates. Their Lanham Act claim depends on treating publications as false commercial advertising. Their tortious-interference claim depends on treating publications as wrongful statements that diverted customers and harmed relationships. Plaintiffs cannot base all three claims

on allegedly false publications and then preclude defenses directed to the content and character of those publications.

Even Plaintiffs' counsel Howard Foster referred to this case as one for "defamation" and described the meme as "defamatory." (Doc. 147 at 20; Doc. 147-24 at 205:9–19, 209:20–21). Plaintiffs' theory, damages model, and counsel's own descriptions all reflect the same reality: this case is founded on allegedly false publications allegedly causing reputational and lost-sales injury.

B.  <u>Florida Law Prevents Plaintiffs from Evading Publication-Based Defenses by Relabeling the Claims.</u>

Florida's single-action and single-publication doctrines prevent plaintiffs from evading defamation defenses and limitations rules by changing labels. In Florida, "a single publication gives rise to a single cause of action," and the "various injuries resulting from it are merely items of damage arising from the same wrong." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). The rule is designed to prevent plaintiffs from "recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.*

That principle applies even when the plaintiff does not plead a defamation count. *Tymar Distribution LLC v. Mitchell Group USA, LLC*, 558 F. Supp. 3d 1275 (S.D. Fla. 2021), is directly on point. There, Judge Altonaga rejected the argument that the single-action rule was inapplicable because no defamation claim was pleaded, holding that "it does not matter whether the defamation claim fails, succeeds, or is not brought at all." *Id.* at 1288.

11

*Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014), likewise applied Florida's single-action rule to bar tortious-interference and intentional-infliction claims based on the same alleged defamatory publication. *Id.* at 1256–57. *Ortega Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1334 (S.D. Fla. 1998), applied the same principle to publication-based claims arising from the same operative facts. *Id.* at 1339–40. And *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992), held that a plaintiff cannot transform a defamation claim into another tort simply by characterizing the same publication as "outrageous." *Id.* at 70.

The First District's decision in *Gannett Co. v. Anderson*, 947 So. 2d 1 (Fla. 1st DCA 2006), approved on other grounds, *Anderson v. Gannett Co.*, 994 So. 2d 1048 (Fla. 2008), illustrates the same point. There, the plaintiff attempted to proceed on a false-light theory after limitations problems arose with his libel claim. The court held that the claim was "not distinguishable in any material respect from a libel claim" and warned that defamation protections cannot be undone through a semantic exercise. *Gannett*, 947 So. 2d at 2, 8. Here, like in *Gannett*, the statute of limitations has run on any defamation claim.

Plaintiffs' motion does exactly what these authorities forbid. It asks the Court to treat publication-based defenses as irrelevant solely because Plaintiffs chose RICO, Lanham Act, and tortious interference labels. That is not the law.

12

C. Sections 770.05 and 770.07 Are Not Limited to Counts Titled Defamation.

Plaintiffs describe the first three affirmative defenses as if Chapter 770 were limited to traditional defamation counts. (Doc. 146 at 4–5). But the text is broader, at least as to the single-action and accrual defenses.

Section 770.05 states that "[n]o person shall have more than one choice of action for damages for libel or slander or any other tort founded upon any single publication or exhibition or utterance." Fla. Stat. § 770.05. That language is not limited to a count titled "libel" or "slander." It expressly reaches "any other tort" founded on the publication. Section 770.07 likewise provides accrual rules for causes of action "founded upon a single publication or exhibition or utterance." Fla. Stat. § 770.07.

Defendants' First Affirmative Defense preserves a related notice issue under section 770.01 to the extent Plaintiffs seek damages founded upon publications or broadcasts within the statute. Defendants' Second and Third Affirmative Defenses preserve statutory accrual, single-action, and duplicative-damages defenses. Those defenses need not defeat every claim in full to survive summary judgment. They are expressly pleaded "in whole or in part." (Doc. 116 at 10). At minimum, they may limit Plaintiffs' Florida tort claim, damages theories, accrual theories, and any attempt to recover multiple times for the same publication-based injury.

Plaintiffs have not shown otherwise. Their legal argument is the same label-based argument rejected by *Callaway, Tymar, Klayman, Gannett, Ortega Trujillo*, and *Fridovich*.

13

## IV.   THE EIGHTH AFFIRMATIVE DEFENSE REMAINS AVAILABLE BECAUSE TRUTH, OPINION, HYPERBOLE, AND PROTECTED COMMENTARY NEGATE PLAINTIFFS' CLAIMS.

Plaintiffs also seek summary judgment on Defendants' Eighth Affirmative Defense, which asserts that the challenged statements and publications were true, substantially true, nonactionable opinion, rhetorical hyperbole, or protected commentary. (Doc. 116 at 11–12). Plaintiffs call those "common law defenses to defamation claims." (Doc. 146 at 6). That is too narrow.

Truth, substantial truth, opinion, hyperbole, and protected commentary are not irrelevant simply because Plaintiffs avoided pleading defamation. They go directly to the elements of every claim Plaintiffs pleaded.

A.  Truth and Substantial Truth Negate Plaintiffs' Claims.

Plaintiffs' RICO theory depends on characterizing online publications as wire fraud. Wire fraud requires a material falsehood or deceptive scheme to obtain money or property. 18 U.S.C. § 1343; *Kelly*, 590 U.S. at 398; *Ciminelli*, 598 U.S. at 312; *Kousisis*, 145 S. Ct. at 1395. If the challenged statements were true, substantially true, not materially misleading, or not part of a scheme to acquire money or property through fraud, they are not wire-fraud predicates. Plaintiffs have even stipulated as to the truth of one of the meme's statements. (Doc. 138 at 5 n.4).

