UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

      Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually
          Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Southern District of Florida Local Rule 56.1(b)(2), Plaintiffs respond to

Defendants' Statement of Material Facts (Doc. 147-1).[1]

1.      Undisputed that paragraph 1 accurately describes some of Plaintiffs' claims in this

case.

2.      Undisputed.

3.      Disputed.

---

[1] Local Rule 56.1(b)(1)(B) requires each numbered paragraph to consist, to the extent "practicable," of a "single material fact" that is "supported by specific, pinpoint references to particular parts of record material." The first 28 paragraphs in Defendants' Statement of Material Facts violate these requirements by repeatedly paraphrasing or summarizing Plaintiffs' claims or discovery responses without making it clear which facts Defendants are trying to establish and without providing pinpoint references to the record. For the sake of brevity, Plaintiffs assert a standing objection to the first 28 paragraphs Defendants' Statement of Material Facts but will nonetheless attempt, in the spirit of Local Rule 56.1, to clarify which claims are in dispute.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Disputed.  Plaintiffs produced exit surveys showing that customers cancelled their DEFCAD memberships because of Defendants' statements.  *See* Doc. 147-6.  Plaintiffs also produced the expert report of Jason M. Tyra opining that Defendants' statements caused a decline in Plaintiffs' sales revenue.  *See* Doc. 150-1.

11. Disputed.  *See* Docs. 147-6 & 157.

12. Undisputed.

13. Undisputed.

14. Undisputed that Plaintiffs identified the Quick Start Guide on ctrlpew.com as a document supporting their claims.

15. Undisputed that defendant Holladay owns and controls ctrlpew.com.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23.     Disputed.

24.     Undisputed.

25.     Disputed.   Plaintiffs' interrogatory responses refer to customer exit surveys produced in discovery that identify such customers.  *See* Doc. 147-6.

26.     Disputed.   Plaintiffs produced customer exit surveys showing that consumers cancelled their DEFCAD memberships because of Defendants' statements.  *See* Doc. 147-6. Plaintiffs also produced the expert opinion report of Jason M. Tyra.  *See* Doc. 150-1.

27.     Disputed.  Plaintiffs' interrogatory responses identified Eric Goldhaber.  *See also* Doc. 157.

28.     Disputed.  Plaintiffs' interrogatory responses refer to Tyra's expert opinion report, which calculates the amounts jointly and severally attributable to each individual defendant.  *See* Doc. 150-1.

29.     Undisputed.

30.     Undisputed.

31.     Undisputed.

32.     Undisputed.

33.     Undisputed.

34.     Disputed.  Plaintiffs' counsel properly objected to this question on the grounds that it called for speculation.  *See* Doc. 147-7 at 44:9-17.  As a result, Tyra's inadmissible response cannot be considered.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (noting that evidence must be admissible to be considered at summary judgment).

35.     Disputed.  The cited portion of Tyra's deposition transcript does not support the statement attributed to Tyra.  Additionally, the alleged deposition exhibit is not part of the record.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Undisputed.

42.     Undisputed.

43.     Undisputed.

44.     Disputed.  The cited portion of Tyra's deposition transcript does not support the statement attributed to Tyra.

45.     Undisputed.

46.     Undisputed.

47.     Undisputed.

48.     Undisputed.

49.     Undisputed.

50.     Undisputed.

51.     Undisputed.

52.     Undisputed.

53.     Undisputed.

54.     Undisputed.

55.     Undisputed.

56.     Undisputed.

57.     Disputed.  Tyra's expert report calculates damages jointly and severally attributable to each defendant.  *See* Doc. 150-1.

58.     Disputed.  Tyra's expert report explains his methodology for calculating damages jointly and severally attributable to each defendant.  *See* Doc. 150-1.

59.     Undisputed that some of Plaintiffs' customer-exit surveys identify additional reasons, other than Defendants' false statements, for cancelling their memberships.  *See* Doc. 147-6.

60.     Disputed.  Wilson testified that customers who cited reasons other than the FEDCAD meme for cancelling their DEFCAD memberships may have been influenced by Defendants' false statements.  *See* Doc. 147-5 at 107:21-108:20.

