# EXHIBIT 5

Page 1

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:25-CV-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas    )
corporation; DD FOUNDATION,LLC,)
a Texas limited liability       )
company; and DEFCAD, INC., a    )
Texas corporation,              )
                                )
             Plaintiffs,         )
                                )
    vs.                          )
                                )
JOHN ELIK, individually;         )
MATTHEW LAROSIERE,               )
individually; ALEXANDER          )
HOLLADAY, individually; PETER   )
CELENTANO, individually, JOSH   )
KIEL STROKE, individually;       )
and JOHN LETTMAN, individually;)
and ZACKARY CLARK,               )
individually,)
                                )
             Defendants.         )

_____
DEPOSITION OF
30(b)(6) MAF CORP
MATTHEW LAROSIERE
April 2, 2026
9:00 a.m. CST

Taken via Zoom by agreement

Diana G. Rodriguez, RPR, Certified Shorthand Reporter

Page 2

APPEARANCES (all appearing remotely):

FOSTER PC
155 N. Wacker Dr, Suite 4250
Chicago, IL  60606
PH:  312.726.1600
hfoster@fosterpc.com
BY:  MR. HOWARD FOSTER,

    On behalf of the Plaintiffs;

ZERMAY LAW
203 Labelle Ave
Fort Myers, FL  33905
zachary@zermaylaw.com
BY:  MR. ZACHARY ZERMAY,
    On behalf of Matthew Larosiere.

ALSO PRESENT:
MR. CODY WILSON
MS. BAILEY FINNESTAD, Magna Concierge

Page 3

I N D E X

WITNESSES

ALL WITNESSES:             PAGE:

MATTHEW LAROSIERE
  Examination by Mr. Foster    4:6

EXHIBITS

NO.:  DESCRIPTION:        PAGE:

For Larosiere:

Exhibit 1
  Subpoena:
  For Identification      6:12

Page 4

(Witness sworn)

MATTHEW LAROSIERE,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. FOSTER:

Q   Matthew, we are here on the 30(b)(6) deposition by subpoena of MAF Corp and I take it that the corporation has designated you to answer the topics on the subpoena, is that correct?

A   Yes.  I am MAF Corp's president.

Q   Are you going to be answering all of the topics that were designated on the subpoena?

A   I'm here to answer questions, Mr. Foster, and I've reviewed the -- the one that was recently sent actually didn't have the attachment but you sent the older one so I looked at that one.  I think it had like there was two pages.

Q   Yes, yes.

A   Yes, I reviewed all of those and I'm prepared to give testimony as to those.

Q   Okay.  Very good.

Are you familiar with the responsibilities of a 30(b)(6) witness to give the knowledge, the collective knowledge of the entity?

Page 5

A   Yes.

Q   Okay.  That's important.  So why don't we then turn, please, to the subpoena which is the first item on the exhibits and I do want to make that Exhibit 1 so that would be the subpoena to testify at a deposition.

MR. FOSTER:  Bailey, if you want to mark that.

MS. FINNESTAD:  Please stand by.

THE WITNESS:  So you know, that's over here so if I look away from you, I'm looking at the monitor.

MS. FINNESTAD:  Exhibit 1 has been marked.  You can refresh and I'll put it on the screen as well to share.

BY MR. FOSTER:

Q   Exhibit 1, so I think I asked you but I'm going to ask you again, did you read this subpoena?

A   Yes.

Q   Now I'm going to -- one second.

A   And there was nothing attached to it.

MR. FOSTER:  Subpoena plus rider.  I'm a little confused here.  I thought that this exhibit was the one with the rider attached, the topics.  When I opened that up, Bailey, that's what I got.

MS. FINNESTAD:  Okay, yes.  I thought you said the subpoena to testify at a deposition so I had marked

2 (Pages 2 - 5)

Page 14

know, they feel like they're getting a deal, right, so they're more likely to click on to the site and do stuff.

Q    So are these codes used in social media?

A    Yeah.

Q    Like where?

A    I think they're mostly -- so we have a like email blast and they're mostly sent out in the email blast and I think, well, the email blast and Twitter are the most common places they're used.

Q    And who posts on Twitter?

A    Sometimes me but most of the time Mr. Holladay sets the schedule for doing that.

Q    Mr. Holladay being Alexander Holladay, one of the co-defendants, is that correct?

A    Yes.

Q    And he's also an owner of the company, is that correct?

A    Yeah, he's the only other owner.

Q    And then so just the two of you run the company together, is that correct?

A    Yes.

Q    Do the defendants in this case have discount codes that you have assigned to them?

A    So, no, not that are assigned to them.

Page 15

Q    Do they use discount codes in promoting MAF Corp?

A    So I know that Zona, who is a trans woman that you guys have pretty deliberately dead named here, has a code that she likes to use.  I think John has a code.

Q    John who?

A    There's two Johns, isn't there, yeah. John Elik has a code, I don't think John Lettman has a code.  Mr. Celentano certainly doesn't have a code. Mr. Clark doesn't have a code.

Q    Does Mr. Lettman have a code?

A    No, I looked and I didn't see one that could reasonably be.  And so when you say has a code, again, these aren't assigned to them.  So what happened with these is people wanted, and this is again going to sound really silly, but a bunch of people on Twitter wanted to see who could do the most with, like do the most sales with their code, because we're able to see how many times a code is used and the total, like basically the total dollar, it's basically like how much the code cost us, right, like how much was discounted with the code, and so we had a war of the codes and so a bunch of people got their own codes and was posting it on Twitter to try to win the code war

Page 16

and I know all of those codes and I know -- I don't think Mr. Lettman had one.  If he had one, it would have been completely arbitrary, right you know, the other ones have names that are very clearly associated with them.

Q    Okay.  Does Mr. Holladay have a code?

A    Yes.

Q    So is it accurate to say that he has gone to social media and put his code out there and told the world, the audience that, yeah, use this code?

A    Yeah, and I would think that everyone -- and I would think that's true for all of, everyone except Lettman, which I'm not sure of, and Celentano and Clark so, yeah, that would be true for Zona, which is defendant Stroke, and Mr. Elik too.

Q    So as I understand your testimony Stroke, who you say is a woman, trans woman, right?

A    Yes.

Q    Goes by the name Stroke though?

A    No.  She goes by Zona.

Q    Zona Stroke, Zona, okay.  Has used a code. Holladay has used a code.  Elik has used a code.

A    Yeah, that's correct.

Q    And you're saying Clark, you're saying has not used a code on social media?

Page 17

A    I don't see one that is clearly attributed to Clark.

Q    But did Clark use a code that you created?

A    Here is the thing.  We create over -- there's like almost 200 codes that then they go out in the email, right, and so I don't have a way of tracking who used a code that wasn't that like I can't attribute to them, you know what I mean?  So if he's, for example, put out one of the codes like the Fart Chair code or the Spring Sale code, there would be no way for me to know that.

Q    I don't understand this.  I need you to answer this for me.  Why do Elik and Zona and any other people other than yours or Holladay are out there promoting sales to MAF, why would they do that?

A    You're asking me to speculate.  I couldn't tell you why.

Q    Don't you know why?

A    If you wanted me to guess if I had to guess --

Q    I don't want you to guess.  I want you to explain why are they doing this.  Do they get something in return for doing that?

A    None of them get anything in return for their codes, no.

5 (Pages 14 - 17)

Veritext Legal Solutions