**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

     Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually
          Defendants.

                                            /

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs oppose

Defendants' Motion for Summary Judgment ("Motion") (Doc. 147).

**INTRODUCTION**

Plaintiffs brought this action to recover damages and enjoin Defendants from disseminating

false statements about Plaintiffs' lawful 3D gun businesses.  For years, Defendants have blanketed

the online platforms used by Plaintiffs' customers and other members of the "GunCAD"

community, *i.e.* guns and Computer-Aided Designs, with the false "FEDCAD" meme and other

disparaging statements about Plaintiffs and their owner, Cody Wilson.

Defendants are also members of the GunCAD community with tens of thousands of

followers on X (formerly Twitter), YouTube, and other internet platforms.  Defendants have taken

a keen interest in Wilson's businesses, at first working together and later launching a vindictive campaign to destroy them and divert customers to their competing GunCAD businesses. The "FEDCAD" meme was carefully written by defendant Stroke (*a/k/a* Zona) with input from defendant Elik in 2023 to play on the fears of fellow 3D gun enthusiasts that Plaintiffs would allow their customers' personal information to end up in the hands of hackers, "antigunners," and federal authorities. Specifically, the "FEDCAD" meme falsely asserted that plaintiff DEFCAD's database had been "hacked" and "dumped" multiple times and that Plaintiffs voluntarily share their customers' information with "antigunner" groups.

The results of Defendants' smear campaign were predictable and devastating. Defendants have tens of thousands of followers on X (formerly Twitter), YouTube, and other internet platforms. Their campaign was pervasive and had a far reach in the GunCAD community. As a result, Plaintiffs have lost over $2 million in revenue since May 2023, and Plaintiffs will continue to be harmed. At least a portion of that revenue has likely gone to defendants Holladay and Larosiere, who own competing businesses CtrlPew and MAF Corp., which offer 3D gun designs and sell 3D gun accessories and kit parts designed by defendant Elik. In other words, Defendants have profited from their false and disparaging comments about Plaintiffs. Thus, in addition to damages, Plaintiffs seek a permanent injunction under Section 1964(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") compelling defendants to remove their false statements.

In the Motion, Defendants primarily contend that summary judgment should be entered because Plaintiffs cannot prove that Defendants' statements proximately caused any injury. But there is evidence to the contrary. Specifically, Plaintiffs have produced customer exit surveys revealing that at least 20 customers identified the FEDCAD meme or data security concerns as reasons for canceling their memberships. Additionally, Plaintiffs' expert opined that Plaintiffs

have suffered more than $2 million in lost sales since Defendants started blanketing the GunCAD internet with the FEDCAD meme.  Further, one of the GunCAD community's most prolific and notable designers, Eric Goldhaber, has confirmed that Defendants' smear campaign caused him to stop uploading his 3D gun designs to Plaintiff's website, which has hurt Plaintiffs' standing in the community.

Defendants' other arguments are equally deficient.  Either Defendants are legally incorrect or there are disputed material facts preventing the Court from entering summary judgment.  Indeed, the Motion does not even address Plaintiffs' request for injunctive relief.  Accordingly, the Court should deny the Motion and allow the case to proceed to trial.

## BACKGROUND

### A.    Plaintiffs' Affiliated Businesses.

Plaintiffs are affiliated Texas businesses owned by Cody Wilson.  *See* Plaintiffs' contemporaneously filed Statement of Material Facts ("SMF") ¶ 78.  Plaintiff DEFCAD is subscription-based file-sharing website that allows customers to download 3D gun designs.  SMF ¶ 79.  All income generated by DEFCAD website memberships are paid to, and received by, plaintiff DD Foundation.  SMF ¶ 81.  Plaintiff Defense Distributed sells kit parts, equipment, and gun accessories.  SMF ¶ 82.  The affiliated relationship between DEFCAD and Defense Distributed, as well as their joint ownership by Wilson, is well-known in the GunCAD community.  SMF ¶ 84.

