**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

      Plaintiffs,

v.

JOHN     ELIK,     individually;     MATTHEW
LAROSIERE,     individually;     ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and   JOHN   LETTMAN,   individually;   ZACK
CLARK, individually
                Defendants.

_____/

**PLAINTIFFS' AMENDED RESPONSE TO**
**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Southern District of Florida Local Rule 56.1(b)(2) and this Court's Order (Doc.

163) striking Plaintiffs' original Response to Defendants' Statement of Material Facts (Doc. 161),

Plaintiffs file this Amended Response to Defendants' Statement of Material Facts (Doc. 147-1).

    1.      Undisputed.

    2.      Undisputed.

    3.      Undisputed.

    4.      Undisputed.

    5.      Undisputed.

    6.      Undisputed.

    7.      Undisputed.

8. Undisputed.

9. Undisputed.

10. Disputed. Plaintiffs disclosed exit surveys showing that customers cancelled their DEFCAD memberships because of Defendants' statements. *See* Doc. 147-6. Plaintiffs also disclosed the expert report of Jason M. Tyra opining that Defendants' statements caused a decline in Plaintiffs' sales revenue. *See* Doc. 150-1.

11. Disputed. Plaintiffs disclosed Eric Goldhaber as a witness who would testify that he stopped doing business with Plaintiffs because of statements made by Defendants. *See, e.g.,* Doc. 147-15 at p. 3, Rog. 11; Doc. 157 (Goldhaber Declaration).

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Disputed. Plaintiffs' interrogatory responses refer to customer exit surveys produced in discovery that identify such customers. *See* Doc. 147-6.

26. Disputed. Plaintiffs' interrogatory responses refer to customer exit surveys showing that consumers cancelled their DEFCAD memberships because of Defendants' statements. *See* Doc. 147-6. Plaintiffs' interrogatory responses also refer to the expert opinion report of Jason M. Tyra. *See* Doc. 150-1.

27. Disputed. Plaintiffs disclosed Eric Goldhaber as a creator who would testify that he stopped doing business with Plaintiffs because of statements made by Defendants. *See, e.g.,* Doc. 147-15 at p. 3, Rog. 11; Doc. 157 (Goldhaber Declaration).

28. Disputed. Plaintiffs' interrogatory responses refer to Tyra's expert opinion report, which calculates the amounts jointly and severally attributable to each individual defendant. *See* Doc. 150-1.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Disputed. Plaintiffs' counsel properly objected to this question on the grounds that it called for speculation. *See* Doc. 147-7 at 44:9-17. As a result, Tyra's inadmissible response cannot be considered. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (noting that evidence must be admissible to be considered at summary judgment).

35.     Disputed.  The cited portion of Tyra's deposition transcript does not support the statement attributed to Tyra.  *See* Doc. 147-7 at 46:10-22.  Additionally, the alleged deposition exhibit is not part of the record, so Plaintiffs are unable to admit or deny what was shown to Tyra.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Undisputed.

42.     Undisputed.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed.

46.     Undisputed.

47.     Undisputed.

48.     Undisputed.

49.     Undisputed.

50.     Undisputed.

51.     Undisputed.

52.     Undisputed.

53.     Undisputed.

54.     Undisputed.

55.     Undisputed.

56.     Undisputed.

57.     Disputed.  Tyra's expert report calculates damages jointly and severally attributable to each defendant.  *See* Doc. 150-1.

58.     Disputed.  Tyra's expert report explains his methodology for calculating damages jointly and severally attributable to each defendant.  *See* Doc. 150-1.

59.     Undisputed.

60.     Disputed.  Wilson testified that customers who cited reasons other than the FEDCAD meme for cancelling their DEFCAD memberships may have been influenced by Defendants' false statements.  *See* Doc. 147-5 at 107:21-108:20.

61.     Disputed.  Plaintiffs have identified customer-exit surveys indicating that Defendants' false statements were the reason for cancelation.  *See, e.g.,* Doc. 147-6 at pp. 2, 4, 7, 10, 11, 12 (x2), 13, 15, 16, 18, 19 (x2), 21, 22 (x3) ("I don't want to support fedcad"), p. 3, 5, 6, 9 (x2), 11 (x2) , 12, 13, 15, 16 (x2), 17, 18, 20, 21 (x2), 22, 23 ("concerned about personal security / privacy"), p. 4 ("The undisclosed data breaches"), p. 15 ("Cody Wilson's treatment of the community"), p. 16 ("the lawsuit with Gatalog was the final straw"), p. 22 ("I don't like people who have sold out to the fed before"), p. 23 ("doxxing members of the community is reprehensible").  These customer-exit surveys are admissible.  *Shamblin v. Obama for Am.*, No. 8:13-cv-2428, 2015 WL 1909765, at *4 (M.D. Fla. Apr. 27, 2015) (citing *Debra P. v. Turlington*, 730 F.2d 1405, 1414 (11th Cir.1984)).

