UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

*Plaintiffs,*

v.

JOHN ELIK, et al.,

*Defendants.*

_____/

## DEFENDANTS' OPPOSED MOTION FOR LEAVE TO SUPPLEMENT THE SUMMARY-JUDGMENT AND DAUBERT RECORDS AND INCORPORATED REQUEST FOR JUDICIAL NOTICE

i

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.................................... 1

THE SUPPLEMENTAL MATERIALS............................................................. 2

I.   THE *VANDERSTOK* MATERIALS. ................................................... 2

II.   THE *YOUTUBE* MATERIALS. ........................................................ 5

III.   THE *KICKSTARTER* MATERIALS........................................................ 6

IV.   THE STATE DEPARTMENT, *GREWAL*, AND COURT OF FEDERAL
CLAIMS MATERIALS ........................................................................... 8

V.   ARGUMENT ..................................................................................... 10

A.   The Court Should Allow Supplementation............................................. 10

B.   Rule 26 required disclosure of these damages materials. ..................... 10

C.   The materials defeat Plaintiffs' all-or-nothing damages model............ 12

D.   Judicial notice is proper for the public court records. .......................... 13

E.   Plaintiffs' own statements are admissible.............................................. 13

F.   Plaintiffs will suffer no unfair prejudice. .............................................. 14

RELIEF REQUESTED.................................................................................. 14

LOCAL RULE 7.1 CERTIFICATION............................................................ 15

CERTIFICATE OF SERVICE....................................................................... 15

Defendants recently discovered the attached materials, which should have been disclosed under Rule 26 and were responsive to Defendants' damages discovery. Defendants thus move for leave to supplement the record on their Motion for Summary Judgment, ECF No. 147, and *Daubert* Motion, ECF No. 144, with the materials attached as Exhibits A through U. Defendants also request judicial notice of the public court records and orders attached to this motion. Plaintiffs oppose the requested relief.

### **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs' sole damages model attributes 100% of sales decline occurring after the meme's existence to Defendants. (Doc. 147-8). That theory cannot be squared with the materials attached to this motion. In other litigation, Defense Distributed, its principal Cody Wilson, and his other closely related entities contemporaneously attributed overlapping business harms to other causes: ATF rulemaking, service-provider disruption at the hands of the government, banking and insurance disruption by the government, censorship by YouTube and Google, crowdfunding suppression by Kickstarter and others, and government interference with DEFCAD's operations. In each of these cases, Plaintiffs attributed substantial lost profits and lost sales to the various Defendants in those cases, most often supported by Wilson's declarations.

Plaintiffs did not disclose these materials under Rule 26(a)(1)(A)(iii). Nor did they produce the underlying evidentiary materials, even though Defendants' discovery sought the basis for Plaintiffs' lost sales damages and how they could be caused by Defendants as opposed to other causes. Defendants should have been able

1

to rely on Plaintiffs' disclosures and productions. Instead, after discovery closed, after Defendants filed their summary-judgment and *Daubert* motions, and after the Court denied further discovery relief, Defendants discovered undisclosed materials Defense Distributed supplied to a federal court in Texas, spurring Defendants to comb through Defense Distributed's myriad lawsuits across the country. That review uncovered the materials now submitted.

For summary judgment, the materials show Plaintiffs cannot support the causal bridge between Defendants and the damages they claim. For *Daubert*, they defeat the reliability of a model that treats Defendants as responsible for 100% of the sales decline while ignoring contrary damages positions Plaintiffs and their principal were advancing elsewhere at the same time.

Defendants do not seek a second round of summary-judgment briefing. The point illustrated by the materials is simple and the materials speak for themselves against the backdrop of Plaintiffs' claims here. The attached materials should be part of the MSJ and *Daubert* record, judicial notice should be taken of the attached filings and orders where appropriate, and Plaintiffs' own pleadings, briefs, and sworn declarations should be considered as party-opponent statements.

## THE SUPPLEMENTAL MATERIALS

### I.      THE *VANDERSTOK* MATERIALS.

Defense Distributed intervened in *VanDerStok* to challenge ATF's 2022 "Frame or Receiver" Rule. Its complaint alleged that the Rule cut the foundation out from Defense Distributed's business model by sweeping away critical revenue, disrupting their relationship with their service providers, damaging their reputation

and goodwill, and threatening the company's existence. Ex. A at 3, 16–19. Defense Distributed specifically alleged lost profits, lost income, goodwill harm, unrecoverable compliance costs, and an existential financial threat to its business. *Id*.

