IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DEFENSE DISTRIBUTED and     §
SECOND AMENDMENT     §
FOUNDATION,     §
    §       Case No. 23-849 C
        v.     §
    §
THE UNITED STATES

---

PLAINTIFF'S REPSONSE TO
DEFENDANT'S MOTION TO DISMISS

## Table of Contents

Table of Contents .......................................................................................................................1

Argument ................................................................................................................................ 2

    I.       The Western District of Texas already resolved all but one of the claims. ............ 2

    II.     The Count Five contract claim for monetary damages is meritorious. ...................3

         A.      The 28 U.S.C. § 1500 argument is incorrect and contradictory................. 3

         B.      The collateral attack argument is wrong. .................................................. 6

         C.      The State Department breached by failing to supply the license. ............. 7

         D.      The breach caused damages. ...................................................................... 9

         E.      Impossibility is not an excuse. .................................................................10

Conclusion.............................................................................................................................12

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. file this response to the Defendant's Motion to Dismiss, Doc. 193.

## Argument

### I. The Western District of Texas already resolved all but one of the claims.

The government posits (at 3, 15) and Plaintiffs agree that, with one key exception, the Western District of Texas resolved all of Plaintiffs' claims against the government by dismissing them with the Order of March 15, 2023, Doc. 182. The exception is Plaintiffs' Count Five breach of contract claim for monetary damages, Doc. 189 at 48-51, ¶¶ 170-179[1], which the Western District of Texas did not resolve on the merits and instead transferred to this Court for resolution. *See* Doc. 182 at 15 (Rule 12 motion order) ("the Court will transfer the monetary damages claim to the Court of Federal Claims as the district court with exclusive jurisdiction"); Doc. 183 at 2 (transfer order) ("For the reasons set out in the order on the motion to dismiss, the Court will transfer Plaintiffs' remaining claims for monetary damages to the Court of Federal Claims.").

The Court here need not and should not re-evaluate the claims that were fully addressed and fully resolved by those prior Rule 12 proceedings. Plaintiffs maintain their prior position about those claims' viability and reserve the right to challenge those claims' dismissal on appeal. But those dismissals cannot be appealed without a final decision, *see* 28 U.S.C. § 1291, which will not arrive until this Court disposes of the remaining contract claim. Plaintiffs re-pleaded the dismissed claims in the transfer complaint not to seek further litigation of them, but just to ensure that they remained in the case for appellate purposes.

---

[1] Plaintiffs pleaded this claim as "Count Five" in both the live complaint in this court, *see* Doc. 189 at 48-51, ¶¶ 170-179, and the complaint that was before the Western District of Texas for its Document 182 dismissal/transfer decision, *see* Doc. 117 at 58-60 ¶¶ 216-224.

Thus, as to everything except for Plaintiffs' Count Five breach of contract claim for monetary damages, the motion to dismiss should be denied because dismissal has already occurred.

## II. The Count Five contract claim for monetary damages is meritorious.

With respect to the only claim that needs to be resolved—Plaintiffs' Count Five breach of contract claim for monetary damages, Doc. 189 at 48-51, ¶¶ 170-179—the motion seeks dismissal by asserting lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).

### A. The 28 U.S.C. § 1500 argument is incorrect and contradictory.

The motion first seeks a Rule 12(b)(1) dismissal with 28 U.S.C. § 1500. Doc. 193 at 3-4, 16 Rajiv 17, 21-25. It says that this Court lacks jurisdiction over the Count Five damages claim because "pursuant to 28 U.S.C. § 1500, at the time that the breach of contract claim was deemed filed in this Court, plaintiffs had claims pending in the district court based on the same cause of action"— meaning the rest of the case against the State Department in the Western District of Texas. Doc. 193 at 21-22. *See id.* ("In addition, as relevant here, where a claim is transferred pursuant to 28 U.S.C. § 1631, the claim in this Court is deemed filed as of the date on which it was actually filed in the court from which it was transferred. Because section 1631 deems claims transferred to this Court as having been filed on the day on which they were filed in the transferring court, the Federal Circuit has held that such transferred claims are 'simultaneously' filed with any non-transferred claims filed in the transferring court." (citations omitted)).

