UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

     *Plaintiffs,*

v.

JOHN ELIK, et al.,

     *Defendants.*

_____/

## DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT JASON M. TYRA

Plaintiffs' opposition answers a narrower motion than Defendants filed, and the unaddressed grounds should be treated as conceded. Defendants moved to exclude Tyra because his opinion does not fit Plaintiffs' liability theory: he analyzed the alleged market effect of a publicly accessible meme while disclaiming any analysis of who was responsible for it or whether any sales were diverted by it. Doc. 144 at 6–8. Plaintiffs ignored this.

Plaintiffs likewise do not meaningfully answer the Ghost Gunner problem, even though approximately 95% of Tyra's claimed damages come from a product the meme does not mention, supported only by an untested "symbiotic relationship" and data showing a May 2023 peak rather than a contemporaneous collapse. *Id*. at 8–11.

Nor do Plaintiffs confront the fact that Tyra attributed damages to Defendants even though Plaintiffs themselves hosted the same allegedly harmful meme on their own website without commentary or refutation, which Tyra admitted would have an acute effect on customer purchase decisions. *Id*. at 11–13.

Plaintiffs also leave unrebutted the "sales pop" contradiction, the lack of any reliable methodology for consumer-behavior, market-effect, diversion, or future-harm opinions, and Defendants' fallback request that Tyra at least be limited. *Id*. at 16–20.

Local Rule 7.1(c)(1) requires an opposing memorandum of law and provides that failure to oppose may be deemed sufficient cause to grant the motion by default. S.D. Fla. L.R. 7.1(c)(1). Plaintiffs filed a response, but they did not oppose these discrete grounds for exclusion or limitation, and as proponents of Tyra's testimony they bear the burden under Rule 702. Fed. R. Evid. 702.

Tyra did not, in any reliable or specialized manner, determine that Defendants caused Plaintiffs $2.6 million in lost sales. He calculated a before-and-after revenue delta from client-provided spreadsheets, gave every other cause zero dollars, and assumed the conclusion Plaintiffs needed. Plaintiffs call that a "well-established method." It is not.

Plaintiffs now submit an unsigned declaration saying Tyra's opinions are based on "professional experience" serving Second Amendment and "GunCAD" clients—whatever that means. Doc. 156-1 ¶¶ 3, 5–6. Plaintiffs then argue that his causation opinions are "reliably supported by his education and experience." Doc. 156 at 4. This is an improper attempt to bolster a defective expert after Defendants exposed the gap in Tyra's report and after Tyra disclaimed the very causation analysis Plaintiffs now attribute to him. The Court should strike or disregard the declaration and exclude Tyra's causation and damages opinions.

## I.   TYRA'S DECLARATION SHOULD BE STRICKEN OR DISREGARDED.

Tyra's report did not disclose an experience-based methodology for attributing Plaintiffs' alleged sales decline to Defendants. The report's relevant language is much narrower than the new declaration asserts. It says that, "[i]n my professional experience," Plaintiffs' customers tend to be "younger, well-educated, comparatively affluent, tech-oriented men," who are "often Libertarians," "tinkerers," and "value discretion and privacy." Doc. 144-2 at 8. It then states, without any intervening analysis, that "[i]t is this fixation that Defendants targeted with the 'Fedcad' meme and upon which the meme continues to have a pernicious effect." *Id*. The report also

says the meme drove consumers "away from Plaintiffs' website to Defendants' website." *Id.* at 7.

At deposition, when asked about the report's claim that consumers were driven to a "competing website," Tyra identified "the Gatalog," but then said that conclusion was not "really an integral part of the report" and that "damages are supposed to be tied to the meme, not to defendant's specific conduct." Doc. 144-1 at 64:11–65:7. When pressed, he explained: "I was hired to estimate the economic damages associated with the meme. I was not hired to assess the economic impact derived by defendants with respect to the meme." *Id.* at 66:3–8. He admitted: "I have no evidence of economic gain." *Id.* at 67:2–3. Then he conceded the core point:

> Q. Do you see that you made this claim in your report: You claim "Defendants conduct inflicted economic harm on plaintiffs." Is that correct?
>
> A. Yes.
>
> Q. I am asking you what materials you reviewed to come to that conclusion.
>
> A. **None**. I did not review any material regarding that particular statement.
>
> Q. You made it up?
>
> A. It is my opinion, so **yeah, I made it up**.

