UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

*Plaintiffs*,

v.

JOHN ELIK, et al.,

*Defendants.*

_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs' amended response admits the facts that defeat their causation theory. DEFCAD itself hosted the FEDCAD meme; and their sole damages model analyzed only the meme's public existence, not where it appeared or who caused any loss. Doc. 165 ¶¶ 29–33, 36, 41-55. Those admissions foreclose proximate cause under any claim. Plaintiffs also do not meaningfully answer Defendants' § 770 argument or their damages-limitation arguments. The Court should deem the admitted and inadequately controverted facts established, Fed. R. Civ. P. 56(e)(2); S.D. Fla. L.R. 56.1, treat the unaddressed arguments as abandoned, *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and enter summary judgment.

Plaintiffs still cannot identify a specific customer, transaction, or damages amount caused by any Defendant's actionable statement. *See* Defs.' SMF ¶¶ 10–11, 25–28, 57–58, 61, 66. Instead, they try to survive summary judgment through late nonlawyer "/s/" declarations, vague allusions to customer surveys, and allegations from collateral litigation. But Rule 56 requires admissible evidence—not conclusory declarations, hearsay, speculation, or another litigant's allegations. Fed. R. Civ. P. 56(c)(2), (c)(4); 28 U.S.C. § 1746; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Macuba v. DeBoer*, 193 F.3d 1316, 1322–25 (11th Cir. 1999).

"[A] conclusory affidavit can't create a genuine issue. It's not enough to replace conclusory allegations of the complaint with conclusory allegations of an affidavit." *TocMail Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1263–64 (11th Cir. 2023). They cannot rely on hearsay cancellation comments to prove customer causation. *Macuba*, 193 F.3d at 1322–25. They cannot use Tyra's assumption to establish causation he did not

1

analyze. *See* Defs.' SMF ¶¶ 41–46, 52–58; Fed. R. Evid. 702(b)–(d). And they cannot withhold the very communications with "JG" Defendants sought in discovery, (Doc. 134 at 3) then rely on Wilson's or Walliman's post-discovery characterization of those same undisclosed communications to prove the website was not hacked. Doc. 159 ¶ 3, Doc. 165 ¶ 73. Summary judgment should be entered for Defendants.

## I. PLAINTIFFS' AMENDED FACT RESPONSE AND LATE DECLARATIONS DO NOT CREATE A TRIABLE RECORD.

Plaintiffs were given a second chance to comply with Local Rule 56.1 after the Court struck their original response for lack of specific, pinpoint citations. Doc. 163. For core causation facts, Plaintiffs cite entire exhibits and reports—especially Doc. 147-6 and Doc. 150-1—without tying any page, line, survey response, or expert opinion to the particular fact supposedly disputed. See Doc. 165 ¶¶ 10, 25–26, 57  58, 61, 66. Local Rule 56.1 requires more. Those facts in Defendants' SMF should be deemed admitted under Local Rule 56.1 and Rule 56(e)(2).

Plaintiffs' declarations also fail as Rule 56 material. § 1746 requires an unsworn declaration to be subscribed as true under penalty of perjury, and Rule 56(c)(4) requires personal knowledge, admissible facts, and competence. *See Roy v. Ivy*, 53 F.4th 1338, 1346–50 (11th Cir. 2022); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). The Goldhaber, Walliman, and Wilson declarations were not properly signed or subscribed by the nonlawyer declarants. Counsel confirmed that the filed PDFs are the originals and that no other signed versions exist. Doc. 170-3.

Even if the Court reaches their contents, the declarations do not supply evidence. Goldhaber speaks in conclusory terms about an undefined "GunCAD

2

community." Wilson speculates that Goldhaber's hypothetical public support would have generated "legitimacy" and "goodwill." Walliman asserts the broad negative that DEFCAD was never hacked or dumped without submitting any forensic proof or underlying communications necessary to test that claim. Conclusory affidavits lack probative value. *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020).

