UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

        *Plaintiffs,*

v.

JOHN ELIK, et al.,

        *Defendants.*

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO
SUPPLEMENT THE SUMMARY-JUDGMENT AND *DAUBERT* RECORDS
<u>AND INCORPORATED REQUEST FOR JUDICIAL NOTICE</u>**

Now that the materials Defendants cite have been found, Plaintiffs do not contend the materials are irrelevant, instead they fault Defendants for not distrusting Plaintiffs' disclosures enough to find them sooner. Doc. 174 at 1–2, 4–5. This attempt to turn Plaintiffs' incomplete proffer into Defendants' waiver should not be rewarded.

Plaintiffs oppose supplementation by moving goalposts. They ask the Court to ignore the obvious issues by suggesting that, because some counsel were generally aware of appellate proceedings, that must mean they knew of district-court filings in those cases attributing the same damages they assert here to other causes. Defendants do not deny that some counsel knew, in passing, of public reporting about *VanDerStok*'s appellate proceedings and subsequent loss in the Supreme Court. But those appellate proceedings addressed legal questions concerning ATF's authority under the Gun Control Act. They did not address Plaintiffs' lost sales, revenue decline, business disruption, or damages causation. General awareness of appellate decisions gave Defendants no reason to comb through collateral district-court dockets for materials Plaintiffs had not disclosed here.

Plaintiffs disclosed a damages model that attributes every dollar Plaintiffs didn't make after May of 2023—despite a longstanding downward trend—to Defendants because of a picture on the internet. They answered alternative-causation discovery by pointing to Tyra, exit surveys, Collier and Goldhaber, and timing. They did not disclose that Plaintiffs, Cody Wilson, or related entities were making district-court filings elsewhere that attributed overlapping business damages to other causes.

1

## I.   PLAINTIFFS' ARGUMENT RESTS ON A FALSE PREMISE.

Plaintiffs' lead argument is that Defendants and counsel "have known about, and had access to, the supplemental evidence for years." Doc. 174 at 1. The evidence Plaintiffs cite does not support that claim. Rather, it cites a discussion regarding a different part of the meme. At most, Plaintiffs show that some counsel knew generally of litigation involving Defense Distributed, including *VanDerStok*, at a general level. That does not mean they knew that Plaintiffs had made district-court business-damages representations that bear directly on the causation theory advanced here.

De Pury had no specific knowledge of the other cases before the summary-judgment and *Daubert* briefing. De Pury Decl. Ex. A. Zermay and Larosiere knew of certain cases only in passing, and only with respect to public reporting and discussion of appellate decisions. Zermay Decl. Ex. C; Larosiere Decl. Ex. B. None of the attorneys knew that Plaintiffs had made district-court filings attributing overlapping business damages to causes other than Defendants. *Id.*

The Fifth Circuit's *VanDerStok* decision addressed whether ATF exceeded its statutory authority, not whether Plaintiffs had suffered lost sales or business damages. *VanDerStok v. Garland*, 86 F.4th 179, 183–91, 195 (5th Cir. 2023). Its few references to sales concern the Gun Control Act's regulation of firearm sales, not Plaintiffs' lost sales. *Id.* at 184–86. The Supreme Court's decision likewise addressed whether the Gun Control Act reaches weapon-parts kits and partially complete frames and receivers. *Bondi v. VanDerStok*, 145 S. Ct. 857, 861–64, 875–76 (2025). It did not discuss Plaintiffs' lost profits or business-damages theory. *Id.* General awareness of those appellate decisions therefore did not put Defendants on notice

2

that Plaintiffs had made district-court business-damages representations Plaintiffs do not dispute are relevant.

Plaintiffs therefore ask the Court to impose a rule of hindsight: Because Defendants knew appellate litigation existed, Plaintiffs say Defendants should be charged with knowledge of every damages statement buried in the district-court records of those cases. That is silly. The relevant materials were Plaintiffs' district-court filings evincing damage allegations irreconcilable with the damages model here.

Doc. 166 accurately describes how those materials were discovered. Defendants learned, after the summary-judgment and *Daubert* briefing, that Plaintiffs' collateral district-court filings contained undisclosed damages and causation positions. That discovery led Defendants to search related dockets and assemble the supplemental record. Doc. 166 at 1–3, 10. Defendants then promptly sought leave to supplement.

## II.   PLAINTIFFS DISCLOSED AN INCOMPLETE BUSINESS-DAMAGES RECORD.

Plaintiffs were asked to explain how they determined that claimed injuries were caused by Defendants rather than other causes. Doc. 174 at 5. Plaintiffs answered by pointing vaguely to Tyra, the exit surveys, timing, and Defendants. *Id*.

