**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
CENTRAL**

**MINUTE ORDER**

DATE: 03/28/2025                    TIME: 10:30 AM                    DEPT: C-64

JUDICIAL OFFICER: LOREN FREESTONE
CLERK: Jenitta Virissimo
REPORTER/ERM: Debbie Wood CSR# 6515
BAILIFF/COURT ATTENDANT: H. Hirsch

CASE NO: **37-2024-00020896-CU-MC-CTL** CASE INIT.DATE: 05/03/2024
CASE TITLE: **The People of The State of California vs Coast Runner Industries Inc [IMAGED]**
CASE CATEGORY: Civil        CASE TYPE: (U)Other Complaint (Not Specified): Other Complaint

**HEARING TYPE**: Motion Hearing
MOVING PARTY:

**APPEARANCES**

John P Cooley, Attorney for Plaintiff The People of The State of California, present in person.

Caleb Downs, attorney for The People of The State of California, Plaintiff, present in person.
Chad Flores, attorney for Coast Runner Industries, Defendant, present via remote video appearance.
Sophie Kivett, attorney for The People of The State of California, Plaintiff, present in person.

The Court hears argument of Defendant.

The Court CONFIRMS the tentative ruling as follows:

The People of the State of California's motion for preliminary injunction against Defendants Coast Runner Industries Inc., Ghost Gunner Inc., and Defense Distributed is **GRANTED**.

Courts generally consider "two interrelated factors when deciding whether or not to issue a preliminary injunction.  The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued."  (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70.)  "The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court."  (*Id.* at p. 69.)

**Likelihood of Success**

A "preliminary injunction is not a trial on the merits."  (*IT Corp.*, *supra*, 35 Cal.3d at p. 73, fn. 6.)  The People are therefore not obligated to prove their case, but rather simply demonstrate a "reasonable probability" of success.  (*Ibid.*)

CASE TITLE: The People of The State of California vs     CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

---

The People have demonstrated a likelihood of success on the merits of their claim for Violation of Civil Code section 3273.62.  Defendants' arguments regarding the constitutionality of that statute, alter ego liability, and personal jurisdiction do not undermine The People's likelihood of success.

    Civil Code section 3273.62

The People's first cause of action is brought under Civil Code section 3273.62, which states:

> "A person shall not sell, offer to sell, transfer, advertise, or market a CNC milling machine or three-dimensional printer in a manner that knowingly or recklessly causes another person in this state to engage in conduct prohibited by Section 29185 of the Penal Code, or in a manner that otherwise knowingly or recklessly aids, abets, promotes, or facilities conduct prohibited by that section."

(Civ. Code, § 3273.62, subd. (a).)

Penal Code section 29185 states it is unlawful for a person who is not a state-licensed firearms manufacturer to "use a computer numerical control (CNC) milling machine or three-dimensional printer to manufacture a firearm."  (Pen. Code, § 29185, subd. (a).)  It also states it is unlawful for such a person "to possess, purchase, or receive a CNC milling machine or three-dimensional printer that has the sole or primary function of manufacturing firearms."  (*Id.* at subd. (c).)

There is a rebuttable presumption that a person has violated Civil Code section 3273.62, subdivision (a) if both of the following are true:

> "(1)  The person offers to sell, advertises, or markets a CNC milling machine or three-dimensional printer in a manner that, under the totality of the circumstances, is targeted at purchasers seeking to manufacture firearms or that otherwise affirmatively promotes the machine or printer's utility in manufacturing firearms, regardless of whether the machine or printer is otherwise described or classified as having any other capabilities.

> (2)  The person sells or transfers the CNC milling machine or three-dimensional printer described in paragraph (1) without verifying that a purchaser or transferee in this state is a federally licensed firearms manufacturer or not otherwise prohibited from purchasing or using the machine or printer to manufacture firearms under Section 29185 of the Penal Code."

(Civ. Code, § 3273.62, subd. (b).)

