**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-81197-MIDDLEBROOKS

DEFENSE DISTRIBUTED,
et al.,

      Plaintiffs,

v.

JOHN ELIK, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment (DE 147), filed May 28, 2026. The motion is fully briefed. (DE 147-1, 162, 173, 165). For the following reasons, the motion is granted.

### I.    Background

The undisputed facts, unless otherwise indicated, are culled from pleadings, affidavits, declarations, exhibits, and taken in the light most favorable to Plaintiff, the non-moving party, for the purposes of this motion are as follows:

Plaintiffs operate DEFCAD, a subscription-based website offering downloadable 3D-printed firearm files, and related businesses Defense Distributed and DD Foundation. Defendants are individuals active in the same online gun computer aided-design community, also known as "GunCAD." Beginning in 2023, Defendants, who include individuals associated with

the GunCAD community,[1] posted online statements criticizing Plaintiffs and disseminated a graphic referred to as the "FEDCAD meme," which asserted that DEFCAD's database had been "hacked and dumped," that Plaintiffs mishandled user data, and engaged in improper conduct. Plaintiffs state that DEFCAD was never hacked and that the meme is false.

It is undisputed that a DEFCAD employee uploaded the FEDCAD meme to Plaintiffs' website and that Plaintiffs made it available for download. Plaintiffs do not dispute that the meme appeared on their website and offer no explanation for the republication.

Plaintiffs bring claims for conspiracy to violate RICO, false advertising under the Lanham Act and tortious interference with business relationships under Florida law. To support these claims, Plaintiffs rely on customer exit surveys, the declaration of designer Eric Goldhaber, a designer who previously uploaded 3D-printed firearm files to the platform, and the expert report of Jason Tyra. The exit surveys describe customers' reasons for leaving Plaintiffs' businesses, but do not identify any Defendant, any statement by any Defendant, or exposure to any of Defendant's conduct. While some customer statements reference "FEDCAD," "data security," or "doxxing," they do not attribute those concerns to any Defendant, and many cite unrelated reasons such as cost, billing issues, lack of use, dissatisfaction with Plaintiffs' founder, or general privacy concerns. The record contains no evidence that any Defendant knew the identity of any DEFCAD subscriber, customer, or designer.

Goldhaber is a prominent 3D-printed gun designer with a substantial online following. He observed a widespread online campaign in 2023 criticizing Plaintiffs through the "FEDCAD" meme and similar posts. Goldhaber states that he believes this campaign affected perceptions

---

[1] Plaintiffs generally lump Defendants together with the exception of paragraph 98 in its additional statement of facts. (DE 165.)  There, Plaintiffs provide record evidence to support that Defendants Peter Celentano, John Lettman and Alexander Holladay admitted posting the meme on the internet.

within the GunCAD community and it influenced his decision to stop uploading designs to DEFCAD. While the declaration describes his own decision to stop uploading designs, it does not discuss whether other customers or designers altered their behavior.

Tyra's expert report concludes that Plaintiffs experienced economic harm after mid-2023 due to the widespread circulation of the "FEDCAD" meme, which he characterizes as a reputational attack that likely diverted GunCAD users toward competing platforms. Tyra did not analyze which individuals or entities caused the losses, did not identify any specific customer who saw the meme, and did not determine whether any customer acted because of any Defendant. His damages conclusion rests on the meme's general online presence rather than its source.

## II. Legal Standard

Under the governing legal standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. Id. at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

### III. Discussion

#### A.  <u>RICO claim</u>

Plaintiffs' civil RICO conspiracy claim is predicated on alleged wire fraud violations arising from Defendants' online statements. Defendants argue that the Eleventh Circuit's recent decision in *Hartman v. Does 1–2*, No. 23-13473, 2025 WL 398846 (11th Cir. Jan. 31, 2025), forecloses Plaintiffs' theory as a matter of law. Upon review of the summary judgment record and the Parties' arguments, I agree and revise my earlier ruling on the motion to dismiss.

To state a civil RICO claim under § 1962(c), a plaintiff must plausibly allege that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts, which (5) proximately caused (6) injury to the plaintiff's business or property. *Otto Candies LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025).

I previously concluded, at the pleading stage, that Plaintiffs had adequately alleged a RICO conspiracy, relying in part on Plaintiffs' argument that *Hartman* supported RICO liability predicated on wire fraud arising from coordinated online smear campaigns between business competitors. (DE 90 at 6.) That ruling was interlocutory. A district court may revise any interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379–80 (11th Cir. 2024) (courts possess inherent authority to correct their own errors).

