**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation;
DD FOUNDATION, LLC, a Texas limited liability
company; and, DEFCAD, INC., a Texas corporation,

      Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW
LAROSIERE, individually; ALEXANDER
HOLLADAY, individually; PETER CELENTANO,
individually; JOSH KIEL STROKE, individually;
and JOHN LETTMAN, individually; ZACK
CLARK, individually
          Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiffs oppose Defendants' Rule 11 Motion for Sanctions ("Motion") (Doc. 181).

**INTRODUCTION**

Although the Court entered summary judgment in favor of Defendants, the Court's order does not suggest that Plaintiffs made any frivolous arguments or pursued this case for an improper purpose. Indeed, Plaintiffs' legal theories were sufficient to withstand Defendants' motion to dismiss, and Plaintiffs presented evidence supporting their claims. In particular, Plaintiffs proffered evidence indicating that Defendants repeatedly made false statements about Plaintiffs' data security practices for the purpose of diverting customers to their competing businesses. Plaintiffs also presented evidence showing that their sales declined by more than $2 million after Defendants started blanketing online forums with the false "Fedcad" meme and that approximately

20 former customers expressly cited the "Fedcad" meme when terminating their paid memberships.

The Motion does not meaningfully engage with Plaintiffs' actual legal theories or evidence. Instead, the Motion purports to challenge, often in misleading or conclusory fashion, nearly every legal argument and factual contention made by Plaintiffs in this case.  The Motion falls far short of establishing the "rare and exceptional" circumstances necessary for imposing Rule 11 sanctions. Accordingly, the Motion should be denied.

## ARGUMENT

### A.      Rule 11 Motions Should Be Employed "Sparingly."

The purpose of Rule 11 is "to deter baseless filings in district court and thus streamline the administration and procedure of federal courts."  *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).  Rule 11 sanctions are proper when a party files a pleading: (1) with no reasonable factual basis; (2) based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) in bad faith for an improper purpose.  *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

For a factual allegation to be "frivolous," the movant must show "no competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only 'patently frivolous' evidence."  *In re BankAtlantic Bancorp, Inc. Securities Lit.,* 851 F. Supp. 2d 1299, 1308 (S.D. Fla. 2011).  Rule 11 sanctions are unwarranted if a party's evidence is "merely weak."  *Riccard v. Prudential Ins. Company*, 307 F.3d 1277, 1294 (11th Cir. 2002).

Critically, "sanction orders are not intended to be fee-shifting vehicles in complete derogation of the American Rule."  *Martin v. Automobili Lamborghini Exclusive, Inc.*, No. 98-cv-6621, 2020 WL 14029006, at *6 (S.D. Fla. Dec. 27, 2005).  As such, Rule 11 sanctions are

generally reserved for "rare and exceptional" circumstances. *Jacobi v. Experian Info. Solns., Inc.*, No. 20-v-60591, 2021 WL 8894793, at *4 (S.D. Fla. Aug. 20, 2021); *see also O'Boyle v. Sweetapple*, No. 14-cv-81250, 2016 WL 9559959, at *4 (S.D. Fla. May 17, 2016) ("Rule 11 motions should be employed sparingly"). Moreover, even if the court determines that a Rule 11 violation has occurred, the decision whether to impose sanctions remains within the court's discretion. *Nationwide Van Lines*, 2020 WL 8620131, at *2.

As demonstrated below, the Motion does not meet the high standard for imposing Rule 11 sanctions.

**B.     Plaintiffs' Claims Were Not Frivolous.**

In the Motion, Defendants seek sanctions for the legal claims asserted by Plaintiffs in the Second Amended Complaint ("SAC") (Doc. 49). *See* Mot. 4-8. Defendants already asserted many of the same arguments in their motion to dismiss the SAC. *See* Doc. 56. The fact that the Court denied that motion (Doc. 90) strongly suggests that Plaintiffs' legal claims were not frivolous. *See Hyman v. Borack & Associates, P.A.*, No. 8:12-cv-1088, 2012 WL 6778491, at *3 (M.D. Fla. Dec. 17, 2012) ("Clearly, if the motion [to dismiss] was insufficient to warrant [defendant's] dismissal from the case, it certainly does not justify the imposition of Rule 11 sanctions against the plaintiff for including [defendant] in the lawsuit.").

