UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,

*Plaintiffs,*

v.

JOHN ELIK, et al.,

*Defendants.*

_____/

## DEFENDANTS ELIK, LAROSIERE, HOLLADAY, STROKE, AND LETTMAN'S REPLY IN SUPPORT OF CONSOLIDATED RULE 11 MOTION FOR SANCTIONS

Plaintiffs' Opposition never mentions *Hartman*, thus answering its centerpiece defense by omission. Plaintiffs argue that the denial of dismissal proves their RICO theory was objectively reasonable. But in revising that ruling, this Court recognized it relied in part on Plaintiffs' misrepresentation of *Hartman*. Doc. 179 at 4-5. Plaintiffs nevertheless invoke the earlier ruling as proof of reasonableness while ignoring their material misrepresentation that produced it in the first place.

Counsel was shown *Hartman*'s express limitation in November 2025, repeated the same false description in filing after filing, called Defendants' correction a "straw man," and continued advancing the theory after formal Rule 11 notice. When the Court ultimately read *Hartman* as Defendants had urged from the outset, it agreed. Doc. 179 at 4-10. The Opposition's newly minted argument that Section 1343's disjunctive "or" eliminates the money-or-property requirement is expressly foreclosed by *Kousisis v. United States*, 605 U.S. 114, 118-19 (2025).

Rule 11 addresses precisely this conduct: objectively untenable claims and factual contentions, persisted in after notice, for an objectively improper purpose, and the absence of a reasonable pre-filing inquiry. The Motion should be granted.

## I.     THE REVISED DISMISSAL RULING DOES NOT IMMUNIZE PLAINTIFFS' CONDUCT.

Rule 11 requires the Court to determine whether the challenged contentions were objectively frivolous and whether a reasonable inquiry would have revealed the defect. *Trump v. Clinton*, 161 F.4th 671, 691 (11th Cir. 2025*); Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022). If counsel failed to conduct that inquiry, subjective good faith is no defense. *Gulisano*, 34 F.4th at 942. Nor is the inquiry frozen

on filing day. Rule 11 applies when counsel "later advocat[es]" a paper, Fed. R. Civ. P. 11(b), and permits sanctions for continued advocacy after a contention should have been recognized as untenable. *Gulisano*, 34 F.4th at 942-43; *Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996).

Plaintiffs therefore gain nothing from saying the SAC once survived dismissal. The Court did not simply reach a different conclusion on a close question at summary judgment. It "agree[d]" with Defendants, "revise[d]" its earlier ruling, and identified the reason: the earlier decision had relied in part on Plaintiffs' erroneous representation of *Hartman*. Doc. 179 at 4-5. Plaintiffs continue to misrepresent authority even now. *Hyman*, an unpublished district-court order involving no such correction, does not suggest that a party may procure an interlocutory ruling through a distorted authority and then use that ruling as perpetual immunity.

*Doria* is equally inapposite. There, the Court found badly written claims and negligent development, but not objective frivolousness, and noted the absence of Rule 11 notice directed to the amended pleading. *Doria v. Class Action Services, LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009). Here, Defendants served the present Motion on March 10, 2026; identified the absent property-obtaining scheme, causation, customer relationships, and factual support; and afforded Plaintiffs every opportunity to withdraw the SAC. Plaintiffs instead reaffirmed it through summary judgment. What matters is not that the claims eventually failed, but why they failed and what counsel knew while perpetuating them.

## II.   COUNSEL REPEATEDLY MISREPRESENTED HARTMAN AFTER THE ERROR WAS IDENTIFIED.

The conclusion is unavoidable: Plaintiffs kept this case going by aggressively citing a case they never actually read. The sole issue developed on appeal in *Hartman* was continuity. *Hartman v. Does 1-2*, No. 23-13473, 2025 WL 398846, at *3 (11th Cir. Feb. 4, 2025). After resolving that issue, it "express[ed] and impl[ied] no opinion" on predicate acts or the remaining RICO elements. *Id*. at *6. Reciting a litigant's trial theory is not adopting it.

