UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,
Plaintiffs,

JOHN ELIK, et al.,
Defendants. ____________________________________/

DECLARATION OF ZACKARY CLARK

I, Zackary Clark, declare as follows:

1. I am over eighteen years of age and have personal knowledge of the matters stated in this declaration.

2. I submit this declaration in support of Defendants' motion for an award of attorneys' fees under 15 U.S.C. § 1117(a).

3. I reside in South Carolina and have resided there throughout this litigation. I am employed as Social Media Director for the National Association for Gun Rights. I have not conducted business in Florida, owned property in Florida, or been employed in Florida.

4. I am an individual of ordinary means. My approximate annual household income is $115,000 to $120,000. I support no dependents in my household and have the following substantial financial obligations, among others: rent of $1,638 per month, a car payment of $638 per month, and insurance and utility costs of approximately $87 per month. I do not have insurance paying my attorneys' fees in this case.

5. I have never been an employee or contractor of any party to this action or of MAF Corporation. I have never been paid by MAF Corporation.

6. I do not sell subscriptions to digital firearm files, paid access to a digital-file repository, or a service competing with DEFCAD.

7. I first found the FEDCAD meme on Plaintiffs' own DEFCAD website. When I searched Google for the phrase "Fedcad meme," Plaintiffs' page was the first result.

8. I copied the meme from Plaintiffs' website and posted it to Twitter. Before posting it, I did not discuss the post with any other Defendant or agree with anyone to publish it.

9. I regarded the meme as credible in significant part because Plaintiffs themselves had placed it on their website and made it available without commentary stating that it was false. I posted it of my own volition because I disagreed with Plaintiffs' business practices and disliked Cody Wilson. I had no commercial reason for posting it.

10. I did not publish the meme on behalf of MAF Corporation or any other business. The meme did not advertise a product or service offered by me, contained no link to a business from which I would profit, and did not ask viewers to purchase anything.

11. I received no financial benefit from the post. I did not expect to receive any such benefit.

12. I did not know the identities of DEFCAD's subscribers and did not contact an identified subscriber to persuade that person to cancel. I did not obtain any identified customer after posting the meme.

13. Plaintiffs therefore sued me for republishing an image that I had obtained directly from Plaintiffs' own website. After I disclosed these facts under oath, Plaintiffs continued to pursue their claims against me through summary judgment.

14. Plaintiffs nevertheless accused me of participating in a racketeering enterprise and violating the Lanham Act. The allegations exposed me to substantial potential liability even though I had merely republished material distributed by Plaintiffs themselves and had no commercial relationship with Plaintiffs or their customers.

15. Defending myself required me to retain counsel, search and preserve records, respond to written discovery, execute declarations, consult with counsel, and assist with motions. I spent approximately 20 hours personally addressing the case. Approximately 10 of those hours occurred during my working hours, when I was at my desk but unable to perform my job duties. The litigation diverted my attention from the responsibilities I am paid to perform and imposed a burden on my employer.

16. The litigation affected me and my family in the following concrete ways: I lost sleep and experienced sustained anxiety regarding my potential liability in this action. My wife was served with process on my behalf, which caused her significant distress, and the litigation caused ongoing anxiety to her and to my mother. It also created difficulty at my place of employment: an individual—whom I believe to be Mr. Cody Rutledge Wilson—contacted my employer under an assumed name and sought information about me, which caused disruption at my workplace and caused me to fear both for my continued employment and that the litigation would extend to my employer. Because my profession is Second Amendment advocacy, being named as a defendant in this action caused others in the firearms community to regard me as a liability, placing at risk my ability to work with other organizations and individuals in that field. My wife and I postponed our religious wedding ceremony and deferred planned international travel and other personal plans out of concern that I would be required to appear in court. I also refrained from speaking publicly on certain subjects within Second Amendment advocacy for the duration of these proceedings.

17. I retained Matthew Larosiere at an hourly rate of $450 to defend me. I authorized the work reasonably necessary to respond to the claims and remain responsible for my obligations under the fee agreement. At the time of this writing, I owe Mr. Larosiere over $65,000 in attorneys' fees.

18. Those fees are substantial compared with my income and assets. Paying them personally will require my household to operate without any financial buffer for savings,

emergencies, or discretionary expenses, and would represent a significant change from the circumstances my family maintained before this litigation.

19. I respectfully request that the Court award Defendants their reasonable attorneys' fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2026, in Simpsonville, South Carolina.

ZACKARY CLARK