UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:25-cv-81197

DEFENSE DISTRIBUTED, et al.,
Plaintiffs,

JOHN ELIK, et al.,
Defendants. ______________________________________/

DECLARATION OF ALEXANDER HOLLADAY

I, Alexander Holladay, declare as follows:

1. I am over eighteen years of age and have personal knowledge of the matters stated in this declaration.

2. I submit this declaration in support of Defendants' motion for an award of attorneys' fees under 15 U.S.C. § 1117(a).

3. I reside in Florida with my wife, Denise Holladay. I am a military veteran. After leaving the military, I worked in information technology, including work as a developer, programmer, and technical-support professional.

4. I am not independently wealthy and do not have an institutional litigation budget. My annual household income is approximately $70,000, a substantial portion of which is self-employment income that varies with market conditions and business operating costs. My substantial recurring financial obligations include property taxes of approximately $4,280, homeowner's insurance of approximately $2,120, utilities of approximately $4,800, auto insurance of approximately $1,500, health insurance of approximately $2,400, and household expenses of approximately $4,000 per month, or $48,000 annually. I do not have litigation insurance that pays the fees incurred in this case.

5. I have been involved in MAF Corporation, a small business that sells firearm-related parts and trinkets. MAF Corporation does not sell subscriptions to a digital-file repository or access to a website comparable to DEFCAD.

6. MAF Corporation did not create or publish the FEDCAD meme and did not publish the other statements attributed to the individual Defendants.

7. I also operate or have been involved with CtrlPew and The Gatalog. Neither sells access to a paid file repository or requires users to purchase a subscription. Ctrlpew sells merchandise such as T-shirts.

8. The challenged meme did not mention MAF Corporation, CtrlPew, The Gatalog, Defense Distributed, DD Foundation, DEFCAD, or a product or service offered by any of those entities. It contained no link directing viewers to a commercial website and no request that viewers purchase anything from me.

9. I reposted the meme as personal commentary. I did not post it as an advertisement for MAF Corporation, CtrlPew, The Gatalog, or any other business. I was not paid to post it, received no commission or other compensation because of it, and did not expect to profit from it.

10. I did not enter into an agreement with the other Defendants to divert customers from DEFCAD. I did not possess a list of DEFCAD subscribers, did not know the identities of the subscribers Plaintiffs claimed to have lost, and did not communicate with any identified subscriber for the purpose of persuading that person to cancel.

11. During discovery, I was never shown evidence identifying a DEFCAD customer who saw my post and then canceled or declined to renew a subscription because of it. I was never shown evidence that any such customer purchased anything from me, MAF Corporation, CtrlPew, or The Gatalog.

12. Plaintiffs nevertheless accused me of participating in a racketeering enterprise, violating the Lanham Act, and intentionally interfering with business relationships. Plaintiffs pursued those claims even though they could not identify a customer relationship known to me or a commercial transaction caused by my speech.

13. I sat for a lengthy deposition and was questioned about my employment history, businesses, finances, online activity, and relationships within the firearm-design community. I also had to collect and produce records, respond to written discovery, consult repeatedly with counsel, and prepare for hearings and dispositive motions.

14. The litigation diverted substantial time from my work and small businesses. I estimate that I personally spent approximately 200 hours on this matter, time that would otherwise have gone to furthering my own business. My consulting time is billed at $100 per hour, which reflects the value of my working time. Valued at that rate, the diverted time represents approximately $20,000. I am not asking the Court to award that amount, but it reflects the practical burden the case imposed.

15. This litigation has also caused business disruptions I am unable to quantify. In August 2025 I began planning construction of a 30-by-50-foot structure on my property to grow and advance my small business. Construction was contingent on obtaining SBA or comparable financing, which I was unable to pursue. Committing to debt service of that magnitude while facing an unquantified potential judgment in this matter would impair my ability to fund my defense. I deferred the project for that reason, and construction has not commenced.

16. The deferral has delayed operational capabilities that require this facility and cannot be performed in my current infrastructure.

17. I declined to register for or attend four industry events in 2025–2026 — SHOT Show (January 20, 2026), The Gathering (March 20, 2026), NRAAM (April 16, 2026), and GOALS (October 1, 2026) representing approximately $12,000 to $15,000 in combined attendance and travel costs, because I was unable to commit those funds while facing an unquantified potential judgment in this matter and needing to finance my defense. I have

attended comparable industry events in prior years, and attendance has produced content for my media and publishing operations, industry contacts, and partnership opportunities. I am unable to quantify the revenue foregone.

18. These claims have also affected my wife and household. Both of us have experienced significant stress and concern over the course of this matter.

19. We have postponed or declined several personal expenditures. In June 2026 my daughter moved into her first apartment and encountered multiple defects in the unit, including an unsecurable front door, faulty plumbing, and unsafe and unusable fixtures and cabinetry. Absent the uncertainty created by the potential exposure in this case, my wife and I would have committed approximately $5000 to a security deposit so she could relocate promptly. We declined to do so because we were unwilling to spend down available funds while facing an unquantified potential judgment. She remains in the unit awaiting repairs from the management company. Several trees on my property pose a risk of falling in high winds; I have not sought permits or removal quotes because of the need to reserve funds for legal expenses. My wife and I had also planned a short vacation for December 2026, which we abandoned after this action was filed on Sep 25, 2025 for the same reason.

20. I have likewise deferred a dental procedure quoted at approximately $10,000, recommended on or about Jan 20, 2026, because I was unable to commit funds of that magnitude while facing an unquantified potential judgment. The prospect of a judgment exceeding what I could realistically pay has created continuing uncertainty for my family.

21. I retained Gary DePury to defend me at an hourly rate of $450. I authorized the work reflected in his billing records, and I understand that the fees attributable to my defense and the common defense are substantial. I remain responsible for my obligations under the fee agreement. As of this writing, I owe approximately $100,000 to Mr. DePury.

22. A six-figure legal expense is not routine or readily absorbable for me or my household. Paying it personally would require liquidating working capital currently committed to inventory, reducing or halting operations at CTRLPew LLC and my other businesses, the same operations that generate the income from which any payment would have to come. It would further require encumbering my residence, which is presently owned free of any mortgage, converting an unencumbered asset into a monthly debt obligation against variable self-employment income of approximately $70,000 per year. This was not a dispute in which I could choose to stop spending money and walk away; I had to defend the claims until judgment was entered.

23. Despite extensive discovery into my personal life and businesses, Plaintiffs never identified a customer I had taken, a sale I had obtained, or an advertisement in which the challenged meme promoted a product or service.

24. I respectfully request that the Court award Defendants their reasonable attorneys' fees. Such an award would materially relieve the financial burden imposed on me and the other individuals who were required to defend these claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2026, in Orlando, Florida.

ALEXANDER HOLLADAY