**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually; ZACK CLARK, individually ,

Defendants.
______________________________________________/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

Plaintiffs oppose Defendants' Motion for Entitlement to Attorneys' Fees under 15 U.S.C. § 1117(a) ("Motion") (Doc. 196). Fee-shifting under the Lanham Act is reserved for "exceptional" cases that "stand out from others." This case does not meet that high standard. This was a hard-fought dispute in which Plaintiffs presented customer exit surveys, a sworn designer declaration, and an expert damages report. Plaintiffs lost because the Court concluded, based on a fully developed factual record, that Plaintiffs' evidence did not connect any individual Defendant's specific conduct to a specific customer's decision under the causation standard established by *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255 (11th Cir. 2023). That is an ordinary summary judgment ruling on causation, not a finding that the case should never have been filed or maintained.

With respect to Plaintiffs' RICO claim, this Court found that Plaintiffs' legal theory was sufficient to survive a motion to dismiss, expressly relying on the Eleventh Circuit's opinion in *Hartman v. Does 1-2, No. 23-13473*, 2025 WL 398846 (11th Cir. Jan. 31, 2025), for the proposition that "coordinated online smear campaigns between business competitors can support civil RICO liability predicated on wire fraud." Doc. 179 at 4 (describing Doc. 90 at 6). It was only at summary judgment that the Court concluded *Hartman* did not extend as far as its own prior order had found. Doc. 179 at 4-6. A legal theory that the Court found colorable enough to survive a motion to dismiss is not an objectively unreasonable position that renders a case "exceptional." And as detailed below, the Supreme Court has permitted a RICO case among business competitors for unfair competition to proceed. Thus, this case was supported even without reference to *Hartman.*

Defendants' remaining arguments fare no better. Plaintiffs' litigation conduct does not stand out, especially given that the Court admonished Defendants for their own aggressive and uncooperative litigation conduct. Notably, in denying Defendants' Motion for Rule 11 Sanctions (Doc. 181), the Court already acknowledged its "familiar[ity] with the record" and concluded that Defendants had not shown "exceptional circumstances." Doc. 184 at 1. The Court further rejected Defendants' contention that Plaintiffs' claims were pursued for an "improper purpose." *Id.* The Court's prior findings are fatal to Defendants' request for fees under the Lanham Act. Accordingly, the Motion should be denied.

## <u>ARGUMENT</u>

### A. The Lanham Act Allows Fee-Shifting Only in "Exceptional" Cases.

To obtain an award of fees under the Lanham Act, a prevailing party must show that the case was "exceptional" and "st[ood] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).[1] Courts assess the totality of the circumstances on a case-by-case basis, considering nonexclusive factors such as frivolousness, motivation, objective unreasonableness, and the need for compensation and deterrence, applying a preponderance-of-the-evidence standard. *Id.* at 554 n.6; *Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018).

The Eleventh Circuit has been explicit that this standard does not permit a court to punish a losing party because it "has zealously pursued its claim, especially on an issue with no directly controlling precedent." *Tobinick*, 884 F.3d at 1119. In *Tobinick*, the Court affirmed a fee award only because the losing plaintiff "responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly seeking to add parties and claims and bringing what the court viewed as baseless motions for sanctions and accusations of perjury." *Id.*

Since *Tobinick*, district courts in this Circuit have continued to require that the losing party transgress the norms of zealous advocacy — either as to the strength of its case or through litigation misconduct — before fees may be awarded under § 1117(a). *See, e.g.*, *Shenzhen Kinwong Elec. Co. v. Kukreja*, 778 F. Supp. 3d 1255, 1314 (S.D. Fla. 2025) (awarding fees because the defendant's case "was exceptionally weak and because the Defendants advanced unreasonable and frivolous positions to sustain that position"); *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1300–01 (S.D. Fla. 2017) (noting that the losing plaintiff had filed more than 500 patent infringement cases regarding the relevant patents); *NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1323 (M.D. Fla. 2014) ("post-*Octane* decisions awarding fees have concerned

[1] After *Octane Fitness* set the standard for awarding fees under the Patent Act, the Eleventh Circuit applied that standard to the similarly worded fee provision in the Lanham Act. *Tobinick v. Novella*, 884 F.3d 1110, 1113 (11th Cir. 2018).

egregious behavior," collecting cases). As explained below, Plaintiffs did not transgress the norms of zealous advocacy in pursuing their Lanham Act claims.