Plaintiffs' Lanham Act claim likewise requires a false or misleading statement of fact in commercial advertising or promotion. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308–09 (11th Cir. 2010); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1348–49 (11th Cir. 2012). If the statements are true,

14

substantially true, opinion, hyperbole, or otherwise protected commentary, they are not actionable false advertising under the Lanham Act.

Plaintiffs' tortious-interference claim also depends on wrongful and unjustified interference. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). Whether the alleged statements were true, substantially true, mere opinion, hyperbole, or protected commentary bear directly on whether any alleged interference was wrongful, unjustified, causative, or actionable.

B. <u>Opinion, Hyperbole, and Protected Commentary Are Not Actionable False Statements of Fact.</u>

The First Amendment independently protects nonactionable opinion, rhetorical hyperbole, and commentary that does not reasonably state or imply provably false facts. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–21 (1990); *Horsley v. Rivera*, 292 F.3d 695, 701–03 (11th Cir. 2002). Those protections apply to publication-based claims regardless of the label chosen. Plaintiffs cannot plead around them by calling the same publications RICO predicates, Lanham Act advertising, or tortious interference.

This is especially true for Plaintiffs' Lanham Act claim. Not all speech about a business is commercial advertising. *Tobinick v. Novella*, 848 F.3d 935, 950–53 (11th Cir. 2017), rejected an attempt to transform critical commentary into Lanham Act advertising merely because it concerned commercial services and allegedly affected a business. Speech that includes commercial topics is not automatically commercial speech. *Id.* at 950. *Suntree* likewise requires commercial advertising or promotion disseminated sufficiently to the relevant purchasing public. 693 F.3d at 1349.

15

Plaintiffs say the case concerns a meme and other online commentary allegedly influencing consumer behavior. (Doc. 146 at 1–3). That meme contained obvious commentary, such as DEFCAD being "wretchedly awful." Whether those statements were factual, false, materially misleading, commercial, or instead true, substantially true, opinion, hyperbole, or protected commentary is central to the merits.

### C. Plaintiffs Have Not Factually Refuted the Defense.

Plaintiffs also say there is "no evidence" supporting the Eighth Affirmative Defense. (Doc. 146 at 6). But they filed nothing establishing the absence of a genuine dispute. This argument is thus *ipse dixit*.

The record, in any event, contains evidence relevant to the truth of the statements, its substantial truth, that it was opinion, that it was hyperbole, and that it contained protected commentary, including the actual publications, their context, Plaintiffs' own descriptions of the statements, Plaintiffs' discovery responses, and deposition testimony addressed in Defendants' pending summary-judgment motion. (See Doc. 147). Defendants responded to interrogatories and requests for production regarding the truth of the statements in the meme, providing substantial documentation. *See, e.g.,* Ex. A (composite exhibit to a motion served upon Plaintiffs on March 10, 2026 with respect to the SAC putting Plaintiffs on notice of the materials they now claim do not exist). Plaintiffs cannot obtain summary judgment by refusing to identify a record and then asserting that Defendants have none.

16

## V.   THE FIFTH AND SIXTH AFFIRMATIVE DEFENSES REMAIN AVAILABLE BECAUSE PLAINTIFFS ATTACK STRAWMAN VERSIONS OF ESTOPPEL AND UNCLEAN HANDS.

Plaintiffs' attack on the Fifth and Sixth Affirmative Defenses is also legally too narrow and factually unsupported. The Fifth Affirmative Defense asserts estoppel. The Sixth asserts unclean hands. (Doc. 116 at 11). Plaintiffs reduce those defenses to one caricature: Defendants supposedly must prove that they detrimentally relied on Plaintiffs before posting the FEDCAD meme, or that Plaintiffs' republication of the meme personally injured Defendants in a damages sense. (Doc. 146 at 5–6). That is not the whole inquiry.

### A.   Plaintiffs Have Not Carried Their Rule 56 Burden.

Plaintiffs' motion is especially deficient because equitable defenses are fact-intensive. Estoppel turns on conduct, reliance, and fairness. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076–79 (Fla. 2001); *State Dep't of Revenue v. Anderson*, 403 So. 2d 397, 400 (Fla. 1981). Unclean hands turns on inequitable conduct directly related to the claim. *See Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801–02 (11th Cir. 2015); *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993); *Congress Park*, 105 So. 3d at 609–10. Plaintiffs cannot eliminate such defenses by filing a legal memorandum disclaiming any factual record.

### B.   Plaintiffs' Own Publication and Use of the Meme Is Relevant to Equitable Defenses, Causation, and Remedies.

Plaintiffs' own republication of the same allegedly catastrophic meme is relevant to more than one issue. It bears on causation, mitigation, equitable relief, unjustness, and whether Plaintiffs can obtain remedies premised on the proposition that Defendants' publication caused harm Plaintiffs themselves amplified.

17

Plaintiffs treat estoppel and unclean hands as though the only possible theory is pre-publication detrimental reliance. But Defendants' equitable defenses are not limited to that single factual theory. Plaintiffs seek legal and equitable relief arising from allegedly false online publications. If Plaintiffs themselves displayed the same publication, their conduct is directly related to the claims and remedies at issue.

At minimum, Plaintiffs have not shown that those defenses are legally unavailable in all circumstances. Nor have they factually refuted them. Summary judgment on the Fifth and Sixth Affirmative Defenses should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Affirmative Defenses in full.

Respectfully submitted,
DATED:  June 11, 2026

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/ Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 11th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Matthew Larosiere

Matthew Larosiere, Esq.
Fla. Bar № 1005581

19