61.     Disputed.  Plaintiffs have identified customer-exit surveys indicating that Defendants' false statements were the reason for cancelation.  *See, e.g.,* Doc. 147-6 at pp. 2, 4, 7, 10, 11, 12 (x2), 13, 15, 16, 18, 19 (x2), 21, 22 (x3) ("I don't want to support fedcad"), p. 3, 5, 6, 9 (x2), 11 (x2) , 12, 13, 15, 16 (x2), 17, 18, 20, 21 (x2), 22, 23 ("concerned about personal security / privacy"), p. 4 ("The undisclosed data breaches"), p. 15 ("Cody Wilson's treatment of the community"), p. 16 ("the lawsuit with Gatalog was the final straw"), p. 22 ("I don't like people who have sold out to the fed before"), p. 23 ("doxxing members of the community is reprehensible").  These customer-exit surveys are admissible.  *Shamblin v. Obama for Am.*, No. 8:13-CV-2428, 2015 WL 1909765, at *4 (M.D. Fla. Apr. 27, 2015) (citing *Debra P. v. Turlington*, 730 F.2d 1405, 1414 (11th Cir.1984)).

62.     Undisputed.

63.     Undisputed.

64.     Undisputed.

65.     Disputed.  Ex. 1, Celentano Depo. pp. 110-112.

66.     Disputed.  Ex. 1, Celentano Depo. pp. 103-108, 110-112.

67.     Undisputed.

68.     Undisputed.

69.     Undisputed.

70.     Undisputed.

71.     Undisputed.

72.     Undisputed.

73.     Undisputed that JG did not deny hacking any database in the referenced exhibit. He did, however, deny hacking Plaintiffs' database in other communications.  Doc. 159 at ¶ 3.

74.     Undisputed.

75.     Disputed.  Elik has posted the FEDCAD meme.  Doc. 159 at ¶ 4.

76.     Disputed.  The FEDCAD meme is a verbatim copy of one of Elik's posts from May 2023.  Doc. 159 at ¶ 5.

77.     Disputed.  Elik could not have personal knowledge of a non-existent hack.  *See* Doc. 158 at ¶ 5.

## ADDITIONAL FACTS

**A.     Plaintiffs' Affiliated Businesses**

78.     Plaintiffs are affiliated Texas businesses owned by Cody Wilson.  Doc. 159 at ¶ 1.

79.     Plaintiff DEFCAD is subscription-based file-sharing website that allows customers to download 3D gun designs.  Doc. 159 at ¶ 6.

80.     The DEFCAD website membership is called a LEGIO membership and currently costs $60 annually.  Doc. 159 at ¶ 7.

81.   All income generated by DEFCAD website memberships are paid to, and received by, plaintiff DD Foundation.  Doc. 159 at ¶ 8.

82.   Plaintiff Defense Distributed sells kit parts, equipment, and gun accessories.  Doc. 159 at ¶ 9.

83.   The Ghost Gunner is Defense Distributed's main product.  It accounts for more than 90% of Defense Distributed's sales revenue.  Doc. 159 at ¶ 10.

84.   The affiliated relationship between DEFCAD and Defense Distributed, as well as their joint ownership by Wilson, is well-known in the GunCAD community.  Doc. 159 at ¶ 11.

**B.     Defendants' Competitive 3D Gun Ventures**

85.   Defendant Holladay is the owner of CTRLPew, LLC, operates the CTRLPew website, and is Treasurer of the Gatalog Foundation, Inc.  *See* Doc. 159-1, Order Entered in *The People of the State of California v. Gatalog Foundation Inc.*, No. CGC-26-633508 (Cal. Super. Court, San Francisco County) (June 5, 2026) ("*California v. Gatalog*") at p. 4.[2]

86.   Defendant Larosiere is the President of the Gatalog Foundation.  *Id.*

87.   Larosiere and Holladay own MAF Corp.  *Id.*

88.   Elik is Larosiere's employee who co-hosts Larosiere's podcast and YouTube series. Ex. 2, Elik Depo. p. 14; Doc. 159 at ¶ 13.

89.   Elik's and Larosiere jointly use the online alias "IvantheTroll."  *California v. Gatalog* p. 7.

90.   Defendant Clark works for Larosiere and Elik as an editor of their YouTube series. Doc. 159 at ¶ 14.

---

[2] The Court may take judicial notice of factual findings made by other Courts.  *See* Fed. R. Evid. 201.

91.  MAF Corp. and Defense Distributed are competitors because they sell some of the same parts and accessories for building 3D-printed guns.  Doc. 157 at ¶ 10; Doc. 158 at ¶ 5.

92.  CTRLPew and the Gatalog are competitors with DEFCAD because they are file-sharing websites that allows customers to download 3D gun designs.  Doc. 159 at ¶ 15.