### B.    Defendants' Competitive 3D Gun Ventures.

Defendant Holladay owns CTRLPew, LLC and operates the CTRLPew website.  SMF ¶ 85.  CTRLPew and DEFCAD are competitors because they are file-sharing websites that allow customers to download 3D gun designs.  SMF ¶ 92.

Defendants Larosiere and Holladay own MAF Corp.  SMF ¶ 87.   MAF Corp. and Defense Distributed are competitors because they sell some of the same parts and accessories for building 3D-printed guns.  SMF ¶ 91.

**C.      Defendants Blanket the Internet with the "FEDCAD" Meme.**

Defendants Stroke and Elik combined to create the FEDCAD meme.  SMF ¶ 94.  The FEDCAD meme states as follows:

The FEDCAD meme's statement that "Defcad's database has been hacked and dumped on multiple occasions" is false.  SMF ¶ 103.  The FEDCAD meme's statement that "DEFCAD "do[es]

not encrypt [its] data, and keep[s] it stored unsalted – all your information is in a row" is also false and misleading.  SMF ¶ 104.

Although there is no reasonable basis for believing the truth of the statements in the FEDCAD meme, defendants Holladay, Stroke, Lettman, Clark, and Celentano have widely posted the FEDCAD meme on the internet.  SMF ¶ 98.  Defendants Holladay, Stroke, Lettman, Clark, Elik, and Larosiere each have thousands of followers on X or YouTube.  SMF ¶ 99.

Indeed, since 2023, Defendants have made hundreds of online posts disparaging Wilson and Plaintiffs to members of the GunCAD community on various online platforms, including X/Twitter, Reddit, and Facebook.  SMF ¶ 105.  Often, one of the defendants, such as Stroke, would publish the so-called "FEDCAD" meme either as an original post or as a comment on a third party's GunCAD-related post.  SMF ¶ 106.  This publication of the FEDCAD meme would often be accompanied by agreement by other defendants, and commentary by defendants warning consumers not to use or support Wilson or Plaintiffs and to instead use and support websites such as CTRLPew.com for 3D gun designs.  SMF ¶ 106.  In turn, those websites refer customers to MAF Corp. to buy 3D gun parts and accessories.  SMF ¶ 106.

Defendants' campaign to disparage Mr. Wilson and his companies was pervasive and had a far reach in the GunCAD community.  SMF ¶ 107.

### D.      The Devastating Impact of the FEDCAD Meme.

Due to Defendants' coordinated conduct, one of the most prolific 3D gun designers, Eric Goldhaber, stopped uploading his 3D gun designs to DEFCAD in 2023.  SMF ¶ 108.  Because of Goldhaber's standing and wide audience in the GunCAD community, his public support for

Wilson and Plaintiffs would have given them additional legitimacy and goodwill with potential customers.  SMF ¶ 109.

Since May 2023, Plaintiffs' sales and profits have substantially decreased.  SMF ¶ 110. Notably, a significant number of customers have expressly cited "FEDCAD" or "data security concerns" as reasons for cancelling their DEFCAD memberships.  SMF ¶ 111; *see also* Doc. 147-6 at pp. 2, 4, 7, 10, 11, 12 (x2), 13, 15, 16, 18, 19 (x2), 21, 22 (x3) ("I don't want to support fedcad"), p. 3, 5, 6, 9 (x2), 11 (x2) , 12, 13, 15, 16 (x2), 17, 18, 20, 21 (x2), 22, 23 ("concerned about personal security / privacy"), p. 4 ("The undisclosed data breaches"), p. 15 ("Cody Wilson's treatment of the community"), p. 16 ("the lawsuit with Gatalog was the final straw"), p. 22 ("I don't like people who have sold out to the fed before"), p. 23 ("doxxing members of the community is reprehensible").  Plaintiffs' damages expert, Jason Tyra, opines that Plaintiffs have lost more than $2 million in revenue as a result of Defendants' widespread false statements about Plaintiffs. *See* Doc. 150-1.