62.     Undisputed.

63.     Undisputed.

64.     Undisputed.

65.     Undisputed

66.     Disputed.  Plaintiffs identified exit surveys showing that customers cancelled their DEFCAD memberships because of Defendants' statements.  *See* Doc. 147-6.  Plaintiffs also disclosed the expert report of Jason M. Tyra opining that Defendants' statements caused a decline in Plaintiffs' sales revenue.  *See* Doc. 150-1.

67.     Undisputed.

68.     Undisputed.

69.     Undisputed.

70.     Undisputed.

71.     Undisputed.

72.     Undisputed.

73.     Disputed.  JG's "inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).  In any event, JG has denied hacking Plaintiffs' database.  Wilson Decl., Doc. 159 at ¶ 3.

74.     Undisputed.

75.     Disputed.  Elik has posted the FEDCAD meme.  Wilson Decl., Doc. 159 at ¶ 4.

76.     Disputed.  The FEDCAD meme is a verbatim copy of one of Elik's posts from May 2023.  Wilson Decl., Doc. 159 at ¶ 5.

77.     Disputed.  Elik could not have personal knowledge of a non-existent "hack" or "dump" of DEFCAD's database, *see* Walliman Decl., Doc. 158 at ¶ 5 (denying that DEFCAD's database has been hacked and dumped), or personal knowledge of the false and misleading statement that DEFCAD "do[es] not encrypt [its] data, and keep[s] it unsalted – all your information is in a row," *see id.* at ¶ 6.

## ADDITIONAL FACTS

### A.    Plaintiffs' Affiliated Businesses

78.    Plaintiffs are affiliated Texas businesses owned by Cody Wilson.  Wilson Decl., Doc. 159 at ¶ 1.

79.    Plaintiff DEFCAD is subscription-based file-sharing website that allows customers to download 3D gun designs.  *Id.* at ¶ 6.

80.    The DEFCAD website membership is called a LEGIO membership and currently costs $60 annually.  *Id.* at ¶ 7.

81.    All income generated by DEFCAD website memberships are paid to, and received by, plaintiff DD Foundation.  *Id.* at ¶ 8.

82.    Plaintiff Defense Distributed sells kit parts, equipment, and gun accessories.  *Id.* at ¶ 9.

83.    The Ghost Gunner is Defense Distributed's main product.  It accounts for more than 90% of Defense Distributed's sales revenue.  *Id.* at ¶ 10.

84.    The affiliated relationship between DEFCAD and Defense Distributed, as well as their joint ownership by Wilson, is well-known in the GunCAD community.  *Id.* at ¶ 11.

### B.    Defendants' Competitive 3D Gun Ventures

85.    Defendant Holladay is the owner of CTRLPew, LLC, operates the CTRLPew website, and is Treasurer of the Gatalog Foundation, Inc.  *See* Doc. 159-1, Order Entered in *The People of the State of California v. Gatalog Foundation Inc.*, No. CGC-26-633508 (Cal. Super. Court, San Francisco County) (June 5, 2026) ("*California v. Gatalog*") at p. 4.[1]

---

[1] The Court may take judicial notice of factual findings made by other Courts and admissions made in other cases.  *See* Fed. R. Evid. 201.

86.     Defendant Larosiere is the President of the Gatalog Foundation.  *Id.*

87.     Larosiere and Holladay own MAF Corp.  Wilson Depo., Doc. 147-5 at 210:17-21.

88.     Elik has a work-for-hire agreement with Larosiere and co-hosts Larosiere's podcast and YouTube series.  Elik Depo., Doc. 161-2 at 14:1-19; Doc. 159 at ¶ 13.

89.     Elik and Larosiere jointly use the online alias "IvantheTroll."   Doc. 159-1, *California v. Gatalog* p. 7.

90.     Defendant Clark works for Larosiere and Elik as an editor of their YouTube series. Wilson Decl., Doc. 159 at ¶ 14.

91.     MAF Corp. and Defense Distributed are competitors because they sell some of the same parts and accessories for building 3D-printed guns.  Goldhaber Decl., Doc. 157 at ¶ 10; Walliman, Decl., Doc. 158 at ¶ 5.

92.     CTRLPew and the Gatalog are competitors with DEFCAD because they are file-sharing websites that allow customers to download 3D gun designs.  Wilson Decl., Doc. 159 at ¶ 15.