Wilson then submitted a sworn declaration in February 2023 (just before the allegedly damaging meme was first posted) tying that harm to Ghost Gunner products. He declared that Defense Distributed sold affected products through its website, performed an accounting showing those items comprised nearly one-fifth of monthly revenues, and ceased dealing in those products because of the Final Rule. Ex. B ¶¶ 12–13. He further declared that the Rule caused at least $350,000 in lost revenue and lost complementary-product sales. Mr. Wilson threatened the company's dissolution as a result of the purported harms. *Id*. ¶¶ 14–15. Then, months after the meme was posted, in that same case, Defense Distributed represented to the federal court that "[t]he situation is dire. If Defense Distributed is not protected by either the Court's existing final judgment or an individualized injunction pending appeal—if the Agencies are allowed to resume enforcement of the Final Rule against Defense Distributed—**then Defense Distributed will go out of business and cease to exist.**" Ex. U at 3 (emphasis added).

The Northern District of Texas credited that showing in granting Defense Distributed injunctive relief, finding Defense Distributed likely to suffer irreparable harm through unrecoverable lost revenues and potential business dissolution. Ex. C at 5–7 & n.15.

3

Defense Distributed kept pressing the same theory in 2025—two years after the alleged meme damages began here. Its preliminary-injunction brief argued that the inability to sell products on the Ghost Gunner-site, deprived Defense Distributed of a core revenue stream and threatened its survival. Ex. D at 19–20. Wilson's 2025 declaration incorporated his earlier declaration as true and correct, identified Ghost Gunner products, and declared that ATF's present enforcement continued to inflict the same harms. Ex. E ¶¶ 1, 3, 7–8. He further declared that sales of the affected products would generate substantial revenue and profit margins critical to Defense Distributed's survival. *Id*. ¶ 8.

In 2026, Defense Distributed submitted a notice stating that its harms had "materialized and [were] escalating," including a disruption of the ability to engage in banking and secure insurance. Ex. F at 3–6. Supporting declarations attributed denial of banking and insurance services to uncertainty from ATF's continued enforcement. Ex. G ¶¶ 3–5; Ex. H ¶¶ 3–5. The *VanDerStok* court later recognized that Defense Distributed was suffering due to the challenged rule, including economic harm in the form of lost sales revenue. Ex. I at 2.

These materials directly bear on Plaintiffs' pending damages theory. Plaintiffs' expert attributes Ghost Gunner lost sales to Defendants, while Defense Distributed and Wilson were telling another federal court that ATF enforcement caused lost Ghost Gunner-site revenue, lost complementary sales, customer fear, service-provider problems, banking and insurance disruption, and existential business harm during the same general period.

4

The Court should take judicial notice of Exhibits A through I and U as public court records from *VanDerStok* reflecting the pleadings, sworn submissions, briefing, filing dates, issues litigated, and judicial acts in that proceeding. Fed. R. Evid. 201(b), (d); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (a court may notice another court's order for the limited purpose of recognizing the judicial act it represents or the subject matter of the litigation). The Court should also consider Exhibits A, B, D, E, F, and U in ruling on Defendants' summary-judgment and Daubert motions because they are Defense Distributed's own pleadings, briefs, notices, and Wilson declarations concerning Defense Distributed's products, revenues, customers, service providers, and alleged causes of loss, making them opposing-party statements under Rule 801(d)(2)(A), (B), (C), and/or (D). The Court should consider Exhibits G and H, at minimum, for the fact that Defense Distributed submitted and relied on those declarations to prove banking and insurance harms from ATF enforcement, and also because the substance of those declarations is capable of being presented in admissible form. Fed. R. Civ. P. 56(c)(2). Exhibits C and I should be considered as judicial acts showing that the VanDerStok court credited or recognized the existence of Defense Distributed's ATF-related harm theory, including lost revenue and lost sales, during the same period in which Plaintiffs' expert attributes the sales decline here to Defendants.