If the government's argument is correct, it surely works a serious inequity on Plaintiffs and disserves the ends of justice.  Surely 28 U.S.C. § 1500's scheme for "Pendency of claims in other courts" does not apply where, as here, there has always been just one case all along and the order transferring the case to this court left literally nothing behind in the transferor court to be pending. The statute applies when *two* claims bearing the requisite relationship exist simultaneously in two courts (a district court and the Court of Federal Claims).  But here there have never been *any* claims existing simultaneously in two courts.  Every claim in this case *always* existed in only one court at a time.  So Section 1500's provisions for what to do about separate claims pending in "any other court" should not apply.  Properly read, the statute does not apply here.  But if the government's cited cases hold what they are claimed to hold, the Court must of course oblige.

This would not the first time that Section 1500 (and the odd precedent construing it) operates as an illogical trap for reasonably-proceeding litigants.  What the Federal Circuit explained most recently in *Bailey-Johnson v. United States*, 155 Fed. Cl. 166, 169 (Fed. Cl. 2021), *aff'd*, No. 2021-2351, 2021 WL 7162534 (Fed. Cir. Nov. 23, 2021), is apt:

> Section 1500 has been variously (and correctly) described as: "an anachronism depriving litigants of a fair opportunity to assert their rights," *Lower Brule Sioux Tribe v. United States*, 102 Fed. Cl. 421, 424 n.4 (2011); *see also Keene Corp. v. United States*, 508 U.S. 200, 217, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (discussing same criticism); "outdated and ill-conceived," *Low v. United States*, 90 Fed. Cl. 447, 455 (2009); "an awkward tool that has outlived its original purpose," *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 262 (2008); "inequitable," *Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188, 190 (1989); "unfair and unworkable," *Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225, 226 (2008); "badly drafted," *Keene Corp.*, 508 U.S. at 222, 113 S.Ct. 2035 (Stevens, J., dissenting); and a "trap for the unwary," *d'Abrera v. United States*, 78 Fed. Cl. 51, 56 n.10 (2007); see *Vaizburd v. United States*, 46 Fed. Cl. 309, 310 (2000). This criticism is well-deserved, as the outcome of this case amply demonstrates.

*Id.*  Another inequitable trap is at hand.

Special inequities exist here. For it was the government that sought to have the Count Five damages claim sent from the Western District of Texas to this Court on the theory that this Court *did* have jurisdiction. The government sought transfer by arguing that the Count Five damages claims "may be brought, if at all, in the Court of Federal Claims." Doc. 162 at 20. Even more clearly, the government's transfer argument told the Western District of Texas to "transfer Plaintiffs' claims for money damages related to the alleged breach of the Settlement Agreement to the Court of Federal Claims, *where jurisdiction is proper under the Tucker Act.*" *Id.* Yet now the government takes the opposite jurisdictional position, insisting that 28 U.S.C. § 1500 deprived this Court of subject-matter jurisdiction over the Count Five damages claim all along.

Even if this case's unpredictable procedural posture requires dismissal of the Count Five damages claim for lack of subject-matter jurisdiction, there is still work to be done. And because of the special circumstances, that work should involve an exercise of discretion in Plaintiffs' favor.

Under 28 U.S.C. § 1631, a court that lacks the subject-matter jurisdiction to adjudicate a case "shall, if it is in the interest of justice, transfer such action … to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." If it is decided that the case's remaining claims should be dismissed for lack of subject-matter jurisdiction, the Court should exercise its discretion under 28 U.S.C. § 1631 to transfer the case back to the Western District of Texas and hold the dismissal decision in abeyance until that transfer takes effect. That way the case's appeal can be decided by the circuit that would have jurisdiction over it but for this unnecessary procedural runaround.

**B.** **The collateral attack argument is wrong.**

The next argument seeks a Rule 12(b)(1) jurisdictional dismissal by arguing about a supposed collateral attack. Doc. 193 at 4, 17, 26-27. It says that that "this Court lacks jurisdiction to hear Count 5 because, properly characterized, plaintiffs' breach of contract claim seeks to collaterally challenge the district court's decisions enjoining the Government in *Washington I*." Doc. 193 at 4; *see State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL (W.D. Wash.). The Court should reject this because not such collateral attack is occurring.

*Washington I* was not about whether the State Department should or could be compelled to comply with the Settlement Agreement.[2] *Washington I* was just about whether the State Department had violated the APA *in one particular attempt to comply* with the Settlement Agreement. Its result did *not* mean that the State Department was no longer obliged to comply with the Settlement Agreement. The result meant only that the State Department failed in compliance attempt #1 and needed to try again (re-perform the regulatory modification and license issuance). Accepting *Washington I*'s result in full, what the State Department had to do was give Settlement Agreement compliance another try—this time by giving Defense Distributed and SAF what they are owed in a process that complies with the APA.