*Id.* at 67:9–15 (emphasis added). He further explicitly disclaimed that his "report does not contain and [his] testimony will not contain **any factual allegations related to the conduct by any particular defendant**." *Id.* at 24:5-8. The only causation Tyra identified "is implied by the correlation," but "if you are asking if [Tyra has] any proof that A led to B, [he] ha[s] no proof[.]" *Id.* at 25:10-13.

Tyra also acknowledged that regulations, litigation, and market factors can affect Plaintiffs' sales; admitted he did not calculate the dollar impact of any of those factors; and agreed he attributed "100 percent" of the purported lost sales to the meme. *Id.* at 67:16–68:8. That testimony cannot be reconciled with Plaintiffs' new portrayal of Tyra as an experience-based causation expert who reliably attributed Plaintiffs' losses to Defendants.

Rule 26 required Plaintiffs to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them," together with "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The party who fails to disclose "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial" unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

The Eleventh Circuit's recent decision in *Riley v. Tesla, Inc.*, No. 22-12515, slip op. at 13–16 (11th Cir. Mar. 21, 2025), applies directly. *Riley* held that a party may not use a supplemental affidavit "to merely bolster a defective or problematic expert . . . report." *Id.* at 13–14 (quoting *Guevara*, 920 F.3d at 719). The expert in *Riley* tried to respond to *Daubert* criticisms by explaining "for the first time" a methodology and level of certainty missing from the original report. *Id.* at 14–15. The Eleventh Circuit affirmed striking the affidavit because the opinions were "new and sought to bolster the defects and problems identified" in the motion to exclude. *Id.* at 14.

That is exactly what Plaintiffs are doing. Defendants' motion exposed that Tyra assumed causation, disclaimed defendant-specific attribution, and failed to

4

measure obvious alternative causes. Plaintiffs responded with a declaration purporting to supply a new experiential basis for causation.

Plaintiffs' footnote cites two cases as though they authorize this maneuver. Doc. 156 at 4 n.3. They do not. *RLI* allowed a supplemental report only because the expert's "conclusions, theories, and methodology" did not change. *RLI Ins. Co. v. OutsideIn Architecture, LLC*, 692 F. Supp. 3d 1077, 1094 (M.D. Fla. 2023). The foreign *Pritchard* case relied on "unique circumstances," an expedited expert schedule, contemplated live *Daubert* testimony, and a declaration submitted as rebuttal to defense experts. *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 286 (W.D. Pa. 2009). Neither case permits a party to use a post-deposition declaration to supply a methodology missing from the report and contradicted by the expert's testimony.

The declaration also fails for a separate reason. It bears only "/s/ Jason M. Tyra." Doc. 156-1 at 3. Tyra is not a filing attorney whose CM/ECF credentials could constitute an electronic signature. Plaintiffs do not possess a properly executed declaration. § 1746 supplies a mechanism for unsworn declarations; it does not make an unretained "/s/" from a non-admitted declarant into competent evidence.