The JG issue is especially improper. Defendants moved to compel communications with "JG," explaining that Wilson testified he communicated with JG by Signal concerning the FEDCAD meme and whether JG had hacked or leaked anything, that JG responded, but that no Signal messages were produced. Doc. 134 at 3. The Court denied compulsion only after noting that it had already ordered a thorough search, that "serious sanctions" would be considered if responsive documents existed and were withheld. Doc. 143 at 2. Plaintiffs cannot now use curated summaries of those non-produced communications to create a dispute over falsity. Doc. 165 ¶ 73.

## II.   PLAINTIFFS STILL HAVE NO DEFENDANT-SPECIFIC CAUSATION OR DAMAGES EVIDENCE.

Plaintiffs' theory aggregates everything: all Defendants, all posts, all Plaintiffs, all exit responses, and all alleged damages. The law requires proof that actionable conduct caused injury. Plaintiffs assert claims through three corporate Plaintiffs against seven individual Defendants on three causes of action. Yet their proof does not connect any Defendant's actionable conduct to any Plaintiff's loss. Tyra did not allocate damages by Defendant or by Plaintiff. Defs.' SMF ¶¶ 55, 57–58. The exit surveys do not identify the speaker, statement, or loss. Defs.' SMF ¶¶ 61, 66.

3

Goldhaber does not identify a statement by any Defendant that caused a lost transaction. Doc. 170 ¶¶ 108–09. Rule 56 does not permit Plaintiffs to reach trial by proving only that someone, somewhere—maybe even themselves—said something negative about them and that revenue later declined. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181–82 (11th Cir. 2005) (causation cannot rest on speculation).

The exit surveys—which Plaintiffs conspicuously point to without quoting—do not provide that proof. Plaintiffs say "at least 20 customers" identified "FEDCAD" or data-security concerns as reasons for cancellation. Opp. at 2, 6. But the survey snippets identify no statement by any Defendant, and no causal path from an actionable statement to a compensable injury. The vast majority identify unrelated reasons such as cost, lack of use, billing issues, access issues, or personal circumstances. Defs.' SMF ¶ 59. Wilson also testified he had no reason to think several customers left because of the FEDCAD meme. Defs.' SMF ¶ 60. And "I don't want to support FEDCAD"—the source of 16 of 17 instances of the term in the surveys—was a fixed option Plaintiffs themselves inserted. Doc. 170 ¶ 111. Notably, twenty-eight—nearly double—identify being double charged or billing issues as the reason for their departure. (Doc. 147-6 at 2, 4-8, 10-15, 19, 20, 22).

Plaintiffs' cases do not avoid this. *Shamblin v. Obama for America*, No. 8:13-cv-2428, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015), addressed class-certification and expert issues in a TCPA case. *Debra P. v. Turlington*, 730 F.2d 1405 (11th Cir. 1984), admitted a formal educational study only subject to safeguards and supportable methodology. Plaintiffs' survey snippets are not comparable.

Tyra's opinion does not fill the gap. He did not determine *anything* about the meme, whether any customer saw it, or whether any Defendant caused any loss. Defs.' SMF ¶¶ 41–46, 54–55. He attributed 100% of the downward trend to the meme without a causation methodology, and he calculated no damages attributable to any Defendant. Defs.' SMF ¶¶ 52–58. *Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) does not save Plaintiffs. *Maiz* says other contributing causes do not absolve a defendant if the defendant's conduct was a substantial factor. Plaintiffs lack the evidence that Defendants' conduct was a substantial factor. Tyra's assumption is not such evidence.

Goldhaber is no answer either. Plaintiffs identify him as a "prolific" designer who supposedly stopped uploading in 2023. Opp. at 3, 5. They do not identify what he uploaded, what "uploading" did economically, what was lost, or how any Defendant caused it. The public materials authenticated by Lettman show that Goldhaber is associated with the "unseenkiller" persona, and DEFCAD continued to host, showcase, and advertise works by Goldhaber/"unseenkiller" after 2023, and continue to today. Docs. 170-1, 170-2. These same public materials show that Goldhaber was aware of DEFCAD continuing to host, showcase, and advertise his works. Plaintiffs have not shown that they lost anything compensable with this conclusory, noncompliant declaration.