Plaintiffs now say Defendants should have moved to compel a better response. But Defendants had no reason to move to compel undisclosed materials they did not know existed. Plaintiffs' response did not say: "We have also attributed overlapping business damages to ATF enforcement, government censorship, other litigation,

3

California regulatory pressure, and product-distribution problems in other courts." It directed Defendants to the narrow evidentiary universe Plaintiffs chose to disclose.

Rule 26 does not permit that. The claimant must disclose a computation and the basis for it. Fed. R. Civ. P. 26(a)(1)(A)(iii). A party **must** also supplement disclosures and discovery responses that are materially incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). The Eleventh Circuit has repeatedly enforced those obligations where a party's damages theory leaves the opponent unable to test the theory. *See Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3043101, at *3–5 (11th Cir. Aug. 3, 2022); *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307–08 (11th Cir. 2021); *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221  22 (11th Cir. 2010).

In *Vital*, the Eleventh Circuit rejected the notion that the opposing party's failure to move to compel excused inadequate disclosure. 2022 WL 3043101, at *5. *Circuitronix* likewise rejected the idea that access to raw material is enough when the claimant fails to disclose a complete damages theory. 993 F.3d at 1307–08. Public availability is not disclosure. Plaintiffs cannot give a narrow causation answer in discovery, omit their contradictory damages positions, and then say Defendants should have searched other dockets sooner.

Plaintiffs also argue that they had no duty to disclose the supplemental materials because Tyra did not rely on them. Doc. 174 at 5. This is exactly why the materials should be considered in resolving the *Daubert* motion. The defect is that Tyra did not consider the very business-damages record showing obvious alternative

4

causes. Plaintiffs cannot defend the reliability of his model by saying he ignored the confounders.

## III.   THE SUPPLEMENTAL MATERIALS GO DIRECTLY TO PLAINTIFFS' SOLE DAMAGES MODEL.

Plaintiffs describe Tyra's model as a before-and-after comparison. According to Plaintiffs, Tyra compared the pre-meme and post-meme periods and attributed the asserted revenue decline to the FEDCAD meme. Doc. 174 at 6.

But an expert must consider obvious alternative causes that could explain the claimed injury. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1308–10 (11th Cir. 2014); *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253–56 (11th Cir. 2010). Tyra did not do that. He assigned Plaintiffs' business damages to Defendants while ignoring Plaintiffs' own collateral litigation record attributing the same kind of business injury to other causes.

The *VanDerStok* materials alone defeat Plaintiffs' attempt to sanitize the record. Plaintiffs say *VanDerStok* involved a January 2023 prediction about unfinished frames and receivers, unrelated to Ghost Gunner. Doc. 174 at 6. That is contradicted by the record. Wilson testified that Ghost Gunner is a Defense Distributed line of business whose products include the CNC machine, tooling, and "blanks," which he clarified are "80 percent receivers" and "most of Ghost Gunner." Doc. 147-5 at 35:15–36:14. In *VanDerStok*, Wilson likewise declared that Defense Distributed's business included the sale of 80% lowers, tools, and jigs used to produce frames, receivers, and fully functioning firearms; that its business viability depended on unfinished receivers and related products; and that the Final Rule caused Defense

Distributed to cease dealing in those products. Doc. 166-2 ¶¶ 4, 11–13. Wilson then identified customer comments tying the Rule directly to Ghost Gunner demand, **including a customer seeking to refund his "deposit for the Ghost Gunner"** because "the laws have changed," and another asking whether "GG" would refund a Ghost Gunner deposit because the administration was making ghost guns "difficult but illegal." *Id.* at 5. Plaintiffs cannot plausibly say a rule restricting the product's ecosystem had nothing to do with demand for the machine sold to complete those receivers.

The supplemental record does not stop with a pre-meme January 2023 filing. It continues to the present. In July 2023, after the alleged meme period began, Defense Distributed told the *VanDerStok* district court that if ATF enforcement resumed, "Defense Distributed will go out of business and cease to exist." Doc. 166-21 at 4. That filing incorporated prior representations that the Final Rule's effect was "devastating" and would "destroy Defense Distributed, soon," unless enforcement was enjoined. Id. In June 2025, Defense Distributed again sought relief concerning products sold through ghostgunner.com before the Rule took effect. Doc. 166-4 at 7. In January 2026, it filed a notice of escalating irreparable harm based on the Rule's effect on ordinary business relationships. Doc. 166-6. Those are irreconcilable business-damages representations during the same period Plaintiffs now attribute their revenue decline to Defendants.