Here, the People submit evidence establishing a likelihood of success on their claims.  They submit evidence that Defense Distributed, which sells the Ghost Gunner CNC milling machine that (as its name implies) is designed for manufacturing ghost guns, unsuccessfully challenged AB 1621.  The same month a federal court found that Defense Distribute was not likely to prevail on its claims (October 2022), the Coast Runner was conceived.  The Ghost Gunner and the Coast Runner share not only a similar name, but also a similar design, similar parts, and similar features.  The operator's manual for the two products is also substantially similar, and the manual for the Coast Runner even makes reference to the Ghost Gunner by using the initials "GG."  There is evidence that the market views the Coast Runner to be "a rebranded GhostGunner, made by the same people, and even intended to sell in non-permissive areas," and view any difference in specifications are "useful for hybrid designs in less permissive areas."

---

DATE: 03/28/2025          MINUTE ORDER          Page 2

CASE TITLE: The People of The State of California vs    CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

The Coast Runner was promoted at the firearms industry SHOT Show, where it was described as "Revolutionizing Small-Scale Manufacturing and Gunsmithing" and "empower[ing] small manufacturers and gunsmiths with advanced capabilities."   The Ghost Gunner website also included a notice that states: "California residents ordering a Ghost Gunner CNC machine consent to receiving a Coast Runner CNC machine in lieu of a Ghost Gunner."   The Coast Runner Terms of Use acknowledge that the product can be used to create a firearm, as they require users to represent and warrant several conditions (e.g., that they are a citizen, not a fugitive, and not a user of controlled substances), which coincide with conditions that would prevent a person from possessing firearms under the federal Gun Control Act.  Yet users are not required to verify that they are a federally licensed firearms manufacturer.

Defendants argue that the Coast Runner is not intended for firearm manufacturing because it is classified by the U.S. Department of Commerce as a general-purpose machine.  But the Ghost Gunner is also classified in that manner, and there is no genuine dispute that the Ghost Gunner is intended for firearm manufacturing.

Defendants also argue that the Coast Runner is not identical to the Ghost Gunner and can be used for purposes other than manufacturing a firearm.   But the People have nonetheless demonstrated a likelihood of success that, notwithstanding any such differences, the primary function of the device is to manufacture firearms and that it is sold with the knowledge (or at least the reckless disregard) that it will in fact be used to manufacture a firearm.

For the reasons set forth above, the People have demonstrated a likelihood of success on the merits.

<u>Second Amendment Challenge</u>

Defendants argue that Civil Code section 3273.62 and Penal Code section 29185 violate the Second Amendment.

The Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed."  (U.S. Const.., 2nd Amend.)

To begin, it is important to frame the nature of the purported Second Amendment Violation.  Defendants do not argue that they have a freestanding Second Amendment right to sell the Coast Runner.  (See *Teixeira v. County of Alameda* (9th Cir. 2017) 873 F.3d 670, 681–690, rev. denied May 14, 2018, No. 17-982 ["the Second Amendment does not independently protect a proprietor's right to sell firearms"]; accord *B&L Productions Inc. v. Newsom* (9th Cir. 2024) 104 F.4th 108, 118 & fn. 18; *United States v. Murillo* (C.D. Cal. Apr. 8, 2024) 2024 WL 1517209 at *3–4; *United States v. Tilotta* (S.D. Cal. Aug. 30, 2022) 2022 WL 3924282 at *4–6.)

Defendants instead appear to argue that the law violates the right of their customers to manufacture firearms.  The court assumes that Defendants have derivative standing to assert the Second Amendment rights of their customers in this regard.  (See *Teixeira, supra*, 873 F.3d at p. 678.)

*New York State Rifle and Pistol Association, Inc. v. Bruen* (2022) 597 U.S. 1 recently set forth the standard for evaluating Second Amendment challenges:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by

---

DATE: 03/28/2025                    MINUTE ORDER                                    Page 3

CASE TITLE: The People of The State of California vs    CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."

(*Id.* at p. 24.)