Having revisited *Hartman* at summary judgment, I conclude that it does not support Plaintiffs' position. In *Hartman*, the Eleventh Circuit merely summarized the plaintiffs' theory that the defendants' "predicate acts" included wire fraud based on email blasts, website postings, and alleged misrepresentations to service providers. The Court did not adopt or endorse that theory.

4

To the contrary, the Eleventh Circuit expressly declined to address whether the alleged conduct constituted wire fraud, stating: "Beyond the issue of continuity, Defendants have not developed any argument specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims. We express and imply no opinion as to whether the evidence was otherwise sufficient to satisfy those elements." *Hartman.* 2025 WL 398846, at *6.  *Hartman* therefore does not provide authority for the proposition that false online statements between alleged competitors constitute wire fraud predicate acts.

Moreover, treating *Hartman* as Plaintiffs urge would be incompatible with binding Supreme Court and Eleventh Circuit authority. Wire fraud requires a scheme to obtain money or property through deception. 18 U.S.C. § 1343. The Supreme Court has repeatedly held that the federal fraud statutes reach only schemes whose object is to obtain "traditional property interests." *Ciminelli v. United States*, 598 U.S. 306, 316 (2023); *Kelly v. United States*, 590 U.S. 391, 398 (2020). Thus, a plaintiff must show that the defendant intentionally participated in a scheme to obtain money or property through deception and used the wires to further that scheme. Online criticism of a company's business practices—even if false—does not constitute a scheme to obtain money or property from the company, and the record contains no evidence that Defendants sought to obtain any money or property from Plaintiffs. Without evidence of a qualifying predicate act, Plaintiffs cannot establish a RICO violation.

Moreover, RICO also requires proximate cause. A civil RICO plaintiff must show a "direct relation" between the alleged predicate acts and the claimed injury. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Injuries that are derivative, remote, or dependent on the independent decisions of third parties do not satisfy RICO's causation requirement. In *Anza v. Ideal Steel Supply Corp.*, the Supreme Court rejected a

competitor's RICO claim for lost sales because the alleged fraud was directed at a third party, and the plaintiff's lost sales "could have resulted from factors other than" the alleged misconduct. 547 U.S. 451, 458–59 (2006).

The record reflects similar deficiencies here. Plaintiffs point to the declaration of designer Goldhaber (DE 157), who states that he personally decided to stop uploading designs to DEFCAD after observing what he describes as a widespread online campaign criticizing Plaintiffs through the FEDCAD meme. Goldhaber does not identify any customer or designer who altered their behavior because of any Defendant's conduct. His declaration reflects his own reaction to generalized online discourse within the GunCAD community and does not provide evidence of a direct causal link between any Defendant's alleged conduct and any lost transaction.

Moreover, the record contains no testimony from any customer who saw a specific statement by a specific Defendant and then cancelled a subscription or declined to purchase. The expert's damages conclusion does not depend on who caused the alleged harm. Instead, the report rests on the meme's general online presence. Injuries dependent on independent decisions of customers or designers are too remote to satisfy RICO's proximate cause requirement. *See Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1351 (11th Cir. 2016) (rejecting a RICO claim based on the failure of the plaintiff customer to provide a direct link between the defendant airline's alleged misrepresentation of a "passenger usage fee" and the customer's decision to purchase tickets).

Although lost sales may constitute a cognizable RICO injury in some circumstances, such an injury is actionable only where the plaintiff produces evidence that the alleged predicate acts directly caused the lost revenue. *Anza*, 547 U.S. at 458–59. Plaintiffs have not done so. Without evidence of a qualifying predicate act or a direct causal connection between Defendants' alleged conduct and any lost sales, Plaintiffs cannot establish a RICO injury as a matter of law.

Finally, even assuming the challenged statements were false and coordinated, the record contains no evidence that Defendants sought to obtain money or property from Plaintiffs through deception. Without evidence of a scheme to defraud, a qualifying predicate act, or proximate cause, Plaintiffs' RICO conspiracy claim fails as a matter of law.

## B.  Lanham Act

The causation deficiencies extend to Plaintiffs' remaining claims. To prevail on a false advertising claim under the Lanham Act, Plaintiffs must show that Defendants' statements proximately caused them injury, and remote or speculative harms are insufficient. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133–34 (2014). The Eleventh Circuit recently addressed this requirement at summary judgment in *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255 (11th Cir. 2023). There, the Eleventh Circuit held that a Lanham Act plaintiff must present specific, customer-level evidence showing that the challenged statements caused identifiable consumers to withhold trade. *Id.* at 1263, 1266.