Indeed, the SAC alleges the required elements for a civil RICO claim—a pattern of racketeering (wire fraud), an enterprise (MAF Corp.) and damages proximately caused by the scheme to defraud. It also alleges that Defendants engaged in a wire fraud scheme to divert Plaintiffs' customers to a rival business. *See* SAC ¶¶ 26, 27, 44. In the Motion, Defendants recycle the same arguments that the Court already rejected and assert, without citation to authority, that online statements are not "schemes to defraud" under 18 U.S.C. §1343. This is an incorrect

statement of the law.  The wire fraud statute prohibits "schemes[s] or artifice[s] to defraud, *or for obtaining money or property* by means of false or fraudulent pretenses, representations or promises."  18 U.S.C. §1343 (emphasis added).  It is phrased in the disjunctive.  Thus, a scheme to defraud the victim of property (here money, lost sales) violates the statute even if the defendant does not obtain the plaintiff's property.  *See U.S. v. Cross,* 928 F.2d 1030, 1044 (11th Cir. 1991) (affirming jury instruction allowing conviction under the federal mail fraud statute, 18 U.S.C. §1341, if the defendant devised "a scheme to defraud or for obtaining money or property" and adding that "intent to defraud meant acting ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to oneself.");[1] *U.S. v. Porat,* 76 F.4[th] 213, 221 (3d Cir. 2023) (rejecting argument that defendant must obtain victim's property and affirming conviction of defendant who did not receive any property from his scheme because "[t]he text of the wire fraud statute does not expressly provide that the defendant must seek to personally obtain property"); *U.S. v. Gatto,* 986 F.3d 104, 124 (2d Cir. 2021) (affirming wire fraud conviction of a defendant who did not receive any property but arranged for it to go to third parties because "the plain meaning of the word 'obtain' is sufficiently capacious to encompass schemes by defendants to obtain money for the benefit  of a third party").  Here, the SAC describes the scheme as benefiting MAF Corp, the RICO enterprise owned by defendants Larosiere and Holladay.  Because these allegations assert a valid wire fraud violation in accordance with Eleventh Circuit precedent, Plaintiffs' RICO claim does not violate Rule 11.[2]

---

[1] The federal mail and wire fraud statutes are interpreted "in tandem."  *See, e.g., U.S. v. Ward,* 486 F.3d 1212, 1221-22 (11th Cir. 2007).

[2] The fact that the Court ultimately rejected Plaintiffs' RICO claim does not mean that sanctions are warranted.  *See, e.g., Doria v. Class Action Services, LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009) (Middlebrooks, J.) (concluding that Rule 11 sanctions were unwarranted even though plaintiffs' civil RICO claims were "flimsy and poorly articulated").

Plaintiffs' Lanham Act claim was not frivolous because: (1) Defendants' online statements can qualify as commercial advertising if they influence consumer decisions, *see* Doc. 90 at p. 8 ("commercial speech includes statements made by competitors to influence consumer decisions"); (2) Defendants made false statement of fact regarding Plaintiffs, *see, e.g.*, Plaintiffs' Amended Statement of Material Facts ("SMF"), Doc. 165 at ¶¶ 103-04; (3) evidence of consumer deception is unnecessary because Defendants' statements are literally false, *see Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010); and (4) Defendants' false statements are likely to influence consumer's purchasing decisions, *see* Doc. 90 at p. 8.[3]

Plaintiffs' tortious interference claim was not frivolous because Plaintiffs had a business expectancy with designer Eric Goldhaber and approximately 20 customers who identified the FEDCAD meme or data security as the reason they canceled their DEFCAD memberships.  In granting Defendants' motion for summary judgment, the Court found that Plaintiffs' customer exit surveys were unpersuasive because they did "not attribute the concern to any Defendant."  *See* Doc. 179 at p. 7.  But Defendants coined the term "FEDCAD" in their meme, which they posted repeatedly online.  It was not frivolous for Plaintiffs to argue that Defendants caused those specific customers to cancel their memberships.  As a result, Plaintiffs' legal theories had a reasonable chance of success.

---

[3] The Court granted summary judgment in favor of Defendants on the Lanham Act claim because it found that Plaintiffs failed to "present specific, customer-level evidence showing that the challenged statements caused identifiable consumers to withhold trade."  Doc. 179 at pp. 7-8. Because Defendants did not raise that argument in the Motion, Plaintiffs did not have the benefit of Rule 11's safe-harbor provision with respect to that issue.