Counsel nevertheless told Defendants on October 14 that *Hartman* was "directly analogous," had affirmed a "$9 million wire fraud-based RICO judgment," and that Defendants themselves violated Rule 11 by failing to cite it. Doc. 23-3 at 2. Defendants responded in their November 5 filing that the panel addressed continuity and expressly declined to decide predicate sufficiency or wire fraud. Doc. 23 at 8-9. Declining to read the opinion, Plaintiffs repeated the same characterization one week later. Doc. 24 at 4-5. Defendants identified the limitation again. Doc. 25 at 9-10.

The repetition continued. Plaintiffs again described *Hartman* as affirming a wire-fraud judgment in their December 29 jurisdictional opposition. Doc. 37 at 3, 6. Defendants again called out the misrepresentation. Doc. 42 at 4. Yet Plaintiffs' March 9 dismissal opposition again claimed *Hartman* affirmed a verdict for lost profits "predicated on false statements made on the internet" and called Defendants' refusal to accept that proposition "inexplicable." Doc. 70 at 3, 6. After the present Motion was served, Plaintiffs repeated the proposition, dismissed the express limitation as a "straw man," and asserted that *Hartman* confirmed an online smear campaign was

3

actionable under RICO. Doc. 73 at 4-5. They repeated it yet again at summary judgment. Doc. 162 at 7.

The Court has now confirmed that Defendants' correction was right. It found that *Hartman* merely summarized the plaintiffs' theory, "did not adopt or endorse that theory," and "does not provide authority" that false online statements constitute wire-fraud predicates. Doc. 179 at 4-5. That finding also establishes materiality: the Court stated that it had relied in part on Plaintiffs' *Hartman* argument in denying dismissal. *Id*. at 4. Because the RICO theory supplied nationwide and pendent personal jurisdiction, Doc. 90 at 3-4, the misrepresentation materially prolonged this litigation through discovery and summary judgment.

An attorney's Rule 11 certification necessarily represents that existing law has been stated accurately. *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1355-57 (Fed. Cir. 2003) (affirming Rule 11 sanction where omissions and excisions gave a misleading impression of governing authority). The objective unreasonableness is stronger here: counsel received the omitted limitation verbatim, repeatedly, and still pressed an unsupportable opposite proposition. The Opposition's total silence about *Hartman* leaves that history unrebutted.[1]

### III.   THE OPPOSITION'S "DISJUNCTIVE" THEORY IS FORECLOSED BY SUPREME COURT PRECEDENT.

---

[1] As of July 22, 2026, Foster PC's homepage still listed this action under "Current Cases" with the headline "3D Gunmaker Wins RICO Decision Against Rival Company" and linked exclusively to a firm-hosted copy of Doc. 90. See Foster PC, https://www.fosterpc.com/ (last visited July 22, 2026) Ex. A.

The served Motion identified that the SAC alleged no misrepresentation made for the purpose of obtaining property. Mot. 4-6. The Opposition answers that Section 1343 is "phrased in the disjunctive," so merely intending financial loss to Plaintiffs suffices even if Defendants sought to obtain no property. Opp. 4. The Supreme Court has expressly rejected that reading:

> Despite the use of the disjunctive "or," we have declined to interpret Section 1343 as establishing alternative pathways to a conviction. Instead, reading the two clauses together, we have held that "the money-or-property requirement of the latter phrase" operates as a limitation on the former.

*Kousisis*, 605 U.S. at 118 (cleaned up). Thus, obtaining the victim's property must be the "aim," not an "incidental byproduct." *Id*. at 119.

*Porat* and *Gatto* hold that the defendant need not personally receive the property when the scheme aims to obtain it for someone else. *United States v. Porat*, 76 F.4th 213, 221 (3d Cir. 2023); *United States v. Gatto*, 986 F.3d 104, 124 (2d Cir. 2021). In each, obtaining property remained the scheme's object. *Cross* quoted a jury instruction concerning intent to cause loss or gain; it did not hold that reputational injury or lost future sales creates a non-property route around Section 1343. *United States v. Cross*, 928 F.2d 1030, 1044 (11th Cir. 1991). Whatever could once be inferred from that language, *Kousisis* now expressly forecloses Plaintiffs' textual premise.