**B. Plaintiffs' Lanham Act Claim Was Not Exceptionally Weak.**

Defendants contend that Plaintiffs' Lanham Act claim for false advertising was "substantively weak" because Plaintiffs did not proffer sufficient evidence of specific lost customers. *See* Mot. 3-5. In making this argument, Defendants mischaracterize Plaintiffs' evidence and overlook case law holding that plaintiffs do not have to prove causation where, as here, defendants published literally false commercial speech about a business competitor.

In their motion for summary judgment, Plaintiffs identified: (1) customer exit surveys in which numerous respondents referenced "FEDCAD," data security concerns, or doxxing as reasons for cancelling their memberships; (2) the sworn declaration of Eric Goldhaber, a prominent designer in the relevant online community, describing his decision to stop uploading designs to Plaintiffs' platform after observing Defendants' false advertising campaign; and (3) the expert report of Jason Tyra, quantifying a multi-million-dollar revenue decline following the challenged meme's widespread circulation. DE 179 at 2-3.

Defendants assert that it was "objectively unreasonable" for Mr. Tyra to attribute all of Plaintiffs' lost sales to the false advertising. Mot. at 7. But Defendants cite no authority for that assertion, which is at odds with Lanham Act damages law. In false advertising cases, a plaintiff need not identify specific lost customers because causation is presumed once an advertisement is shown to be literally false. *See Osmose, Inc. v. Vianc*e, 612 F.3d 1298, 1318–19 (11th Cir. 2010) ("The classification of an advertisement as literally false or true but misleading affects the movant's burden with respect to the element of consumer deception. If the court deems an advertisement to be literally false, then the movant is not required to present evidence of consumer

deception.”). Once deception is presumed, damages and lost customers may be established by an accountant based on the plaintiff’s own sales data, attributing lost sales to the false advertising where no other factor appears to account for the decline. *See Safari Programs, Inc. v. CollectA Int’l Ltd.*, No. 15-cv-20263, 2018 WL 3730894, at *2-3, *6 (S.D. Fla. April 16, 2018) (“As the Lanham Act recognizes, it is virtually impossible to establish sales were not made due to a false advertisement.... That is why irreparable harm is presumed in false advertising cases,” allowing the plaintiff’s accountant to establish damages by attributing all lost sales to the false advertising by reference to sales figures, without identifying a single lost customer); *Sandoz Inc. v. Amgen Inc.*, No. 2:22-cv-05326, 2023 WL 4681569, at *3 (C.D. Cal. June 29, 2023) (denying defendant’s motion for summary judgment based on plaintiff’s alleged failure to identify specific lost customers). That is precisely what Plaintiffs did here through Mr. Tyra.[2]

This Court nonetheless found the evidence insufficient to create a triable issue on causation, applying the “specific, customer-level evidence” standard the Eleventh Circuit articulated in *TocMail*. Doc. 179 at 7-8 (citing *TocMail*, 67 F.4th at 1263, 1266).[3] Although the Court ultimately ruled in Defendants’ favor, the Court’s order did not suggest that Plaintiffs’ claim was frivolous or objectively unreasonable.

---

[2] The Court did not determine that the statements made in the challenged meme were true. As a result, it was objectively reasonable for Plaintiffs to pursue their Lanaham Act claims even if they could not establish that specific customers ceased doing business with them because of the meme.

[3] Defendants misleadingly cite the Court’s statement that Plaintiffs’ “republication of the meme ... breaks the link between Defendants’ alleged conduct and the claimed harm,” Doc. 179 at 10, to argue that Plaintiffs’ own causation theory was self-defeating. Mot. at 7. But that statement was made in the Court’s discussion of the tortious interference claim (Count III), not in its discussion of the Lanham Act claim (Count II). Nor does that theory explain why Plaintiffs’ revenue decline began more than a year before Plaintiffs republished the meme, in an attempt to take control of the narrative and mitigate the damages they had already incurred.