**C.  Defendants Create the "FEDCAD" Meme**

93.  The FEDCAD meme states as follows (*see* Doc. 49 at ¶ 36):



94.  Defendant Stroke *a/k/a* Zona created the "FEDCAD" meme in or around May 2023 and published it on X (Twitter) and other social media platforms.  In creating the "FEDCAD" meme, Stroke relied upon public statements written by Elik.  Ex. 6, Stroke Depo. pp. 23-24.

95.     Larosiere *a/k/a* FuddBuster has publicly declared Zona to be his "top lieutenant." Doc. 159-2.

96.     Holladay owns and administers a Rocket.Chat server for a group known as "The Gatalog." Ex. 3, Holladay Depo. p. 39.

97.     Defendant Celentano first saw the "FEDCAD" meme on defendant Holladay's Rocket.Chat server. Ex. 1, Celentano Depo. p. 49.

98.     Holladay, Stroke, Lettman, Clark, and Celentano have posted the FEDCAD meme on the internet. Ex. 1, Celentano Depo. pp. 104-05; Ex. 4, Lettman Depo. p. 49; Ex. 3, Holladay Depo. p. 190.

99.     Holladay, Stroke, Lettman, Clark, Elik, and Larosiere each have thousands of followers on X or YouTube. Doc. 159 at ¶ 17.

100.    MAF Corp. issued discount codes for Holladay, Stroke, Lettman, Elik, and Celentano to use as affiliate marketers of MAF Corp.'s 3D gun products on the internet. Ex. 5, MAF Corp. Depo. pp. 15-17; Ex. 3, Holladay Depo. pp. 107-108; Ex. 6, Stroke Depo. p. 85.

101.    Holladay has tried to raise money for defendants Elik, Celentano, Larosiere, and Lettman. Doc. 159 at ¶ 18.

102.    Larosiere has maintained friendships with Elik, Celentano, Holladay, Stroke, and Lettman since the meme was first published. Ex. 3, Holladay Depo. p. 11; Ex. 1, Celentano Depo. p. 61; Ex. 6, Stroke Depo. p. 46; Ex. 4, Lettman Depo. pp. 8-9.

**D.      The Devastating Impact of the FEDCAD Meme.**

103.      The FEDCAD meme's statement that "Defcad's database has been hacked and dumped on multiple occasions" is false.  Doc. 158 at ¶ 5.

104.      The FEDCAD meme's statement that "DEFCAD "do[es] not encrypt [its] data, and keep[s] it stored unsalted – all your information is in a row" is false and misleading.  Doc. 158 at ¶ 6.

105.      Since 2023, Defendants have made hundreds of online posts disparaging Wilson and Plaintiffs to members of the GunCAD community on various online platforms, including X/Twitter, Reddit, and Facebook.  Doc. 157 at ¶ 8; Doc. 158 at ¶ 3.

106.      Often, one of the defendants, such as Stroke, would publish the so-called "FEDCAD" meme either as an original post or as a comment on a third party's GunCAD-related post.  This publication of the FEDCAD meme would often be accompanied by agreement by other defendants, and commentary by defendants warning consumers not to use or support Wilson or Plaintiffs and to instead use and support websites such as CTRLPew.com or the Gatalog for 3D gun designs. In turn, those websites refer customers to MAF Corp. to buy 3D gun parts and accessories.  Doc. 157 at ¶ 9; Doc. 158 at ¶ 4.

107.      Defendants' campaign to disparage Mr. Wilson and his companies was pervasive and had a far reach in the GunCAD community.  Doc. 157 at ¶ 11.

108.      Due to Defendants' smear campaign, one of the most prolific 3D gun designers, Eric Goldhaber, stopped uploading his 3D gun designs to DEFCAD in 2023.  Doc. 157 at ¶ 12.

109.      Due to Goldhaber's standing and audience in the GunCAD community, his public support for Wilson and Plaintiffs would have given them additional legitimacy and goodwill with potential customers.  Doc. 157 at ¶ 13; Doc. 159 at ¶ 19.

110.    Since May 2023, Plaintiffs' sales and profits have substantially decreased.  Doc. 159 at ¶ 20.

111.    Since May 2023, a significant number of customers have expressly cited "FEDCAD" or "data security concerns" as reasons for cancelling their DEFCAD memberships. Doc. 159 ¶¶ 22-23 & Doc. 147-6.

Dated:  June 11, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*