**ARGUMENT**

**A.      Summary Judgment Standard.**

Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Where, as here, a movant alleges an absence of evidence to support an essential element of the non-movant's case, the non-movant may defeat summary judgment by showing a genuine issue of material fact.  *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311-12 (11th Cir. 2018).  If there is a conflict between the parties' allegations and evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1164 (11th Cir. 2003).  As explained below, the Motion should be denied in its entirety.

**B.      Summary Judgment Should Be Denied as to Count I - Conspiracy to Violate RICO.**

Count I asserts a claim for conspiracy to violate 18 U.S.C. § 1962(c), which prohibits participation in the affairs of an enterprise through a pattern of "racketeering activity."  The enterprise is alleged to be MAF Corp.  The "racketeering activity" is violation of the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "schemes to defraud" using interstate wires.

Notably, in denying Defendants' Motion to Dismiss, the Court has already upheld the legal sufficiency of Plaintiffs' RICO claim.  *See* Doc. 90.  Specifically, the Court found that the following allegations are legally sufficient: (1) fraud over the Internet is wire fraud, citing *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003); (2) multi-year conduct supports continuity, citing *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020); and (3) coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud, citing *Hartman v. Does 1-2*, No. 23-13473, 2025 WL 398846 at *6-7 (11th Cir. Jan. 31, 2025).  As explained below, Count I should proceed to trial because the evidence supports these legal conclusions.

**1.      There Are Material Disputed Facts Regarding Causation under RICO.**

Defendants argue that summary judgment is proper as to Count I because Plaintiffs cannot prove a direct link between the alleged misrepresentations and any consumer's purchasing decision.  *See* Mot. 9-11.  This argument lacks merit.

As explained above, Plaintiffs can prove a direct link between lost customers and the alleged RICO violation.  In fact, numerous customer exit surveys identify the FEDCAD meme as the reason they cancelled their DEFCAD memberships, and one of the gun industry's most prolific designers, Eric Goldhaber, stopped uploading files to DEFCAD.

Even if this evidence did not exist, Defendants' argument would fail.  In *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), a plaintiff asserted a RICO claim for lost profits suffered

due to a competitor's scheme to unfairly bid for tax liens at an auction, thus depriving the plaintiff of some of the liens it would have received if bidding had been conducted fairly.  Although the competitor's scheme entailed fraudulent statements made to the county sponsoring the auction, not the plaintiff, the Supreme Court found that plaintiff's claim satisfied RICO's "direct injury" requirement because "Respondents' injury-the loss of valuable liens-is the direct result of the petitioners' fraud."  *Id.* at 658.  Similarly, in this case, Plaintiffs' injury is the "direct result" of Defendants' RICO scheme to falsely disparage Plaintiffs by posting false statements online which are intended to be read by potential customers.  *See* Doc. 90 at p. 6 (finding that Plaintiffs adequately alleged that Defendants' RICO violations were the proximate cause of Plaintiffs' damages).

Moreover, proximate causation is not defeated because other factors may have contributed to the damage, which is the crux of defendants' argument in this regard.  *See, e.g., Maiz v. Virani,* 253 F.3d 641, 675 (11th Cir. 2001) ("If the defendant's conduct was a substantial factor in causing the plaintiff's injury, it follows that he will not be absolved from liability merely because other causes have contributed to the result, since such causes, innumerable, are always present," affirming RICO judgment) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* §41, at 268 (5th ed. 1984)).  Therefore, Defendants' argument that other factors may have contributed to Plaintiffs' revenue decline does not defeat Plaintiffs' RICO claim.