**C.      Defendants Create the "FEDCAD" Meme**

93.     A standard reproduction of the FEDCAD meme states as follows:

Elik Decl., Doc. 147-13 at ¶ 4.

94.     Defendant Stroke *a/k/a* Zona created the "FEDCAD" meme in or around May 2023 and published it on X (Twitter) and other social media platforms.  In creating the "FEDCAD" meme, Stroke relied upon public statements written by Elik.  Stroke Depo., Doc. 161-6 at 23:11-24:7.

95.     Larosiere *a/k/a* FuddBuster has publicly declared Stroke to be his "top lieutenant." Doc. 159-2.

96.     Holladay owns and administers a Rocket.Chat server for a group known as "The Gatalog."  Holladay Depo., Doc. 161-3 at 39:10-16.

97.    Defendant Celentano first saw the "FEDCAD" meme on defendant Holladay's Rocket.Chat server.  Celentano Depo., Doc. 161-1 at 49:8-14.

98.    Holladay, Stroke, Lettman, Clark, and Celentano have posted the FEDCAD meme on the internet.  Celentano Depo., Doc. 161-1 at 104:21-105:1; Lettman Depo., Doc. 161-4 at 49:21-23; Holladay Depo., Doc. 161-3 at 190:3-12.

99.    Holladay, Stroke, Lettman, Clark, Elik, and Larosiere each have thousands of followers on X or YouTube.  Wilson Decl., Doc. 159 at ¶ 17.

100.    MAF Corp. issued discount codes for Holladay, Stroke, and Elik to use as affiliate marketers of MAF Corp.'s 3D gun products on the internet.  MAF Corp. Depo., Doc. 161-5 at 14:23-16:22; Holladay Depo., Doc. 161-3 at 108:1-11; Stroke Depo., Doc. 161-6 at 85:18-24.

101.    Holladay has tried to raise money for defendants Elik, Celentano, Larosiere, and Lettman.  Wilson Decl., Doc. 159 at ¶ 18.

102.    Larosiere has maintained a very good friendship with Stroke since she started publishing the FEDCAD meme.  Stroke Depo., Doc. 161-6 at 46:3-14.

**D.    The Devastating Impact of the FEDCAD Meme.**

103.    The FEDCAD meme's statement that "Defcad's database has been hacked and dumped on multiple occasions" is false.  Walliman Decl., Doc. 158 at ¶ 5.

104.    The FEDCAD meme's statement that "DEFCAD "do[es] not encrypt [its] data, and keep[s] it stored unsalted – all your information is in a row" is false and misleading.  Walliman Decl., Doc. 158 at ¶ 6.

105.    Since 2023, Defendants have made hundreds of online posts disparaging Wilson and Plaintiffs to members of the GunCAD community on various online platforms, including

X/Twitter, Reddit, and Facebook.  Golhaber Decl., Doc. 157 at ¶ 8; Walliman Decl., Doc. 158 at ¶ 3.

106.    Often, one of the defendants, such as Stroke, would publish the so-called "FEDCAD" meme either as an original post or as a comment on a third party's GunCAD-related post.  This publication of the FEDCAD meme would often be accompanied by agreement by other defendants, and commentary by defendants warning consumers not to use or support Wilson or Plaintiffs and to instead use and support websites such as CTRLPew.com or the Gatalog for 3D gun designs. In turn, those websites refer customers to MAF Corp. to buy 3D gun parts and accessories.  Golhaber Decl., Doc. 157 at ¶ 9; Walliman Decl., Doc. 158 at ¶ 4.

107.    Defendants' campaign to disparage Mr. Wilson and his companies was pervasive and had a far reach in the GunCAD community.  Golhaber Decl., Doc. 157 at ¶ 11.

108.    Due to Defendants' smear campaign, one of the most prolific 3D gun designers, Eric Goldhaber, stopped uploading his 3D gun designs to DEFCAD in 2023.  Golhaber Decl., Doc. 157 at ¶ 12.

109.    Due to Goldhaber's standing and audience in the GunCAD community, his public support for Wilson and Plaintiffs would have given them additional legitimacy and goodwill with potential customers.  Golhaber Decl., Doc. 157 at ¶ 13; Wilson Decl., Doc. 159 at ¶ 19.

110.    Since May 2023, Plaintiffs' sales and profits have substantially decreased.  Wilson Decl., Doc. 159 at ¶ 20.

111.    Since May 2023, a significant number of customers have expressly cited "FEDCAD" or "data security concerns" as reasons for cancelling their DEFCAD memberships. Wilson Decl., Doc. 159 ¶¶ 22-23 & Doc. 147-6.

Dated:  June 16, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: /s/ *Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*