## II.    THE *YOUTUBE* MATERIALS.

Defense Distributed also sued YouTube, Google, and Alphabet in Texas. There, Defense Distributed alleged that YouTube and Google censored Defense Distributed's videos and ads, causing significant economic and reputational harm. Ex. J ¶¶ 65–67.

Defense Distributed alleged lost revenue, lost advertising and partnership opportunities, loss of credibility with supporters and collaborators, and broader harm to its public-facing operations. *Id.*

Those allegations overlap with Plaintiffs' claimed harm here. Plaintiffs seek to blame Defendants for customer loss, reputational injury, and lost business opportunity. Defense Distributed was contemporaneously alleging that major technology platforms caused similar categories of harm.

The Court should take judicial notice of Exhibit J as a public court record from *Defense Distributed v. YouTube* reflecting the existence, filing date, contents, and subject matter of Defense Distributed's pleading in that proceeding. Fed. R. Evid. 201(b), (d). The Court should also consider Exhibit J in ruling on Defendants' summary-judgment and *Daubert* motions because it is Defense Distributed's own pleading, filed through counsel, alleging that YouTube and Google caused significant economic harm, lost revenue opportunities, reputational injury, loss of credibility with supporters and collaborators, and broader injury to Defense Distributed's operations. Those allegations are relevant to causation, alternative causes, damages, and the reliability of Tyra's attribution opinion, and are opposing-party statements under Rule 801(d)(2)(A), (B), (C), and/or (D). They are also materials capable of being presented in admissible form for purposes of Rule 56. Fed. R. Civ. P. 56(c)(2).

## III.   THE *KICKSTARTER* MATERIALS.

In *Coast Runner v. Kickstarter*, Coast Runner alleged that Wilson and Walliman developed the product therein from their prior CNC-machine ventures. Ex.

K ¶¶ 24–29. Coast Runner alleged that various crowdfunding websites conspired to derail their sales campaign, causing lost sales. *Id*. ¶¶ 3–8, 64.

Wilson testified that Coast Runner was a "white label version of the Ghost Gunner," while maintaining that it used a separate corporate form. Ex. L at 46:15–47:20. He also testified that Ghost Gunner technology became "another version of the mill called the Coast Runner." *Id*. at 11:16–12:20.

Coast Runner is not a plaintiff in this case, but their complained-of lost sales of the "white label version of the Ghost Gunner" obviously matter because Plaintiffs and their damages expert now attribute Ghost Gunner-related losses to Defendants while ignoring Plaintiffs' contemporaneous claim that sales of the machine were being handicapped by unrelated actors and events.

The Court should take judicial notice of Exhibit K as a public court record from *Coast Runner v. Kickstarter* reflecting the existence, filing date, contents, and subject matter of Coast Runner's pleading in that proceeding. Fed. R. Evid. 201(b), (d). The Court should also consider Exhibits K and the portions of Exhibit L cited here in ruling on Defendants' summary-judgment and *Daubert* motions because they bear directly on alternative causation and the reliability of Tyra's attribution opinion. Exhibit K shows closely related entity selling a "white label version of the Ghost Gunner" alleged lost sales caused by Kickstarter, Indiegogo, Launchboom, and others. Exhibit L supplies the evidentiary connection to Plaintiffs because Wilson testified in this case that Coast Runner was a white-label version of Ghost Gunner. Wilson's deposition testimony is an opposing-party statement under Rule

7

801(d)(2)(A), (C), and/or (D), and Exhibit K is independently relevant for the non-hearsay purpose of showing the existence of contemporaneous alternative-causation allegations that Tyra did not consider. Fed. R. Evid. 401; Fed. R. Evid. 801(d)(2); Fed. R. Civ. P. 56(c)(2).

## IV.   THE STATE DEPARTMENT, *GREWAL*, AND COURT OF FEDERAL CLAIMS MATERIALS

Defense Distributed also pursued extensive claims against the State Department and New Jersey officials involving monetary damages involving DEFCAD's digital firearms files business.

In the Second Amended Complaint in the Western District of Texas, Defense Distributed sought at least $5 million in actual damages based on State Department conduct involving the Published Files, Ghost Gunner Files, and CAD Files. Ex. M at 62–69. The Western District of Texas later dismissed the equitable claims and transferred the live monetary damages claim to the Court of Federal Claims. Ex. N at 15–16; Ex. O at 1  2.