---

[2] The *Washington I* judgment applies only to its State Department defendants and its plaintiff states. It does not adjudicate the merits of anything as to Defense Distributed or SAF.

### C.     The State Department breached by failing to supply the license.

To seek a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, the motion first argues about breach.  Doc. 193 at 4, 17, 30.  It says that "plaintiffs fail to identify any contractual obligation in the Settlement Agreement with which State allegedly did not comply." Doc. 193 at 4.  The Court should reject this because the complaint pleads multiple breaches.

The no-breach argument confuses the issue of *whether* it is breaching the Settlement Agreement with the issue of *why* it is breaching the Settlement Agreement. The whether question is easily answered. Defense Distributed and SAF do not possess the temporary modification that the Settlement Agreement requires the State Department to provide. Defense Distributed and SAF do not possess the license that the Settlement Agreement requires the State Department to provide. And Defense Distributed and SAF do not possess the acknowledgements that the Settlement Agreement requires the State Department to provide. Nor by the State Department's view do Defense Distributed and SAF have the final rule that the Settlement Agreement requires the State Department to provide.

Trying to comply is not the same as actually complying.  The Settlement Agreement required the State Department to actually comply and to comply permanently—not just try to comply temporarily.  Yet one feeble compliance attempt is all that occurred, and it ended quickly. Nothing prevented a second attempt at the actual, permanent compliance that the Settlement Agreement requires.  The complaint's breach allegations proceed accordingly as to (1) the key obligations regarding provision of a license, (2) the key obligations regarding regulatory changes, and (3) the key obligations regarding validity acknowledgements.

First, the complaint pleads that the State Department breached the Settlement Agreement provisions requiring *actual* provision of a license. Doc. 189 at 48-49, ¶¶ 172-173. The contract requires the provision of a license, and the State Department is in breach because it is not providing that license. Though it complied with that obligation *temporarily*—it gave Defense Distributed and SAF a license very briefly—the State Department then breached the Settlement Agreement by disavowing the given license, and never reissuing a new one, Doc. 189 at 48-49, ¶¶ 172-173.

Second, the complaint pleads that the State Department breached the Settlement Agreement provisions requiring provision of *actual* regulatory modifications. Doc. 189 at 49-50, ¶¶ 174-175. Here too, though the State Department *tried* to comply in part for a short time, their first compliance attempt failed. No further attempts occurred, leaving the promise to supply *actual* regulatory changes unfulfilled. Doc. 189 at 49-50, ¶¶ 174-175.

Last but not least, the complaint pleads that the State Department breached the Settlement Agreement provisions requiring validity acknowledgements for the license and regulatory modifications. Doc. 189 at 50-51, ¶¶ 177. These required the State Department to acknowledge the license's validity and acknowledge the regulatory changes' validity. *Id*. But the State Department disavowed them all and continues to disavow them, resulting in breach.

Indeed, the Settlement Agreement requires the government to perform its obligations thereunder in a manner "authorized by law (including the Administrative Procedure Act)." Doc. 189-1 at 1. That provision does not help the government. It helps the Plaintiffs. It shows that, when the parties made this contract, they knew full well APA processes would be involved and

knew full well that APA compliance was possible. The express requirement of APA compliance makes the State Department's failure to deliver in attempt #1 that more egregious.[3]

Did the State Department need to appeal *Washington I*, as the government suggests (at 35)? Perhaps. Appealing *Washington I* was the legally correct thing to do and would have been one way of achieving compliance with the Settlement Agreement. But overturning the *Washington I* barrier was not the State Department's only compliance option. They could have achieved compliance by simply issuing a new license and new regulations.

Suppose FedEx contracts to deliver a package and its driver does so. But minutes later FedEx's driver takes the package away, never to return. That's an obvious breach and so is this.

*How* to deliver is up to the government. *Whether* to deliver is not. Breach is established.

### D.     The breach caused damages.

The next attempt at Rule 12(b)(6) dismissal concerns damages. Doc. 193 at 4, 17, 30. The motion says that that the complaint fails to "allege any facts demonstrating that any purported breach of the Settlement Agreement caused them damages." Doc. 193 at 4-5. The Court should reject this because damages are sufficiently pleaded in paragraphs 125-133 and 170-179. *See, e.g.*, Doc. 189 at 48-49, ¶ 172 ("actual damages proximately caused by this wrongdoing in an amount no less than five million dollars").