## II.   *FLORIDA VIRTUAL* FORECLOSES TYRA'S ASSUMPTION-BASED DAMAGES MODEL.

*Florida Virtual School v. K12, Inc.*, No. 24-10449, slip op. at 15–16 (11th Cir. Jan. 15, 2026), is fatal to Plaintiffs' position. There, a qualified damages expert was still excluded. The *Florida Virtual* expert, like Tyra, assumed the missing attribution fact: that every relevant customer would have gone to the plaintiff absent the defendant's conduct. In affirming, the Eleventh Circuit explained that "to reach his

total damage calculation," the expert "assumed that every student who attended Florida Online School would have attended Florida Virtual School." *Id.* at 15. Because the calculation "rested on an untenable assumption," it was "unreliable, and therefore inadmissible." *Id.*

Tyra's opinion has the same defect. He calculated a revenue delta. But to reach his total damages number, he assumed that the FEDCAD meme caused the alleged decline; that Defendants are responsible for the entire effect of the meme; that the meme caused Ghost Gunner losses even though it does not mention Ghost Gunner; that no other factor caused any portion of the decline; and that every dollar in the delta is recoverable from Defendants, despite Plaintiffs posting the same meme.

Plaintiffs' opposition does not identify any method Tyra used to test those assumptions. It says he is educated, he has clients in the Second Amendment community, and he performed a before-and-after comparison. Doc. 156 at 3–5. That is fatally insufficient under Rule 702 and *Florida Virtual*. A before-and-after comparison may compute a difference. It does not prove the cause of the difference.

This is not a jury-weight issue. Rule 702 requires Plaintiffs, as proponents of the testimony, to show it is more likely than not that Tyra's testimony is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts. Fed. R. Evid. 702. Plaintiffs do not carry that burden by invoking cross-examination. The "liberal standard" does not admit an expert opinion connected to the facts only by assumption. *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1296–97 (11th Cir. 2022).

### III.   PLAINTIFFS MISREPRESENT THEIR BEFORE-AND-AFTER CASES.

Plaintiffs' reliance on before-and-after lost-profits cases misses the issue. Defendants do not dispute that before-and-after comparisons can sometimes help measure lost profits. Defendants challenge Tyra's use of a before-and-after delta to assume causation and ignore obvious alternative causes.

Plaintiffs cite *Action Nissan* as if it blesses Tyra's analysis. It does not. *Action Nissan* was a post-verdict Rule 50(b) sufficiency ruling after a jury trial, not a *Daubert* ruling. *Action Nissan, Inc. v. Hyundai Motor Am. Corp.*, No. 6:21-cv-2152-WWB-UAM, 2025 WL 4031607, at *1–3 (M.D. Fla. Aug. 18, 2025). The court upheld the verdict only after identifying independent causation evidence: Hyundai considered dealer litigation in allocation decisions; a Hyundai employee testified Universal's allocations were "zeroed out" because of ongoing litigation; demand was high; another Hyundai employee testified Universal likely would have sold additional vehicles; and Hyundai's own expert testified Universal's regional sales share fell during the relevant period. *Id.* at *2. The court specifically noted that Universal's expert "did, in fact, address other potential causes," including allocation turndowns. *Id.* at *3.

Tyra has neither feature. He explicitly disclaimed any causation evidence tying the claimed delta to Defendants and did not meaningfully address other causes. He acknowledged alternative causes could affect sales, calculated none of their impacts, and assigned all claimed lost sales to the meme. Doc. 144-1 at 67:16–68:8.

The same is true of Plaintiffs' generalized citations to before-and-after cases. A before-and-after method presupposes a reliable causal connection to the event being

measured. It does not supply that causal connection. Plaintiffs must reliably connect their claimed losses to Defendants' actionable conduct. Tyra did not do that.

## IV. TYRA'S OPINION STILL DOES NOT FIT PLAINTIFFS' EVOLVING THEORY.

Plaintiffs' opposition and summary-judgment materials now describe a sweeping theory involving heretofore undisclosed parties, including CTRLPew, and assert that Tyra calculated joint and several liability. But Tyra did not model that theory at all. He did not analyze CTRLPew. He did not analyze The Gatalog as a website. He did not analyze MAF Corp. sales. He did not analyze referral codes. He did not tie any customer cancellation to any Defendant. And he did not test whether any customer bought from any Defendant-affiliated business instead.