### III.   COUNT I STILL FAILS.

Plaintiffs invoke the order denying dismissal, but that order tested allegations. Summary judgment tests evidence. Plaintiffs must show predicate racketeering, agreement, proximate cause, and injury. They instead show conclusory declarations.

They have not shown wire fraud. Plaintiffs cite *Hasson*, *Svete*, and *Simon* for general wire-fraud propositions. Opp. at 7–9. But those were criminal fraud cases involving schemes to obtain money or property: *Hasson* involved a jewelry-store fraud; *Svete* involved viatical-settlement fraud against investors; *Simon* involved boiler-room sales of oil and gas leases. *United States v. Hasson*, 333 F.3d 1264 (11th Cir. 2003); *United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009) (en banc); *United States v. Simon*, 839 F.2d 1461 (11th Cir. 1988). Plaintiffs allege a picture—one Plaintiff's themselves posted and linked their entire customer list to—was posted online. That is not a scheme to obtain money or property.

Nor have Plaintiffs shown RICO proximate cause. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), involved a tax-lien auction where fraudulent bids directly deprived competitors of specific liens. Plaintiffs identify no comparable direct allocation mechanism. *Bridge* confirms that the injury must be the direct result of the predicate fraud. Plaintiffs have no admissible proof that a specific customer saw a specific Defendant's actionable statement and made a purchasing or cancellation decision because of it.

Plaintiffs' alleged injury also depends on independent decisions by unidentified third-party customers, who may have seen any number of statements by Defendants, Plaintiffs, nonparties, or DEFCAD's own website; and may have cancelled for unrelated reasons. That causal chain is too attenuated to support civil RICO. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10–12 (2010) (rejecting RICO causation where injury depended on third-party actions); *Anza v. Ideal Steel Supply*

6

*Corp.*, 547 U.S. 451, 458–61 (2006) (RICO proximate cause requires a direct relation between injury and predicate conduct).

The conspiracy theory also fails. *Salinas v. United States*, 522 U.S. 52 (1997), does not eliminate the need to prove agreement to a criminal RICO objective. *Allstate Insurance Co. v. Palterovich*, 653 F. Supp. 2d 1306 (S.D. Fla. 2009), involved default judgment on staged-accident and insurance fraud through a sham-clinic. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994), involved alleged pension fraud complete with bribery. All of the cases Plaintiffs cite have something in common: an unambiguous scheme to swindle money or property. Plaintiffs here, by contrast, cite that Defendants are friends as a material fact while admitting they have no evidence any Defendant obtained money or property destined for a Plaintiff. (Doc. 165 ¶¶65, 102). That Plaintiffs are continuing to press this cause is ludicrous.

## IV.    COUNT II STILL FAILS.

Plaintiffs respond that the Lanham Act does not require direct competition. Opp. at 12 13. That does not answer Defendants' motion. The issue is not merely whether Plaintiffs and Defendants are direct competitors (they are not); it is whether Plaintiffs have evidence of commercial advertising or promotion, material deception, proximate causation, and defendant-specific injury.

Plaintiffs' proffer of competition is incomprehensible. They claim "MAF Corp. and **Defense Distributed** are competitors because they sell some of the same parts and accessories for building 3D-printed guns." Rather than citing any record material of what MAF or Defense Distributed actually sells, they cite Goldhaber's declaration, which *ipse dixit* asserts that "MAF Corp. and **DEFCAD** are competitors" for that

reason, and Walliman's declaration, who recounts the contents of the FEDCAD meme and says nothing about competition at all. (Doc. 165 ¶ 91) (citing Docs. 157 at ¶ 10 and 158 at ¶5) (emphasis added).

Plaintiffs again leave context from their cases. *SouthState Bank, N.A. v. Qoins Technologies, Inc.*, 720 F. Supp. 3d 1324 (N.D. Ga. 2024), and *Wyndham Vacation Ownership, Inc. v. Miller*, No. 6:19-cv-817, 2019 WL 5394074 (M.D. Fla. Oct. 11, 2019), were pleading-stage cases involving statements made to customers in commercial settings. They do not turn online criticism into commercial advertising.