Nor does Plaintiffs' Coast Runner argument survive scrutiny. Plaintiffs say Coast Runner does not matter because Coast Runner is a separate company. Doc. 174

6

at 7. But Wilson testified in this case that Coast Runner was a "white label version of the Ghost Gunner." Doc. 166-12 at 46:15–47:22. That admission alone makes Coast Runner relevant to Ghost Gunner's market and sales.

Because of Plaintiffs attempt to hand-wave Coast Runner away, Defendants request judicial notice of the March 28, 2025 minute order in *People of the State of California v. Coast Runner Industries Inc.*, No. 37-2024-00020896-CU-MC-CTL, for the existence, contents, and legal effect of that public court order. Ex. D. The order granted a preliminary injunction against Defense Distributed. *Id*. It found that Ghost Gunner and Coast Runner are one-and-the-same; and that the People had shown Defendants likely attempted to evade California law by "essentially rebranding the Ghost Gunner as the Coast Runner." *Id*.

The San Diego order is offered only to rebut Plaintiffs' claim that Coast Runner has nothing to do with Plaintiffs or their Ghost Gunner damages theory. It plainly does. Coast Runner was a white-label Ghost Gunner product, tied to the same machine, same market, same California restrictions, and same business ecosystem. A damages expert who attributes Ghost Gunner's revenue decline to Defendants had to account for that record. They did not.

That is enough for supplementation. Plaintiffs' own collateral positions identify substantial alternative business-damages theories. Those materials bear directly on Tyra's reliability and on whether Plaintiffs can prove causation and damages. Plaintiffs' opposition proves the materials are relevant by asking, in the alternative, that Defendants be limited to using them at trial to cross-examine Tyra

about alternative causes. Doc. 174 at 7. If the materials are proper cross-examination on alternative causation, they are proper *Daubert* material. *Daubert* asks whether Tyra reliably accounted for obvious alternative causes before attributing the business damages to Defendants.

## IV.   JUDICIAL NOTICE IS PROPER

Plaintiffs do not seriously dispute that the supplemental materials are public court records subject to judicial notice. Defendants ask the Court only to recognize that Plaintiffs, Wilson, and courts made or recorded those statements; when the statements were made; what business-damages theories were advanced; and that Tyra did not account for that record. Those are proper uses of judicial notice. They are also proper evidentiary uses because the materials include Plaintiffs' own filings, authorized litigation statements, and records capable of being presented in admissible form. See Fed. R. Evid. 801(d)(2).

## V.   ANY PREJUDICE IS CURABLE; EXCLUSION WOULD REWARD INCOMPLETE DISCLOSURE.

Plaintiffs complain that Defendants seek supplementation after Plaintiffs responded to summary judgment and *Daubert*. Doc. 174 at 1–2. But Defendants did not sit on known materials. The materials are and always were Plaintiffs'. Defendants discovered the undisclosed material after filing their summary-judgment and *Daubert* papers, then promptly moved for leave.

The asserted prejudice is also curable. Plaintiffs have already responded to the motion to supplement. If the Court believes further briefing is needed, it can allow a short surreply or specify the use for which the materials may be considered. But

8

exclusion would reward Plaintiffs for disclosing a narrow causation record, omitting their collateral business-damages positions, and then invoking Defendants' supposed lack of diligence once those positions were uncovered.

Plaintiffs' cited supplementation cases stand for the ordinary rule that supplemental materials should not be used to raise arguments that could have been raised earlier through reasonable diligence. They do not address this situation: a party discloses an all-or-nothing damages model, tight-lippedly answers alternative-causation discovery, and then argues the opponent should have found those undisclosed positions earlier.

The Court should decide *Daubert* and summary judgment on a complete causation record. Plaintiffs' own filings elsewhere show that the business damages they assign to Defendants here were being attributed to other causes and credited therefore in other courts. Plaintiffs' sole damages model ignores this. In suggesting the materials relevant enough to cross Tyra, Plaintiffs' opposition confirms its relevance. Supplementation should be allowed.

## CONCLUSION

The Court should grant Defendants' Motion for Leave to Supplement the Summary-Judgment and *Daubert* Records and Incorporated Request for Judicial Notice, including the request for judicial notice of the San Diego Superior Court minute order within this reply.

Respectfully submitted,
DATED:  June 24, 2026

9

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Key West, FL 33040 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 24th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

10