Thus, there is no need to evaluate the historical tradition of firearm regulation unless the conduct is covered by the plain text of the Second Amendment. (See *Duncan v. Bonta* (9th Cir. 2025) __ F.4th __ [2025 WL 867583 at *7–10].)  If it is necessary to evaluate the historical tradition, it is not necessary to find a "historical twin."  (*Id.* at *10.)  "The appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."  (*Id.* at *12.)  Cases "implicating unprecedented societal concerns or dramatic technological changes" often require "a more nuanced approach."  (*Id.* at *11, 14 [finding nuanced approach applied to large capacity magazine ban because "[m]ass shooting a clearly a societal concern that arose only in the 20th century" and large capacity magazines "represent a dramatic technological change from the weapons at the Founding"]; see also Ambrose, *Gunmaking at the Founding* (2025) 77 Stan.L.Rev. 235, 286–290 [explaining why "[g]host guns might seem to be a prime candidate for such an approach"]; *Bondi v. VanDerStok* (2025) 604 U.S. __ [2025 WL 906503 at *3 [noting that recent years "have witnessed profound changes in how guns are made and sold," including "the introduction of new technologies like 3D printing and reinforced polymers"].)

The "Arms" protected by the Second Amendment are "weapons of offence, or armour of defence" and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."  (*District of Columbia v. Heller* (2008) 554 U.S. 570, 581.)  To "keep and bear Arms" means "to possess and carry weapons in case of confrontation."  (*Id.* at pp. 582–592.)

However, the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns."  (*Heller*, *supra*, 554 U.S. at p. 625.) "Ghost guns"—"homemade guns that lack serial numbers and are thus untraceable"—arguably fall within that category of weapons.  (See *New York v. Arm or Ally, LLC* (S.D.N.Y. 2024) 718 F.Supp.3d 310, 334–335; accord *United States v. Price* (4th Cir. 2024) 111 F.4th 392, 397–408 ["firearms with obliterated serial numbers are not in common use for a lawful purpose and they therefore fall outside the scope of the Second Amendment's protection"].)

More to the point, the Coast Runner is not an "Arm."  It is not, itself, a weapon.  It is instead a machine that can be used to manufacture a type of weapon.  "Try as you might," neither the "self-manufacture of firearms" nor "the sale of tools and parts necessary to complete the self-manufacturing process" are encompassed within the "plain text" of the Second Amendment.  (*Defense Distributed v. Bonta* (C.D. Cal. Oct. 21, 2022) 2022 WL 15524977 at *4, tentative ruling adopted as final decision at 2022 WL 15524983; see Ambrose, *Gunmaking at the Founding* (2025) 77 Stan.L.Rev. 235, 286–2288 [explaining why the plain text of the Second Amendment does not cover gunmaking and was not understood as such by early Americans]; see also *Defense Distributed v. Platkin* (D.N.J. 2023) 697 F.Supp.3d 241, 260 ["While a 3D-printed gun itself may be an 'Arm,' the computer codes sent to someone else to manufacture such an 'Arm' does not constitute an 'Arm' under the Second Amendment"].)

Defendants argue that the right to "keep and bear Arms" "necessarily entails acquiring and/or making personal firearms."  To be sure, "unless the right to acquire firearms receives some Second Amendment protection, the right to keep and bear firearms would be meaningless."  (*B&L Productions Inc. v. Newsom*

CASE TITLE: The People of The State of California vs    CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

---

(9th Cir. 2024) 104 F.4th 108, 118.)  However, "the plain text of the Second Amendment only prohibits meaningful constraints on the right to acquire firearms."  (*Ibid.*)  For example, "a ban on all sales of a certain type of gun or ammunition in a region generally implicates the Second Amendment, as such a ban meaningfully constrains the right to keep and bear that firearm or ammunition."  (*Id.* at p. 119.)  On the other hand, "eliminating one environment where individuals may purchase guns does not constitute a meaningful constrain on Second Amendment rights when they can acquire the same firearms down the street."  (*Ibid.*; accord *Teixeira*, *supra*, 873 F.3d at pp. 659–660.)