Plaintiffs present no such evidence, and at summary judgment, it is their burden to demonstrate that a triable issue exists. The customer exit surveys (DE 147-6), upon which Plaintiffs rely heavily, describe reasons for leaving Plaintiffs' business but do not identify any Defendant, any statement by any Defendant, or any exposure to any Defendant's conduct. Although a few survey responses mention "FEDCAD," those comments are generalized and do not attribute the concern to any Defendant. Under *TocMail*, such vague and nonspecific references are insufficient to create a genuine dispute of material fact at summary judgment. *See TocMail*, 67 F.4th at 1263; *see also Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) ("[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party).

Furthermore, many customers cite unrelated reasons such as cost, billing issues, lack of use, dissatisfaction with Plaintiffs' founder, or general privacy concerns. The record contains no evidence that any Defendant knew the identity of any DEFCAD subscriber or customer.

Plaintiffs also rely on the declaration of designer Eric Goldhaber (DE 157), who states that he personally decided to stop uploading designs to DEFCAD after observing what he describes as a widespread online campaign criticizing Plaintiffs. However, Goldhaber does not identify any customer who altered their behavior because of any Defendant's conduct.

Finally, Plaintiffs rely on the expert report of Jason Tyra (DE 147-8), who attributes Plaintiffs' alleged losses to the meme's general online presence. Tyra did not analyze which individuals or entities caused the losses, did not identify any specific customer who saw the meme, and did not determine whether any customer acted because of any Defendant. In fact, the expert report is a damages opinion rather than a causation opinion in that it identifies a downturn in Plaintiffs' revenue beginning in mid-2023 and attributes that downturn to the general circulation of the "FEDCAD" meme, which he characterizes as a reputational event. His opinion measures the economic impact of a reputational event but does not provide evidence of Defendant-specific causation, and under *TocMail*, such generalized reputational evidence does not create a genuine dispute of material fact.

Although *TocMail* addressed injury-in-fact at the standing stage, its reasoning applies equally to proximate causation. Plaintiffs identify no customer who cancelled a subscription, declined to purchase a product, or otherwise changed behavior because of any Defendant. Their surveys do not reference any Defendant, their only designer declarant describes his own reaction but identifies no consumer who acted because of Defendants, and their expert does not provide an opinion on who caused the alleged losses. Generalized reputational harm is insufficient under

*Lexmark* to establish proximate cause. Because Plaintiffs have not produced evidence from which a reasonable jury could find proximate causation, summary judgment is warranted on Count II.

### C. <u>Tortious Interference with Business Relationship Claims</u>

A tortious interference claim under Florida law likewise requires proof of proximate causation and actual damages. Plaintiffs must show: (1) the existence of a business relationship; (2) knowledge of that relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship; and (4) damage resulting from the breach. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). The underlying relationship must confer legal rights; relationships with past or unidentified customers—where there is no understanding they would continue doing business—cannot support a tortious interference claim. *Id.* at 815 ("The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."). A plaintiff therefore cannot establish proximate causation where the alleged "relationship" is speculative or not legally cognizable.

Plaintiffs identify no record evidence of a qualifying business relationship. As discussed, the customer exit surveys are no help. They do not identify any Defendant, any statement by any Defendant, or any exposure to any Defendant's conduct, and many customers cite unrelated reasons for leaving. The record contains no evidence that any Defendant knew the identity of any DEFCAD subscriber or customer.

Goldhaber's declaration describes his own decision to stop uploading designs to DEFCAD, but he does not point to any customer or designer who altered their behavior because of any Defendant's conduct. His declaration does not identify any relationship that would have resulted in a completed transaction but for Defendants' conduct.

Tyra's expert report does not analyze interference with any specific relationship, does not identify any customer who saw the meme, and does not determine whether any customer acted because of any Defendant. His damages conclusion rests on the meme's general online presence rather than its source.

Plaintiffs' own republication of the meme further complicates any causal chain. By circulating the meme themselves, Plaintiffs introduced an independent, intervening source of the same content they claim caused their losses, making it impossible to determine whether any customer who saw the meme encountered it because of any Defendant or because of Plaintiff's own actions. This breaks the link between Defendants' alleged conduct and the claimed harm and further prevents Plaintiffs from establishing proximate causation under Rule 56. *See Miller v. Sconyers,* 189 So. 2d 371, 372 (Fla. 4th DCA1966) (an intervening cause is any cause which breaks the chain of causation from original negligent act); *see also* Paroline v. United States, 572 U.S. 434, 444 (2014) ("to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result").

Because Plaintiffs have not created a genuine question of material fact that Defendants intentionally and unjustifiably interfered with any qualifying business relationship or that any such interference proximately caused damage, summary judgment is warranted on Count III.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1) Defendants' Motion for Summary Judgment (DE 147) is **GRANTED.**

2) Judgment will be separately entered.

**SIGNED** in Chambers at West Palm Beach, Florida, this 1st day of July, 2026.

Donald M. Middlebrooks
United States District Judge

Copies to: Counsel of Record