**C.      Plaintiffs Had a Good Faith Purpose for Pursuing This Case.**

Defendants contend that sanctions should be awarded because Plaintiffs filed this case for the improper purpose of "silenc[ing] critics" and "giv[ing] force to personal vendettas." Mot. 8-10. Defendants' conclusory allegations regarding' Plaintiffs' motivation are wrong (*see* **Exhibit 1**, Wilson Decl. ¶ 3) and should be rejected, *see Doria*, 261 F.R.D. at 686 (finding that defendants' "conclusory allegations about the motivation behind [plaintiff's civil RICO claim] is an insufficient basis on which to impose Rule 11 sanctions against any party").[4]

In fact, Plaintiffs filed this case to enjoin defendants from publishing false statements about Plaintiffs and to obtain monetary relief. Wilson Decl. ¶ 4. Although the Court ultimately rejected Plaintiffs' claims, Plaintiffs reasonably believe that Defendants' false statements have caused a substantial loss in revenue and profits. *Id.* ¶ 5.[5] This is a valid reason for pursuing this lawsuit.

**D.      The Court Has Already Found That Chapter 770, Florida Statutes, Does Not Apply.**

Defendants also assert that sanctions should be awarded because this case is barred by Chapter 770, Florida Statutes. Mot. 10-12. But the Court already rejected this argument in denying Defendants' motion to dismiss. Specifically, the Court found that Chapter 770 does not apply in this case because "Chapter 770 applies only to actions for damages founded upon the publication

---

[4] If any party in this case had an improper motive for pursuing claims in this action, it was Defendants. *See* Doc. 131 (striking Defendants' untimely counterclaims because Defendant Elik testified that he had planned to file the counterclaims "months" earlier and did not notify Plaintiffs because his "gut reaction is to be mean" and that he viewed the counterclaims as "funny").

[5] The fact that the parties are business rivals does not mean the suit was brought for an improper purpose. See Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* §13(c) (Sixth Edition, 2020) (noting that "no one commences a lawsuit out of beneficence or affection" and that "unusual circumstances – including objective evidence of improper purpose – are ordinarily required before someone . . . will be sanctioned for harboring an improper purpose").

of libel or slander… and Plaintiffs have not asserted a defamation claim." *See* Doc. 90 at p. 9. This argument provides no basis for imposing sanctions against Plaintiffs.

**E.      Plaintiffs Reasonably Believe That Their Claims Are Factually Supported.**

Contrary to Defendants' assertions (*see* Mot. 13-15), Plaintiffs' factual contentions are not frivolous.

Plaintiffs, in fact, share income because all income generated by DEFCAD website memberships are paid to, and received by, plaintiff DD Foundation.  SMF ¶ 81.  Additionally, the DEFCAD platform supports sales of Defense Distributed's main product, which accounts for more than 90% of Defense Distributed's sales revenue.  *See* Doc. 150-1 at p. 3; SMF ¶ 83. The affiliated relationship between DEFCAD and Defense Distributed, as well as their joint ownership by Wilson, is well-known in the GunCAD community.  SMF ¶ 84.

DEFCAD's servers are *not*, and never have been, hosted in Iran.  **Exhibit 2,** Walliman Decl. ¶¶ 8-9.  The evidence cited by Defendants purporting to show an Iranian server of the DEFCAD website (*see* Mot. 13 & Ex. A at 14-21) is in fact a "proxy" of the DEFCAD website. Walliman Decl. ¶ 10.  A proxy is a website configured to "forward" traffic to a distinct, usually third-party web server, and return the response as if it was coming from the proxy server itself.  *Id.* ¶ 11.  The actual DEFCAD website is and has always been blocked from being accessed from individuals in Iran.  *Id.* ¶ 12.  DEFCAD did not create this proxy website, nor has DEFCAD ever created any other proxy website, copy, mirror, or any other version of the DEFCAD website hosted outside of the United States.  *Id.* ¶ 14.  In 2024, Defendant Lettman created a series of online posts directing people's attention to this proxy domain and website, incorrectly claiming that it was proof that DEFCAD "runs" its "servers" in Iran.  *Id.* ¶ 21.

The FEDCAD meme's statement that "Defcad's database has been hacked and dumped on multiple occasions" is false.  SMF ¶ 103.  After thorough investigation, including an investigation performed by Mandiant, a highly regarded independent third-party data security company, DEFCAD found no evidence that hackers, i.e. unauthorized third parties, have accessed any of its databases.  Doc. 158 at ¶ 5.  Additionally, DEFCAD found no evidence that a database maintained by DEFCAD has ever been "dumped," i.e. downloaded by an unauthorized third party or made available to unauthorized parties on the internet.  *Id.*

The FEDCAD meme's statement that "DEFCAD "do[es] not encrypt [its] data, and keep[s] it stored unsalted – all your information is in a row" is false and misleading.  SMF ¶ 104.  DEFCAD's database uses, and has always used, both encryption and salting to protect data in accordance with security best practices.  Doc. 158 at ¶ 6.  Furthermore, DEFCAD's database has never maintained personally identifiable customer information.  *Id.*

**F.       Defendants' Other Arguments Lack Merit.**

The Court has already rejected many of the other arguments raised in the Motion.  For example, in denying Defendants' motion to dismiss, the Court rejected Defendants' shotgun pleading, venue, and personal jurisdiction arguments.  *See* Doc. 90.