Calling MAF a beneficiary does not solve the problem. The SAC alleged no deceptive transaction by which Plaintiffs or anyone else transferred property to MAF. It alleged public criticism supposedly followed by independent customer decisions. The attenuated chain is the same rejected in *Anza*: losses depending on third-party choices and alternative causes. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-

60 (2006). The Opposition thus continues the precise conflation identified in the Motion and Doc. 179: injury to Plaintiffs is not the object of a property-fraud scheme.

## IV. THE OPPOSITION CANNOT REPLACE MISSING CAUSATION WITH SPECULATION.

The Opposition's Lanham Act and interference defenses ignore the noticed defect. Literal falsity may sometimes relieve a plaintiff from separately proving actual deception; it does not eliminate materiality, injury, or proximate causation. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010); *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 (2014). The Motion expressly identified the absence of facts showing deception or materiality and the absence of any Defendant tied to a particular customer, relationship, contract, or transaction. Mot. 7-9. Plaintiffs therefore received safe-harbor notice of the conduct at issue. Rule 11 required notice of the specific defect, not prediction of the phrase "customer-level evidence" later used in Doc. 179.

On the merits, Plaintiffs simply repeat evidence the Court found insufficient. The exit surveys identify no Defendant, no Defendant's statement, and no exposure to Defendants' conduct; many give unrelated reasons for leaving. Doc. 179 at 2, 7-8. A reference to "FEDCAD" does not supply attribution, particularly when Plaintiffs own fedcad.com and themselves distributed the meme. Goldhaber described his reaction to generalized online criticism but identified no lost customer or completed transaction. *Id*. at 6, 8-9. Tyra identified a downturn and assigned it to the meme's general online presence, but did not identify who caused it, anyone who saw a Defendant's publication, or anyone who acted because of one.

6

Plaintiffs' new republication explanation fares no better. It is undisputed that Plaintiffs uploaded the meme, made it downloadable, and offered no explanation. *Id*. at 2. Wilson now calls that republication "mitigation," but his postjudgment declaration conceding the intentional act cannot restore Defendant-specific causation. It also addresses only a webpage with 2,738 views while completely ignoring the Motion's evidence that Plaintiffs emailed their approximately 150,000-person customer list to promote a downloadable package containing the meme and hosted it for two years in multiple locations without denial or refutation. Mot. 19-20; Doc. 181-1 at 79-82. The Court held Plaintiffs' republication introduced an independent, intervening source and broke the causal chain. Doc. 179 at 10.

The interference theory adds another defect: Defendants knew none of the unidentified customers, and a hope that past customers might return is not a protectable relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814-15 (Fla. 1994); Doc. 179 at 9.

**V.   PLAINTIFFS SELECTIVELY IGNORE THE MOTION'S FACTUAL AND IMPROPER-PURPOSE GROUNDS.**

The Opposition answers the hacking contention with a conclusory assertion that a "thorough investigation, including" Mandiant, found no unauthorized database access. Opp. 8. But it does not confront the materials cited in the Motion: the exposed database credentials and source-code vulnerability; JG's communications stating that he hacked DEFCAD; and Plaintiffs' payment to him. Mot. 13-14; Doc. 181-1 at 25-47. The Mandiant materials concern foreign websites mirroring DEFCAD and compromised credentials; the Opposition identifies no forensic conclusion resolving

7

the 2021 access described in Plaintiffs' own records. Rule 11 did not require Plaintiffs to accept every adverse inference, but it required an honest inquiry into known, contradictory evidence before alleging that Defendants' account was fraudulent.

Other noticed grounds go unanswered. The SAC alleged that Defendants claimed DEFCAD doxxed customers, yet the Motion identified no evidence that any Defendant made the statements attributed to them. Mot. 14-15. The Opposition says nothing about that defect. Saying some revenue goes to DD Foundation while DEFCAD supports sales of a Defense Distributed product is not the pleaded arrangement that Plaintiffs "share" income.