Defendants also ask this Court to find that Plaintiffs' RICO theory was so weak that it "stands out" as exceptional. Notably, Defendants do not explain why Plaintiffs' RICO claim is relevant as to whether its *Lanham Act claim* was "exceptional." Even if it were relevant, the Court already evaluated that theory once, at the motion-to-dismiss stage, and found it legally sufficient — citing *Hartman* for precisely the proposition Plaintiffs advanced. Doc. 179 at 4 (quoting Doc. 90 at 6). Only at summary judgment, after full discovery closed and the parties briefed the issue anew, did the Court conclude that "[t]hat ruling was interlocutory" and exercise its authority to "revise" it, holding that *Hartman* "merely summarized the plaintiffs' theory" in that case and "did not adopt or endorse" it, and that binding authority under *Ciminelli v. United States*, 598 U.S. 306 (2023), and *Kelly v. United States*, 590 U.S. 391 (2020), narrows the wire-fraud predicate more than the Court's earlier order had assumed. Doc. 179 at 4–6.

Defendants also accuse Plaintiffs' counsel of misrepresenting *Hartman* to the Court. Mot. at p. 9. That accusation ignores that Plaintiffs' wire-fraud predicate did not rest on *Hartman* alone. Plaintiffs also cited *Bridge v. Phoenix Bond*, 553 U.S. 639 (2008), in which the Supreme Court unanimously upheld a RICO claim by a business against a competitor for unfair competition in violation of the mail fraud statute.[4] In discussing the mail fraud statute, the *Bridge* Court stated:

> [S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business 'by reason of' a pattern of mail fraud…

*Bridge*, 553 U.S. at 649-50.

[4] The federal mail and wire fraud statutes are interpreted "in tandem." *See, e.g., United States v. Ward*, 486 F.3d 1212, 1221–22 (11th Cir. 2007).

That is precisely the theory Plaintiffs pursued in this case. Moreover, the Eleventh Circuit does not require that a defendant obtain the victim's property to violate the mail fraud statute. *United States v. Cross*, 928 F.2d 1030, 1044 (11th Cir. 1991) (affirming a jury instruction allowing conviction where the defendant "devised a scheme to defraud or for *obtaining money or property*") (emphasis added). There, the conviction was affirmed even though the defendant did not obtain property. *Id.* But this Motion should not devolve into a Rule 11 redux. The Court denied that motion. It need not entertain the same arguments again.

**C. Plaintiffs Litigated This Case in Good Faith.**

Defendants also contend that the Court should award fees because "Plaintiffs were repeatedly sanctioned," "disobeyed Court orders," and had an improper motivation for pursuing this case. Mot. 7-10. Defendants are wrong.

In support, Defendants note that the Court struck Plaintiffs' first response to Defendants' statement of material facts for failing to provide certain pinpoint citations. Doc. 163. But Plaintiffs promptly filed an amended response complying with the Court's direction. A corrected procedural deficiency falls short of the "egregious" conduct courts require before treating litigation conduct as exceptional.

Defendants also attempt to blame Plaintiffs for the high volume of discovery disputes in this case. But multiple discovery disputes does not justify fee-shifting under the Lanham Act. *See NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1325 (M.D. Fla. 2014) (denying fees even though court intervention in discovery disputes occurred "more often than is ordinarily necessary"). In any event, the Court repeatedly admonished all parties, including ***Defendants***, for their litigation conduct.[5] Indeed, in denying Defendants' Rule 11 Motion, the Court expressly

[5] *See* Doc. 64 (issuing order to show cause to Defendants for refusing to meet and confer in discovery); Doc. 69 (reminding parties of their obligation to meet and confer in good faith); Doc.

acknowledged the parties' contentious litigation history and concluded that Defendants had not shown "exceptional circumstances." Doc. 184 at 1. The Court further rejected Defendants' assertion that Plaintiffs pursued their claims for an "improper purpose." *Id.*

For the same reasons the Court denied Defendants' Motion for Rule 11 Sanctions, it should deny Defendants' request for entitlement to fees under the Lanham Act.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a determination that this is an exceptional case under 15 U.S.C. § 1117(a).

Dated: September 14, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorneys for Plaintiffs*

91 at 1 ("Unfortunately, it is quite clear to the Court that the parties and their counsel are not cooperating with one another in this case in general…"); Doc. 115 (noting "constant discovery disputes in this case"); Doc. 131 at 1-3 (rejecting Defendants' counterclaims as untimely because Defendants had planned them for months but withheld notice "to be mean" and viewed the counterclaims as "funny"); Doc. 133 at 2 ("not[ing] that the behavior of various counsel and parties in this case has been problematic, unprofessional and downright silly"); Doc. 143 (denying Defendants' motion to compel, which the Court founds "was filed in haste and without proper conferral").