**2.      There is Evidence of a Conspiracy to Commit Wire Fraud by Publishing the Meme.**

The Motion asserts "Plaintiffs have no evidence that Defendants knowingly made false statements as part of a scheme to defraud."  Mot. 13.  But the falsity of a statement under the mail and wire fraud statutes is determined not by what the defendant believed to be true but whether it would be important in the decision-making "of the person or entity to whom or which it is

addressed." *United States v. Svete,* 556 F.3d 1157, 1161 (11th Cir. 2009). Moreover, as long as the defendant is "indifferent to the truth" of their statements, they can be liable. *United States v. Simon,* 839 F.2d 1461, 1470 (11th Cir. 1988) (affirming mail and wire fraud convictions).

Here, there is ample evidence that Defendants knowingly made false statements about Plaintiffs. Indeed, Plaintiffs' database has never been hacked or dumped. In any event, Defendants' state of mind in making false statements cannot be decided on summary judgment. *See Butz v. Economou,* 438 U.S. 478, 527 (1987) (it is "not feasible to resolve on motion for summary judgment cases involving state of mind"); *Cowley v. Burger King Corp.,* No. 07-cv-21772, 2008 WL 8910653, at *4 (S.D. Fla. May 23, 2008) (denying defendant's summary judgment motion where there the defendant's statement of mind was "for the jury to decide," since "[q]uestions involving a party's state of mind are generally appropriately resolved by a jury rather than on summary judgment").

### 3.     MAF Corp. is the Enterprise.

Larosiere and Holladay own MAF Corp. and thus participate in the "operation or management" of its affairs. The other defendants have taken orders from Larosiere and Holladay as to the scheme and are thus "lower rung participants" in the enterprise. They are involved in its business by promoting its sales by offering discount codes to customers. SMF ¶ 100.

Taken together, all of those conversations and actions among the defendants are enough to create a dispute of fact regarding a RICO conspiracy to publish the meme. All that is necessary is that the defendant agree to the overall objective of the conspiracy. *See, e.g., Salinas v. United States,* 522 U.S. 52, 65 (1997) (affirming §1962(d) conspiracy conviction of a defendant who did not personally commit any predicate acts); *accord, Allstate Ins. Co. v. Palterovich,* 653 F. Supp. 1306, 1321 (S.D. Fla. 2009) ("A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2)

by showing that the defendant agreed to commit two predicate acts").  This evidence is sufficient to show the former, that the defendants agreed to the overall objective of damaging Plaintiffs by publishing the meme and making false statements about Wilson on the internet.  Therefore, Plaintiffs can show much more than "a shared dislike of Mr. Wilson," as the Motion contends at p. 12.  This argument must be rejected.  Moreover, a conspiracy can be "inferred from the conduct of the alleged participants…." *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1410-11 (11th Cir. 1994).

Therefore, the Motion must be denied as to Count I.

**C.      Summary Judgment Should Be Denied as to Count II - False Advertising under the Lanham Act.**

To prevail on Count II, Plaintiff must prove: "(1) the defendant made a false or misleading statement of fact; (2) in commercial advertising or promotion; (3) that deceived or was likely to deceive consumers; (4) the deception was material; and (5) the plaintiff suffered injury."  Doc. 90 at p. 7 (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)).

Defendants contend that summary judgment is proper because Plaintiffs cannot prove "commercial advertising or promotion," deception, materiality, injury, or competition between Plaintiffs and Defendants.  *See* Mot. 13-17.  Each argument lacks merit.

**1.      Defendants Engaged in Commercial Speech.**

Under the Lanham Act, "commercial speech includes statements made by competitors to influence consumer decisions."  Doc. 90 at p. 8 (citing *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012)).  "[A] communication need not propose a commercial transaction" to constitute commercial speech.  *Platinum Props. Investor Network, Inc. v. Sells*, No.

18-cv-61907, 2021 WL 4429067, at *14 (S.D. Fla. Feb. 9, 2021) (citing *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017)).