In the Court of Federal Claims, Defense Distributed continued pressing their theory of monetary damages. The transfer complaint alleged that State Department breaches caused no less than $5 million in actual damages. Ex. P at 50–51, 57–58. Defense Distributed then opposed dismissal by arguing that the remaining contract damages claim was meritorious. Ex. Q at 2–3, 9–10.

Wilson declared in April 2021 that Defense Distributed had published approximately 16,000 files that generated roughly 40,000 downloads in two days. Ex. R at 2  3. Heindorff's declaration describes DEFCAD distribution activity and earlier

8

download activity. Ex. S ¶¶ 3–14. The DreamHost materials show New Jersey officials directly contacting service providers regarding defcad.com. Ex. T.

These materials show Defense Distributed lost sales to other actors while Plaintiffs pursued a one-cause damages model here.

The Court should take judicial notice of Exhibits M through T as public court records and docket materials from Defense Distributed's Court of Federal Claims litigation, reflecting the existence, filing dates, contents, subject matter, and judicial acts in those proceedings. Fed. R. Evid. 201(b), (d). The Court should also consider Exhibits M, P, Q, R, and S in ruling on Defendants' summary-judgment and *Daubert* motions because they are Defense Distributed's own pleadings, briefing, and sworn declarations, filed through counsel or submitted in support of Defense Distributed's claims, concerning DEFCAD's claimed business damages during an overlapping period. Those materials are relevant to lack of examination of alternative causation, Plaintiffs' damages, and the reliability of Tyra's attribution opinion, and qualify as opposing-party statements under Rule 801(d)(2)(A), (B), (C), and/or (D). The Court should consider Exhibits N and O as judicial acts showing that Defense Distributed's monetary damages claim remained live and was transferred to the Court of Federal Claims, and should consider Exhibit T at least for the non-hearsay purpose of showing the service-provider interference and regulatory pressure Defense Distributed was then asserting as a source of business harm. Fed. R. Evid. 401; Fed. R. Evid. 801(d)(2); Fed. R. Civ. P. 56(c)(2).

## V.   ARGUMENT

### A. The Court Should Allow Supplementation

District courts have discretion to permit supplementation of the summary-judgment record when relevant materials were newly discovered or previously unavailable, the movant acted diligently, and any prejudice can be addressed through limited additional procedure. *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-cv-60292, 2019 WL 5963815, at \*2–4 (S.D. Fla. Nov. 13, 2019); *Hayden v. Urvan*, No. 21-cv-82051, ECF No. 174, at 10–12 (S.D. Fla. Nov. 22, 2022).

Those principles support supplementation here. Defendants located the materials after discovery closed and after filing the pending motions. They were not produced by Plaintiffs, despite Rule 26's disclosure requirements and Defendants' damages discovery. The attached materials bear directly on issues already pending before the Court: causation, damages, and expert reliability.

The request is also narrow. Defendants do not ask to rebrief summary judgment or *Daubert*. Defendants ask that Exhibits A through T be added to the record, that judicial notice be taken as appropriate, and that Plaintiffs' own statements be considered for what they are: Defense Distributed's contemporaneous damages positions incompatible with the relief sought here.

### B. Rule 26 required disclosure of these damages materials.

Rule 26 required Plaintiffs to disclose "a computation of each category of damages" and to make available the documents or evidentiary materials on which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) required

10

supplementation when prior disclosures or discovery responses became materially incomplete or incorrect. Fed. R. Civ. P. 26(e).

These materials fall within that obligation. Plaintiffs' damages theory attributes lost sales and profits to Defendants. The attached materials concern competing causes for overlapping business harms. The documents underlying those other litigation positions were also responsive to Defendants' damages discovery, including discovery asking Plaintiffs to identify and support the causal basis for their claimed losses.

Rule 37(c)(1) bars use of information not disclosed under Rule 26(a) or (e) unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Eleventh Circuit has affirmed exclusion of undisclosed damages theories and supporting evidence where the omission impaired the opposing party's ability to test the damages case. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010). It has likewise affirmed exclusion of lost-profit damages where a party failed to disclose its damages computation, rejecting the idea that the opponent could cure the omission by doing the work itself. *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307–08 (11th Cir. 2021).