First, the complaint's damage allegations account for the high value of the speech rights at issue. *See* Doc. 189 at 38, ¶ 126 ("the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by causing Defense Distributed and SAF to refrain from publishing

---

[3] Even if the Court deemed this proviso useful for the government, it would be limited to the Settlement Agreement paragraph that it lies in—the Paragraph 1(a) obligation to supply a new final rule—and not the the Settlement Agreement paragraph about the license.

digital firearms information that Defense Distributed and SAF had a right to publish, by causing Defense Distributed and SAF to refrain from receiving digital firearms information that Defense Distributed and SAF had a right to receive, and by causing Defense Distributed and SAF to refrain from republishing digital firearms information that Defense Distributed had a right to republish"). That past deprivation can be somewhat remedied by the requested award of money damages.

Additionally, the complaint's damage allegations account for the license's high monetary value as a commercial tool—a one-of-a-kind federal legal entitlement to publish highly valuable technical data on the internet. *See* Doc. 189 at 10, ¶ 35 ("Defense Distributed has published, is publishing, and intends to continue publishing digital firearms information to the American public"); Doc. 189 at 4-5, ¶¶ 11 ("SAF members seek to exchange this information because of its technical, scientific, artistic, and political value"). Plenty of valuable technology companies give their product away for free (at least at first). So while Defense Distributed did not charge anything for the publications it supplied in the past, nothing about that temporary state of affairs negates the license's massive overall commercial value in the long run.

### E.     Impossibility is not an excuse.

The final Rule 12(b)(6) argument concerns impossibility of performance. Doc. 193 at 4, 17, 30. The motion says that "any breach would be excused pursuant to the doctrine of impossibility once the district court had enjoined State for violating the APA." Doc. 193 at 4-5. As the argument goes, "any alleged breach of the agreement would be excused as a matter of law because the injunctive relief granted by the district court in *Washington I* made performance 'objectively impossible.'" Doc. 193 at 38.

10

*Washington I* had nothing to do with *prospective* relief.[4]  The plaintiffs there did not claim anything—and the court certainly did not adjudicate anything—about whether or not the State Department could at some point in the future pursue another round of Settlement Agreement compliance efforts to issue the license and change the regulations.  The sole question was whether one particular past attempt at complying with the Settlement Agreement met APA technicalities.  Hence, that case's final judgment issued nothing but retrospective relief—a vacatur of the license and temporary modification that had occurred.  The *Washington I* final judgment yielded no injunction whatsoever, let alone an injunction like the government describes.

A second reason that the impossibility argument fails is fault.  The government concedes that the impossibility excuse applies only when "a party's performance is made impracticable without his fault."  Doc. 193 at 38.  But in this instance, the State Department's failure to comply with the APA in its first compliance try *was the State Department's fault.*

Furthermore, well-established law holds that, to claim this excuse, a party in the State Department's position must engage in a good faith and diligent effort to avoid the court order. *See* generally Restatement (Second) of Contracts § 264; Restatement (First) of Contracts § 458 (1932).  "Clearly, when possible, one must make a diligent effort to dissolve outstanding injunctions to avoid being found at fault." 30 Williston on Contracts § 77:61 (West 4th ed. 2019); *accord* 14 Corbin on Contracts § 76.5 (2001). Under these authorities, the State Department failed to exhibit the requisite good faith and diligence by, among other things, opting not to appeal the preliminary injunction decision to at least the Ninth Circuit.

---

[4] Document 193 in the *Washington I* docket is its final judgment, and there is nothing prospective about it.  It is solely retrospective.  The only relief it supplies is a vacatur of the license and temporary modification.

Additionally, the Court should reject the excuse argument because the parties contracted for the State Department to assume the risk of the injunction they now claim as the excuse. *See* Restatement (Second) of Contracts § 264 (1981); Restatement (First) of Contracts § 458, cmts. a, d (1932); Williston, *supra* § 77:61; Corbin, *supra* § 76.5. "Circumstances surrounding the formation of a contract may indicate the possibility of potential injunctive relief and, if so recognized, its risk may be assumed by the obligor." Williston, *supra* § 77:61. That rule fits this case neatly because the Settlement Agreement makes the State Department bear the risks of adverse litigation.

## Conclusion

The motion should be denied. If it is decided that the case's remaining claims should be dismissed for lack of subject-matter jurisdiction, the Court should exercise its discretion under 28 U.S.C. § 1631 to transfer the case back to the Western District of Texas and hold the dismissal decision in abeyance until that transfer takes effect.

Respectfully submitted,

Chad Flores
cf@chadflores.law
State Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Counsel for Plaintiffs Defense Distributed and
Second Amendment Foundation, Inc.