At deposition, Tyra recognized that the meme does not mention any of the varied new targets Plaintiffs ascribe to it. Doc. 144-1 at 61:19–62:19. When asked where he got the conclusion that Defendants operated a competing website, Tyra retreated, explaining that it was not "really an integral part of the report" and that "damages are supposed to be tied to the meme, not to defendant's specific conduct." *Id*. at 64:11–65:7. When asked whether he was hired to assess the economic impact "derived by defendants," he said he was not. *Id*. at 66:3–8.

Plaintiffs' new "joint and several" reframing is especially improper. Tyra did not offer a joint-and-several causation opinion in any reliable sense. He did not apportion because he never analyzed causation at any level. Plaintiffs are trying to convert a non-analysis into something completely beyond the record.

8

The Ghost Gunner component is even worse. Ghost Gunner supplies approximately 95% of Tyra's claimed damages. Doc. 144-1 at 69:19–70:5; Doc. 144-2 at 13–14. But the meme does not mention Ghost Gunner. Doc. 144-1 at 70:3–5. Tyra attempted to bridge that gap with a "symbiotic relationship" between DEFCAD and Ghost Gunner, but he admitted this understanding came from Plaintiffs. *Id*. at 70:12 71:5, 90:18–25, 93:8–24. Parroting a client-provided narrative is not admissible expert testimony.

Nor does the timing support Tyra's conclusion. Tyra's own report says May 2023—the month Plaintiffs identify as the meme's first publication—was the highest-grossing month in the Defense Distributed dataset, at $254,371. Doc. 144-2 at 12 n.35. Tyra entertained the possibility that the meme "may also have generated a pop in sales to customers who first became aware of DEFCAD" through social media, yet his final calculation has no method for separating any alleged negative effect from any alleged "pop." Doc. 144-1 at 24:9–28:8; 183:16–185:11. A method that excludes the best data point against causation, ignores its own "sales pop" caveat, and then assigns every later dollar of decline to the meme is not reliable.

## V.   PLAINTIFFS' SOURCE-DATA AND BENCH-TRIAL ARGUMENTS DO NOT SAVE TYRA.

Plaintiffs also argue that Tyra did not need to independently verify Plaintiffs' financial data. That again misstates the problem. The problem is that Tyra's claimed damages rest entirely on client-provided litigation spreadsheets and assumed causation. He did not verify that the numbers were actual amounts attributable to the business segments. Doc. 144-1 at 29:6–22, 53:16–23. He testified he was Plaintiffs'

tax preparer, not bookkeeper; that the information came from Wilson; and that he did not "attempt to weigh in on the accuracy or completeness." *Id.* at 152:18–156:3.

Rule 702 requires sufficient facts, a reliable method, and reliable application. Here, the data is the entire foundation for the claimed loss, and Tyra disclaims any opinion that it is accurate or complete. "Adopting the unsupported beliefs of a business owner who has a financial motive to inflate recoverable damages is not a reliable methodology to project future lost profits." *MasForce Eur., BVBA v. MEC3 Co.*, No. 8:11-cv-1814-T-24AEP, 2013 WL 12156469, at *6 (M.D. Fla. Dec. 4, 2013).

Plaintiffs suggest the Court simply admit Tyra "at the front end" and sort it out later because this is a bench trial. The Court's gatekeeping role may be flexible, but it is not optional. The factfinder's identity does not make unreliable expert testimony reliable.

## CONCLUSION

Plaintiffs' opposition defends a reconstructed Tyra whose missing basis appears only after Defendants moved to exclude him. The Court should strike or disregard Doc. 156-1 and grant Defendants' *Daubert* motion. Tyra's causation and damages opinions should be excluded. Alternatively, Tyra should be limited to arithmetic summaries of client-provided data.

Respectfully submitted,
DATED:  June 18, 2026

| /s/ Gary C. De Pury | /s/Matthew Larosiere | /s/ Zachary Z. Zermay |
|---|---|---|
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 18th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Matthew Larosiere

Matthew Larosiere, Esq.
Fla. Bar № 1005581

11