*Lexmark* still requires Plaintiffs to show that their injuries were proximately caused by the alleged false advertising, meaning injuries flowing directly from deception wrought by the defendant's advertising. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–34 (2014). Plaintiffs' proffer does not show that. It shows, at most, temporal decline, generalized reputational complaints, and anonymous cancellations that do not identify any Defendant's advertisement.

In *Tobinick v. Novella,* The Eleventh Circuit affirmed summary judgment because online criticism of a medical practice was not commercial speech under the Lanham Act even though the speaker and related entities had similar economic interests. 848 F.3d 935, 950–52 (11th Cir. 2017). Plaintiffs' contrary cases involved commercial settings absent here. *Suntree Technologies* involved business communications in a direct commercial dispute; *Platinum Properties* involved the use of marks, websites, and business-diversion machinery; *Osmose* involved product-

safety press releases between direct competitors in the illustrious wood-preserving market. None makes the FEDCAD meme an advertisement by any Defendant.

The California order Plaintiffs cite is not evidence either. It continued a hearing on motions to quash for lack of personal jurisdiction. The cited section, titled "The People's Allegations." Doc. 159-1 at 1–4, were not findings. *Bryant*, 187 F.3d at 1278–81. The same order recites that TheGatalog.com "does not host files for download," "generates no revenue," and "is not monetized," and that Gatalog Foundation "never became operational." Doc. 159-1 at 5–6.

Plaintiffs also have no proof of material deception or injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002), confirms that falsity is not enough; materiality and injury must be shown. Plaintiffs cite *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011), and *Sandoz Inc. v. Amgen Inc.*, No. 2:22-cv-05326, 2023 WL 4681569 (C.D. Cal. June 29, 2023), but those foreign cases involved developed consumer-diversion records, not a picture posted online which the complainant admitted to amplifying on their own platform.

## V.   COUNT III STILL FAILS

Florida tortious interference requires an identifiable business relationship or expectancy, knowledge, intentional and unjustified interference, causation, and damages. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). A relationship with the community at large is not enough. *Id.*

Plaintiffs cite *Vintage Racing Motors, Inc. v. Morris*, No. 05-14190-CIV, 2006 WL 8433972 (S.D. Fla. Oct. 13, 2006), which involved a concrete transaction for an automobile collection, and evidence the defendant knew of the pending deal. *Scussel*

*v. Balter*, 386 So. 2d 1227 (Fla. 3d DCA 1980), involved an understanding that would have been completed absent interference. Plaintiffs identify no comparable relationship. They point to a picture. A picture they themselves posted online.

Goldhaber does not cure the defect. Plaintiffs identify no contract, obligation, payment, revenue, loss, or damage calculation tied to him. The authenticated public DEFCAD materials also show continued publication and promotion of works associated with Goldhaber/"unseenkiller" after 2023. Docs. 170-1, 170-2. *Mulvey v. Stephens*, 250 So. 3d 106 (Fla. 4th DCA 2018), and *Ifergane v. Fratellini*, No. 19-21123, 2020 WL 248969 (S.D. Fla. Jan. 16, 2020), confirm that speculation does not substitute for evidence of tortious conduct, causation, and damages.

## VI.    INJUNCTIVE RELIEF DOES NOT AVOID SUMMARY JUDGMENT.

Plaintiffs argue Defendants did not separately address injunctive relief. Opp. at 3, 15. But an injunction is a remedy, not an independent claim. Without a viable RICO, Lanham Act, or tortious-interference claim, there is nothing to enjoin. Plaintiffs' request also rests on the same defective record: late "/s/" declarations, hearsay exit snippets, Tyra's unsupported causation assumption, and generalized rhetoric about a "campaign." That cannot carry summary judgment.

## CONCLUSION

Defendants respectfully request that the Court grant summary judgment for Defendants on all claims.

Respectfully submitted,
DATED:  June 18, 2026

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 18th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

11