The challenged laws merely impact the ability of individuals who lack a license to manufacture firearms to acquire one type of machine that can be used to manufacture unserialized guns.  Although those individuals may be unable to manufacture their own M1911 or AR-15, or frames and receivers, those same individuals remain free to lawfully purchase any gun or component from any licensed gun dealer in the State.  Those individuals can alternatively obtain a license to manufacture firearms.  As such, it is unlikely that the laws "meaningfully constrain" the right to acquire a firearm.  (See *New York v. Arm or Ally LLC* (S.D.N.Y. 2024) 718 F.Supp.3d 310, 334–335 [restriction on sale and manufacture of products used to make ghost guns did not trigger Second Amendment scrutiny because individuals remained free to purchase firearms or buy unfinished frames and receivers to make them into firearms, "they must simply buy serialized parts from a licensed dealer after undergoing the same background check as any other firearms purchaser"]; *United States v. Flores* (S.D. Tex. 2023) 652 F.Supp.3d 796, 803 [law prohibiting the sale of firearms without a license does not pose a significant barrier to the exercise of Second Amendment rights]; Ambrose, *supra*, 77 Stan.L.Rev. at pp. 288–290 [explaining why prohibition on gun manufacturing does not meaningfully constrain the right to obtain a firearm].)

Even if Defendants were able to progress to a historical inquiry, their claims likely fail at that step too.  There was no freewheeling historical right to manufacture one's own firearms.  Rather, there "is ample historical precedent for restrictions on the manufacturing and possession of arms for personal use, including a long tradition of gun serialization and enforcing serialization on a person-to-person level."  (*New York v. Arm or Ally LLC* (S.D.N.Y. 2024) 718 F.Supp.3d 310, 336 [claims against companies that manufactured and sold products used to make ghost guns did not run afoul of the Second Amendment]; *United States v. Trujillo* (D.N.M. 2023) 670 F.Supp.3d 1235, 1242–1243 ["in the 18th and 19th centuries, several states imposed regulations on firearms manufacturing]; *Palmer v. Sisolak* (D. Nev. Oct. 7, 2024) 2024 WL 4432181, at *7 ["The regulation of ghost guns fits squarely within this rich historical tradition"]; Ambrose, *supra*, 77 Stan.L.Rev. at pp. 241, 245–247, 259–278, 291–293 [detailing the nation's historical tradition of gunmaking regulation]; Spitzer, *Gun Law History in the United States and Second Amendment Rights* (2017) 80 L. & Contemp. Probs. 55, 74 [describing historical laws regulating gun manufacturing]; DeLay, *The Myth of Continuity in American Gun Culter* (2025) 113 Cal.L.Rev. 1, 70–71 ["In no sense are the entrepreneurs who sell parts and kits, nor their customers, part of a historical tradition of 'self-made arms'"].)

For the reasons set forth above, the People's claims are likely to survive Defendants' Second Amendment challenge.

    <u>Alter Ego Liability</u>

Defendants argue that there is no basis to enjoin Defense Distributed and Ghost Gunner Inc. because the People cannot prove that those entities are alter egos of Coast Runner Industries Inc.  The People argue that there is evidence supporting an alter ego theory, but in any event they do not need to prove alter ego liability because all Defendants have participated in the alleged violations.

---

CASE TITLE: The People of The State of California vs     CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

---

"If the facts presented in the affidavits of the prevailing party indicate that a conspiracy can be inferred from the nature of the acts done, the relations of the parties, the interests of alleged conspirators and other circumstances, a preliminary injunction may issue." (*People v. Arthur Murray Inc.* (1965) 238 Cal.App.2d 333, 341; accord *Globe Dairy Lunch Co. v. Joint Executive Board of Culinary Workers* (1953) 117 Cal.App.2d 190, 193–194, disapproved on other grounds; see also Civ. Code, § 3273.62, subd. (d) [authorizing injunctive relief sufficient to prevent the person who violated the law "and any other defendant" from further violating the law].)

Defense Distributed was organized by Cody Wilson, who is credited with creating the first 3D printed firearm.  As set forth in its Articles of Incorporation, Defense Distributed was formed to "defend the civil liberty of popular access to arms . . . through facilitating global access to, and the collaborative production of, information and knowledge related to the 3D printing of arms, and to publish and distribute . . .such information and knowledge in promotion of the public interest."