Defendants' misleading interpretation of the evidence (*see* Mot. 16-17) also does not support sanctions.  As explained above, Defendant Lettman falsely stated that DEFCAD hosted its website and servers in Iran.  *See* Walliman Decl. ¶¶ 8-24.

Plaintiffs' theory of liability against Larosiere was based on his role as a co-conspirator.  Indeed, Defendant Celentano testified that Defendants Larosiere and Holladay were central figures in the conspiracy who asked him to publish the FEDCAD meme as retribution for Wilson's alleged copyright infringement.  *See* Celentano Dep. Tr., Doc. 161-1 at pp. 110-112.  Plaintiffs are not

required to prove that Larosiere individually published the FEDCAD meme or that MAF Corp. paid all Defendants in order to prevail. *See, e.g., Salinas v. United States*, 522 U.S. 52, 65 (1997) (affirming §1962(d) conspiracy conviction of a defendant who did not personally commit any predicate acts); *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 1306, 1321 (S.D. Fla. 2009) ("A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts").

DEFCAD's "bounty program" is not "consistent with a compromised web presence." *See* Mot. 14, 17. To the contrary, DEFCAD's "bounty program" was established to encourage third parties to report any data security vulnerabilities to DEFCAD before a third-party hacker could exploit those vulnerabilities. Walliman Decl. ¶ 5. As a result of DEFCAD's data security practices, including its bounty program, DEFCAD successfully *avoided* the hacking incidents falsely alleged by Defendants in the "FEDCAD" meme. *Id.* ¶ 7.

Plaintiffs are, in fact, competitors with businesses owned and controlled by Defendants. Specifically, Plaintiffs DEFCAD and DD Foundation are competitive with Holladay's company, CtrlPew, by virtue of being file-sharing sites for 3D gun designs. SMF ¶ 92. Additionally, Plaintiff Defense Distributed and MAF Corp. sell some of the same parts and kits for building 3D guns. SMF ¶ 91.

Defendants further contend that sanctions should be awarded because Plaintiffs published the FEDCAD meme in May of 2024. *See* Mot. 1, 19. By that time, Defendants had been regularly posting the FEDCAD meme on the internet for one year, and Plaintiffs' sales had already declined substantially. Wilson Decl. ¶ 6. Plaintiffs' publication of the FEDCAD meme in May 2024 obviously did not cause damages that had already accrued.

By hosting the meme on Defcad.com, Plaintiffs attempted to show to consumers that they were not hiding from, or ashamed of, the false allegations in the meme. *Id.* ¶ 7. Plaintiffs also provided a link to the lawsuit about the meme, thereby providing sufficient information for consumers to determine the falsity of the meme for themselves. *Id.* In doing so, Plaintiffs effectively reframed the issue and took control of the narrative, thereby mitigating their damages. *Id.*

Additionally, Defendants' publication of the meme had a much greater reach than DEFCAD's publication on its webpage, which had only 2,738 views. *Id.* ¶ 8. Defendants posted on the meme across dozens of online channels in 2023, 2024, and 2025. *Id.* ¶ 9. In particular, in April 2024, the meme was pinned to the top of the r/fosscad Reddit forum — a community of over 100,000 people in the 3D gun marketplace — ensuring maximum exposure of the false message DEFCAD was unsafe and compromised. *Id.* Another single post made by Defendant Clark has more than 5.2k views on X (formerly Twitter). *See* Doc. 49 at ¶ 36. Defendants published the false meme hundreds (if not thousands) of times to DEFCAD's customers, and it is believed that Defendants' publications have been viewed millions of times, thereby having a substantially greater reach and impact than DEFCAD's webpage. Wilson Decl. ¶ 10.

In sum, none of Plaintiffs' factual contentions were frivolous.

**G.   The Motion Improperly Seeks Rule 11 Relief for Conduct in a Separate Middle District of Florida Action.**

Finally, it should be noted that much of the Motion challenges no paper filed in this Court. It instead asks this Court to police litigation conducted in another district. *See Larosiere v. Wilson*, No. 6:24-cv-01629 (M.D. Fla.).[6] Rule 11 does not permit that.