Wilson's declaration also does not answer improper purpose. A self-serving declaration cannot erase the contemporaneous evidence: Plaintiffs voluntarily dismissed materially similar claims across the district line, Wilson publicly called the new complaint a "rifle pleading," and he threatened Elik's death while linking to this action. Mot. 8-10; Doc. 181-1 at 13. An attack on Elik's later counterclaims does not answer the evidence of Plaintiffs' purpose. Objective circumstances—not Wilson's current characterization—govern Rule 11(b)(1).

The Opposition's remaining points do not cure the noticed defects. Its new Walliman declaration confirms that a DEFCAD proxy existed on an Iranian server; but still fails to identify any Defendant who made the broader statement pleaded in the SAC—nor how someone could differentiate between DEFCAD in Iran and an Iranain server serving DEFCAD as a proxy—much less making that statement wire fraud. Its citation to Celentano's testimony does not establish an agreement to

8

commit property fraud, much less a good faith inquiry; *Salinas* does not create a RICO conspiracy where no substantive predicate exists. And evidence that *some* plaintiffs sold overlapping products overlapping with *non-party entities* does not establish commercial advertising, an enterprise, or Defendant-specific causation.

Finally, the Court need not revisit every alternative defect to grant relief. Plaintiffs invoke Doc. 90 as to Chapter 770, shotgun pleading, venue, and personal jurisdiction, but Doc. 179 demonstrates why an interlocutory ruling is no talisman— especially one affected by a misdescribed authority. Chapter 770 remains relevant to counsel's knowledge that publication-based claims were being relabeled, and the other defects reinforce the absence of reasonable inquiry. The independently dispositive grounds are the repeated *Hartman* misrepresentation, the property-fraud defect, the missing causation, the unsupported factual contentions, and continued advocacy after notice.

## VI.   THE MIDDLE DISTRICT ORDER DECIDED A DIFFERENT MOTION UNDER DIFFERENT STANDARDS.

Plaintiffs are correct that this Court may sanction only papers presented here. That is exactly what Defendants request: sanctions for the SAC and its continued advocacy in this action. The Middle District record is offered simply as evidence of what Plaintiffs and counsel knew when they filed and advocated the SAC. A reasonable-inquiry analysis necessarily considers information available to the signer. *Gulisano*, 34 F.4th at 942-43. That Plaintiffs now suggest the Middle District "reserved the issue to itself," somehow obviating any review of their later conduct in a different forum, is insane. Opp. 12. It did not—and could not—claim exclusive

9

jurisdiction over a different complaint filed in this Court. Each court addresses papers presented to it. *Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002). The first-filed rule governing overlapping merits litigation does not immunize a Southern District filing or create duplicative sanctions proceedings concerning different papers under different statutes. The pending appeal from the Middle District's §1927 ruling involving different parties and different conduct changes none of this.

## VII.   THE SANCTION SHOULD BE TAILORED TO RESPONSIBILITY.

Summary judgment has mooted the Motion's request to strike the SAC, but not the need for deterrence. Rule 11(c)(4) authorizes the reasonable fees and expenses directly resulting from the violation and nonmonetary directives sufficient to deter repetition. Defendants do not seek monetary sanctions against represented Plaintiffs for counsel's legal contentions. *See* Fed. R. Civ. P. 11(c)(5)(A). They seek sanctions against the responsible attorneys and firms for the Rule 11(b)(2) violations and continued advocacy, and against those responsible for the Rule 11(b)(1) and (b)(3) violations—including Plaintiffs to the extent the record establishes their responsibility for the improper purpose and unsupportable factual contentions.

## CONCLUSION

The Court should grant the Motion and impose appropriately tailored sanctions sufficient to deter repetition.

Respectfully submitted,
DATED:  July 22, 2026

10

| | | |
|---|---|---|
| */s/ Gary C. De Pury* | */s/Matthew Larosiere* | */s/ Zachary Z. Zermay* |
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: | Email: |
| Email: Gary@DePury.com | Larosieremm@gmail.com | zach@zermaylaw.com |
| *Lead Counsel for Alex Holladay.* | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| | *Lead Counsel for Elik, Stroke, Lettman, and Clark.* | *Lead Counsel for Matthew Larosiere.* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record via Notices of Electronic Filing generated by CM/ECF.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581

11