In denying Defendants' motion to dismiss, this Court found that Plaintiffs adequately pleaded commercial speech by alleging that Defendants disseminated the challenged statements to influence consumer choice. *Id.* at pp. 7-8. The evidence uncovered in discovery shows that there is minimally a dispute as to whether Defendants intended to influence consumer decisions by:

- posting the FEDCAD meme, which instructs consumers not to use DEFCAD ("Friends don't let Friends use defcad"), in online forums where Plaintiffs' customers were likely to see it (*see* SMF ¶ 93);

- encouraging consumers to use Defendants' companies, CtrlPew and MAF Corp, to download 3D designs and buy parts and accessories (*see* SMF ¶ 106); and

- generally disparaging Plaintiffs.

Defendants argue that critical blog posts are not commercial speech. *See* Mot. 14 (citing *Tobinick*, 848 F.3d 935).[1]  But false statements about a competitor published online can be commercial speech if they influence consumer decisions. *See Platinum Props.*, 2021 WL 4429067, at *14 (rejecting defendants' "commercial speech" argument on summary judgment because defendants' online posts advanced their business interests, defendants' emails denigrated plaintiffs (a competitor) and included links to defendants' websites, and defendants repeatedly expressed a desire to "hurt Plaintiffs or put them out of business"). Like in *Platinum Props*, Defendants' "commercial speech" argument should be rejected.

---

[1] *Tobinick*, 848 F.3d 935 is readily distinguishable because the defendant's blog posts "provide[d] an objective analysis of questionable or controversial medical claims," which "add[ed] to the public debate" regarding the medical items at issue and was "clearly of import to the public." *Id.* at 950-52. In contrast, here, Defendants published false factual statements about a competitor's business practices to harm Plaintiffs and divert business to their own companies.

**2.      There Is Evidence of Deception, Materiality, and Injury.**

Defendants' contention that Plaintiffs cannot prove deception, materiality, or injury (Mot. 15-16) is also baseless.

Because Defendants' statements are literally false, Plaintiffs do not have to present evidence of consumer deception.  *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010).

A literally false statement is material if it "is likely to influence the [consumer's] purchasing decision."  *Id.*  Here, Defendants' false statements about Plaintiffs' data security and hosting location are likely to influence consumer's purchasing decisions.  *See* Doc. 150-1; *see also Osmose, Inc.*, 612 F.3d at 1319 (affirming district court's finding that false statements regarding the safety of a competitor's product was material because the conclusion was "self-evident"); Doc. 90 at 8 (finding that Plaintiffs' adequately alleged "materiality because data security and hosting location are central to consumer trust in online file-hosting services").  Indeed, Plaintiffs' customer-exit surveys prove that customers canceled DEFCAD memberships because of Defendants' false statements.[2]  Those surveys are also proof of injury.[3]

---

[2] The fact that some customers identified other reasons for canceling their memberships (*see* Mot. 15) does not change the fact that Defendants' false statements were material to some customers.

[3] Even without this evidence, Plaintiffs could still satisfy the injury prong.  If an injury consists of lost sales predicated on the independent decisions of customers, a plaintiff may use "actual market experience and *probable* market behavior" to "create[e] a chain of inferences" showing the harm to the plaintiff's business.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (emphasis in original).  If a plaintiff meets this burden, it "need not present direct evidence to prevail on its claim."  *See Sandoz Inc. v. Amgen Inc.*, No. 2:22-cv-05326, 2023 WL 4681569, at *3 (C.D. Cal. June 29, 2023) (denying defendant's motion for summary judgment based on plaintiff's alleged failure to identify specific lost customers).  Here, Tyra's report establishes a chain of inferences showing that Plaintiffs' sales decline was caused by Defendants.

### 3.        Plaintiffs Do Not Have to Prove that Defendants Are Competitors.

Defendants also incorrectly assert that Plaintiffs must prove that Defendants are in "commercial competition" with Plaintiffs.  *See* Mot. 16 (citing *Tobinick*, 848 F.3d at 950). However, the Supreme Court has "expressly rejected the requirement that challenged commercial speech be made by a competitor." *SouthState Bank, N.A. v. Qoins Techs., Inc*., 720 F. Supp.3d 1324, 1340 n.9 (N.D. Ga. 2024) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014)).  In *Lexmark*, the Supreme Court found that it is a "mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors." *Id.* (emphasis added).[4]

Even if there were still a competitor requirement, that requirement would be met because: (1) DEFCAD and DD Foundation are competitive with Holladay's company, CtrlPew, by virtue of being file-sharing sites for 3D gun designs;[5] and (2) Defense Distributed and MAF Corp. sell some of the same parts and kits for building 3D guns.  The Motion must be denied as to Count II.