Defendants do not seek Rule 37 sanctions in this motion. But Rule 37 and the Eleventh Circuit's damages-disclosure cases underscore why the omission was not harmless and why the Court should not decide the pending motions on an artificially incomplete damages record. Plaintiffs should not be permitted to defend a 100%

11

attribution model on a record that omits their own, withheld contrary damages positions.

### C. The materials defeat Plaintiffs' all-or-nothing damages model.

Tyra's model Plaintiffs' sole damages model—assigns the entirety of Plaintiffs' sales decline after the meme's alleged publication in 2023 to Defendants. The newly submitted materials show that Defense Distributed was advancing other causes for the same categories of harm during the same period.

In *VanDerStok*, Defense Distributed and Wilson attributed lost Ghost Gunner revenue—90% of their business (Doc. 165 ¶83)—to be under existential threat by the ATF's Rulemaking. Exs. A–I. That rule remains in effect. *See Bondi v. VanDerStok*, 604 U.S. 458 (2025). Plaintiffs' principal declared recently that the harms in that case have "materialized and are escalating." Ex. F at 3.

Plaintiffs' sole damage model nevertheless treats Defendants as responsible for the relevant decline without any method for isolating Defendants' alleged conduct from those other causes. This cannot be resolved through weight alone. An expert's causation opinion is unreliable when it rests on unsupported attribution and fails to account for obvious alternative causes. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1308–09 (11th Cir. 2014). In *Florida VirtualSchool v. K12, Inc.*, the Eleventh Circuit affirmed exclusion of a lost-profits expert who assumed, without evidentiary support, that all relevant customers would have gone to the plaintiff but for the defendant's conduct. No. 24-10449, slip op. at 13–14 (11th Cir. Jan. 15, 2026)

12

(unpublished). Like the excluded expert in *Florida Virtual*, Tyra assumes attribution; the newly discovered materials show why that assumption cannot stand.

### D. Judicial notice is proper for the public court records.

The Court may take judicial notice of public court records and judicial acts. Fed. R. Evid. 201(b), (d). Defendants request judicial notice of the existence, filing dates, contents, and judicial acts reflected in Exhibits A through U. Defendants ask only that the Court recognize that Defense Distributed, its principal Wilson, and a closely related entity made the statements, filed the pleadings, submitted the declarations, and obtained or opposed the orders attached to this motion. Those facts are independently relevant to the instant claims of causation, damages, and the reliability of Plaintiffs' damages expert.

### E. Plaintiffs' own statements are admissible.

Many of the attached materials have an additional evidentiary basis. Defense Distributed's pleadings and briefs, and Wilson's sworn declarations on Defense Distributed's business, are opposing-party statements under Rule 801(d)(2). They are admissible against Plaintiffs, or at least capable of being presented in admissible form for the purposes of Rule 56 and *Daubert*.

That is especially important for the *VanDerStok* materials. Wilson is Defense Distributed's founder, director, and principal. He submitted sworn declarations describing Defense Distributed's claimed causes of loss.

13

**F. Plaintiffs will suffer no unfair prejudice.**

Plaintiffs cannot claim surprise from their own litigation positions and their principal's sworn declarations. Nor can they claim prejudice from supplementation caused by their own nondisclosure.

Any procedural concern can be handled if the Court simply considers the exhibits with the pending summary-judgment and *Daubert* motions. If the Court deems further briefing necessary, it can order a short supplement limited to the attached materials and a response. No broader reopening of briefing is necessary.

## RELIEF REQUESTED

Defendants respectfully request that the Court enter an order:

1. Granting leave to supplement the summary-judgment and Daubert records with Exhibits A through U;

2. Taking judicial notice of the existence, filing dates, contents, and judicial acts reflected in the attached public court records and orders;

3. Considering Plaintiffs' own pleadings, briefs, and Wilson's declarations as party-opponent statements under Rule 801(d)(2);

4. Permitting Defendants, if the Court deems it necessary, to file a short supplemental Rule 56.1 statement limited to Exhibits A through U; and

5. granting any further relief the Court deems just.

Respectfully submitted,
DATED:  June 17, 2026

14

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Email: Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay.* | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Undersigned counsel conferred with Plaintiffs' counsel regarding the relief requested in this motion. Plaintiffs oppose the requested relief.

*/s/ Matthew Larosiere*
Matthew Larosiere

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 17th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

15