Ghost Gunner (the company) was incorporated by Defense Distributed (acting through Wilson as Director).  Ghost Gunner "is a manufacturing concern managed by Defense Distributed."  Ghost Gunner (the product) is a machine that is intended to "allow individuals to manufacture their own un-serialized firearms" that "are untraceable," hence "the 'ghost gun' name."

Coast Runner (the company) was also incorporated by Wilson, shortly after Defense Distributed lost its challenge to AB 1621.  The timing reasonably suggests that Coast Runner (the product) was intended as an end-run around the law.  Notably, Coast Runner's Kickstarter and the declaration from its former CEO/current Chief Technical Officer indicate that the Coast Runner (the product) was developed in October 2022, whereas Coast Runner (the company) was not incorporated until February 2023.  This supports a reasonable inference that Defense Distributed and Ghost Gunner were involved in the product's development.

Moreover, Coast Runner advertising states that "[f]or 10 years Coast Runner has been providing contract manufacturing and commercial prototyping services for desktop CNC companies."  Again, Coast Runner Industries has not existed for 10 years.  It was only formed in February 2023.  The reasonable inference is that this is in reference to Defense Distributed and Ghost Gunner, linking them to the product's promotion.

The Ghost Gunner website also indicated that purchasers in California would receive a Coast Runner in lieu of a Ghost Gunner.  This reasonably links them to the product's sale and distribution.

Considering the totality of the circumstances, the People have shown a likelihood of success that all Defendants are involved in the unlawful activity at issue.

### Personal Jurisdiction

Defendants argue that they are not subject to personal jurisdiction in California.  The People argue that this issue was waived, and in any event, Defendants are subject to personal jurisdiction.

"A defendant, on or before the last day of his of her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion . . . to quash service of summons on the ground of lack of jurisdiction of the court over him or her."  (Code Civ. Proc., § 418.10, subd. (a)(1).)

---

CASE TITLE: The People of The State of California vs     CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

---

"Failure to make motion under this section at the time of filing a . . . motion to strike constitutes a waiver of the issue[] of lack of personal jurisdiction."  (*Id.* at subd. (e).)

Thus, under the "express provisions" of the statute, "a challenge to personal jurisdiction is waived if a defendant . . . moves to strike without concurrently moving to quash . . . [A] defendant may move to quash coupled with any other action without being deemed to have submitted to the court's jurisdiction. However, the motion to quash remains essential."  (*Roy v. Superior Court* 2005) 127 Cal.App.4th 337, 345, emphasis in original.)

On October 31, 2024, Defendants filed an anti-SLAPP motion to strike.  (ROA #56.)  Defendants did not concurrently file a motion to quash based on lack of personal jurisdiction.  The issue was therefore waived.

Defendants argue that the issue was not waived because their anti-SLAPP motion argued that the People could not establish a probability of prevailing on the merits because, among other reasons, they were not subject to personal jurisdiction.  This argument fails for several reasons.

"A notice of motion must state in the opening paragraph the nature of the order being sought and the grounds for issuance of the order."  (Cal. Rules of Court, rule 3.1110(a); see also Code Civ. Proc., § 1010 [notice of motion must state "the grounds upon which it will be made"].)  "The purpose of these requirements is to cause the moving party to sufficiently define the issues for the information and attention of the adverse party and the court."  (*Conservatorship of Townsend* (2014) 231 Cal.App.4th 691, 699, fn. 11.)  Thus, as "a general rule, the trial court may consider only the grounds stated in the notice of motion."  (*Ibid.*; accord *366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.app.3d 1186, 1199–1200; *People v. American Surety Ins. Co.* (1999) 75 Cal.App.4th 719, 726–727.)

Defendants' notice of motion stated that they were moving "to strike all of the complaint's causes of action . . pursuant to California Code of Civil Procedure § 425.16."  The notice of motion did not indicate that Defendants were also moving to quash pursuant to Code of Civil Procedure section 418.10.