---

[6] Specifically, the Motion's introduction declares that "[a]t the root of this controversy is *Larosiere v. Wilson*" and builds its principal theories on that case: Plaintiffs voluntarily dismissed "materially identical counterclaims" there before refiling here (Mot. 2-3); failed to provide Chapter 770 pre-

Rule 11 is paper-specific and forum-specific. It authorizes sanctions for "pleading[s], written motion[s], and other paper[s]" presented to the sanctioning court, and it "does not authorize sanctions for" conduct occurring elsewhere. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1130 (9th Cir. 2002). "Rule 11 sanctions are limited to 'paper[s]' signed in violation of the rule," and "behavior in prior proceedings do[es] not fall within the ambit of Rule 11." *Id.* at 1131. Reasonableness is judged when the challenged paper is signed and presented in the court where it was filed. *In re Rolls Constr. Corp.*, 108 B.R. 807, 808 (Bankr. S.D. Fla. 1989).

A Rule 11 motion therefore belongs in the court where the challenged paper was filed. As a court in this District explained, "applications for Rule 11 sanctions must be made in the court where the offending papers are filed, since the abusive conduct is determined as of the time of filing." *Id.* If conduct in litigation before another district "somehow constituted a violation of Rule 11, the [movant] should have sought sanctions from that court." *Id.* That court "should be the sole judge of whether conduct in proceedings before [it] amounted to abusive conduct, whether such abusive conduct warrants Rule 11 sanctions, and precisely what those sanctions should be." *Id.* The counterclaims, discovery, affidavits, and notice practices challenged here all arose in *Larosiere v. Wilson*. They were never "presented to" this Court and cannot support sanctions here. *Christian*, 286 F.3d at 1131.

The forum rule has already operated exactly as it should. The Middle District was the court "initially seized of the controversy," and federal comity strongly favors leaving disputes arising from that litigation there. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

---

suit notice "when these claims were advanced in the Middle District" (Mot. 11); disregarded "sworn affidavits in the Middle District" concerning venue and jurisdiction (Mot. 16); and "ignor[ed] contrary evidence" in the Middle District discovery record (Mot. 16-17, citing *Larosiere v. Wilson* Docs. 136-3, 138-1, and 138-2).

When overlapping matters proceed in two federal courts, "there is a strong presumption . . . that favors the forum of the first-filed suit," and the party seeking another forum must show "compelling circumstances." *Id.* Defendants cannot overcome that presumption by repackaging Middle District grievances as a Southern District Rule 11 motion.

The same Defendants already sought sanctions for this conduct in the Middle District and lost. On January 12, 2026, that court denied the consolidated motion of the "Former Counter-Defendants"—Larosiere, Elik, Holladay, Stroke, Lettman, and MAF Corp.—for fees and sanctions against Defense Distributed and its counsel under 28 U.S.C. § 1927 and the court's inherent authority. The denial is now on appeal in Eleventh Circuit No. 26-11420, where Elik, Holladay, Stroke, and Lettman challenge that ruling. The scope and effect of the parties' settlement and release also remain contested in that appeal.

This Court should not adjudicate sanctions claims arising from conduct already before another district and its reviewing court. A parallel sanctions proceeding risks the duplicative litigation and inconsistent results that the first-filed rule and federal comity exist to prevent. *Manuel*, 430 F.3d at 1135.

The Middle District's ruling also rejects the narrative Defendants repeat here. It held that "simply filing a pleading — the merits of which were never addressed — cannot alone form the basis for sanctions." **Exhibit 3**, Order Denying Fees at 5. It further held that voluntarily dismissing a claim "with the intent to refile elsewhere, and for a litigation advantage," is "not evidence of bad faith." *Id.* at 6. And it directed that any renewed sanctions motion—"under Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent authority"—be filed in the Middle District within thirty days after final judgment. *Id.* at 9. The Middle District reserved the issue to itself. Defendants cannot seek here what that court denied and what they continue to pursue on appeal.

The only proper Rule 11 inquiry in this action concerns the paper presented here: the SAC. That pleading must be evaluated on its own terms and "as of the time" it was signed and filed in this action. *In re Rolls Constr. Corp.*, 108 B.R. at 808.  The Motion cannot substitute the Middle District record for that inquiry.  Discovery conducted there, affidavits filed there, notice allegedly omitted there, and litigation decisions made there do not determine whether the SAC was objectively reasonable when filed here.

Conduct in a separate action lies outside Rule 11's reach. *Christian*, 286 F.3d at 1131.  The Court should disregard the Motion's Middle District–based grounds, confine its analysis to the papers presented in this action, and deny the Motion for the additional reasons addressed above.

## CONCLUSION

The Motion fails to establish "rare and exceptional" circumstances for imposing Rule 11 sanctions.  Accordingly, Plaintiffs respectfully request that the Court deny the Motion.

Dated:  July 15, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*