---

[4] Since *Lexmark*, nearly every court in this Circuit has found that there is no longer a "competitors" requirement for claims under the Lanham Act.  *See, e.g., Wyndham Vacation Ownership, Inc. v. Miller*, No. 6:19-cv-817, 2019 WL 5394074, at *4-5 (M.D. Fla. Oct. 11, 2019) (admonishing defendants for "misleading the court as to the state of the law" concerning "competitor" status); *Tobinick v. Novella*, 142 F. Supp.3d 1275, 1279-80 (S.D. Fla. 2015) (noting that the "Supreme Court recently ruled that a plaintiff does not need to show defendant was in commercial competition with plaintiff to have standing under the Lanham Act") (*aff'd* 848 F.3d 935).

[5] Defendants suggest that CtrlPew is not a competitor to DEFCAD because it does not charge customers to access its 3D gun designs.  *See* Mot. 16.  But the (outdated) test for determining whether a defendant is a competitor turns on whether the defendant competes in the same market for the same customers.  *See, e.g., Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp.2d 1270, 1274 (S.D. Fla. 2008); *Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571, 2009 WL 3053709, at *12-13 (D. Nev. Sept. 18, 2009).  The fact that CtrlPew does not charge customers to access its 3D gun designs increases (not decreases) the likelihood of diverting DEFCAD's members.  Indeed, many customer exit survey state that the reason for cancellation was because the customer found free files available elsewhere.

**D.       Summary Judgment Should Be Denied as to Tortious Interference (Count III).**

Defendants' arguments regarding Count III (tortious interference) are similarly deficient.

The elements of a claim for interference with a business expectancy are: "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages.'" *Ifergane v. Fratellini*, No. 19-cv-21123, 2020 WL 248969, at *3 (S.D. Fla. Jan. 16, 2020) (quoting *Mulvey v. Stephens*, 250 So. 3d 106, 109 (Fla. 4th DCA 2018)).

Defendants contend that Plaintiffs cannot identify any specific customer relationships or agreements lost due to Defendants' alleged interference. *See* Mot. 17-18. But "[a] protected business relationship need not be evidenced by an enforceable contract." *Vintage Racing Motors, Inc. v. Morris*, No. 05-cv-14190, 2006 WL 8433972, at *4 (S.D. Fla. Oct. 13, 2006) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Instead, it can be based on a business expectancy that "would have been completed had the defendant net intervened." *Scussel v. Balter*, 386 So. 2d 1227, 1228 (Fla. 3d DCA 1980).

Here, Plaintiffs had a business expectancy with approximately 20 customers who identified the FEDCAD meme or data security as the reason they canceled their DEFCAD membership.[6] Plaintiffs also had a business expectancy with Eric Goldhaber, one of the most prolific designers of 3D-printed guns who stopped uploading his 3D gun designs to DEFCAD in 2023 because of Defendants' widespread smear campaign against Wilson and Plaintiffs. Goldhaber's discontinuation of his public association with Plaintiffs has had a deleterious effect on Plaintiffs' business. The Motion must be denied as to Count III.

---

[6] "The Eleventh Circuit has ruled that survey results can be admissible, even if they are founded upon, or contain, hearsay evidence." *Shamblin v. Obama for Am.*, No. 8:13-CV-2428, 2015 WL 1909765, at *4 (M.D. Fla. Apr. 27, 2015) (citing *Debra P. v. Turlington*, 730 F.2d 1405, 1414 (11th Cir.1984)).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion.


Dated:  June 11, 2026                                          Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*