Nor is the defect cured by reference to the supporting memorandum.  Although Defendants argued that the People were unlikely to succeed because "personal jurisdiction is lacking," they never cited section 418.10 nor indicated that they were moving to quash (as opposed to merely striking) the complaint.  (See *Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 720, 722–723 [although defendant argued "that he was not subject to the jurisdiction of the court," issue of personal jurisdiction was waived because his papers "did not explicitly seek to quash service of the summons on the ground of lack of jurisdiction"].)

The motion also failed to place the jurisdictional issue as a threshold matter.  Rather, it incorporated the issue into the prong 2 analysis, which was not addressed because the motion failed at prong 1. Defendants cannot preserve the jurisdictional issue by incorporating it into a pleading and leaving it for resolution at a later date.  (See generally *Roy*, *supra*, 127 Cal.App.4th 337 ["section 418.10 does not give the defendant an option to plead lack of jurisdiction as a defense and reserve determination of the issue until as late as trial"].)

Even if the anti-SLAPP motion were construed as being combined with a motion to quash, the motion was denied in its entirety.  Once any concurrent motion to quash was denied, the motion to strike became a general appearance, as did Defendants' substantive opposition to this motion.  (See Code Civ.

---

Proc., § 418.10, subd. (e)(1); *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 441.)

Finally, even if the issue was not waived, the People have demonstrated a likelihood of success on the issue.  A nonresident is subject to specific jurisdiction if "(1) the defendant has purposefully availed himself or herself of forum benefits, (2) the controversy is related to or arises out of the defendant's contacts with the forum, and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice."  (*Snowney v. Harrah's Entertainment Inc.* (2005) 35 Cal.4th 1054, 1062.)  The plaintiff bears the burden on the first two factors, whereas the defendant bears the burden on the third factor.  (See *People ex rel. Harris v. Native Wholesale Supply Co.* (2011) 196 Cal.App.4th 357, 362.)

Here, the People submit evidence that Defendants purposefully availed themselves of forum benefits.

Defendants asserted in prior briefs that "Coast Runner Industries, Inc. was conceived to comply with California law."  (ROA #94)  As set forth above, there is evidence that all Defendants were involved with its conception.  Tailoring a product for a market is evidence of purposeful availment.  (See *Snowney, supra*, 35 Cal.4th at p. 1063 ["purposeful availment occurs where a nonresident purposefully directs its activities at residents of the forum"]; *L.W. v. Audi AG* (2025) 108 Cal.App.5th 95, 110 ["designing the product for the market in the forum state" supports exercise of specific jurisdiction].)

Coast Runner's Terms of Use included a "Governing Law" section that states "use of the Site and the Marketplace Offerings are governed by and construed in accordance with the laws of the State of California applicable to agreements made and to be entirely performed within the State of California."  They also include an arbitration provision that states the matter will be arbitrated (or if for whatever reason litigated) in San Diego.  And they include a section for "California Users and Residents" that states they may contact the California Department of Consumer Affairs if they have any unresolved complaints.  (See *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 481–482 [choice of law provision relevant for jurisdictional purposes to determining whether the defendant has purposefully invoked the benefits and protections of a state's laws].)

Ghost Gunner's website, in turn, stated that "California residents ordering a Ghost Gunner CNC machine consent to receiving a Coast Runner CNC machine in lieu of a Ghost Gunner."  This is evidence of purposeful availment by Ghost Gunner.  (See *Snowney, supra*, 35 Cal.4th at pp. 1063–1065 [defendants "purposefully availed themselves of the privilege of conducting business in California via the Internet"]; *As You Sow v. Crawford Laboratories Inc.* (1996) 50 Cal.App.4th 1859, 1869–1871 [16 sales to California, although never more than 1 percent of annual sales, sufficient for specific jurisdiction].)

There is also evidence that the Coast Runner was promoted in California at the Bay Area Maker Faire in Mare Island.  The advertisement for that promotion repeats its claim that "Our company has a ten-year history in 3D printing and desktop CNC technology."  As set forth above, the inference is that <u>all</u> Defendants were promoting the Coast Runner at that event in California.  (See *Snowney, supra*, 35 Cal.4th at p. 1065 [defendants purposefully availed themselves of the privilege of conducting business in California by advertising in the state]; *Davis v. Superior Court* (1976) 62 Cal.App.3d 484, 489–490 [evidence supported inference that defendant who had conceived of the product had "some participation in the advertising campaign" directed toward California].)

Defendants argue that "[n]o Coast runner machine has ever shipped to California."  There is no evidence supporting this assertion.  The People, on the other hand, submit evidence that deposits were already

---

CASE TITLE: The People of The State of California vs     CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

accepted, the "official ship date" for the Coast Runner was September 2024, and that an "early access" batch may have shipped as early as April 2024.

The People's claims are also related to these contacts.  The claims are based on the marketing and sales themselves, which the People contend violate the law.  (See *Snowney*, *supra*, 35 Cal.4th at pp. 1068–1070; *Thurston v. Fairfield Collectibles of Georgia LLC* (2020) 53 Cal.App.5th 1231, 1241.)

Finally, Defendants have not demonstrated that exercising jurisdiction would be unreasonable.  They submitted no evidence on the issue.  (See *Thurston*, *supra*, 53 Cal.App.5th at p. 1242.)

For the reasons set forth above, the People have demonstrated a probability of success on as to any personal jurisdiction challenge.

**<u>Interim Harm</u>**

"Where a governmental entity seeking to enjoin the alleged violation of [a law] which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*IT Corp.*, *supra*, 35 Cal.3d at p. 72.)  It only becomes necessary to weigh the relative actual harms if the defendant "shows it would suffer grave or irreparable harm from the issuance of the preliminary injunction."  (*Ibid.*; accord *People ex rel. Feuer v. FXS Management Inc.* (2016) 2 Cal.App.5th 1154, 1162–1163; *People ex rel. Brown v. Black Hawk Tobacco Inc.* (2011) 197 Cal.App.4th 1561, 1571.)

Even when the defendant presents evidence of grave or irreparable harm, "if it appears fairly clear that the plaintiff will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the plaintiff is unable to prevail in a balancing of the probable harms."  (*IT Corp.*, *supra*, 35 Cal.3d at pp. 72–73; accord *People v. Uber Technologies Inc.* (2020) 56 Cal.App.5th 266, 307–313; *City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1198–1199.)

Civil Code section 3273.62 specifically provides for "injunctive relief sufficient to prevent the person or any other defendant from further violating the law."  (Civ. Code, § 3273.62, subd. (d).)  The presumption therefore applies here and refutes Defendants' argument that the People have failed "to show that an injunction will give any benefit."

Moreover, the People have submitted evidence showing the problems posed by Ghost Guns and their connection to violent crime, including reports from the California Department of Justice, other scholarly work, and declarations from a Crime and Intelligence Analysis Manager from the San Diego County Sheriff's Office and a Lieutenant with the San Diego Police Department. (See also *Bondi*, *supra*, 2025 WL 906503 at *3 [noting that "Police departments around the Nation have confronted an explosion of crimes involving these 'ghost guns'"].)

Defendants, on the other hand, did not submit any evidence demonstrating how any financial burdens associated with a preliminary injunction would rise to the level of irreparable harm.  And while Defendants claim a preliminary injunction would restrict their rights under the Second Amendment, as set forth above, Defendants themselves have no such right to sell the Coast Runner and it is doubtful their customers have any right to use the Coast Runner to manufacturer their own firearms.  Even if their customers did have such rights, as set forth above, any limitation would be modest as they would still be able to obtain any legal firearm from any licensed firearm dealer.  (See *Tracy Rifle & Pistol LLC v. Harris*

CASE TITLE: The People of The State of California vs    CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

_____

(9th Cir. 2016) 637 F.Appx. 401 ["serious public safety risks" outweighed the "relatively slight" harm based on the "potential infringement" of constitutional rights].)

Defendants argue that a preliminary injunction would constitute a prior restraint in violation of their First Amendment rights.  Given the rebuttable presumption, and consistent with general constitutional law principles, it is Defendants burden to demonstrate how the First Amendment would be violated.  (See *Civil Rights Department v. Cathy's Creations, Inc.* (2025) 108 Cal.App.5th 869, 881, fn. 17 ["It is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies"].)

Defendants do not meaningfully discuss prior restraint jurisprudence or make any cogent argument in this regard.  They do not explain how the actual sale of the Coast Runner constitutes speech.  And to the extent the injunction would prohibit their advertising of the Coast Runner, they do not explain how that amounts to an impermissible prior restraint. (See *Feuer*, *supra*, 2 Cal.App.5th at pp. 1162–1163 [defendants failed to explain how injunction infringed on their constitutionally protected freedom of speech; "Whatever their contention, the injunction does not limit defendants' speech or association, other than a requirement that [defendant] remove signage from its property advertising its business"].)

Even reaching the merits, the argument is not persuasive.  A preliminary injunction is not an unlawful prior restraint if the court finds it reasonably likely that the speech to be restrained is unprotected by the First Amendment.  (See *People ex rel. Gascon v. HomeAdvisor Inc.* (2020) 49 Cal.App.5th 1073, 1089; accord *People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater* (1980) 101 Cal.App.3d 296, 302–305.)

As set forth above, the People have demonstrated a reasonable probability of prevailing on their claim that the sale of the Coast Runner is unlawful.  As such, their efforts to advertise or market the Coast Runner, or otherwise offer to sell it, may be preliminarily enjoined without transgressing the First Amendment.  (See *U.S. v. Williams* (2008) 553 U.S. 285, 298 ["Offers to engage in illegal transactions are categorically excluded from First Amendment protection"]; see also *Uber Technologies Inc.*, *supra*, 56 Cal.App.5th at p. 306 ["a party suffers no grave or irreparable harm by being prohibited from violating the law"].)

The relative harms weigh in favor of an injunction.

**<u>Scope of the Injunction</u>**

The People moved to preliminarily enjoin Defendants from "selling, offering to sell, transferring, advertising, or marketing the Coast Runner, and any other CNC milling machine, in California." Defendants argue that the inclusion of "any other CNC milling machine" is too broad.

As set forth above, Civil Code section 3273.62 authorizes "injunctive relief sufficient to prevent the person [who violated the statute] and any other defendant from further violating the law."  (Civ. Code, § 3273.62, subd. (d).)

The People have demonstrated that Defendants have likely attempted to evade the law by essentially rebranding the Ghost Gunner as the Coast Runner.  It is therefore appropriate to preliminarily enjoin any similar rebranding efforts pending this litigation.  Thus, while the request to include "any other CNC milling machine" within the injunction is overbroad, it is appropriate to include "any other substantially

_____

CASE TITLE: The People of The State of California vs   CASE NO: **37-2024-00020896-CU-MC-CTL**
Coast Runner Industries Inc [IMAGED]

similar CNC milling machine." (See also *People v. Silver* (1991) 230 Cal.App.3d 389, 394 [prohibition on manufacture of "substantially similar" item is not unconstitutionally vague].)

**Conclusion**

The motion is granted.  Defendants are hereby enjoined from selling, offering to sell, transferring, advertising, or marketing the Coast Runner and any other substantially similar CNC milling machine in California pending the outcome of this litigation.

An injunction typically requires a bond. (Code Civ. Proc., § 529, subd. (a).)  However, as the action is brought by the People, that requirement does not apply. (*Id.* at §§ 529, subd. (b)(3), 995.220, subd. (a)–(b).)

Plaintiff waives notice of the ruling and will give notice to defendants.

As to the status of this case, plaintiff requests the Court set a case management date.

The Court grants this request.

Case Management Conference is scheduled for 5/16/25 at 1000 am before Judge Loren G Freestone.

Parties waive notice.

*Loren Freestone*
_____
Judge Loren Freestone

DATE: 03/28/2025                    MINUTE ORDER                    Page 11